IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

|  |  |  |
|---|---|---|
| EXXON MOBIL CORPORATION, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 4:16-CV-469-K |
| | ) | |
| MAURA TRACY HEALEY, Attorney | ) | |
| General of Massachusetts, in her official | ) | |
| capacity, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| | ) | |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT
ATTORNEY GENERAL MAURA HEALEY'S MOTION TO DISMISS**

**TABLE OF CONTENTS**

I.      INTRODUCTION .................................................................................................... 1

II.     STATEMENT OF FACTS ..................................................................................... 2

III.    ARGUMENT ........................................................................................................ 4

        A.      This Court Lacks Personal Jurisdiction over Attorney General Healey. ................4

                1.      Texas's Long-Arm Statute Does Not Reach Attorney General
                        Healey in Her Official Capacity. .................................................................4

                2.      Exercise of Personal Jurisdiction over the Attorney General by
                        This Court Would Violate Due Process.......................................................6

                        a.      The Attorney General Lacks the Minimum Contacts with
                                Texas Required for the Court to Exercise Personal
                                Jurisdiction over Her...................................................................... 6

                        b.      Exercise of Personal Jurisdiction over the Attorney General
                                Would Be Unreasonable in This Case. ........................................ 11

        B.      The Court Should Abstain from Hearing This Case Due To Ongoing State
                Proceedings in Massachusetts.................................................................................13

                1.      There Are Ongoing Civil Proceedings in Massachusetts, Including
                        Exxon's Own Challenge to the Attorney General's CID..........................14

                2.      The State-Court Proceedings in Massachusetts Implicate Important
                        State Interests. ..........................................................................................16

                3.      Exxon Has a Full and Fair Opportunity To Be Heard in
                        Massachusetts State Court on the Very Issues Raised in This Suit. ..........16

        C.      Alternatively, if the Court Does Not Abstain Under *Younger*, This Case
                Should Be Dismissed As Unripe...............................................................................18

        D.      Even if the Court Finds That It Has Personal Jurisdiction over the
                Attorney General, the Northern District of Texas Is an Improper Venue. ............19

IV.     CONCLUSION................................................................................................... 20

# TABLE OF AUTHORITIES

## Cases

*Allred v. Moore & Peterson*, 117 F.3d 278 (5th Cir. 1997)............................................................9

*Asahi Metal Indus. Co., Ltd. v. Super. Ct.*, 480 U.S. 102 (1987)...........................................10, 11

*Atl. Richfield Co. v. FTC*, 546 F.2d 646 (5th Cir. 1977).............................................................19

*Att'y Gen. v. Bodimetric Profiles*, 533 N.E.2d 1364 (Mass. 1989) ............................................15

*Bigham v. Envirocare of Utah, Inc.*, 123 F. Supp. 2d 1046 (S.D. Tex. 2000)............................20

*Bustos v. Lennon*, 538 F. App'x 565 (5th Cir. 2013) (per curiam)..................................10, 12, 13

*Calder v. Jones*, 465 U.S. 783 (1984)........................................................................................10

*Colo. River Water Conserv. Dist. v. United States*, 424 U.S. 800 (1976) ..................................18

*Cuomo v. Dreamland Amusements, Inc.*, No. 08-Civ.-6321 JGK, 2008 WL 4369270
(S.D.N.Y. Sept. 22, 2008)..........................................................................................................15

*Daimler AG v. Bauman*, 134 S. Ct. 746 (2014) ...........................................................................6

*Empower Texans, Inc. v. Tex. Ethics Comm'n*, No. A-14-CA-172-SS, 2014 WL 1666389
(W.D. Tex. Apr. 25, 2014).........................................................................................................17

*Ex parte Young*, 209 U.S. 123 (1908).........................................................................................5

*Forty One News, Inc. v. Cty. of Lake,* 491 F.3d 662 (7th Cir. 2007)...........................................17

*Gibson v. Berryhill*, 411 U.S. 564 (1973) ..................................................................................14

*Goodyear Dunlop Tires Ops., S.A. v. Brown*, 564 U.S. 915 (2011) .............................................6

*Google, Inc. v. Hood*, 822 F.3d 212 (5th Cir. 2016)....................................................2, 16, 18, 19

*Guidry v. U.S. Tobacco Co., Inc.*, 188 F.3d 619 (5th Cir. 1999)..................................................10

*Hanson v. Denckla*, 357 U.S. 235 (1958) .....................................................................................7

*Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408 (1984) ...................................6

*Holt Oil & Gas Corp. v. Harvey*, 801 F.2d 773 (5th Cir. 1986)................................................6, 7

*Hydrokinetics, Inc. v. Alaska Mech., Inc.*, 700 F.2d 1026 (5th Cir. 1983) ....................................9

*In re Ramirez*, 905 F.2d 97 (5th Cir. 1990) ................................................................................18

*Int'l Shoe Co. v. Wash.*, 326 U.S. 310 (1945)...............................................................................6

*J. & W. Seligman & Co. Inc. v. Spitzer*, No. No. 05-Civ.-7781 (KMW), 2007 WL 2822208 (S.D.N.Y. Sept. 27, 2007) ...................................................................... 16

*Johnston v. Multidata Sys. Int'l Corp.*, 523 F.3d 602 (5th Cir. 2008) ............................................ 4

*Juidice v. Vail,* 430 U.S. 327 (1977) .................................................................................. 16, 17

*Lupin Pharm., Inc. v. Richards*, Civ. No. RDB-15-1281, 2015 WL 4068818 (D. Md. July 2, 2015) (memorandum decision) ........................................................................... 14, 16

*McFadin v. Gerber*, 587 F.3d 753 (5th Cir. 2009) ........................................................................ 9

*Middlesex Cty. Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423 (1982) .................. 14, 16

*Moncrief Oil Int'l Inc. v. OAO Gazprom*, 481 F.3d 309 (5th Cir. 2007) ...................................... 9

*Nationstar Mortg. LLC v. Knox*, 351 F. App'x 844 (5th Cir. 2009) ............................................ 18

*Nationwide Mut. Ins. Co. v. Unauthorized Practice of Law Comm.*, 283 F.3d 650 (5th Cir. 2002) ............................................................................................................ 18

*Nuovo Pignone, SpA v. Storman Asia M/V*, 310 F.3d 374 (5th Cir. 2002) .............................. 6, 11

*Ohio Civil Rights Comm'n v. Dayton Christian Sch., Inc.*, 477 U.S. 619 (1986) ....................... 14

*Panda Brandywine Corp. v. Potomac Elec. Power Co.*, 253 F.3d 865 (5th Cir. 2001) .............. 11

*Payne v. Cty. of Kershaw*, No. 3:08-CV-0792-G, 2008 WL 2876592 (N.D. Tex. July 25, 2008) .................................................................................................................. 9

*Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1 (1987) ......................................................................... 13

*Pervasive Software Inc. v. Lexware GmbH & Co. KG*, 688 F.3d 214 (5th Cir. 2012) ................ 8

*R.R. Comm'n v. Pullman Co.*, 312 U.S. 496 (1941) ................................................................... 18

*Religious Tech. Ctr. v. Liebreich*, 339 F.3d 369, 375 (5th Cir. 2003), *reh'g denied, clarification granted*, 82 F. App'x 144 (5th Cir. 2003) ............................................ 9

*Revell v. Lidov*, 317 F.3d 467 (5th Cir. 2002) ............................................................................ 10

*Saxton v. Faust*, No. 3:09-CV-2458-K, 2010 WL 3446921 (N.D. Tex. Aug. 31, 2010) (Kinkeade, J.) ................................................................................... 10, 11, 17, 20

*Shotton v. Pitkin*, No. Civ-15-0241-HE, 2015 WL 5091984 (W.D. Okla. Aug. 28, 2015) ........... 9

*Sirva Relocation, LLC v. Richie*, 794 F.3d 185 (1st Cir. 2015) ................................................. 17

*Sprint Communications v. Jacobs, Inc.*, 134 S. Ct. 584 (2013) ............................................ 14, 15

*Stroman Realty, Inc. v. Antt (Stroman II)*, 528 F.3d 382 (5th Cir. 2008) .................................... 8

*Stroman Realty, Inc. v. Wercinski*, 513 F.3d 476 (5th Cir. 2008) .............. 4, 5, 7, 8, 10, 11, 12, 13

*Temple of the Lost Sheep, Inc. v. Abrams*, 761 F. Supp. 237 (E.D.N.Y. 1989) ...................... 14, 15

*Trainor v. Hernandez*, 431 U.S. 434 (1977) ................................................................. 14

*Tuteur v. Crosley-Corcoran*, 961 F. Supp. 2d 333 (D. Mass. 2013) ............................................. 9

*U.S. Risk Ins. Grp., Inc. v. U.S. Risk Mgmt., L.L.C.*, No. 3:11-CV-02843-M, 2012 WL
    12827489 (N.D. Tex. Apr. 16, 2012) ....................................................................... 20

*United States v. Ferrara*, 54 F.3d 825 (D.C. Cir. 1995), *amended* July 28, 1995 ......................... 9

*Walden v. Fiore*, 134 S. Ct. 1115 (2014) ................................................................. 7, 9

*Wien Air Alaska, Inc. v. Brandt*, 195 F.3d 208 (5th Cir. 1999) ...................................... 10

*Women's Cmty. Health Ctr. of Beaumont, Inc. v. Tex. Health Facilities Comm'n*, 685
    F.2d 974 (5th Cir. 1982) ............................................................................... 14

*World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286 (1980) ............................................. 10

*Younger v. Harris*, 401 U.S. 37 (1971) ........................................... 2, 13, 14, 16, 17, 18

**Statutes**

28 U.S.C. § 1391 ........................................................................................ 19, 20

42 U.S.C. § 1983 .................................................................................... 10, 14, 20

Mass. Gen. Laws ch. 12, § 3 ............................................................................... 2

Mass. Gen. Laws ch. 93A, § 1 *et seq.* .................................................................... 2

Mass. Gen. Laws ch. 93A, § 2 .......................................................................... 2, 3

Mass. Gen. Laws ch. 93A, § 4 ............................................................................. 2

Mass. Gen. Laws ch. 93A, § 6 ..................................................... 2, 3, 7, 14, 15, 16

Tex. Civ. Prac. & Rem. Code Ann. § 17.041 ............................................................ 4

Tex. Civ. Prac. & Rem. Code Ann. § 17.042 ............................................................ 5

**Treatises**

Tribe, American Constitutional Law § 3–30 ........................................................... 17

# I.    INTRODUCTION

On April 19, 2016, Attorney General Healey issued a civil investigative demand ("CID") from her office in Massachusetts to Exxon Mobil Corporation's ("Exxon") registered agent in Massachusetts to investigate potential unfair and deceptive acts or practices in Exxon's marketing and sale of fossil fuel-derived products and securities to consumers and investors in Massachusetts, in violation of Massachusetts law.[1] Attorney General Healey's CID to Exxon is a straightforward application of her law enforcement authority under Massachusetts law.

Exxon has challenged the validity of the CID in Massachusetts state court and will have a full and fair opportunity to press its claims there. Notwithstanding that fact, Exxon also elected to file a nearly identical suit in this Court and asks the Court to exercise personal jurisdiction over Attorney General Healey—despite the fact that all relevant events alleged in the complaint occurred in Massachusetts or New York and no relevant events occurred in Texas.[2] Moreover, Exxon has asked the Massachusetts court to stay adjudication of its claims until this Court decides this case.

This Court should reject Exxon's transparent attempt at forum-shopping and dismiss this case. Aside from being a duplicative expenditure of the litigants'—and the Court's—resources, Exxon's suit must be dismissed under well-settled law due to several dispositive jurisdictional and procedural defects.

*First*, this Court lacks personal jurisdiction over Attorney General Healey. The Texas long-arm statute does not reach a nonresident state official acting in her official capacity, and—as recent decisions in the Fifth Circuit and this Court have held on similar facts—exercise of

---

[1] Complaint (Doc. No. 1) (Compl.), Exhibit (Exh.) B, App. 022.
[2] Exxon's Texas suit includes federal constitutional claims that it did not, but could have, brought in Massachusetts. Those federal constitutional claims are analogous to the Massachusetts constitutional claims Exxon raised in its Massachusetts suit.

personal jurisdiction would violate due process because Attorney General Healey lacks sufficient "minimum contacts" to be haled into court here. *Second*, because there is an ongoing administrative investigation by the Attorney General and a pending Massachusetts judicial proceeding (in which the Attorney General is, today, moving to compel Exxon's compliance with the CID), this case warrants abstention by this Court under *Younger v. Harris*, 401 U.S. 37 (1971). The Massachusetts state court proceeding, which Exxon itself commenced, will provide a full and fair opportunity for Exxon's objections to the CID—constitutional and otherwise—to be heard. *Third*, even if this Court has personal jurisdiction and abstention is not warranted, under the Fifth Circuit's decision in *Google, Inc. v. Hood*, 822 F.3d 212 (5th Cir. 2016), the case is unripe and must be dismissed. *Finally*, dismissal is mandated because venue for this Massachusetts-centered case is improper in this district.

For the foregoing reasons, the Court should dismiss Exxon's suit.

