1          IN THE UNITED STATES DISTRICT COURT

2          FOR THE NORTHERN DISTRICT OF TEXAS

3                 FORT WORTH DIVISION

4
     EXXON MOBIL CORPORATION,      )        4:16-CV-469-K
5               Plaintiff,         )
                                   )
6                                  )
     VS.                           )
7                                  )
                                   )        DALLAS, TEXAS
8    ERIC TRADD SCHNEIDERMAN,      )
     Attorney General of New       )
9    York, in his official         )
     capacity, and MAURA TRACY     )
10   HEALEY, Attorney General of   )
     Massachusetts, in her         )
11   official capacity,            )
                Defendants.        )        November 16, 2016
12

13               TRANSCRIPT OF TELEPHONE CONFERENCE

14            BEFORE THE HONORABLE ED KINKEADE

15              UNITED STATES DISTRICT JUDGE

16

17   A P P E A R A N C E S:

18

19
     FOR THE PLAINTIFF:          MR. JUSTIN ANDERSON
20                               Paul, Weiss, Ritkind,
                                   Wharton & Garrison LLP
21                               2001 K Street, NW
                                 Washington, D.C.  20006
22                               janderson@paulweiss.com
                                 (202) 223-7300
23

24

25

1                               **MR. TED WELLS**
                                 Paul, Weiss, Ritkind,
2                                   Wharton & Garrison LLP
                               1285 Avenue of the Americas
3                               New York, New York  10019
                               twells@paulweiss.com
4                               (212) 373-3317

5

                               **MS. MICHELE HIRSHMAN**
6                               Paul, Weiss, Rifkind,
                                 Wharton & Garrison, LLP
7                               1285 Avenue of the Americas
                               New York, New York  10019
8                               MHirschman@paulweiss.com
                               (212) 373-3000

9

10                              **MR. DANIEL E. BOLIA**
                               Exxon Mobil Corporation
11                              1301 Fannin Street
                               Room 1546
12                              Houston, Texas  77002
                               daniel.e.bolia@exxonmobil.com
13                              (832) 648-5500

14

15                              **MR. PATRICK JOSEPH CONLON**
                               Exxon Mobil Corporation
16                              1301 Fannin Street
                               Room 1539
17                              Houston, Texas  77002
                               patrick.j.conlon@exxonmobil.com
18                              (832) 624-6336

19

20                              **MS. NINA CORTELL**
                               Haynes & Boone LLP
21                              2323 Victory Avenue
                               Suite 700
22                              Dallas, Texas  75219
                               nina.cortell@haynesboone.com
                               (214) 651-5579

