UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------- X

EXXON MOBIL CORPORATION,                              :
                                                      :   No. 17-CV-2301 (VEC) (SN)
                                      Plaintiff,      :
                                                      :
                      -against-                       :   ECF Case
                                                      :
ERIC TRADD SCHNEIDERMAN, Attorney General of          :
New York, in his official capacity, and               :
MAURA TRACY HEALEY, Attorney General                  :
of Massachusetts, in her official capacity,           :
                                                      :
                                      Defendants.     :

---------------------------------------------------------------- X

## MEMORANDUM OF LAW IN SUPPORT OF THE NEW YORK ATTORNEY GENERAL'S MOTION TO DISMISS THE ACTION BASED ON CERTAIN THRESHOLD DEFENSES

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ........................................................................................ ii

PRELIMINARY STATEMENT ................................................................................... 1

BACKGROUND ........................................................................................................... 2

    A.  The NYOAG's Ongoing Investigation into the Truth of
          Exxon's Public Disclosures .............................................................................. 2

        1.  The NYOAG's duty and ability to enforce state antifraud laws .............................2

        2.  The NYOAG's investigative subpoenas for Exxon documents .............................4

    B.  Exxon's Federal Lawsuit Against the Massachusetts Attorney General and
          Ensuing Discovery Demands of the NYOAG .................................................. 7

    C.  The New York Supreme Court Proceeding to Compel Exxon's Fulfillment
          of its Production Obligations ............................................................................ 9

    D.  Exxon's First Amended Complaint, Adding the New York Attorney General
          as a Defendant.................................................................................................. 12

ARGUMENT ............................................................................................................... 13

  I.  Exxon Fails to Allege a Ripe Injury. ...............................................................13

  II.  The Court Should Abstain Under *Colorado River* from Entertaining
      This Duplicative and Vexatious Federal Suit....................................................18

    A.  The *Colorado River* factors warrant abstention............................................ 19

    B.  This lawsuit's vexatious nature compels abstention.................................... 22

CONCLUSION............................................................................................................. 25

# TABLE OF AUTHORITIES

**Cases**                                                                          **Page(s)**

*Abe v. N.Y. Univ.*,
   No. 14-cv-9323, 2016 WL 1275661
   (S.D.N.Y. Mar. 30, 2016) ...................................................................................22, 25

*Am. Dental Coop., Inc. v. Att'y-Gen.*,
   127 A.D.2d 274 (1st Dep't 1987) .....................................................................................3

*Am. Disposal Servs., Inc. v. O'Brien*,
   839 F.2d 84 (2d Cir. 1988).........................................................................................18, 21

*Anonymous v. Axelrod*,
   92 A.D.2d 789 (1st Dep't 1983) ....................................................................................15

*Application of Colton*, 291 F.2d 487 (2d Cir. 1961)....................................................................14

*Arizona v. San Carlos Apache Tribe of Ariz.*,
   463 U.S. 545 (1983)........................................................................................................20

*Arkwright-Boston Mfrs. Mut. Ins. Co. v. City of New York*,
   762 F.2d 205 (2d Cir. 1985)...........................................................................................19

*Assured Guar. (UK) Ltd. v. J.P. Morgan Inv. Mgmt. Inc.*,
   18 N.Y.3d 341 (2011) ........................................................................................................3

*Barr v. Abrams*,
   641 F. Supp. 547 (S.D.N.Y. 1986).............................................................................16, 23

*Carlisle v. Bennett*,
   268 N.Y. 212 (1935) .....................................................................................................14, 15

*Colorado River Water Conservation District v. United States*,
   424 U.S. 800 (1976).......................................................................................................2, 18

*Cong. Talcott Corp. v. Roslin*,
   No. 95-cv-7698, 1996 WL 499337
   (S.D.N.Y. Sept. 4, 1996)..................................................................................................24

*Cuomo v. Dreamland Amusements, Inc.*,
   No. 08-cv-7100, 08-cv-6321, 2008 WL 4369270
   (S.D.N.Y. Sept. 22, 2008) ................................................................................................17

*Curley v. Village of Suffern*,
   268 F.3d 65 (2d Cir. 2001)..........................................................................................22, 24

# TABLE OF AUTHORITIES (cont'd)

**Cases**                                                                    **Page(s)**

*De Cisneros v. Younger*,
  871 F.2d 305 (2d Cir. 1989)........................................................19, 20, 21

*Dias v. Consol. Edison Co. of N.Y.*,
  116 A.D.2d 453 (1st Dep't 1986) ...............................................................15

*FTC v. Texaco, Inc.*,
  555 F.2d 862 (D.C. Cir. 1977)....................................................................17

*Garcia v. Tamir*,
  No. 99-cv-0298, 1999 WL 587902
  (S.D.N.Y. Aug. 4, 1999) ......................................................................22, 25

*Google v. Hood*,
  822 F.3d 212 (5th Cir. 2016) ................................................................14, 16

*Hartman v. Moore*,
  547 U.S. 250 (2006)...............................................................................22, 24

*Hynes v. Moskowitz*,
  44 N.Y.2d 383 (1978) ..................................................................................15

*Illinois ex rel. Madigan v. Telemarketing Assocs.*,
  538 U.S. 600 (2003)..................................................................................4, 24

*In re McVane*,
  44 F.3d 1127 (2d Cir. 1995).........................................................................17

*Interstate Material Corp. v. City of Chicago*,
  847 F.2d 1285 (7th Cir. 1988) ...............................................................21, 24

*Jimenez v. Rodriguez-Pagan*,
  597 F.3d 18 (1st Cir. 2010)..........................................................................20

*Kanciper v. Suffolk County Soc'y for Prevention of Cruelty to Animals, Inc.*,
  722 F.3d 88 (2d Cir. 2013)...........................................................................19

*Leroy v. Great W. United Corp.*,
  443 U.S. 173 (1979).....................................................................................24

*Matter of Brunswick Hosp. Ctr. Inc. v. Hynes*,
  52 N.Y.2d 333 (1981) .............................................................................15, 19

## TABLE OF AUTHORITIES (cont'd)

**Cases**                                                                 **Page(s)**

*Matter of First Energy Leasing Corp. v. Att'y-Gen.*,
    68 N.Y.2d 59 (1986) ............................................................................6

*Matter of McGinley v. Hynes*,
    51 N.Y.2d 116 (1980) ........................................................................15

*Matter of Sigety v. Hynes*,
    38 N.Y.2d 260 (1975) ......................................................................3, 14

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
    460 U.S. 1 (1983) ..............................................................................19

*N.Y. Civ. Liberties Union v. Grandeau*,
    528 F.3d 122 (2d Cir. 2008) ..............................................................13

*Nakash v. Marciano*,
    882 F.2d 1411 (9th Cir. 1989) ..........................................................25

*Nat'l Park Hosp. Ass'n v. Dep't of Interior*,
    538 U.S. 803 (2003) ..........................................................................13

*Niagara Mohawk Power Corp. v. Hudson River-Black River Regulating Dist.*,
    673 F.3d 84 (2d Cir. 2012) ..............................................18, 19, 20, 21

*Okla. Press Pub. Co. v. Walling*,
    327 U.S. 186 (1946) ..........................................................................17

*Pennzoil Co. v. Texaco, Inc.*,
    481 U.S. 1 (1987) ..............................................................................16

*People v. D'Amato*,
    12 A.D.2d 439 (1st Dep't 1961) ........................................................14