## II.     STATEMENT OF FACTS

Attorney General Healey is an elected constitutional officer in the Commonwealth of Massachusetts and is its highest ranking law enforcement official. Mass. Gen. Laws ch. 12, § 3. Attorney General Healey also has various enumerated statutory powers, including enforcement of the Massachusetts Consumer Protection Act, Mass. Gen. Laws ch. 93A ("Chapter 93A"), which proscribes unfair and deceptive practices in the conduct of business. Pursuant to Chapter 93A, the Attorney General is authorized to protect investors, consumers, and other persons in the state against unfair and deceptive business practices through such mechanisms as promulgating regulations, conducting investigations through CIDs, and instituting litigation. *See id.* §§ 2(c), 4, and 6. CIDs under Chapter 93A are a crucial tool for gaining information regarding whether an entity under investigation has violated the statute, and they are employed routinely by the Attorney General's Office ("Office").

Attorney General Healey issued the CID to Exxon pursuant to Chapter 93A, § 6, as part of her pending investigation of possible violations of Chapter 93A, § 2, and the regulations promulgated thereunder, relating to Exxon's suspected failure to disclose fully to investors and consumers its knowledge of the serious potential for climate change, the likely contribution of fossil fuels (the company's chief product) to climate change, and the risks of climate change, including risks to Exxon's own assets and businesses. The Office served the CID on Exxon's registered agent in Massachusetts on April 19, 2016, and Exxon confirmed that service was proper.

On June 15, 2016, Exxon filed this action against Attorney General Healey, in her official capacity, alleging that the Attorney General's investigation violates its constitutional rights and is an abuse of process (Doc. No. 1). In support of its claims, Exxon offered little more than two facts: (1) Attorney General Healey issued the CID and (2) she participated in a press conference where she stated that climate change is a major challenge and that she would investigate Exxon based on reports that Exxon knew more about climate change than it revealed to investors.[3] Pointing to no other facts, Exxon asserts in its complaint that Attorney General Healey, "in an apparent effort to silence, intimidate, and deter those possessing a particular viewpoint from participating in that debate" (Compl. ¶ 87):

- "issued the CID based on her disagreement with ExxonMobil regarding how the United States should respond to climate change"—an "illegal purpose . . . not substantially related to any compelling governmental interest" (¶ 88);

- thereby engaged in "an abusive fishing expedition . . . without any basis for believing that ExxonMobil violated Massachusetts law" (¶ 91), "in the absence of a belief that the documents sought are relevant to ExxonMobil's trade or commerce in the Commonwealth" (¶ 100); and

- undertook these actions because "she is biased against ExxonMobil" (¶ 94) and has "an

---

[3] *See* Compl., Exh. A, App. 001. The Attorney General does not concede the accuracy of the transcript.

ulterior motive . . . namely, an intent to prevent ExxonMobil from exercising its right to express views with which she disagrees" (¶ 100).

Also on June 15, Exxon filed a motion for a preliminary injunction to enjoin Attorney General Healey from enforcing the CID (Doc. No. 8).

The following day, June 16, 2016, Exxon filed a very similar petition in Massachusetts state court to set aside or modify the CID along with an emergency motion seeking the same relief and to stay the Massachusetts proceeding pending the outcome of this litigation.[4]

## III.  ARGUMENT

### A.  THIS COURT LACKS PERSONAL JURISDICTION OVER ATTORNEY GENERAL HEALEY.

To proceed in this Court, Exxon must establish that "both the forum state's long-arm statute and federal due process permit the court to exercise personal jurisdiction." *Johnston v. Multidata Sys. Int'l Corp.*, 523 F.3d 602, 609 (5th Cir. 2008). Exxon can establish neither here.

1.  <u>Texas's Long-Arm Statute Does Not Reach Attorney General Healey in Her Official Capacity.</u>

Texas's long-arm statute does not reach Attorney General Healey because the Attorney General is not a "nonresident" within the meaning of the Texas long-arm statute. The long-arm statute defines "nonresident" as either (1) "an individual who is not a resident of this state" or (2) "a foreign corporation, joint-stock company, association, or partnership." Tex. Civ. Prac. & Rem. Code Ann. § 17.041. Under the Fifth Circuit's recent reading of the statute in a nearly identical posture, *Stroman Realty, Inc. v. Wercinski*, 513 F.3d 476 (5th Cir. 2008), the Attorney General fits into neither category.

As in *Stroman*, Exxon seeks to challenge "an out-of-state regulator's enforcement of her

---

[4] *See* Compl. ¶ 69. A more complete recitation of the facts surrounding Attorney General Healey's investigation, which is unnecessary for the purposes of the Attorney General's motion to dismiss, is provided in the Attorney General's opposition to Exxon's motion for preliminary injunction.

state's statute." *Id.* at 482. Here, Attorney General Healey has acted under express statutory authority to investigate a violation of Massachusetts law. Also as in *Stroman*, the Attorney General is not sued as an "individual," but rather "*in her official capacity.*" Compl. ¶ 16 (emphasis added). A government official sued in her official capacity is not an "individual" within the meaning of the long-arm statute. In such a case, under *Ex parte Young*, 209 U.S. 123 (1908), the official's "conduct remains *state action* under the Fourteenth Amendment." *Stroman*, 513 F.3d at 482 (emphasis added). Likewise, the Attorney General does not fit into "the only other class of nonresident defined by the statute"—"a foreign corporation, joint-stock company, association, or partnership"—which "includes business entities but not fellow states." *Id.* at 483. As the Fifth Circuit observed in *Stroman*, the statute does not appear to reach nonresident government officials acting in their official capacity at all. *Id.* at 482-83 ("[T]he Texas statute offers no obvious rationale for including nonresident individuals sued solely in their official capacity under *Ex Parte Young*.").

Additionally, in issuing the CID, the Attorney General did not "do business" in Texas within the meaning of the long-arm statute. The long-arm statute identifies three examples of "doing business": (1) entering into a contract with a Texas resident, to be performed at least in part in Texas; (2) committing a tort in the state; or (3) recruiting Texas residents for employment. Tex. Civ. Prac. & Rem. Code Ann. § 17.042. The Attorney General has engaged in no such acts.[5]

This construction is not only demanded by the language of the statute, but by common sense. It reflects the principles of comity, Texas's respect for its fellow sovereign states, and the

---

[5] And *Stroman* questioned whether an official-capacity suit like this one could ever reasonably be a "tort" claim within the long-arm statute. *Id.* at 483 ("[O]nly by twisting the ordinary meaning of the terms covered by the long-arm statute is Arizona's regulatory activity intended to be encompassed and adjudicated in Texas courts.").

Texas legislature's understanding that the proper and reasonable place to challenge the official actions of out-of-state officials is in their states—not in Texas.