23

24

25

```
1   FOR THE DEFENDANT,        MR. RODERICK ARZ
    ERIC TRADD SCHNEIDERMAN:  Office of the Attorney General
2                                State of New York
                             120 Broadway, Fl 24th
3                            New York, New York  10271
                             (212) 416-8633
4

5
                             MR. JEFFREY M. TILLOTSON, P.C.
6                            Tillotson Law
                             750 N. Saint Paul Street
7                            Suite 610
                             Dallas, Texas  75201
8                            Jtillotson@TillotsonLaw.como
                             (214) 382-3041
9

10
                             MR. PETE MARKETOS
11                           Reese Gordon Marketos LLP
                             750 N. Saint Paul Street
12                           Suite 610
                             Dallas, Texas  75201
13                           petemarketos@rgmfirm.com
                             (214) 382-9810
14

15
    FOR THE DEFENDANT,        MR. DOUGLAS A. CAWLEY
16  MAURA TRACY HEALY:        McKool Smith
                             300 Crescent Court
17                           Suite 1500
                             Dallas, Texas  75201
18                           dcawley@mckoolsmith.com
                             (214) 978-4972
19

20
                             MR. RICHARD JOHNSTON
21                           Massachusetts Attorney
                               General's Office
22                           One Ashburton Place
                             20th Floor
23                           Boston, Massachusetts  02108
                             Richard.Johnston@state.ma.us
24                           (617) 963-2028

25
```

```
 1                                    MS. MELISSA HOFFER
                                      Massachusetts Attorney
 2                                       General's Office
                                      One Ashburton Place
 3                                    19th Floor
                                      Boston, Massachusetts  02108
 4                                    melissa.hoffer@state.ma.us
                                      (617) 963-2322
 5

 6
     ALSO PRESENT:                    MR. JASON BROWN
 7

 8
     COURT REPORTER:                  MR. TODD ANDERSON, RMR, CRR
 9                                    United States Court Reporter
                                      1100 Commerce St., Rm. 1625
10                                    Dallas, Texas  75242
                                      (214) 753-2170
11

12

13

14

15

16

17

18

19

20

21

22

23          Proceedings reported by mechanical stenography and

24   transcript produced by computer.

25
```

```
1              TELEPHONE CONFERENCE - NOVEMBER 16, 2016
2                      P R O C E E D I N G S
3              THE COURT:  Good morning.  Let me make sure who I
4    have got.
5              Mr. Anderson?
6              Hello?
7              Mr. Anderson?
8              MR. ANDERSON:  Good morning, Judge.
9              THE COURT:  Ms. Cortell?
10             MS. CORTELL:  Yes, Your Honor.  I've got a full list
11   if that would help.
12             THE COURT:  Is it Richard Johnston?
13             MR. JOHNSTON:  Yes, Your Honor.
14             THE COURT:  And then Mr. Arz?
15             MR. ARZ:  Yes, Your Honor.  Good morning.
16             THE COURT:  Good morning.
17             How is the weather in New York?
18             MR. ARZ:  Good.
19             MR. BROWN:  And, Your Honor, this is Jason Brown.
20   I'm the chief deputy for the New York Attorney General's
21   Office.  I'm on the line as well.
22             And the weather up here is actually not so bad.
23             THE COURT:  What does that mean?
24             Is it raining -- raining and cold?
25             MR. BROWN:  Yesterday it was raining and cold.
```

1   Today, it's funny, it's a little bit warmer, so --

2           THE COURT:  Oh, well, good.  Good.

3           MR. BROWN:  (Inaudible)

4           THE COURT:  Well, good.  So -- all right.  Anybody

5   else on the line?

6           MS. CORTELL:  Your Honor, it's Nina Cortell.  Let me

7   give you a full list, if that's okay.

8           THE COURT:  Sure.

9           MS. CORTELL:  I think that might expedite it.

10          THE COURT:  Okay.

11          MS. CORTELL:  So for ExxonMobil, in addition to

12  Justin Anderson, you have myself, Nina Cortell, Ted Wells, Pat

13  Conlon, Dan Bolia, and Michele Hirshman.

14          For the Massachusetts Attorney General, in addition

15  to Richard Johnston, you have Melissa Hoffer and Doug Cawley.

16          And for the New York Attorney General you have -- in

17  additional to Mr. Arz and Jason Brown, you have Pete Marketos

18  and Jeff Tillotson.

19          THE COURT:  Mr. Tillotson.  You haven't been in here

20  since you became an independent lawyer.  How are you doing?

21          MR. TILLOTSON:  I'm doing fine, Your Honor.  Thanks

22  for asking.  I'm -- I'm my own boss, and so I routinely both

23  hire and fire myself every afternoon.

24          THE COURT:  Well, there you go.  I wasn't worried

25  that you were going broke.  I just wondered what was going on

```
 1    with you.  That's good.  Good to have you back.

 2         Okay.

 3         MR. TILLOTSON:  Thank you.

 4         THE COURT:  You know, I've got Ms. Cortell's letter,

 5    and I guess her concern and my concern, too, at this point is

 6    whether or not Attorney General Schneiderman -- isn't that the

 7    right way to say it, general?  Just call him General

 8    Schneiderman and General Healey, whether they're going to

 9    comply with the order on the discovery or not and/or what's

10    going to happen there.  And I just wanted to kind of hear

11    y'all's response from that.

12         MR. JOHNSTON:  Your Honor, this is Richard Johnston.

13    You heard from me in September when we were down there arguing.

14    I will talk for the Attorney General's Office in Massachusetts.

15         As Your Honor will probably recall when we were

16    before you the last time, we argued quite strenuously that the

17    Court didn't have personal jurisdiction over Attorney General

18    Healey.  We argued secondarily that the Court should abstain

19    from taking the case because there was almost equivalent

20    proceeding in a Massachusetts state court.

21         We also argued there was no real irreparable harm

22    because Exxon had already produced many of the same documents

23    to New York.

24         And when we left court, or as we were leaving court,

25    you told us -- you told the parties that it seemed strange that
```

1   Exxon had produced a lot of documents to New York but wouldn't

2   give them to Massachusetts, and directed the parties to have a

3   discussion, and failing a discussion between us that we would

4   mediate before Judge Stanton.