*People v. Grasso*,
    54 A.D.3d 180 (1st Dep't 2008) ..........................................................2

*Reisman v. Caplan*,
    375 U.S. 440 (1964) ......................................................................14, 15

*Schulz v. IRS*,
    395 F.3d 463 (2d Cir 2005) ........................................................13, 14, 16

*SEC v. Brigadoon Scotch Distrib. Co.*,
    480 F.2d 1047 (2d Cir. 1973) ............................................................17

## TABLE OF AUTHORITIES (cont'd)

**Cases**                                                                                      **Page(s)**

*Spargo v. N.Y. State Comm'n on Judicial Conduct,*
   351 F.3d 65 (2d Cir. 2003) ...........................................................................8, 16

*State v. Mobil Oil Corp.,*
   40 A.D.2d 369 (1st Dep't 1973) ...................................................................15

*Telesco v. Telesco Fuel & Masons' Materials, Inc.,*
   765 F.2d 356 (2d Cir. 1985) ...........................................................18, 21, 22, 25

*Temple of Lost Sheep Inc. v. Abrams,*
   930 F.2d 178 (2d Cir. 1991) ..........................................................................15, 20

*United States v. Constr. Prods. Research, Inc.,*
   73 F.3d 464 (2d Cir. 1996) ..............................................................................17

*United States v. Morton Salt Co.,*
   338 U.S. 632 (1950) ...................................................................................21–22

*Word of Faith World Outreach Ctr. Church, Inc. v. Morales,*
   986 F.2d 962 (5th Cir. 1993) .........................................................................8

**Federal Laws**

28 U.S.C. § 1406 ..............................................................................................21, 24

**State Laws**

N.Y. C.P.L.R.
   403 ........................................................................................................23
   404 ......................................................................................................3, 15
   2304 ....................................................................................................3, 15
   2308 ....................................................................................................3, 15

N.Y. Gen. Bus. Law
   art. 23-A ..................................................................................................2
   § 349 ....................................................................................................2, 3
   § 352 ..................................................................................................3, 14

N.Y. Exec. Law § 63 .......................................................................................2, 3

## TABLE OF AUTHORITIES (cont'd)

**Miscellaneous Authorities**                                              **Page(s)**

Assurance of Discontinuance, No. 15-242, *available at*
     https://ag.ny.gov/pdfs/Peabody-Energy-Assurance-signed.pdf.................................................4

Bradley Olson & Aruna Viswanatha, *SEC Probes Exxon Over Accounting for*
     *Climate Change*, Wall St. J., Sept. 20, 2016.............................................................................7

David D. Siegel, *N.Y. Prac.* § 248 (5th ed. Jan. 2017 update)......................................................23

ExxonMobil, *Energy and Carbon—Managing the Risks*,
     http://cdn.exxonmobil.com/~/media/global/files/ energy-and-
     environment/report---energy-and-carbon---managing-the-risks.pdf .........................................5

## PRELIMINARY STATEMENT

As this Court recognized, this action has broad implications for the ability of States to investigate potential violations of their own laws. If this action proceeds, even to discovery, federal judges regularly could be called upon to determine when a recipient of a document subpoena may learn details of, or even halt, the state investigation that generated the subpoena. The Court rightly noted that what plaintiff ExxonMobil Corp. (Exxon) is seeking here is "a heavy lift" because of the substantial "federalism concerns" at stake. Apr. 21, 2017 Hr'g Tr. at 10.

Exxon seeks to void a document subpoena issued a year and a half ago by the New York Office of the Attorney General (NYOAG) in pursuit of evidence of possible securities and consumer fraud by Exxon. Exxon requests this relief even though it purports to have *voluntarily* complied with its production obligations under the same subpoena. Moreover, as Exxon acknowledged to this Court, all of Exxon's objections to the NYOAG's investigative actions could have been fully raised in the parties' parallel New York state court subpoena enforcement proceeding, but never were. Indeed, rather than move to quash the NYOAG's subpoena in New York state court, Exxon filed this challenge over a thousand miles away in a Texas federal court, which transferred the case to the Southern District of New York.

Although many doctrines properly limit federal interference with sovereign state investigative actions and enforcement proceedings, this Court for now has requested briefing on two: ripeness and *Colorado River* abstention. Either warrants dismissal.

*First*, under settled law, Exxon cannot plausibly allege any ripe injury from the investigative subpoena on which this federal lawsuit is based. The NYOAG's subpoena is not self-executing, but rather requires a court order for penalties to attach to noncompliance. And Exxon purports to have willingly complied with its production obligations under the subpoena.

*Second*, in the alternative, this superfluous federal action should be dismissed under the abstention doctrine announced in *Colorado River Water Conservation District v. United States*, 424 U.S. 800 (1976). That doctrine permits a federal court to dismiss a federal case in deference to a parallel state proceeding involving the same parties and based on the same underlying controversy. The circumstances here justify a *Colorado River* dismissal: Exxon has deliberately chosen to split its objections to subpoena compliance, asserting some in federal court and others in a New York state forum capable of entertaining them all. Further, while the New York proceeding has substantially progressed, this federal case has stalled at the threshold, not least because of Exxon's litigation choices—which include suing two State Attorneys General in an improper venue and trying to depose those Attorneys General about their ongoing investigations. This Court should not facilitate such disruption of a pending state investigation, especially where state procedures provide Exxon with a proper, complete, and efficient remedy for its objections.

## BACKGROUND

### A.    The NYOAG Ongoing Investigation into the Truth of Exxon's Public Disclosures

#### 1.    The NYOAG's duty and ability to enforce state antifraud laws

The New York Attorney General is "the State's chief law enforcement officer." *People v. Grasso*, 54 A.D.3d 180, 204 (1st Dep't 2008) (quotation marks omitted). As head of the NYOAG, the Attorney General safeguards the public interest through investigations and enforcement actions to combat securities fraud, N.Y. Gen. Bus. Law (GBL) art. 23-A, fraud against consumers, N.Y. GBL § 349; and fraud or illegality in the conduct of business, N.Y. Exec. Law § 63(12).

In particular, New York's longstanding securities fraud law—the Martin Act—vests the NYOAG with broad authority to investigate suspected fraud in the offer, sale, or purchase of securities. *See* N.Y. GBL art. 23-A. The Martin Act empowers the NYOAG "to prevent fraudulent

securities practices by investigating and intervening at the first indication of possible securities fraud on the public and, thereafter, if appropriate, to commence civil or criminal prosecution." *Assured Guar. (UK) Ltd. v. J.P. Morgan Inv. Mgmt. Inc.*, 18 N.Y.3d 341, 350 (2011) (quotation marks omitted). State law likewise authorizes the NYOAG to investigate possible fraud perpetrated against consumers, *see, e.g.*, N.Y. GBL § 349, and suspected fraud in the conduct of business, *see* N.Y. Exec. Law § 63(12).