    2.    <u>Exercise of Personal Jurisdiction over the Attorney General by This Court Would Violate Due Process.</u>

Even if the Texas long-arm statute purported to reach Attorney General Healey, this Court's exercise of specific personal jurisdiction over her would violate due process.[6] The Attorney General lacks requisite "minimum contacts" with Texas—because she has not "purposely directed [her] activities toward [Texas] or purposely availed [herself] of the privileges of conducting activities there"—and the exercise of personal jurisdiction here would be manifestly unreasonable. *Nuovo Pignone, SpA v. Storman Asia M/V*, 310 F.3d 374, 378 (5th Cir. 2002).[7]

    *a.*    *The Attorney General Lacks the Minimum Contacts with Texas Required for the Court to Exercise Personal Jurisdiction over Her.*

"In order for an exercise of personal jurisdiction to be consistent with due process, the nonresident defendant must have some minimum contact with the forum which results from an affirmative act on the part of the nonresident." *Holt Oil & Gas Corp. v. Harvey*, 801 F.2d 773, 777 (5th Cir. 1986) (citing *Int'l Shoe Co. v. Wash.*, 326 U.S. 310, 316 (1945)). Here, Attorney General Healey not only lacks "affirmative" minimum contacts with Texas—she lacks any suit-related contacts with Texas at all.

All of the acts on the part of the Attorney General alleged in Exxon's complaint occurred

---

[6] It is not disputed that the Attorney General lacks the "continuous and systematic general business contacts" with Texas required by due process for general personal jurisdiction. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 416 (1984). *See Daimler AG v. Bauman*, 134 S. Ct. 746, 751 (2014) (holding general personal jurisdiction requires contacts "so constant and pervasive 'as to render [the defendant] essentially at home in the forum State'" (quoting *Goodyear Dunlop Tires Ops., S.A. v. Brown*, 564 U.S. 915, 919 (2011)).

[7] Because Attorney General Healey lacks any suit-related contacts with Texas, as discussed below, the second prong of the *Nuovo Pignone* test, "whether the plaintiff's cause of action arises out of or results from the defendant's forum-related contacts," is not relevant. *Id.*

in Massachusetts or New York. As set forth above, Attorney General Healey issued the CID under Massachusetts's Chapter 93A from her office in Massachusetts, to Exxon's registered agent in Massachusetts. *See* Compl. ¶ 54. The press conference Exxon describes at length in its complaint—which forms no basis for legal action, in any event—took place in New York. Compl. ¶ 19. These realities belie Exxon's spurious assertion that "all or a substantial part of the events giving rise to the claims occurred in the Northern District of Texas." Compl. ¶ 18.

At no point did the Attorney General take *any* "affirmative act" in Texas related to her investigation, let alone "purposefully avail[] [her]self of the privilege of conducting activities" in Texas. *Holt*, 801 F.2d at 777. Likewise, serving the CID on Exxon's registered agent in Massachusetts under Massachusetts law does not "invok[e] the benefits and protections of [Texas's] laws," such that she "should reasonably anticipate being haled into court" in Texas. *Id.* (citing *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)). Indeed, Chapter 93A expressly provides for enforcement or objections to CIDs in Massachusetts Superior Court. Mass. Gen. Laws ch. 93A, § 6(7).

The Attorney General's lack of suit-related Texas contacts is dispositive here. *See Walden v. Fiore*, 134 S. Ct. 1115, 1124-25 (2014) (finding lack of personal jurisdiction when defendant had no contacts with forum, despite plaintiff's contacts with forum). Indeed, in two recent cases, the Fifth Circuit found a lack of personal jurisdiction in Texas over out-of-state regulators who had taken action against a Texas company for doing business in their states in violation of their state laws.

In *Stroman Realty, Inc. v. Wercinski*, 513 F.3d 476 (5th Cir. 2008), discussed above, a Texas-based real estate broker sued the Commissioner of the Arizona Department of Real Estate in a Texas federal court to challenge a cease-and-desist order issued by the Commissioner under

Arizona law concerning the broker's activities with Arizona purchasers. Even though the order was served in Texas, the Fifth Circuit held that the exercise of personal jurisdiction by a Texas court over the Commissioner would violate due process. The court found that "the totality of the Commissioner's contacts with Texas involves a cease and desist order and correspondence with [Plaintiff's] attorneys" and, therefore, "the Commissioner, a nonresident state official, could not have reasonably anticipated being haled into federal court in Texas to defend her enforcement of the Arizona statute." *Id.* at 484. Here, unlike the Commissioner in *Stroman*, Attorney General Healey did not serve the CID in Texas; she served it on Exxon in Massachusetts, at the office of its registered agent, therefore making it even less likely she would anticipate being required to defend her enforcement of Massachusetts law in a Texas federal court.

Similarly, in *Stroman Realty, Inc. v. Antt (Stroman II)*, 528 F.3d 382 (5th Cir. 2008), the Fifth Circuit again found a lack of personal jurisdiction in a suit brought by the same plaintiff in Texas against California and Florida officials who, the plaintiff argued, had even more extensive contacts with Texas than in *Stroman*. In *Stroman II*, the officials not only served a cease-and-desist order on the plaintiff in Texas (and commenced enforcement proceedings in their respective states), they also communicated with the Texas Real Estate Commission and Texas Attorney General's office about the plaintiff. *Id.* at 386-87. But the court held that these contacts did not represent "purposeful availment" by the California and Florida officials "of the privileges of conducting business" in Texas. *Id.*

Both *Stroman* cases require dismissal of this action because the Massachusetts Attorney General had no such intentional forum contacts implicating the protection or assistance of Texas's laws—or *any* suit-related contacts at all.[8]

---

[8] Indeed, the Fifth Circuit has found a *lack* of jurisdiction even when the defendant had

The fact that Exxon is headquartered in Texas and claims to store its responsive documents in Texas is irrelevant to the question of personal jurisdiction. As the Fifth Circuit has noted, "[j]urisdiction must not be based on the fortuity of one party residing in the forum state." *McFadin v. Gerber*, 587 F.3d 753, 760 (5th Cir. 2009). The location of Exxon's headquarters and records does not bear on *the Attorney General's* contacts with Texas—and it is the Attorney General's contacts, not Exxon's, that are relevant here. *See Walden*, 134 S. Ct. at 1126 ("[I]t is the defendant, not the plaintiff or third parties, who must create contacts with the forum State.");