5          We had discussions about the subject, and then we had

6   a mediation with Judge Stanton, and we left the process with no

7   documents from Exxon.

8          To our somewhat surprise we then got almost

9   immediately the discovery order, which seemed to relate

10  primarily the issue of abstention, at which point we filed a

11  motion for reconsideration with Your Honor on the discovery

12  order because we pointed out that the law on personal

13  jurisdiction seemed very clear under the Fifth Circuit, that

14  there was no ability on the part of the Court to exercise

15  jurisdiction over an attorney general from another state, no

16  federal court anywhere in the country had done that over the

17  opposition of an attorney general and Exxon didn't provide any

18  such cases.  So that motion for reconsideration is still

19  pending.

20         In the meantime, we received from Exxon approximately

21  a hundred and so written discovery requests, including

22  interrogatories, document requests, and requests for admission.

23  We also got notices of the deposition for Attorney General

24  Healey herself and -- to assist the attorneys general.

25         Now, each one of those discovery requests had a

1    particular time period for responding under the rules, and we
2    do intend to respond to all of them under the rules.  And as we
3    have said in at least one other paper, we do intend to object
4    to the discovery, including depositions of Attorney General
5    Healey and her associates and to the other forms of discovery.
6             But we will be filing those in a timely fashion.  I
7    think in direct response to Ms. Cortell's concern, we do not
8    expect that Attorney General Healey or the other assistant
9    attorneys general will show up for depositions.  We will be
10   filing motions with respect to those prior to the depositions.
11            I should note that when we got the notices -- we got
12   the letter from Exxon's counsel, I think on Friday during the
13   holiday about whether we would show up or not, and when by
14   Monday afternoon we had not yet responded, they sent a letter
15   to Your Honor saying there was concern about whether people
16   were going to show up.
17            So it's not as though there was any long delay in
18   letting people know.  I think less than -- there hadn't even
19   been a working day on Friday and we were a few hours into the
20   working day on Monday and we still had several days before our
21   formal responses were due.
22            So we will be filing those responses, and the
23   responses will, among other things, talk about the fact that it
24   is heavily, heavily disfavored to have top executive officials,
25   including attorneys general, deposed about their thought

1    processes in bringing particular matters.

2            And what we seem to have here, as we argue in our

3    motion for reconsideration, is a situation where the normal

4    investigatory process has been turned on its head.

5            We still in response to our civil investigation

6    demand have not received one document from Exxon, and yet Exxon

7    is going after the Attorney General's entire thought process

8    through a hundred written discovery requests and more and then

9    three depositions of key people who are involved in the

10   decision-making process.

11           So our motion for reconsideration focuses on that as

12   will our objections to the specific discovery requests which

13   they have made.

14           THE COURT:  Is that no?

15           MR. JOHNSTON:  That is a no.

16           THE COURT:  That's the longest no I have had in two

17   or three weeks, but it's okay.  I'm used to that.  You're a

18   lawyer.

19           All right.

20           MR. JOHNSTON:  Also it's been a few -- it's been a

21   couple of months now since we were before you, and I know you

22   have been in a busy trial.  And, you know, sometimes it's

23   important to just remind everybody where we -- where we think

24   we are on this.

25           THE COURT:  I appreciate that, and that -- you know,

1    I was a history minor, and so I always like history, and so not

2    that I always need it, and I kind of like to choose which

3    history I'm -- you know, whatever.

4            But I kind of do keep up with my docket, what's going

5    on.  But I'm glad for you to keep up with it, too.  That's

6    always fascinating, and that's -- you know, you talk about

7    things are unusual.  I would say that's a little unusual to

8    think that, you know, your comments about we got this unusual

9    thing from the Court.  You know, whatever.