The NYOAG may subpoena documents and witnesses as part of any such investigation. *See* N.Y. GBL §§ 349(f), 352(2)–(3); N.Y. Exec. Law § 63(12). Yet these and other "statutes do not bestow judicial powers upon the Attorney-General." *Matter of Sigety v. Hynes*, 38 N.Y.2d 260, 267 (1975) (quotation marks omitted). Rather, state antifraud laws enable the NYOAG to seek judicial relief for substantive violations; and the Civil Practice Law and Rules (C.P.L.R.) authorize the NYOAG to "move in the supreme court to compel compliance" with an investigative subpoena, upon a showing "that the subpoena was authorized." C.P.L.R. 2308(b)(1). The subpoena's recipient may raise all available legal objections. *Id.* 404(a). Alternatively, the recipient can move to quash the subpoena in whole or part. *Id.* 2304. In any such proceeding, the NYOAG need not "disclose the details of [its] investigation" beyond those necessary to establish the NYOAG's "authority, the relevance of the items sought, and some factual basis for [the] investigation." *Am. Dental Coop., Inc. v. Att'y-Gen.*, 127 A.D.2d 274, 280 (1st Dep't 1987).

The NYOAG has a robust history of taking action against fraud that threatens the health, safety, and economic security of the people, businesses, and institutions of this State. In enforcing New York's securities and consumer fraud laws, the NYOAG has sought to ensure that companies are truthful in their disclosures to investors and consumers about a range of issues, including the impact of climate change on the companies' businesses. This does not mean that a company must

3

hew to any orthodoxy or "political" position regarding climate change. It does mean, however, that when a company—here a global energy company with shares traded on the New York Stock Exchange—elects to inform investors or consumers about the anticipated effect of climate change and related government policies on that company's business and operations, those statements must be accurate and not materially at odds with the company's internal information or conclusions.

In a recent example of such an enforcement action, after a thorough investigation, in November 2015 the NYOAG announced a successful settlement with Peabody Energy (formerly Peabody Coal). *See* Assurance of Discontinuance, No. 15-242, *available at* https://ag.ny.gov/pdfs/Peabody-Energy-Assurance-signed.pdf. Among other relief, the settlement barred Peabody from publicly stating that that the company could not predict the potential impact of climate regulations on its business when, in fact, Peabody *had* internally projected that such regulations would have a severe negative impact on coal demand. *Id.* at 2–3, 9. The NYOAG's investigation also found that Peabody had falsely portrayed an International Energy Agency report's findings about the likely effect of governmental action on future coal demand. *Id.* at 3–8.

Investors and consumers are entitled to rely on the assumption that a company's public positions align with its actual conclusions. Misrepresentation of such information is not a legitimate business strategy, nor is it commercial speech protected by the First Amendment. *See Illinois ex rel. Madigan v. Telemarketing Assocs.*, 538 U.S. 600, 612 (2003) (reiterating that "First Amendment does not shield fraud").

## 2. The NYOAG's investigative subpoenas for Exxon documents

On November 4, 2015, the NYOAG issued a subpoena to Exxon as part of an investigation into possible violations of New York's laws prohibiting securities, consumer, and business fraud (2015 Subpoena). *See* First Am. Compl. (Compl.) ¶ 20, ECF No. 100. The 2015 Subpoena

requested documents that would enable the NYOAG to assess whether Exxon had made false or misleading statements to investors and consumers about the impact of climate change and related policies on Exxon's business, including on Exxon's operations and financial reporting. App. 1–18 (copy of subpoena).[1]

The details of the NYOAG's ongoing investigation appropriately remain confidential at the pre-enforcement stage.[2] Nonetheless, a discussion of limited information already in the public record provides context. In the years preceding the NYOAG's subpoena, Exxon made numerous public statements regarding the company's understanding of the causes, course, and expected business and financial impact of climate change. For example, a 2014 report entitled *Energy and Carbon—Managing the Risks* assured investors that Exxon was "confident that none of [its] hydrocarbon reserves are now or will become 'stranded,'" i.e., not economically recoverable; the report also stated that Exxon calculates the likely costs of future global carbon regulations and "incorporate[s] them as a factor in [Exxon's] specific investment decisions."[3] Apparent contradictions between some of Exxon's public statements and internal company documents released in early 2015, along with apparent inconsistencies in Exxon's own public reporting, suggest that Exxon may not have accurately disclosed the company's own conclusions or practices on these important topics. In addition, some statements in the *Managing the Risks* report appear to be premised on unsupported assumptions, possibly making them misleading. The NYOAG issued

---

[1] "App." refers to the accompanying appendix of exhibits to the Declaration of Leslie B. Dubeck.

[2] In this ongoing investigation, the NYOAG has served additional subpoenas upon Exxon. For example, because of concern about spoliation of documents, and in conformance with proceedings before the New York court on that issue, the NYOAG has taken, pursuant to subpoena, testimony of witnesses who may possess information relevant to spoliation.

[3] *Energy and Carbon—Managing the Risks* at 1, 18, http://cdn.exxonmobil.com/~/media/global/files/energy-and-environment/report---energy-and-carbon---managing-the-risks.pdf.

the 2015 Subpoena to further investigate, among other things, these public revelations and the accuracy of Exxon's representations.

On August 19, 2016, the NYOAG issued a separate subpoena to PricewaterhouseCoopers LLP (PwC), Exxon's outside auditor (PwC Subpoena). For many years, PwC has audited the accuracy of Exxon's publicly disseminated financial statements. The PwC Subpoena sought documents relating to PwC's recent audits of Exxon, including material that might shed light on the accuracy of Exxon's public statements about the impact of climate change and related policies on Exxon's reserves, impairments, and capital expenditures. *See* App. 19–37 (copy of subpoena).

Exxon did not serve objections to the 2015 Subpoena or the PwC Subpoena and has never moved to quash either subpoena in a New York court. Rather, Exxon has produced—and has allowed PwC to produce—responsive documents. *See* Compl. ¶ 74. The responses have been protracted and deficient, forcing the NYOAG to seek judicial intervention to compel Exxon's and PwC's full compliance with their duties to assist the NYOAG's authorized investigation. *See infra* Part C. Exxon also has withheld a limited number of documents under a claim that disclosure would impinge on freedoms protected by the First Amendment. Compl. ¶¶ 11, 67.

Exxon's complaint ignores the fact that the NYOAG has broad discretion over whether to disclose information relating to a confidential Martin Act investigation, *see Matter of First Energy Leasing Corp. v. Att'y-Gen.,* 68 N.Y.2d 59, 64 (1986) (citing N.Y. GBL § 352(5)), and focuses on a March 29, 2016 press event among Attorneys General who had filed a brief that day in the U.S. Court of Appeals for the D.C. Circuit in support of EPA's Clean Power Plan. At this press event, Attorney General (AG) Eric T. Schneiderman publicly confirmed the ongoing investigation, while providing appropriate caveats reflecting a lack of any prejudgment about the investigation's yet-to-be-reached conclusions. For example, AG Schneiderman declined to predict the investigation's

6

outcome, explaining that the NYOAG would proceed "as carefully as possible" and was "not prejudging anything." ECF No. 168-1, at 18–19. AG Schneiderman also stated that Exxon "should welcome our investigation because, unlike journalists, we will get every document and we will be able to put them in context." *Id.* at 18. And he later stressed again that the NYOAG would not be "prejudging the evidence" obtained in the exercise of its "obligation to take a look at the underlying documentation." *Id.* at 20.

### B.   Exxon's Federal Lawsuit Against the Massachusetts Attorney General and Ensuing Discovery Demands of the NYOAG

The NYOAG is not alone in investigating the accuracy of Exxon's financial disclosures touching on climate-change issues. So too is the Securities and Exchange Commission, according to published reports.[4] And the Massachusetts Attorney General's Office in April 2016 issued a civil investigative demand (CID) to Exxon for company documents on this subject.