---

seemingly substantial contacts with the forum, unlike the Attorney General's lack of contacts in this case. *See Pervasive Software Inc. v. Lexware GmbH & Co. KG*, 688 F.3d 214 (5th Cir. 2012) (lack of personal jurisdiction when defendant licensed software from and negotiated other licensing agreements with Texas company and software license included a Texas choice of law provision); *McFadin v. Gerber*, 587 F.3d 753 (5th Cir. 2009) (lack of personal jurisdiction in Texas when defendant sent orders for goods to and received commission checks from company in Texas, pursuant to contract underlying dispute with that company); *Moncrief Oil Int'l Inc. v. OAO Gazprom*, 481 F.3d 309 (5th Cir. 2007) (lack of personal jurisdiction in Texas when defendant negotiated contract with Texas company through communications and visits to Texas and Texas company performed work in Texas); *Religious Tech. Ctr. v. Liebreich*, 339 F.3d 369 (5th Cir. 2003) (lack of personal jurisdiction over defendant estate in Texas in breach of contract action when estate representative negotiated and signed contract at issue in Texas), *reh'g denied*, *clarification granted*, 82 F. App'x 144 (5th Cir. 2003); *Allred v. Moore & Peterson*, 117 F.3d 278 (5th Cir. 1997) (nonresident defendant's service of process on plaintiff in forum state in another action does not support personal jurisdiction over defendant in forum state in abuse of process/malicious prosecution case); *Hydrokinetics, Inc. v. Alaska Mech., Inc.*, 700 F.2d 1026 (5th Cir. 1983) (lack of personal jurisdiction in Texas, even when defendant negotiated contract underlying dispute (for goods to be manufactured in Texas) via phone, letter, and travel to Texas). The U.S. Supreme Court and federal courts in other circuits have reached the same result in similar circumstances. *See Walden v. Fiore*, 134 S. Ct. 1115 (2014) (effect on plaintiff of allegedly unlawful seizure of cash by DEA agent in Georgia, delaying funds' return to plaintiffs in Nevada, not enough to support personal jurisdiction in Nevada in *Bivens* action); *United States v. Ferrara*, 54 F.3d 825 (D.C. Cir. 1995) (no personal jurisdiction over New Mexico disciplinary board chief counsel in District of Columbia when she brought ethics enforcement action against attorney in District of Columbia), *amended* July 28, 1995; *Shotton v. Pitkin*, No. Civ-15-0241-HE, 2015 WL 5091984, at *2 (W.D. Okla. Aug. 28, 2015) (dismissing § 1983 case involving Connecticut order against Oklahoma companies "directed to stopping the alleged violations in Connecticut, involving the companies' dealings with Connecticut residents, rather to any other activity that might have been originating from their operations in Oklahoma generally"). *See also Tuteur v. Crosley-Corcoran*, 961 F. Supp. 2d 333, 338-39 (D. Mass. 2013) (collecting cases to similar effect); *Payne v. Cty. of Kershaw*, No. 3:08-CV-0792-G, 2008 WL 2876592 (N.D. Tex. July 25, 2008) (memorandum decision) (similar).

*Moncrief Oil Int'l Inc. v. OAO Gazprom*, 481 F.3d 309, 311 (5th Cir. 2007) ("A plaintiff's or third party's unilateral activities cannot establish minimum contacts between the defendant and forum state.").

Likewise, that Exxon claims it would feel some harm or effect from the CID in Texas does not confer jurisdiction over the Attorney General in Texas.[9] Even if the CID resulted in harm to Exxon in Texas, "the plaintiff's residence in the forum, and suffering of harm there, will not alone support jurisdiction . . . ." *Revell v. Lidov*, 317 F.3d 467, 473 (5th Cir. 2002) (collecting cases).[10]

This Court has reached the same result in cases involving similar facts. In *Saxton v. Faust*, the plaintiffs sued a Utah judge under 42 U.S.C. § 1983 for allegedly violating their First, Fifth, and Fourteenth Amendment rights by sanctioning them for violating discovery and preliminary injunction orders in a case in Utah state court. No. 3:09-CV-2458-K, 2010 WL

---

[9] Acts wholly outside a forum can support personal jurisdiction under the "effects" test of *Calder v. Jones*, 465 U.S. 783 (1984), but that "type of jurisdiction is rare," *Bustos v. Lennon*, 538 F. App'x 565, 568 (5th Cir. 2013), and limited to circumstances—not present here—where the forum "is the focal point both of the story and of the harm suffered," *Calder*, 465 U.S. at 789, and the defendant "intentionally aimed" his conduct at the forum state. *Guidry v. U.S. Tobacco Co., Inc.*, 188 F.3d 619, 629 (5th Cir. 1999); *see also Asahi Metal Indus. Co., Ltd. v. Super. Ct.*, 480 U.S. 102, 112 (1987) ("The substantial connection between the defendant and the forum State necessary for a finding of minimum contacts must come about by *an action of the defendant purposefully directed toward the forum State*.") (internal quotation marks and citations omitted) (emphasis in original). The "focal point of the story," based on Exxon's allegations, is Massachusetts—where the Attorney General issued the CID to Exxon under Massachusetts law, pursuant to her investigation of Exxon's actions in Massachusetts and the potential impacts of those actions on Massachusetts consumers and investors—not Texas. *See Stroman*, 513 F.3d at 486 ("[T]he Commissioner is not 'expressly aim[ing]' her actions at Texas. Rather, her intent is to uphold and enforce the laws of Arizona.") (internal citations omitted).

[10] Indeed, even if harm to the plaintiff in the forum is foreseeable by the defendant, "[f]oreseeable injury alone is not sufficient to confer specific jurisdiction, absent the direction of specific acts toward the forum." *Wien Air Alaska, Inc. v. Brandt*, 195 F.3d 208, 212 (5th Cir. 1999); *see also World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 295 (1980) ("'[F]oreseeability' alone has never been a sufficient benchmark for personal jurisdiction under the Due Process Clause.").

3446921 (N.D. Tex. Aug. 31, 2010) (Kinkeade, J.). The defendant Utah judge lacked any contacts with Texas; the only contacts alleged by the plaintiffs "are the effects they have felt in Texas" of the judge's orders. This Court found that it lacked personal jurisdiction over the defendant judge, noting that "[t]he Fifth Circuit recently rejected the idea that a nonresident government official may be haled into a Texas court simply because the effects of a ruling are felt in Texas." *Id.* at *3 (citing *Stroman*, 513 F.3d at 482-85).

The result should be the same here. As the Fifth Circuit noted in *Panda Brandywine Corp. v. Potomac Electric Power Co.*, "[i]f we were to accept [plaintiff's] arguments, a nonresident defendant would be subject to jurisdiction in Texas . . . simply because the plaintiff's complaint alleged injury in Texas to Texas residents regardless of the defendant's contacts, and would have to appear in Texas to defend the suit no matter how groundless or frivolous the suit may be." 253 F.3d 865, 870 (5th Cir. 2001) (internal quotation marks and citations omitted.) Such a result is clearly inconsistent with due process, and Exxon's suit must, therefore, be dismissed.