10           You can make whatever comments you want to make.  I'm

11   going to make whatever rulings I think are appropriate, and

12   I'll rule on your motion when I -- in due time.

13           So I'll take that as an answer of no.

14           All right.  Mr. Schneiderman's representative --

15   excuse me.  General Schneiderman's representative, who is going

16   to be -- tell me who's speaking for him.

17           Mr. Arz?

18           MR. BROWN:  So, Your Honor, again, Chief Deputy Jason

19   Brown speaking.

20           THE COURT:  Oh, I'm sorry.  Okay.

21           MR. BROWN:  I'm going to take Your Honor's cue, the

22   answer is no.  I'm happy to expand at greater length.

23           The only thing I would note at this point is we were

24   served as nonparty.  We got nonparty discovery requests, you

25   know, basically hours or a day or so before we became a party,

1    so that's also an issue that needs to be fleshed out.

2            But -- but for the reasons that Mr. Johnston said and

3    others that are unique to me, you are the -- we'll need to

4    exercise our right to make appropriate objections to that

5    discovery request.

6            THE COURT:  Are you a party now?

7            MR. BROWN:  Now?  Yes.  I think we were served

8    earlier.  We're new to the dance, as the Court knows.  Today is

9    Wednesday.  I think we became a party either on Monday or

10   yesterday.  So this is all very new to us.

11           MS. CORTELL:  Your Honor, it's Nina.  It may be new

12   to New York, but the order amending was November 10th, and then

13   they immediately went into court in New York and sought to

14   pursue a subpoena there which they had now set for hearing on

15   this coming Monday.  And that's really what prompted our

16   letter, because in their papers they're saying that New York is

17   the appropriate place to litigate this, whereas we're already

18   set here on discovery that was then pending.

19           And so what we're hoping to do is set up a protocol

20   here to handle our discovery which was issued properly pursuant

21   to this Court 's October 13 order permitting discovery.

22           We acted promptly, which I think the Court would have

23   expected us to do.  The discovery is returnable as early as

24   some of it tomorrow and early next week.

25           We had asked them for confirmation if they were going

1    to comply.  We had not heard back.  And in the meantime they go

2    into court in New York and assert jurisdiction there, and

3    that's what prompted the letter.

4          So what we're here for today is to ask for a

5    protocol, if you will, for how to handle discovery, discovery

6    disputes, so that we, you know, get the discovery we're

7    entitled to under this Court's order.

8          THE COURT:  Y'all want to respond?

9          MR. BROWN:  Yes, Your Honor.  Jason Brown again.  I

10   mean, Ms. Cortel has slightly butchered the procedural history

11   here.  We had, as I think the Court knows, a prior case pending

12   in New York where actually Justice Ostrager had issued an

13   opinion rejecting one of their arguments, as Mr. Wells knows.

14   He appeared in court on that.

15         So this is not some new litigation intended to do an

16   end-run around anybody.  It was simply pursuing the motion to

17   compel that we had previously begun litigation on for a

18   subpoena that long predated any issues that Exxon raises in the

19   Texon case -- in Exxon case that has been pending now for over

20   a year on the subpoena.

21         So what we did is when we got the -- when we were

22   added as a party, we -- we wrote to Paul, Weiss and asked

23   whether they would withdraw those subpoenas since we were now a

24   party.

25         On Saturday we received the response no, and then the

1   next thing we knew we were being scheduled for a status

2   conference here.

3            So I'm still a little unclear as to what is being

4   requested, but obviously we haven't missed any deadlines yet.

5   We are planning to participate in a way that makes the Court

6   aware of our -- our issues.

7            Right now, because they are styled as Rule 45

8   nonparty discovery requests, the only court that would have

9   jurisdiction over that dispute, because the depositions have

10  been noticed here in Manhattan, would be the Southern District

11  of New York.

12           So right now, without withdrawing their prior

13  subpoenas to us, we have no choice but to go to the Southern

14  District of New York.  Again, these are issues that perhaps,

15  know, we would have been better off discussing with Paul, Weiss

16  directly, but they requested a status conference, so here we

17  are.

18           MR. ANDERSON:  Judge, this is Justin Anderson.  May I

19  respond to a few of those points?