Although Exxon purports to have complied with the NYOAG's document subpoena, Exxon took a different approach toward Massachusetts. In July 2016, after receipt of the CID, Exxon filed a federal complaint for declaratory and injunctive relief under 42 U.S.C. § 1983 and state law against Massachusetts AG Maura Healey, in her official capacity, in the Northern District of Texas. *See* ECF No. 1. Exxon also sought a preliminary injunction against the CID's enforcement. *See* ECF Nos. 8–9. That complaint has evolved into the federal action against the Attorneys General of Massachusetts and New York now before this Court.[5]

In sum and substance, Exxon claimed that Massachusetts' CID was impermissibly motivated, constituted an abuse of process under state law, and violated Exxon's rights under the

---

[4] *See, e.g.*, Bradley Olson & Aruna Viswanatha, *SEC Probes Exxon Over Accounting for Climate Change*, Wall St. J., Sept. 20, 2016.

[5] The parties' status letter filed on April 12, 2017, summarizes the case's procedural history, only some of which will be repeated here. *See* ECF No. 190.

U.S. Constitution's First, Fourth, and Fourteenth Amendments and Commerce Clause. AG Healey moved to dismiss the case on grounds including lack of personal jurisdiction, lack of ripeness, improper venue, and *Younger* abstention—the last in deference to a parallel proceeding in Massachusetts Superior Court in which Exxon had also challenged the CID.

In September 2016, the district court (the Honorable James E. Kinkeade) held a hearing on Exxon's motion for a preliminary injunction. The court asked Exxon: "How the heck do I have jurisdiction?" ECF No. 68, at 87. The court also asked Exxon: "If you are agreeing to cooperate [with New York], why aren't you cooperating with [Massachusetts]?" *Id.* at 88. To the latter question, Exxon replied that it was "considering [its] options with respect to further compliance" with the 2015 Subpoena and that the "situation" was "very fluid." *Id.* at 88–89. Despite these cryptic representations, Exxon thereafter continued producing documents to the NYOAG and now purports to have completed production pursuant to the 2015 Subpoena, save any future efforts to recover any unpreserved material.

Rather than decide Massachusetts' motion on any of the other *three* dispositive threshold grounds, on October 13, 2016, the court ordered "jurisdictional discovery" to determine whether to dismiss the complaint "for lack of subject matter jurisdiction" due to *Younger* abstention, or whether the narrow bad-faith exception to that doctrine applied. ECF No. 73, at 3. The court apparently—and erroneously—assumed that it needed "to examine its subject matter jurisdiction" in this fashion, even "*sua sponte*," with discovery, before addressing any other defenses.[6] *Id.* at 2.

On the heels of this order, Exxon served on the NYOAG—not yet a party to the case—

---

[6] "*Younger* is not a jurisdictional bar based on Article III requirements, but instead a prudential limitation on the court's exercise of jurisdiction." *Spargo v. N.Y. State Comm'n on Judicial Conduct*, 351 F.3d 65, 74 (2d Cir. 2003); *see also Word of Faith World Outreach Ctr. Church, Inc. v. Morales*, 986 F.2d 962, 967 & n.6 (5th Cir. 1993) (declining to address *Younger* abstention where defense was forfeited).

nearly a hundred total interrogatories, requests for admissions, and document demands. *See* App. 38–84. Exxon also noticed the personal deposition of AG Schneiderman, plus those of the Chief and Deputy Chief of the NYOAG's Environmental Protection Bureau. App. 85–90. In November 2016, the district court ordered AG Healey to travel to Texas in December for a deposition and advised AG Schneiderman also to be available then for a deposition in Dallas. ECF No. 117. The court withdrew this order and stayed all discovery after Massachusetts petitioned the Fifth Circuit for a writ of mandamus. *See* ECF No. 151, 163.

### C. The New York Supreme Court Proceeding to Compel Exxon's Fulfillment of its Production Obligations

Various deficiencies in Exxon's responses to the 2015 Subpoena and PwC Subpoena have forced the NYOAG to seek judicial relief to hasten full compliance. Issues have included a lengthy delay in searching and producing the files of Exxon's most senior management, up to and including its former Chairman and CEO, Rex W. Tillerson (some of which material Exxon, in the meantime, has failed to preserve), as well as the assertion of an alleged accountant-client "evidentiary privilege" under Texas law.

On October 14, 2016, the NYOAG moved by order to show cause in New York Supreme Court to enforce the PwC Subpoena in full and to dispute Exxon's privilege assertion. *See* App. 91–93. The proceeding was assigned to the Honorable Barry R. Ostrager. Exxon did not cross-move to quash the PwC Subpoena or in any way challenge the NYOAG's investigative authority in the New York forum. Rather, the next business day after the subpoena enforcement proceeding began, Exxon moved for leave to amend its federal complaint in Texas to add AG Schneiderman to the roster of defendants there. *See* ECF No. 74; *see also infra* Part D.

The New York court rejected Exxon's claim of accountant-client privilege, App. 163–167, Justice Ostrager observed that the Texas statute cited by Exxon, by its "plain meaning," expressly

permitted an accountant (here, PwC) to reveal client information when directed by a court order—including the New York court's own order enforcing the PwC Subpoena, App. 165. Justice Ostrager also held that, under "controlling authority," New York law applied and does not recognize any accountant-client privilege. App. 166. Exxon appealed to the Appellate Division, First Department, which heard oral argument on March 21, 2017. The appeal remains pending.

In November 2016, the NYOAG moved in New York state court to compel full compliance with the 2015 Subpoena. Specifically, the NYOAG sought an order (i) requiring Exxon to produce general accounting-related material; (ii) requiring Exxon to produce documents specifically concerning "the impact of climate change and related government action" on Exxon's financial reporting, including documents from "additional custodians" and those found with "targeted search terms"; and (iii) "implementing a schedule for the prompt production of all other responsive documents called for by the subpoena." App. 169. In opposition, Exxon conceded that "New York law protects subpoena recipients, like ExxonMobil, against the 'abuse of subpoena power' by providing for judicial review." App. 192. Exxon availed itself of that review by arguing that general accounting documents were beyond the 2015 Subpoena's scope (App. 190–193), an objection that the New York court accepted (App. 218). Regarding the climate-change-related documents, Exxon argued that its "constitutional claims" against producing such documents were "beside the point," thus carving up its objections and attempting to avoid the available state court review of its constitutional claims. App. 176–177. Upon the NYOAG's request for a schedule for production of all remaining documents, the New York court directed the parties to reach "agreement by December 1st" or else the court would "enter an order." App. 219–221.

The parties have appeared five times before the New York court and four of these hearings have addressed parameters for Exxon's production under the 2015 Subpoena. In early December

2016, Exxon represented that it was "fully complying with its obligations" and had "agreed to complete a reasonable production of documents responsive to" the 2015 Subpoena by January 31, 2017. App. 222–223. A few days later, the New York court so-ordered that agreement at a hearing. App. 254. In the ensuing month, Exxon and the NYOAG disagreed about the scope of the agreed upon searches, and the New York court ordered that Exxon perform the searches the NYOAG had requested absent other agreement of the parties. App. 275.

Exxon failed to meet the agreed-upon January 31 deadline, spawning further proceedings in state court. In the interim, the NYOAG's review uncovered that former Exxon CEO Rex W. Tillerson used a secondary email account (under the alias "Wayne Tracker"), from which Exxon had produced few, if any, documents. Only then did Exxon first confirm this account's existence—and divulge "that despite the company's intent to preserve the relevant emails in both of Mr. Tillerson's accounts," unspecified "technological processes did not automatically extend to the secondary email account."[7] App. 278.