   *b.*  *Exercise of Personal Jurisdiction over the Attorney General Would Be Unreasonable in This Case.*

Due process also requires that the Court consider whether exercising personal jurisdiction over the Attorney General would be "fair and reasonable." *Nuovo Pignone*, 310 F.3d at 378. Each of the factors relevant to that determination—(1) the burden on the defendant; (2) the interests of the forum state; (3) the plaintiff's interest in obtaining relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and (5) the shared interest of the states in furthering fundamental, substantive social policies, *Asahi Metal Indus. Co., Ltd. v. Super. Ct.*, 480 U.S. 102, 113 (1987)—weighs heavily against the exercise of jurisdiction.

First, litigating in this Court would impose a heavy burden on Attorney General Healey, whose offices and personnel are located in Massachusetts. Litigating in a faraway state with local counsel—when the matter can be resolved in Massachusetts state courts where Exxon already has a suit pending—would be resource-intensive, expensive, and unnecessary. *See, e.g.*, *Bustos v. Lennon*, 538 F. App'x 565, 568 (5th Cir. 2013) (per curiam) ("The burden on all of the defendants, who live and work outside of Texas and are currently litigating the receivership [underlying the case] in Oregon, would be heavy.").

Second, Texas has little stake in this litigation, beyond the fact that one of its residents, Exxon, is the plaintiff. At issue is Exxon's claim that enforcement of a CID issued by the Massachusetts Attorney General under Massachusetts Chapter 93A to investigate potential harm to Massachusetts consumers and investors would violate Massachusetts legal requirements. The forum with the greatest (indeed, the only significant) interest, therefore, is Massachusetts. *See Stroman*, 513 F.3d at 487 ("[A]lthough a Texas court certainly has an interest in determining the legitimacy of Texas statutes, states have little interest in adjudicating disputes over other states' statutes.") (internal quotation marks omitted).

Third, Exxon's interest in obtaining relief would not be harmed if this Court found that it lacked personal jurisdiction over the Attorney General. Exxon is already pursuing relief in a Massachusetts state court, in a suit to set aside or modify the CID. *See Bustos*, 538 F. App'x at 568 ("[W]e cannot assign great weight to [plaintiff's] interest in seeking relief in two jurisdictions[.]").

Fourth and relatedly, resolution of this matter in the existing Massachusetts proceeding furthers the interests of the interstate judicial system in obtaining the most efficient resolution of controversies. In addition to placing an undue burden on Attorney General Healey, Exxon's

federal suit, which alleges nearly identical claims as its Massachusetts state court suit, would unnecessarily tax this Court's resources. Parallel litigation in two states would be duplicative, inefficient, and unwarranted. *See Bustos*, 538 F. App'x at 569 ("[T]he interstate judicial system's interest in the most efficient resolution of controversies strongly cuts against allowing [plaintiff] to continue his forum-shopping."). Particularly where Exxon has brought both suits, Exxon cannot fairly claim prejudice if this Court dismisses this case and leaves Exxon to its alternative—and much more appropriate—Massachusetts forum.

Finally, the fundamental interests of the several states are not served by the Court hearing this suit. As the Fifth Circuit wrote in *Stroman*, "[a]llowing the Southern District of Texas to exercise jurisdiction over [an Arizona official] creates the possibility that the [official] will have to defend her attempt to enforce Arizona laws in courts throughout the nation . . . los[ing] the benefit of having the laws examined by local state or federal courts—courts that have special expertise interpreting its laws." 513 F.3d at 487. The same reasoning applies to state attorneys general.

Because this Court lacks personal jurisdiction over Attorney General Healey, Exxon's suit must be dismissed.

## B. THE COURT SHOULD ABSTAIN FROM HEARING THIS CASE DUE TO ONGOING STATE PROCEEDINGS IN MASSACHUSETTS.

Even if the Court finds that it does have jurisdiction over the Attorney General, it nevertheless should abstain from hearing the case under *Younger v. Harris*, 401 U.S. 37 (1971). Abstention under *Younger* promotes comity and federalism by avoiding undue interference by a federal court "with the legitimate activities of the States." *Id.* at 44. *See Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1, 10-11 (1987). In evaluating whether to abstain under *Younger*, the Court must consider: (1) whether there is an ongoing state criminal, civil, or administrative proceeding; (2)

whether the state proceedings involve important state interests; and (3) whether the state court provides an adequate forum to hear the claims raised in the federal complaint. *Women's Cmty. Health Ctr. of Beaumont, Inc. v. Tex. Health Facilities Comm'n*, 685 F.2d 974, 979 (5th Cir. 1982) (citing *Middlesex Cty. Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 432 (1982)). Where the *Younger* requirements are met, the appropriate remedy is dismissal of the federal case. *Gibson v. Berryhill*, 411 U.S. 564, 577 (1973). All three *Younger* factors support abstention in this case.

1. <u>There Are Ongoing Civil Proceedings in Massachusetts, Including Exxon's Own Challenge to the Attorney General's CID.</u>

Here, there is a pending state judicial proceeding that warrants *Younger* abstention. In the Massachusetts Superior Court action where Exxon is challenging the CID, the Attorney General has moved (on the same day as this filing) to compel Exxon's compliance with the CID under Chapter 93A, § 6, all in aid of the Attorney General's effort to determine whether Exxon has violated Massachusetts laws protecting consumers and investors. The Attorney General's civil enforcement of state law is a type of proceeding "to which *Younger* has been extended." *Sprint Communications v. Jacobs, Inc.*, 134 S. Ct. 584, 592-93 (2013). *See, e.g.*, *Ohio Civil Rights Comm'n v. Dayton Christian Sch., Inc.*, 477 U.S. 619 (1986) (administrative proceeding to enforce civil rights laws); *Trainor v. Hernandez*, 431 U.S. 434 (1977) (civil proceeding to recover welfare payments allegedly obtained by fraud). Under *Younger*, a federal court should abstain in favor of state judicial proceedings overseeing state-initiated investigations into the federal plaintiff's wrongdoing. *See Lupin Pharm., Inc. v. Richards*, Civ. No. RDB-15-1281, 2015 WL 4068818, at *4 (D. Md. July 2, 2015) (memorandum decision) (abstaining under *Younger* in § 1983 challenge to Alaska CID in light of state court litigation where Alaska Attorney General was seeking compliance with demand); *Temple of the Lost Sheep, Inc. v. Abrams*, 761 F. Supp.