20           THE COURT:  Yes.

21           MR. ANDERSON:  Well, first, I would just like to say

22  Ms. Cortell did not butcher any -- any history, procedural or

23  otherwise.  The matter that was pending before the New York

24  Supreme Court had to do with a subpoena that the New York

25  Attorney General issued to PricewaterhouseCoopers.  That was

1      the subject matter of that litigation, and that is the only

2      litigation that was pending before they rushed into court on

3      Monday morning to raise the subpoena that was at issue before

4      this Court.

5              So in terms of the procedural history, it is not

6      correct to suggest that this matter was before the Court in New

7      York.  It was a separate subpoena issued to ExxonMobil's

8      auditors.

9              Second, the request on Friday to adjourn the subpoena

10     that had been issued to ExxonMobil to the New York Attorney

11     General, that request had nothing to do with the addition of

12     the New York Attorney General as a party to this action.

13             You know, the basis in the letter was that there is a

14     motion for reconsideration and a motion to dismiss pending, and

15     the New York Attorney General requested that we adjourn the

16     return date pending this Court's resolution of those motions.

17             We responded in the letter promptly that that would

18     make no sense because you ordered discovery to determine

19     whether there is jurisdiction.  So putting off discovery until

20     jurisdiction has been resolved was nonsensical.

21             Aside from -- aside from that letter, we had heard

22     nothing from either the Massachusetts Attorney General or the

23     New York Attorney General in response to the discovery request

24     that we made.

25             And we made our first set of discovery requests at

1   the end of October.

2           On October 24th we served Massachusetts.

3           We then served New York on the 3rd of November.

4           So this idea that we came rushing to you without

5   giving them any time to respond, that is truly a butchering of

6   the record.

7           And, finally, Judge, you know, with respect to the

8   subpoenas, if -- if -- it is correct that right now all that is

9   pending is the third-party subpoenas, and they naturally would

10  be -- if there is a motion to quash or a motion to compel, it

11  naturally would -- would begin in the Southern District of New

12  York.  But there is a procedure for transferring jurisdiction

13  of -- of any motion to quash in connection with those subpoenas

14  to this Court.

15          And in light of the fact that those subpoenas now

16  pertain to parties to the litigation before this Court, they

17  would be -- it would be quite likely that if a motion to

18  transfer is made that those objections find their way to you.

19          THE COURT:  Well, here's -- let me -- let me begin by

20  saying, Mr. Brown, you scored some points by being -- with the

21  Court by being frank and to the point.  So I'm making you an

22  honorary, as you said, Texon.  I don't know what that is.  But

23  I'm going to make you -- I look forward to having you here

24  sometimes and I will tease you about that.  That's a good name

25  for some future company, I guess.

1          But, anyway, here's what I would like to do,

2   especially since I'm in this trial that may take the rest of my

3   adult days to finish, and then I have another one starting in

4   January with Facebook and a local company here, another big

5   case.

6          So what I would like to do is convert Judge Stanton

7   to a special master to deal with y'all on this so you can be

8   talking to somebody regularly.  He's my special master on this

9   case.  I have complete confidence in him.  Obviously, I need

10  y'all's permission to do that.  And you're going to -- you're

11  going to have to pay for that among yourselves.

12         But then we can get something, and you'll have

13  somebody to have my ear when my other part of me is sitting out

14  there and we can get this moving and can consider all of

15  your -- you know, your various concerns.

16         I get it.  And it's -- you know, we're getting pretty

17  close to the point of loggerheads.  And okay, that's fine.  And

18  try to figure that answer out.

19         Is that okay with the parties at this point?

20         I will make sure that he does not overcharge or

21  undercharge you, if that's okay.  I think he charges about

22  $725.00 an hour.  And, you know, that's what Johnson &

23  Johnson -- I think that's what they're paying him in here.

24         But, anyway, so that's what I would like to be able

25  to do so we can get something going on it and try to get

1   something besides us talking on the phone and get some

2   resolution for y'all as quickly as possible.

3           So what about New York, Mr. Brown?

4           MR. BROWN:  Thank you, Your Honor.  And -- and I

5   think we all very much appreciate the spirit of that

6   suggestion.