At the next hearing, the New York court commented that the NYOAG "is entitled to documents relevant to its outstanding subpoena" and asked whether a March 31 production deadline would be "acceptable" to Exxon. App. 287, 308. Exxon said yes—and that it "stand[s] by that representation." App. 308, 310. The New York court thus ordered Exxon by April 10 to certify subpoena compliance, save any future efforts to recover any unpreserved material. App. 311, 315. Exxon then unilaterally extended the production deadline to April 30; when this Court

---

[7] In other words, no preservation hold was placed on "Wayne Tracker." Months earlier, Exxon had told the New York court that "ExxonMobil has engaged in no conduct, and the Attorney General has identified none, suggesting that any evidence is at risk of being destroyed or concealed." App. 188.

asked whether Exxon was "planning to make that deadline," Exxon's counsel responded, "Yes." Apr. 21, 2017 Hr'g Tr. at 3.

### D.   Exxon's First Amended Complaint, Adding the New York Attorney General as a Defendant

In comparison to the substantially advanced proceedings in New York Supreme Court to enforce the 2015 Subpoena and the PwC Subpoena, Exxon's federal lawsuit against the NYOAG has not progressed beyond the threshold stage.

Exxon sought leave to add AG Schneiderman as a defendant in this case on October 17, 2016 (the next business day after the NYOAG began proceedings against Exxon to enforce the PwC Subpoena), and filed its amended complaint on November 10, 2016. *See* ECF Nos. 74, 100. The claims in Exxon's amended complaint resemble those in the initial complaint (*see supra* at 7-8), except that Exxon now (1) extends these claims also to the 2015 Subpoena issued by the NYOAG (*e.g.*, Compl. ¶ 14); (2) alleges a vast conspiracy wherein AGs "Schneiderman and Healey have agreed with each other, and with others known and unknown, to deprive ExxonMobil of rights" (*id.* ¶ 106); and (3) claims that federal accounting standards for oil and gas reserves preempt the ongoing state fraud investigations in their entirety (*id.* ¶ 126).

As the First Amended Complaint alleges, Exxon had produced "over one million pages" in response to the NYOAG's subpoena from November 2015 through October 2016. *Id.* ¶ 74. And Exxon has continued to produce documents since filing that complaint. Yet Exxon alleges that "[t]he playing field changed on March 29, 2016, when Attorney General Schneiderman hosted a press conference in New York City." *Id.* ¶ 27. According to Exxon, that conference and the entry of a legal common-interest agreement among Attorneys General working together to conduct securities and consumer fraud investigations exposed these state investigations' "improper purpose," i.e., "to silence ExxonMobil's voice in the public debate regarding climate change."

*Id.* ¶ 92. Exxon seeks declaratory and injunctive relief solely and specifically as against the NYOAG's 2015 Subpoena and Massachusetts's CID. *See id.* ¶ 14.

By order issued on March 29, 2017, Judge Kinkeade transferred venue to this Court under 28 U.S.C. § 1406(a). At a status conference, this Court ordered that the litigation be staged "in a way that is respectful of federalism concerns." Apr. 21, 2017 Hr'g Tr. at 9–10. The Court has requested initial briefing, as applicable, on personal jurisdiction, ripeness, *Colorado River* abstention, and preclusion, with briefing on other defenses to follow, if necessary. *Id.* at 10–11.

## ARGUMENT

### I.  Exxon Fails to Allege a Ripe Injury.

Exxon's complaint must be dismissed because the NYOAG's investigative subpoena creates no ripe Article III injury qualifying for federal court intervention, in light of the full and fair state judicial process for challenging the subpoena.

To satisfy standing requirements, a federal complaint must present a ripe case or controversy. *See, e.g.*, *Nat'l Park Hosp. Ass'n v. Dep't of Interior*, 538 U.S. 803, 807–08 (2003). The plaintiff's alleged injury "may not be speculative or abstract, but must be distinct and definite." *Schulz v. IRS*, 395 F.3d 463, 464 (2d Cir.) (per curiam), *clarified on reh'g*, 413 F.3d 297 (2d Cir. 2005). The ripeness prerequisite serves the key goal of preventing federal courts from "becoming embroiled in adjudications that may later turn out to be unnecessary or may require premature examination of, especially, constitutional issues." *N.Y. Civ. Liberties Union v. Grandeau*, 528 F.3d 122, 131 (2d Cir. 2008) (quotation marks omitted).

Under settled law, an affirmative federal lawsuit seeking to invalidate a non-self-executing administrative subpoena does not present a ripe Article III controversy. *See, e.g.*, *Schulz*, 395 F.3d at 464–65. Because no consequence may befall the recipient until the agency seeks to enforce the

demand in court, the parties are properly remitted to the orderly procedures available at law for enforcing and contesting such administrative action. *See id.* at 464; *see also, e.g.*, *Reisman v. Caplan*, 375 U.S. 440, 449–50 (1964). And there is "no reason why a state's non-self-executing subpoena should be ripe for federal review when a federal equivalent would not be." *Google v. Hood*, 822 F.3d 212, 226 (5th Cir. 2016). Respect for coequal state sovereigns should, "[i]f anything," make a federal court even "less willing to intervene when there is no current consequence for resisting the subpoena and the same challenges raised in the federal suit could be litigated in state court." *Id.*

These principles bar a federal lawsuit by Exxon contesting the legality of the 2015 Subpoena—or any other investigative process issued by the NYOAG in pursuit of evidence of possible violations of state antifraud laws. The NYOAG's investigative subpoenas are not self-executing. *See Google*, 822 F.3d at 224 (defining "non-self-executing" subpoena as one for which "the issuing agency could not itself sanction non-compliance"). In conducting fraud investigations, the New York "Attorney General acts as an executive official performing an administrative duty." *Carlisle v. Bennett*, 268 N.Y. 212, 217 (1935). The GBL and Executive Law "do not bestow judicial powers upon the Attorney-General," who "'passes upon no question of civil violation or of criminal guilt.'" *Matter of Sigety*, 38 N.Y.2d at 267 (quoting *Dunham v. Ottinger*, 243 N.Y. 423, 433 (1926)); *see id.* ("'[W]hatever judicial decision follows is made by the courts.'" (quoting *Dunham*, 243 N.Y. at 433)).[8] Rather, to enforce an investigative subpoena,

---

[8] Nor is the 2015 Subpoena self-executing because the Martin Act makes failure to comply "without reasonable cause" a misdemeanor. N.Y. GBL § 352(4). A subpoena recipient may defend against such a charge by asserting "any ground generally regarded in law as a valid excuse for" noncompliance. *People v. D'Amato*, 12 A.D.2d 439, 443 (1st Dep't 1961). And "since disobedience to a subpoena under those statutes has no penal consequences until a judge has ordered its enforcement, there is no occasion for any preliminary resort to the courts." *Application of Colton*, 291 F.2d 487, 490 (2d Cir. 1961) (Friendly, J.); *accord Schulz*, 413 F.3d at 301. In any event, Exxon avers that it is complying with its production obligations in good faith. *E.g.*, Compl. ¶ 74.

the NYOAG must "move in the supreme court to compel compliance" and demonstrate "that the subpoena was authorized." C.P.L.R. 2308(b); *see also Dias v. Consol. Edison Co. of N.Y.*, 116 A.D.2d 453, 454 (1st Dep't 1986) ("[I]n regard to a nonjudicial subpoena it seems clear enough that no contempt punishment can be sought until compliance has been judicially ordered but not forthcoming." (quotation marks and alteration omitted)).