237, 242 (E.D.N.Y. 1989) ("There is a related ongoing proceeding before the courts of New York, namely, the Attorney General's motion to compel compliance with outstanding subpoenas. Although plaintiffs commenced this federal action some two weeks before the state filed its motion to compel, no 'proceedings of substance on the merits' had yet taken place in this court.").[11]

Moreover, Attorney General Healey's underlying investigation of Exxon, which resulted in the CID at issue, is ongoing and is itself sufficient basis for abstaining. *See Cuomo v. Dreamland Amusements, Inc.*, No. 08-Civ.-6321 JGK, 2008 WL 4369270, at *9 (S.D.N.Y. Sept. 22, 2008) (abstaining where state attorney general had issued administrative subpoena and moved to compel compliance because "*Younger* abstention is rooted in principles of federalism and comity, . . . the state's interest in this case in investigating and possibly prosecuting those who commit crimes within its borders implicate[d] those principles, [and] the subpoenas sufficed to initiate an ongoing state proceeding") (internal citation omitted). Like the other civil and administrative enforcement actions recognized in *Sprint Communications*, the Attorney General's CID warrants *Younger* abstention because it carries significant legal consequences for the recipient if not immediately challenged: the threat of waiving all legal objections. *See Att'y Gen. v. Bodimetric Profiles*, 533 N.E.2d 1364, 1365-66 (Mass. 1989) ("[F]ailure to bring . . . a motion [to set aside or modify the CID] pursuant to [Chapter] 93A, § 6(7), constitutes a waiver by the person to whom the C.I.D. is served. . . . The recipient may not remain passive, as Bodimetric has done, raising legal arguments only after the Attorney General brings a motion to compel."). The Chapter 93A procedure is unlike the Mississippi law at issue in *Google, Inc. v. Hood*, discussed below, in which the Fifth Circuit declined to order abstention in favor of an

---

[11] And here, unlike in *Temple of the Lost Sheep*, Exxon brought both suits.

administrative subpoena from the Mississippi Attorney General, without more, because Mississippi law did not require the recipient to take any immediate action to preserve its rights. 822 F.3d 212, 225-26 (5th Cir. 2016).

2.     The State-Court Proceedings in Massachusetts Implicate Important State Interests.

The Massachusetts proceeding concerns undeniably important state interests: the protection of Massachusetts consumers and investors from unfair and deceptive trade practices, the integrity of the Attorney General's investigatory tools under state law, and state judicial oversight. *See, e.g.*, *Juidice v. Vail*, 430 U.S. 327, 335 (1977) (state's "vindicat[ion] [of] the regular operation of its judicial system, so long as that system itself affords the opportunity to pursue federal claims within it, is surely an important interest"); *Lupin Pharm.*, 2015 WL 4068818, at *4 (citing *Juidice*); *J. & W. Seligman & Co. Inc. v. Spitzer*, No. 05-Civ.-7781 (KMW), 2007 WL 2822208, at *6 (S.D.N.Y. Sept. 27, 2007) (holding that "the enforcement of subpoenas issued pursuant to state law in furtherance of a fraud investigation [] represent an important and legitimate state interest" when abstaining under *Younger* in challenge to New York Attorney General's subpoenas).

3.     Exxon Has a Full and Fair Opportunity To Be Heard in Massachusetts State Court on the Very Issues Raised in This Suit.

As the procedural guarantees of Chapter 93A provide, Exxon may file, and indeed has filed, a petition to modify or set aside the CID and for a protective order in Massachusetts state court to object to the CID. Mass. Gen. Laws ch. 93A, § 6(7). Therefore, Exxon has a full and fair opportunity to raise its constitutional and other objections and defenses to the CID in state court, in response to the Attorney General's cross-motion to compel Exxon's compliance with the CID (served today), and in any future action arising from enforcement of the CID by the Attorney General. *See, e.g.*, *Middlesex Cty. Ethics Comm.*, 457 U.S. at 437 (abstention is appropriate

where federal plaintiff has "opportunity to raise" its constitutional claims in "competent state tribunal"); *Juidice*, 430 U.S. at 337.[12]

Exxon's preference for a federal forum for its claims is of no significance to the abstention analysis. *See Forty One News, Inc. v. Cty. of Lake,* 491 F.3d 662, 667 (7th Cir. 2007) ("Although [plaintiff] has a few veiled allusions to 'state tribunal bias and prejudice in prejudging a controversy,' it advances no reason to find that the state court did not provide an adequate opportunity for it to raise its constitutional challenges. . . . [Plaintiff] would prefer to be in federal court, . . . but its preferences and the earlier rulings of the state courts carry no weight under *Younger*. Denial of a preferred federal forum for federal claims is often the result of the application of *Younger* abstention, *see* Tribe, American Constitutional Law § 3–30, at 584, as well as other doctrines promoting comity.").[13]

All three *Younger* criteria are satisfied and, therefore, this Court should abstain in favor

---

[12] *See also Empower Texans, Inc. v. Tex. Ethics Comm'n*, No. A-14-CA-172-SS, 2014 WL 1666389, at *4 (W.D. Tex. Apr. 25, 2014) (abstaining from case regarding ethics commission proceeding) ("Plaintiffs seem particularly disturbed by the thought they might face legal consequences for failing to comply with a subpoena. . . . Plaintiffs' argument is irrelevant. Nothing in *Younger* and its progeny requires Plaintiffs to be immunized from the consequences of their actions while pursuing their legal arguments. True enough, noncompliance with a subpoena may spur a contempt action; noncompliance in the contempt action may lead to the issuance of a fine. But those steps are not taken while Plaintiffs are absent. To the contrary, Plaintiffs can and should be present in the state courts showing cause why they are not complying with the subpoenas and litigating their defenses."); *Sirva Relocation, LLC v. Richie*, 794 F.3d 185, 200 (1st Cir. 2015) ("Here, the [state agency] is competent to adjudicate the federal issues presented in this case and adequate review is available in the state courts. The record strongly suggests that the appellants will suffer no harm apart from the typical inconvenience that accompanies defending against charges that have been lodged. That inconvenience is not weighty enough to tip the scales: the *Younger* Court admonished long ago that 'the cost, anxiety, and inconvenience of having to defend against a single [proceeding are not] "irreparable" in the special legal sense of that term. Instead, the threat to the plaintiff's federally protected rights must be one that cannot be eliminated by his defense against a single [proceeding.]'") (quoting *Younger*, 401 U.S. at 46).
[13] Even if a federal forum is necessary, a federal court in Texas is still an improper venue. *See* Section III.D, *infra* at 19.

of the proceedings in Massachusetts. *See Saxton at* *3 (abstaining where there was an ongoing civil judicial action in Utah, the Utah state proceeding involved "[t]he state court contempt process[, which] lies at the very core of a state's judicial system," and the plaintiffs "had recourse under Utah law for the wrongs of which they complained.").[14]