7           My only concern -- and I -- you know, I know lawyers

8   always come up with concerns.  But we -- we obviously do have a

9   personal jurisdiction defense that we wanted to be careful not

10  to waive.

11          THE COURT:  I'm not trying to get you to waive -- I

12  don't want you to waive anything.  I'm not -- you know, yes,

13  you don't know me, but I'm not -- I'm not trying to sneak up on

14  you or anybody else.  That's not my style.  We're going to

15  fight this thing out, y'all are, one way or the other, and it's

16  not going to be based upon, you know, that sort of thing, okay?

17          I'm not -- I'm not trying to get you to do that,

18  okay?

19          This is on the record.  This is on the record.  I

20  don't know how much clearer I can be than that, okay?

21          MR. BROWN:  Okay.  Thank you, Your Honor.

22          THE COURT:  Is that okay?

23          So it's okay with you?

24          MR. BROWN:  Yeah, I mean, we haven't -- unfortunately

25  we have taxpayer money that we have to account for, but

1    conceptually I think that's fine.

2              THE COURT:  Okay.

3              MR. BROWN:  I just have to work out the mechanics of

4    how that would -- how we would be able to find funding for our

5    payment.  That's all.

6              THE COURT:  Yeah, but don't you do that now in

7    various cases?

8              MR. BROWN:  No.  Actually, no.

9              THE COURT:  You don't?

10             MR. BROWN:  I'm not looking to throw -- Your Honor,

11   I'm not looking to throw a roadblock, so let's do this issue

12   and then let the Court know.

13             THE COURT:  Well, who's -- who's paying for Marketos?

14             MR. BROWN:  Marketos, Your Honor.

15             THE COURT:  Yeah, but, I mean, he's -- you're paying

16   for him, right?

17             MR. BROWN:  Yeah.  No.  And -- we have to get to

18   several levels of authorization to do it.  So, again, Your

19   Honor, I don't mean to put a --

20             THE COURT:  And Tillotson doesn't work for free.

21   Tillotson doesn't work for free at all, because I've had him in

22   here.  He's the most expensive lawyer in Dallas.

23             MR. TILLOTSON:  I'm going to take that as a

24   compliment.

25             THE COURT:  It is a compliment.

1          MR. TILLOTSON:  Have to go through a big process and

2     approval process that we went through, so I think there's

3     just -- they want to make sure they can -- they can fund this

4     in a way --

5          THE COURT:  Yeah.  Okay.  Mr. Tillotson, will you

6     just -- just commit to me -- yeah, Mr. Tillotson, will you just

7     commit to me you will do your best to get this done?

8          MR. TILLOTSON:  Of course, Your Honor.  Absolutely.

9          THE COURT:  Yeah.  Okay.  And you know -- you know

10    Judge Stanton well, correct?

11         MR. TILLOTSON:  I do, Your Honor.  I just want to

12    make sure -- he needs to clear conflicts, because obviously I

13    have had relationships with him and against him in the past, so

14    he will need to inform everyone obviously of any conflicts he

15    may have with the parties.

16         THE COURT:  Okay.

17         MR. TILLOTSON:  I have no problem with him being

18    special master.

19         THE COURT:  Yeah.  Yeah.  Okay.  Well, yeah.

20    Obviously, everybody has got to do that.

21         All right.  All right.  And then I haven't meant to

22    ignore you, Mr. Johnston.

23         MR. JOHNSTON:  I will be short, Your Honor.  I echo

24    Mr. Brown's comments.  Because it is taxpayer money I don't

25    have the authority to commit to that, so I will have to have

1    discussions internally here.

2          THE COURT:  Well, you did hire Mr. Cawley, correct?

3    Is that correct?

4          MR. JOHNSTON:  That's correct.

5          THE COURT:  And McKool Smith is known on what I see

6    locally as the most expensive law firm and the most

7    successful -- one of the successful firms, I'm sure that you

8    would agree, wouldn't you, Mr. Cawley?

9          MR. CAWLEY:  Well, I'd agree -- I'd love to agree

10   with the second half, Your Honor.  On the first one I'd say

11   maybe we're not the most expensive after getting through

12   negotiating with the State of Massachusetts.

13         THE COURT:  Oh, I'm sorry.  But you are a very

14   successful firm and do extremely well, partner by partner,

15   correct?