In addition, New York's "comprehensive procedure" for raising objections to NYOAG subpoenas affords Exxon a "full opportunity for judicial review" before facing any penalties for noncompliance. *See Reisman*, 375 U.S. at 443, 450. The respondent in a New York subpoena enforcement proceeding is free to raise "objection[s] in point of law." C.P.L.R. 404(a). As relevant here, the objections may be constitutional, *e.g., State v. Mobil Oil Corp.*, 40 A.D.2d 369, 370 (1st Dep't), *aff'd*, 33 N.Y. 2d 627 (1973), or contend the subpoena is "an instrument of harassment," *Hynes v. Moskowitz*, 44 N.Y.2d 383, 393 (1978). New York law also permits a recipient to move (or cross-move) to quash an investigative subpoena or impose "[r]easonable conditions" on compliance. C.P.L.R. 2304. And "a motion to quash provides adequate protection to those who feel themselves aggrieved by the conduct of a public prosecutor." *Matter of McGinley v. Hynes*, 51 N.Y.2d 116, 126 n.3 (1980); *see Matter of Brunswick Hosp. Ctr. Inc. v. Hynes*, 52 N.Y.2d 333, 339 (1981) (describing motion to quash as "proper and exclusive vehicle to challenge the validity of a subpoena or the jurisdiction of the issuing authority"); *Carlisle*, 268 N.Y. at 218; *Anonymous v. Axelrod*, 92 A.D.2d 789, 789 (1st Dep't 1983).

In short, Exxon "can adequately raise [any] constitutional challenges to the Attorney General's conduct in" a New York court: even a claim that "the Attorney General was engaged in a conspiracy to deprive" Exxon of rights "guaranteed by the First Amendment." *See Temple of Lost Sheep Inc. v. Abrams*, 930 F.2d 178, 184 (2d Cir. 1991) (quotation marks omitted).

Exxon's refusal to invoke New York's comprehensive and available system for lodging constitutional objections to the NYOAG's subpoenas does not manufacture an injury permitting federal court intervention. The critical question is whether the "same challenges raised in the federal suit *could* be litigated in state court." *Google*, 822 F.3d at 226 (emphasis added); *see also Schulz*, 395 F.3d at 465 (asking whether recipient had a "reasonable opportunity to contest the government's request"). If so, litigants cannot bypass adequate state procedures and burden the federal courts with challenges to state subpoenas that are being enforced elsewhere or have not yet been enforced.[9] Nor does remitting a state subpoena recipient to state court impose an exhaustion requirement on seeking § 1983 relief, as Exxon has argued. *See* ECF No. 167, at 13. The issue is whether Exxon has suffered any ripe injury at all, and inability to access a federal forum does not suffice. "[P]rotection from unconstitutional action by state prosecutors does not require a *federal* civil rights action." *Barr v. Abrams*, 641 F. Supp. 547, 555 (S.D.N.Y. 1986) (Leval, J.) (emphasis added). A contrary conclusion would impugn "the competence of the state courts" and undermine "the dignity of states as co-equal sovereigns in our federal system." *Spargo v. N.Y. State Comm'n on Judicial Conduct*, 351 F.3d 65, 75 (2d Cir. 2003) (quotation marks omitted). In the words of the Fifth Circuit—where Exxon filed its unripe action—a federal court must "not presume" that a state court just down the street "would be insensitive to the First Amendment values that can be implicated by investigatory subpoenas." *Google*, 822 F.3d at 226 n.10.

Developments make plain that no ripe injury will *ever* arise from the 2015 Subpoena, which forms the basis of Exxon's federal case against the NYOAG. By its own account, Exxon has readily "agreed to complete a reasonable production of documents responsive to" the 2015

---

[9] As with *Younger* abstention, "when a litigant has not attempted to present his federal claims in related state-court proceedings, a federal court should assume that state procedures will afford an adequate remedy, in the absence of unambiguous authority" otherwise. *Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1, 15 (1987).

Subpoena. App. 223. As it told the New York court, Exxon "stand[s] by that representation" (App. 310), leading Justice Ostrager to memorialize the parties' "consensual" resolution "of everything that is presently in dispute" (App. 315). And Exxon has stood by that representation in response to this Court's questioning. Apr. 21, 2017 Hr'g Tr. at 3. Further, the New York court has consistently been available to the parties to resolve disputes as they have arisen. *See, e.g.*, App. 276 ("If you have any further disagreements, we will employ the same procedure:  You will contact the court, you will exchange correspondence, and, if necessary, we will reconvene.").

Finally, insofar as Exxon contends that the NYOAG's investigation cannot produce a valid enforcement complaint, any such claim also is unripe. The amended complaint conjectures that the NYOAG's "theory of fraud" is "unsound" (Compl. ¶ 80) and declares that Exxon has engaged in no conduct "that could give rise to a statutory violation" (*id.* ¶ 65). "[A]t the subpoena enforcement stage," however, "courts need not determine whether the subpoenaed party is within the agency's jurisdiction or covered by the statute it administers." *United States v. Constr. Prods. Research, Inc.*, 73 F.3d 464, 470 (2d Cir. 1996); *accord Okla. Press Pub. Co. v. Walling*, 327 U.S. 186, 212–13 (1946); *SEC v. Brigadoon Scotch Distrib. Co.*, 480 F.2d 1047, 1052–53 (2d Cir. 1973). In particular, Exxon's assertion that its "reporting of proved reserves" is not actionable (Compl. ¶ 94) creates no ripe controversy when "the precise character of possible violations cannot be known in advance," *In re McVane*, 44 F.3d 1127, 1136 (2d Cir. 1995) (quotation marks omitted); *see FTC v. Texaco, Inc.*, 555 F.2d 862, 873–74 (D.C. Cir. 1977) (en banc) (refusing to conclude "in the pre-complaint stage" that "only proved reserves" could be relevant to agency's inquiry); *Cuomo v. Dreamland Amusements, Inc.*, No. 08-cv-7100 & 08-cv-6321, 2008 WL 4369270, at *8 (S.D.N.Y. Sept. 22, 2008) (holding analogous preemption claim against NYOAG unripe where investigation potentially had "several bases"). In the words of Exxon's counsel: "There is no reality

at the moment that there's going to be a trial of anything. This at the moment is a mere investigation. They have the right to conduct the investigation, but that is what it is." App. 128.

## II.     The Court Should Abstain Under *Colorado River* from Entertaining This Duplicative and Vexatious Federal Suit.

In the alternative, this federal case should be dismissed in favor of the parallel New York proceeding under the abstention doctrine announced in *Colorado River Water Conservation District v. United States*, 424 U.S. 800 (1976). "In 'exceptional circumstances,' and in deference to parallel state court proceedings, the court may decline to exercise jurisdiction over a properly presented federal claim in order to further the interests of 'wise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation.'" *Am. Disposal Servs., Inc. v. O'Brien*, 839 F.2d 84, 87 (2d Cir. 1988) (quoting *Colorado River*, 424 U.S. at 817) (brackets omitted). Relevant criteria are set forth below. *See infra* Parts II.A–B.