## C. ALTERNATIVELY, IF THE COURT DOES NOT ABSTAIN UNDER *YOUNGER*, THIS CASE SHOULD BE DISMISSED AS UNRIPE.

Even if the Court decides that the pending state proceedings do not support abstention under *Younger*, Exxon's suit should be dismissed under *Google, Inc. v. Hood*, which found insufficiently ripe a preemptive federal court challenge to an investigatory subpoena issued by Mississippi Attorney General Hood. 822 F.3d 212, 224-26 (5th Cir. 2016). In *Google*, the district court, agreeing with Google's claims that the subpoena was unconstitutional and otherwise unlawful and adopting many of the arguments that Exxon advances here, granted a broad injunction against the subpoena and enjoined Attorney General Hood's pursuit of any enforcement action against Google. The Fifth Circuit reversed the district court's decision, ordered dismissal of Google's challenges to the subpoena, and vacated the district court's injunction against Attorney General Hood. *Id.* at 228 (relying on *In re Ramirez*, 905 F.2d 97, 100 (5th Cir. 1990), which held that the "motion to quash [a subpoena] was not ripe for judicial action . . . and . . . should have been dismissed for lack of subject matter jurisdiction"). The court held that injunctive relief was not warranted because Google would have an adequate remedy at law when it made its legal objections defending any action to enforce the subpoena that Attorney General Hood might later file. But until then, the action was not ripe. *Google*, 822 F.3d at 226.

---

[14] The other abstention and legal doctrines promoting comity also support abstention here. *See, e.g.*, *Nationstar Mortg. LLC v. Knox*, 351 F. App'x 844, 852 (5th Cir. 2009) (affirming abstention under doctrine of *Colo. River Water Conserv. Dist. v. United States*, 424 U.S. 800 (1976)); *Nationwide Mut. Ins. Co. v. Unauthorized Practice of Law Comm.*, 283 F.3d 650, 653 (5th Cir. 2002) (affirming abstention under doctrine of *R.R. Comm'n v. Pullman Co.*, 312 U.S. 496, 501-02 (1941)).

As the Fifth Circuit observed with regard to Google's challenge to Attorney General Hood's subpoena, Exxon can assert (and is, in fact, now asserting) its objections to the CID through Massachusetts's statutory state court process for such challenges. *Id.* at 225-26. While its petition to set aside or modify the CID is pending before the Massachusetts Superior Court, it will face no sanction or consequence of not complying with the CID. Moreover, here, Attorney General Healey has taken only the initial steps of opening an investigation and issuing a CID to Exxon; she neither has determined to undertake a Chapter 93A enforcement action against Exxon nor asserted any specific claim. Exxon may defend itself and raise its objections in Massachusetts state court when and if that ultimately occurs. *Id. See also Atl. Richfield Co. v. FTC*, 546 F.2d 646, 649 (5th Cir. 1977) (pre-enforcement relief from administrative subpoenas inappropriate in light of opportunity to bring due process and regulatory procedural objections in any subsequent enforcement proceeding). The dispute is, therefore, not ripe, and the Court should dismiss Exxon's suit.

**D.     EVEN IF THE COURT FINDS THAT IT HAS PERSONAL JURISDICTION OVER THE ATTORNEY GENERAL, THE NORTHERN DISTRICT OF TEXAS IS AN IMPROPER VENUE.**

Finally, the Northern District of Texas is an improper venue for this case. Under 28 U.S.C. § 1391(b), venue is appropriate in any of three places: (1) the judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located; (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or (3) if neither (1) nor (2) exists, then any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

All three alternatives under § 1391(b) rule out the Northern District of Texas as the proper venue. First, the Office of the Attorney General is in Massachusetts, not Texas. Second,

the events or omissions giving rise to Exxon's claim occurred in Massachusetts, where Attorney General Healey issued the CID to Exxon's registered agent—not Texas. That Exxon resides in Texas or may feel some effect of the CID there "does not necessarily mean that the events or omissions occurred there" for the purposes of venue. *U.S. Risk Ins. Grp., Inc. v. U.S. Risk Mgmt., L.L.C.*, No. 3:11-CV-02843-M, 2012 WL 12827489, at *2 (N.D. Tex. Apr. 16, 2012) (Lynn, J.); *see also Saxton*, 2010 WL 3446921, at *4 (holding venue in Texas improper where plaintiffs brought § 1983 claim against Utah judge based on sanctions order issued in Utah state court case). Ultimately, "[i]n determining whether or not venue is proper, the Court looks to the *defendant's* conduct, and where that conduct took place. Actions taken by a *plaintiff* do not support venue." *Bigham v. Envirocare of Utah, Inc.*, 123 F. Supp. 2d 1046, 1048 (S.D. Tex. 2000) (citing *Woodke v. Dahm*, 70 F.3d 983, 985-86 (8th Cir.1995)) (emphasis added). Exxon's corporate home in Texas is, therefore, not relevant to the venue inquiry.

Third, because the venue indicated by § 1391(b)(1) and (2)—*i.e.*, Massachusetts—is available, any possible alternative under § 1391(b)(3) is not. Even if this Court could exercise personal jurisdiction over Attorney General Healey, the proper venue would still be Massachusetts under § 1391(b)(1), where the Office of the Attorney General is located and where Attorney General Healey conducts her official duties. *See also Saxton*, 2010 WL 3446921, at *4.

Because the Northern District of Texas is an improper venue, the Court should dismiss the case.

## IV. CONCLUSION

For the foregoing reasons, the Court should DISMISS Exxon's complaint with prejudice.

Dated: August 8, 2016

Respectfully submitted,

MAURA HEALEY
ATTORNEY GENERAL OF
MASSACHUSETTS

By her attorneys:

Richard Johnston (*pro hac vice*)
Chief Legal Counsel
richard.johnston@state.ma.us
Melissa A. Hoffer (*pro hac vice)*
Chief, Energy and Environment Bureau
melissa.hoffer@state.ma.us
Christophe G. Courchesne (*pro hac vice*)
Chief, Environmental Protection Division
christophe.courchesne@state.ma.us
I. Andrew Goldberg (*pro hac vice*)
andy.goldberg@state.ma.us
Peter C. Mulcahy (*pro hac vice*)
peter.mulcahy@state.ma.us
Assistant Attorneys General
OFFICE OF THE ATTORNEY GENERAL
One Ashburton Place, 18th Floor
Boston, MA 02108
(617) 727-2200

/s/ *Douglas A. Cawley*
Douglas A. Cawley
Lead Attorney
Texas State Bar No. 04035500
dcawley@mckoolsmith.com
Richard A. Kamprath
Texas State Bar No. 24078767
rkamprath@mckoolsmith.com
MCKOOL SMITH, P.C.
300 Crescent Court, Suite 1500
Dallas, Texas 75201
(214) 978-4000
Fax (214) 978-4044

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on August 8, 2016, all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system. Any other counsel of record will be served in accordance with the Federal Rules of Civil Procedure.

/s/ *Douglas A. Cawley*
Douglas A. Cawley