16         MR. CAWLEY:  Yes, Your Honor.

17         THE COURT:  I know.

18         Okay.  So y'all work on getting that done.  Assuming

19   that you can work through whatever layers there are -- there

20   are, you'll work on that?

21         Yes?

22         MR. CAWLEY:  Absolutely.

23         THE COURT:  Who said that?

24         UNIDENTIFIED SPEAKER:  Absolutely, Your Honor.

25         THE COURT:  Who said that, for the record?

```
 1              MR. CAWLEY:  This is Doug Cawley.  I'm one person who
 2    said we'll work on it.
 3              THE COURT:  And also, Mr. Johnston, do you, too?
 4              MR. JOHNSTON:  I do.  I do, too.
 5              THE COURT:  Hey, is the T silent or not in your --
 6    Johnston?
 7              MR. JOHNSTON:  Not the way I pronounce it, Your
 8    Honor.
 9              THE COURT:  Okay.  I'm working on trying to get you
10    to be a -- what did we make -- what did I make Mr. Brown?  A
11    Texon.
12              MR. BROWN:  Not a very strong --
13              THE COURT:  Texon.  A Texon.  You're next.  We're
14    going to --
15              MR. BROWN:  A Texon.
16              THE COURT:  Okay.
17              MR. JOHNSTON:  Last time you told me I was your
18    thirteenth favorite Yankee.
19              THE COURT:  That's correct.  Okay.  Well --
20              MS. CORTELL:  And, Your Honor, for the record,
21    ExxonMobil of course is agreeable, and we'll work with the
22    parties to that end.
23              THE COURT:  Oh, you were next.
24              Okay.  So y'all work on that.  And get that done in
25    the next day or two so we can get that resolved before
```

1    Thanksgiving, and we can kind of get things moving, okay?

2            And then try to set up --

3            MR. BROWN:  Your Honor?

4            THE COURT:  Yes, sir.

5            MR. BROWN:  Your Honor, this is Mr. Brown here.

6    Implicit in what you're saying, I hope, is because I think our

7    objections -- our court filing might be due as early as

8    tomorrow -- is that the current discovery requests are stayed

9    pending our discussions to work with the special master?

10           THE COURT:  Well, you agree on the special master and

11   then we'll see, okay?

12           So -- all right.  That does kind of put the pressure

13   on y'all to get on it, so let me know.

14           You know what?  I have always found that what we want

15   to do or can -- we can get things done through the process of

16   whatever.  I realize there's a lot of lawyers in the attorney

17   generals' offices, but there's one at the top and can make

18   these decisions, and so y'all get that done, okay?

19           Anything else y'all want to talk to me about?

20           MS. CORTELL:  I'm assuming that there's no implied

21   stay as a result of this conference.

22           THE COURT:  I'm not staying anything.  I'm not

23   staying anything.  No.  If you want to stay, file something and

24   ask me for it, okay?

25           MS. CORTELL:  Okay.

1          THE COURT:  All right.

2          MS. CORTELL:  Thank you, Your Honor.

3          THE COURT:  All right.  Y'all --

4          MR. BROWN:  Thank you, Your Honor.

5          THE COURT:  Thank y'all.  And we'll look forward to

6     seeing y'all again soon, and have a wonderful Thanksgiving.

7          MS. CORTELL:  You, too, Your Honor.  Thank you.

8          MR. BROWN:  Thank you, Your Honor.

9          THE COURT:  Thank y'all.  Bye-bye.

10         (Hearing adjourned)

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                              INDEX

2    Telephone conference...................................... 5

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1    I, TODD ANDERSON, United States Court Reporter for the

2  United States District Court in and for the Northern District

3  of Texas, Dallas Division, hereby certify that the above and

4  foregoing contains a true and correct transcription of the

5  proceedings in the above entitled and numbered cause.

6    WITNESS MY HAND on this 17th day of November, 2016.

7

8

9                        /s/Todd Anderson
10                       TODD ANDERSON, RMR, CRR
                         United States Court Reporter
11                       1100 Commerce St., Rm. 1625
                         Dallas, Texas  75242
12                       (214) 753-2170

13

14

15

16

17

18

19

20

21

22

23

24

25