The ongoing federal and state proceedings between the NYOAG and Exxon are parallel, meeting that condition of *Colorado River* abstention. "Suits are parallel when substantially the same parties are contemporaneously litigating substantially the same issue in another forum." *Niagara Mohawk Power Corp. v. Hudson River-Black River Regulating Dist.*, 673 F.3d 84, 100 (2d Cir. 2012) (quotation marks omitted). Where that is so, the required parallelism exists even if the federal plaintiff raises "an alternative theory of recovery" that could have been "raised in state court." *Telesco v. Telesco Fuel & Masons' Materials, Inc.*, 765 F.2d 356, 362 (2d Cir. 1985).

Exxon admits that, "[i]n theory," it could have raised all of its objections to the NYOAG's subpoenas in the state proceeding. Apr. 21, 2017 Hr'g Tr. at 15. Instead, Exxon lodged privilege, scope, and burden objections in New York state court, while foisting constitutional and state law objections on a Texas federal court. *See supra* at 10–11. Where a federal plaintiff engages in "claim splitting" between federal and state court, as Exxon has done here, "*Colorado River* sets out the

appropriate standard" for deciding whether to dismiss the "duplicative federal claims." *Kanciper v. Suffolk County Soc'y for Prevention of Cruelty to Animals, Inc.*, 722 F.3d 88, 93 (2d Cir. 2013). For the reasons that follow, Exxon's overlapping federal lawsuit should be dismissed.

### A.   The *Colorado River* factors warrant abstention.

A court looks to the following criteria when deciding whether to abstain under *Colorado River*: (1) avoidance of piecemeal litigation; (2) whether the cases involve property under one court's control; (3) the actions' order of filing and relative progress; (4) the forums' convenience; (5) whether federal or state law governs; and (6) whether the state proceeding is adequate to protect the federal plaintiff's rights. *See Niagara Mohawk*, 673 F.3d at 100–01; *De Cisneros v. Younger*, 871 F.2d 305, 307–08 (2d Cir. 1989). A party's vexatious behavior also factors into the decision. *See infra* Part II.B. These criteria are not a "mechanical checklist," but rather require "careful balancing" in a case's specific circumstances. *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 16 (1983); *Arkwright-Boston Mfrs. Mut. Ins. Co. v. City of New York*, 762 F.2d 205, 210 (2d Cir. 1985). Careful examination of these factors warrants abstention here.

*First*, these parallel cases present a "danger of piecemeal litigation," a "paramount" consideration in any *Colorado River* analysis. *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 19; *Arkwright-Boston Mfrs.*, 762 F.2d at 211. The New York court has directed Exxon to fulfill its production obligations on specified terms, and stated that "what I've ordered is what Exxon is doing." App. 275. From this Court, Exxon seeks a ruling that it need *not* have done those things, based on objections *not* raised in state court.[10] "The central problem with piecemeal adjudication

---

[10] Either Exxon has complied with the NYOAG's subpoena involuntarily, in response to a court order with preclusive effect, or Exxon has complied voluntarily, negating any claim of a ripe federal injury and fortifying the case for *Colorado River* abstention. Allowing Exxon to have it all ways—no preclusion, federal review, and no abstention—"would open the door to never-ending challenges to the validity of subpoenas, perhaps even years after initial issuance and compliance." *Matter of Brunswick Hosp.*, 52 N.Y.2d at 339.

in this case . . . is that a potential exists for inconsistent and mutually contradictory determinations." *De Cisneros*, 871 F.2d at 308 (quotation marks omitted). Such a "risk of inconsistent outcomes" may not be "preventable by principles of res judicata," *see Niagara Mohawk*, 673 F.3d at 101–02 (quotation marks omitted), given Exxon's assiduous efforts not "to place the conspiracy allegations, which [are] central to [its] section 1983 claims, directly in issue in the state court proceeding," *see Temple of Lost Sheep*, 930 F.2d at 184; *see also* Apr. 21, 2017 Hr'g Tr. at 12 (discussing "big charts" with which Exxon informed New York court of "what was going on in Texas," while assuring New York court that those proceedings were irrelevant). Also absent from this case is any mention of the PwC Subpoena, in response to which PwC's production will soon be complete—with or without allegedly privileged documents. Nor has Exxon joined PwC as a relief defendant in this lawsuit. The "potential for fragmented adjudication" of a single controversy when "parties are joined in the state-court action but not the federal action" supports *Colorado River* abstention. *Jimenez v. Rodriguez-Pagan*, 597 F.3d 18, 30 (1st Cir. 2010); *see also De Cisneros*, 871 F.2d at 309 (stating that party resisting abstention could "hardly complain" about consequences of own failure to join additional defendant in parallel suit).

*Second*, although this case does not involve a res, the principle that favors abstention when a court has assumed jurisdiction over a res is present here. The New York court has assumed control over Exxon's production of documents. Hence, "concurrent federal proceedings are likely to be duplicative and wasteful, generating 'additional litigation through permitting inconsistent dispositions of property.'" *Arizona v. San Carlos Apache Tribe of Ariz.*, 463 U.S. 545, 567 (1983) (quoting *Colorado River*, 424 U.S. at 819). Whereas Exxon has told the New York court that the NYOAG "ha[s] the right to conduct the investigation" (App. 128), and the New York court has stated that the NYOAG "is entitled to documents relevant to its outstanding subpoena" (App. 287),

Exxon would have this Court declare that the NYOAG is *not* "entitled" to these same documents— a great many of which the NYOAG already possesses because Exxon has produced them.

*Third*, the relative progress of the two cases favors abstention. *See, e.g.*, *De Cisneros*, 871 F.2d at 308 (advising that progress of parallel actions "must be carefully examined"). As described above (*see supra* at 9–12), the New York proceeding was filed first and since has progressed through five court appearances, multiple rounds of briefing and letter writing, the production of millions of pages of documents, and an appeal to the Appellate Division. *See Interstate Material Corp. v. City of Chicago*, 847 F.2d 1285, 1289 (7th Cir. 1988) (identifying state appeal as development supporting abstention). During that time, the state court has grown familiar with the parties' dispute and the NYOAG's investigation. By contrast, the federal case thus far has "concentrated on the propriety of bringing suit in federal court at all." *Am. Disposal Servs.*, 839 F.2d at 88; *see also Telesco*, 765 F.2d at 363 (upholding abstention where state proceedings were "extensive" and federal suit had "not moved beyond the initial pleadings").

*Fourth*, although the state court and *this* federal court are equally convenient geographically because their courthouses are adjacent, *see Niagara Mohawk*, 673 F.3d at 101, that is a recent development. Exxon sued in the Northern District of Texas—"the wrong division or district," 28 U.S.C. § 1406(a), and a dramatically inconvenient forum for the Attorneys General of New York and Massachusetts to defend their official conduct. The lack of a valid justification for Exxon's doing so, and the resources wasted there, strongly favor abstention. *See infra* Part II.B.

*Fifth*, although Exxon's § 1983 claims are federal, the claims necessarily turn in large part on state law. For example, Exxon's Fourth Amendment claim asks whether the NYOAG's subpoena "is within the authority of the agency" and "the information sought is reasonably relevant" to an authorized investigation. *United States v. Morton Salt Co.*, 338 U.S. 632, 652

(1950). And Exxon's First Amendment claim includes the allegation that the NYOAG lacks "a good faith basis for conducting any investigation." Compl. ¶ 107; *see id.* ¶ 61 (alleging that New York state court standards for subpoena enforcement are not met). Such an allegation is essential because, in general, objectively justified law enforcement action will be upheld against a First Amendment challenge without "inquiry into the underlying motive." *Curley v. Village of Suffern*, 268 F.3d 65, 73 (2d Cir. 2001); *see also Hartman v. Moore*, 547 U.S. 250, 256–63 (2006).

*Sixth*, subpoena enforcement procedures under state law offer full protection to Exxon, despite Exxon's election to divide its defenses between two different courts. *See supra* at 10–11. Proceeding "in this 'one from column A, one from column B' manner" invites *Colorado River* abstention. *Garcia v. Tamir*, No. 99-cv-0298, 1999 WL 587902, at *8 (S.D.N.Y. Aug. 4, 1999).

### B.     This lawsuit's vexatious nature compels abstention.

The U.S. Supreme Court and Second Circuit have "found 'considerable merit' in the idea 'that the vexatious or reactive nature of either the federal or the state litigation may influence'" the *Colorado River* calculus. *Telesco*, 765 F.2d at 363 (quoting *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 17 n.20). So too have "numerous courts in this circuit." *Abe v. N.Y. Univ.*, No. 14-cv-9323, 2016 WL 1275661, at *9 (S.D.N.Y. Mar. 30, 2016). Given that the preceding factors already favor abstention, the vexatious nature of this action compels a *Colorado River* dismissal.

This lawsuit against AG Schneiderman followed directly on the heels of two events. The first was the district court's October 13, 2016 "jurisdictional discovery" order against AG Healey. *See* ECF No. 73. The second was the NYOAG's October 14, 2016 filing of a subpoena enforcement proceeding in New York Supreme Court against Exxon and PwC. Exxon claims that "Justice Ostrager had never been assigned to the case" and "no one had been in state court" when Exxon sought leave to amend its federal complaint. Apr. 21, 2017 Hr'g Tr. at 13. In fact, Exxon

filed its federal motion mere hours after specifically asking Justice Ostrager by letter to delay acting on the NYOAG's proposed order to show cause until Exxon had "an opportunity to be heard."[11] App. 94. Since then, Exxon has continued producing documents to the NYOAG as if the federal claims did not exist. Exxon's allegation that a March 2016 press conference "changed" the "playing field" (Compl. ¶ 27) and its assurance to Judge Kinkeade that the "situation" regarding compliance was "very fluid" (ECF No. 68, at 89) ring hollow in retrospect.

So far, this federal action's primary purpose has been to investigate the NYOAG's investigation—via attempted discovery that Exxon described to this Court as "very narrow" (Apr. 21, 2017 Hr'g Tr. at 31), but that Exxon promised to Justice Ostrager would be "fairly heated" because Exxon would "try to take depositions of the state AG's" (App. 150). If Exxon does not "want" the NYOAG's "investigative evidence," as this Court recently heard (Apr. 21, 2017 Hr'g Tr. at 32), then surely Exxon would not have noticed the deposition of the NYOAG Bureau Chief who signed and served the 2015 Subpoena (*see* App. 2, 87). Nor would Exxon have requested that the NYOAG substantiate potential enforcement theories and admit to having "abandoned" certain other theories. App. 71, 79. And Exxon certainly would not have sought a copy of all communications between the NYOAG and other State Attorney General offices "concerning any investigation of ExxonMobil related to climate change." App. 49.

"This suit could be described as a counterattack," designed "to put the prosecutor on the defensive and to obtain discovery of the prosecutor's investigation." *Barr*, 641 F. Supp. at 554, 555. Exxon attempted to assure Justice Ostrager that it sued in its "home state of Texas" because

---

[11] An order to show cause sets a briefing schedule and return date for the motion (which often involves an in-person hearing), affording the respondent ample opportunity to be heard before any relief is ordered. *See* C.P.L.R. 403(d); David D. Siegel, *N.Y. Prac.* § 248 (5th ed. Jan. 2017 update) ("An order to show cause is basically only a substitute for a notice of motion . . . [that] can shorten the notice time.").

that was "the one place" where it could "get multiple attorney generals." App. 147, 151. Judge

Kinkeade correctly concluded otherwise. *See* 28 U.S.C. § 1406(a); *Leroy v. Great W. United

Corp.*, 443 U.S. 173, 183 (1979) (holding that "convenience" of suing several out-of-state state

officials in "one place" provides no basis for venue); *Cong. Talcott Corp. v. Roslin*, No. 95-cv-

7698, 1996 WL 499337, at *6 (S.D.N.Y. Sept. 4, 1996) (abstaining under *Colorado River* where

"sole reason offered" for instituting "doppelganger federal action" was "self-contradictory").

Moreover, the First Amendment claim at the heart of Exxon's complaint suffers from

conspicuous pleading deficiencies. For one thing, the complaint does not specify the particular

viewpoint or statements of Exxon (apart from possibly false or misleading statements) allegedly

being targeted for suppression. *Cf.* Compl. ¶¶ 9, 63 (reciting Exxon's own public recognition of

"significant" business risks posed by climate change). For another, the complaint nowhere alleges

that these subpoenas have in any way curtailed Exxon's corporate speech about climate change.[12]

*See Curley*, 268 F.3d at 73 ("Where a party can show no change in his behavior, he has quite

plainly shown no chilling of his First Amendment right to free speech."). As this Court has

observed, the mere prospect that an investigating authority's political views might diverge from

those of an investigative subject "doesn't add up to a First Amendment problem." Apr. 21, 2017

Hr'g Tr. at 19; *see also Telemarketing Assocs.*, 538 U.S. at 612 (observing that "the First

Amendment does not shield fraud"); *Hartman*, 547 U.S. at 252 (holding that claim of retaliatory

prosecution under First Amendment requires proof that prosecution was objectively unjustified).

*Colorado River* abstention is especially appropriate where, as here, "the federal suit could

be considered both vexatious and contrived," *Interstate Material Corp.*, 847 F.2d at 1289, and a

---

[12] Exxon has previously taken the position that its First Amendment claim "does not require proof that any speech has been curtailed." ECF No. 57, at 10.

"blatant attempt to manipulate the concurrent system of jurisdiction," *Garcia*, 1999 WL 587902, at *8; *accord Abe*, 2016 WL 1275661, at *9. Entertaining this lawsuit would encourage every future state or local subpoena recipient participating in state court enforcement proceedings to undermine those proceedings by countersuing in federal court and decrying the subpoena as the product of an unconstitutional conspiracy. Federal courts should "have no interest in encouraging this practice." *Nakash v. Marciano*, 882 F.2d 1411, 1417 (9th Cir. 1989). Particularly given "the hostile history of the case," *Telesco*, 765 F.2d at 363, this Court should remit Exxon to a single, proper, and available state forum from this point onward.

## CONCLUSION

The Court should dismiss Exxon's First Amended Complaint for the failure to allege a ripe injury or because it is a duplicative federal action that calls for abstention under *Colorado River*.

Dated:  New York, New York
        May 19, 2017

Respectfully submitted,

ERIC T. SCHNEIDERMAN
*Attorney General of the State of New York*

By:
       /s/ Leslie B. Dubeck
Jason Brown
*Chief Deputy Attorney General*
Leslie B. Dubeck
*Counsel to the Attorney General*
Eric Del Pozo
*Assistant Solicitor General*
120 Broadway, 25th Floor
New York, New York 10271
(212) 416-8167
leslie.dubeck@ag.ny.gov