UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| EXXON MOBIL CORPORATION<br><br>        Plaintiff,<br><br>   v.<br><br>ERIC TRADD SCHNEIDERMAN, Attorney General of New York, in his Official capacity, and MAURA TRACY HEALEY, Attorney General of Massachusetts, in her official capacity,<br><br>        Defendants. | No. 17-CV-2301 (VEC) (SN) |

**EXXON MOBIL CORPORATION'S OPPOSITION TO
DEFENDANTS' MOTIONS TO DISMISS THE AMENDED COMPLAINT**

**PAUL, WEISS, RIFKIND,
WHARTON & GARRISON LLP**
1285 Avenue of the Americas
New York, NY 10019-6064

**HAYNES & BOONE, LLP**
2323 Victory Avenue, Suite 700
Dallas, TX 75219
Tel: (214) 651-5579

**CANTEY HANGER LLP**
600 W. 6th St. #300
Fort Worth, TX 76102
Tel: (817) 877-2800

*Counsel for Exxon Mobil Corporation*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................................. iii

PRELIMINARY STATEMENT ............................................................................................ 1

STATEMENT OF FACTS .................................................................................................... 2

    A.    The Attorneys General Pledge to Suppress Speech Because of Opposition to Its Content. ................................................................................................................. 3

    B.    The Attorneys General Conspire with Private Interests Antagonistic to Free and Open Debate on Climate Change Policy. ......................................................... 5

    C.    The Attorneys General Conceal Their Links to Private Interests. .......................... 7

    D.    The Conspiracy's Improper Purpose Is Documented in Instruments the Attorneys General Executed. ................................................................................... 8

    E.    Three Separate Lawsuits Involve Different Claims, Different Relief, and Different Parties. ................................................................................................... 9

        1.    Texas Federal Court ..................................................................................... 9

        2.    Massachusetts State Court ......................................................................... 10

        3.    New York State Court ................................................................................ 11

ARGUMENT ..................................................................................................................... 13

I.    EXXONMOBIL'S CONSTITUTIONAL CLAIMS ARE RIPE FOR ADJUDICATION. .......................................................................................................... 13

II.    NO EXCEPTIONAL CIRCUMSTANCES JUSTIFY ABSTENTION UNDER *COLORADO RIVER*. ................................................................................................... 18

    A.    Neither State Action Is Parallel to the Federal Action, which Precludes Abstention. ............................................................................................................. 19

    B.    This Is Not an *In Rem* Action, which Counsels Against Abstention. ................... 20

    C.    This Court Is No Less Convenient than the State Courts, which Counsels Against Abstention. ............................................................................................... 21

    D.    Abstention Would Not Avoid Piecemeal Litigation. ............................................. 22

    E.    The First-Filed Federal Action Has Advanced Further than the State Actions. ................................................................................................................. 24

    F.    Federal Law Provides the Rule of Decision. ......................................................... 26

i

G.     The State Procedures Are Inadequate to Provide Complete Relief. ..................... 27

H.     ExxonMobil's Filing of the Federal Action Was Not Vexatious. ........................ 29

III.    THE NARROW DECISION IN MASSACHUSETTS STATE COURT DOES NOT PRECLUDE EXXONMOBIL'S FEDERAL CLAIMS BEFORE THIS COURT. ................................................................................................................... 30

A.     The Claims and Issues in the Actions Are Insufficiently Similar. ........................ 31

B.     The Massachusetts Court Did Not Render a Final Judgment on the Merits. ........ 33

C.     The State Proceedings Did Not Provide a "Full and Fair Opportunity" to Litigate Claims. ................................................................................................... 35

IV.    ATTORNEY GENERAL HEALEY IS SUBJECT TO THIS COURT'S JURISDICTION. ........................................................................................................ 36

CONCLUSION ........................................................................................................... 40

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Abrams* v. *Temple of the Lost Sheep, Inc.*,
562 N.Y.S.2d 322 (Sup. Ct. 1990)......................................................................32

*Ajemian* v. *Yahoo!, Inc.*,
83 Mass. App. Ct. 565 (2013)..............................................................................34

*All. of Am. Insurers* v. *Cuomo*,
854 F.2d 591, 603 (2d Cir. 1988)....................................................................20, 26

*Alliance of America Insurers* v. *Cuomo*,
854 F.2d 519, 603 (2d. Cir. 1988).......................................................................20

*Artists Rights Enf't Corp.* v. *Estate of Robinson*,
No. 15 Civ. 9878 (ER), 2017 WL 933106 (S.D.N.Y. Mar. 8, 2017).....................19

*Attorney Gen.* v. *Bodimetric Profiles*,
404 Mass. 152 (1989)....................................................................................29, 33

*Beals* v. *Commercial Union Ins. Co.*,
61 Mass. App. Ct. 189 (2004)..............................................................................33

*Bernier* v. *Bernier*,
449 Mass. 774 (2007).........................................................................................33

*Bethlehem Contracting Co.* v. *Lehrer/McGovern, Inc.*,
800 F.2d 325 (2d Cir. 1986)................................................................................23

*Bulova Watch Co.* v. *K. Hattori & Co.*,
508 F. Supp. 1322 (E.D.N.Y. 1981) ....................................................................37

*Carlisle* v. *Bennett*,
268 N.Y. 212 (1935)............................................................................................28

*Clearing House Ass'n, L.L.C.* v. *Cuomo*,
510 F.3d 105 (2d Cir. 2007)...........................................................................15, 27

*Cleft of the Rock Found.* v. *Wilson*,
992 F. Supp. 574 (E.D.N.Y. 1998) ......................................................................38

*Colorado River Water Conservation Dist.* v. *United States*,
424 U.S. 800 (1976)........................................................................................18, 23

*Competitive Enter. Inst.* v. *Attorney Gen. of N.Y.*,
No. 5050-16, 2016 WL 6989406 (N.Y. Sup. Ct. Nov. 21, 2016)............................................8

*Cuomo* v. *Clearing House Ass'n, L.L.C.*,
557 U.S. 519 (2009)............................................................................... 14-15

*Cuomo* v. *Dreamland Amusements, Inc.*,
No. 08 Civ. 6321 (JGK), 2008 WL 4369270 (S.D.N.Y. Sept. 22, 2008) ..............................15

*Day* v. *Kerkorian*,
61 Mass. App. Ct. 804 (2004)....................................................................................31

*DDR Const. Servs., Inc.* v. *Siemens Indus., Inc.*,
770 F. Supp. 2d 627 (S.D.N.Y. 2011)..................................................................20

*Doe* v. *Del. State Police*,
939 F. Supp. 2d 313 (S.D.N.Y. 2013)..................................................................40

*Dunkin' Donuts Franchised Restaurants LLC* v. *Rijay, Inc.*,
No. 06 Civ. 8237 (WCC), 2007 WL 1459289 (S.D.N.Y. May 16, 2007) ............................27

*Eades* v. *Kennedy, PC Law Offices*,
799 F.3d 161 (2d Cir. 2015).....................................................................38, 39

*Elrod* v. *Burns*,
427 U.S. 347 (1976)................................................................................14

*Farid* v. *Smith*,
850 F.2d 917 (2d Cir. 1988)......................................................................26

*FDIC* v. *Four Star Holding Co.*,
178 F.3d 97 (2d Cir. 1999).......................................................................21

*Geller* v. *Newell*,
602 F. Supp. 501 (S.D.N.Y. 1984) ..............................................................37

*George Reiner & Co.* v. *Schwartz*,
41 N.Y.2d 648 (1977) .............................................................................37

*Giannone* v. *York Tape & Label Inc.*,
548 F.3d 191 (2d Cir. 2008).....................................................................32

*Google, Inc.* v. *Hood*,
822 F.3d 212 (5th Cir. 2016) .....................................................................17

*Heacock* v. *Heacock*,
402 Mass. 21 (1988) .............................................................................32

*Hudson* v. *N.Y.C.*,
271 F.3d 62 (2d Cir. 2001)..................................................................33

*Ins. Corp. of Ireland* v. *Compagnie des Bauxites de Guinee*,
456 U.S. 694 (1982)........................................................................39

*Jarosz* v. *Palmer*,
436 Mass. 426 (2002) .....................................................................34

*Jolly* v. *Coughlin*,
76 F.3d 468 (2d Cir. 1996).............................................................14

*Kachalsky* v. *Cacace*,
817 F. Supp. 2d 235 (S.D.N.Y. 2011).........................................17

*Kelso* v. *Kelso*,
86 Mass. App. Ct. 226 (2014) .....................................................35

*Kirker* v. *Bd. of App. of Raynham*,
33 Mass. App. Ct. 111 (1992) .....................................................34

*Kobrin* v. *Bd. of Registration in Med.*,
444 Mass. 837 (2005) ...............................................................31, 33

*Kremer* v. *Chem. Const. Corp.*,
456 U.S. 461 (1982)...................................................................31, 35

*Kronisch* v. *United States*,
150 F.3d 112 (2d Cir. 1998).....................................................36-37

*Kwong* v. *Bloomberg*,
876 F. Supp. 2d 246 (S.D.N.Y. 2012).........................................17

*LaChapelle* v. *Torres*,
1 F. Supp. 3d 163 (S.D.N.Y. 2014) ............................................39

*Lamarche* v. *Lussier*,
65 Mass. App. Ct. 887 (2006).................................................28, 35

*LaRossa, Axenfeld & Mitchell* v. *Abrams*,
62 N.Y.2d 583 (1984) ..................................................................16

*Launer* v. *Buena Vista Winery, Inc.*,
916 F. Supp. 204 (E.D.N.Y. 1996)..........................................37, 39

*Leahy* v. *Local 1526, Am. Fed'n of State, Cnty. & Mun. Employees*,
399 Mass. 341 (1987) ..................................................................34

*Lee* v. *City of Los Angeles*,
   250 F.3d 668 (9th Cir. 2001) ........................................................................40

*Legros* v. *Irving*,
   327 N.Y.S.2d 371 (1st Dep't 1971) ..............................................................39

*Licci ex rel. Licci* v. *Lebanese Canadian Bank, SAL*,
   732 F.3d 161 (2d Cir. 2013)..........................................................................38

*Linens of Europe, Inc.* v. *Best Mfg., Inc.*, No. 03 Civ. 9612 (GEL),
   2004 WL 2071689 (S.D.N.Y. Sept. 16, 2004)..............................................30

*In re Lipson*,
   257 N.Y.S.2d 316 (N.Y. Sup. Ct. 1964) .......................................................28

*M. Fabrikant & Sons, Inc.* v. *Adrianne Kahn, Inc.*,
   533 N.Y.S.2d 866 (1st Dep't 1988) ..............................................................37

*MBIA Inc.* v. *Fed. Ins. Co.*,
   652 F.3d 152 (2d Cir. 2011)..........................................................................27

*McNamee* v. *Clemens*,
   762 F. Supp. 2d 584 (E.D.N.Y. 2011) ..........................................................38

*Mersentes* v. *Corrigan*,
   No. 09 Civ. 486 (LAP), 2010 WL 3959615 (S.D.N.Y. 2010)......................27

*Miller* v. *Hyundai Motor Am.*,
   No. 15-CV-4722 (TPG), 2016 WL 5476000 (S.D.N.Y. Sept. 28, 2016) ......27

*Mims* v. *Arrow Financial Services*,
   LLC, 565 U.S. 368 (2012) ............................................................................18

*Mitchum* v. *Foster*,
   407 U.S. 225 (1972).......................................................................................13

*Monsanto Co.* v. *Victory Wholesale Grocers*,
   No. 08-MC-134, 2008 WL 5100178 (E.D.N.Y. Nov. 26, 2008)...................29

*Moses H. Cone Mem'l Hosp.* v. *Mercury Constr. Corp.*,
   460 U.S. 1 (1983)...........................................................................................25

*NAACP* v. *A.A. Arms, Inc.*,
   2003 WL 1049011 (E.D.N.Y. Feb. 24, 2003)...............................................26

*NAACP* v. *Patterson*,
   357 U.S. 449 (1958).......................................................................................14

*Nat'l Org. for Marriage, Inc.* v. *Walsh*,
714 F.3d 682 (2d Cir. 2013)..........................................................13, 14

*Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.* v. *Karp*,
108 F.3d 17 (2d Cir. 1997)............................................................19, 20

*Native Vill. of Kivalina* v. *ExxonMobil Corp.*,
663 F. Supp. 2d 863 (N.D. Cal. 2009) ...........................................5

*Niagara Mohawk Power Corp.* v. *Hudson River-Black River Regulating Dist.*,
673 F.3d 84 (2d Cir. 2012)...............................................19, 21, 22

*Nicholson* v. *State Comm'n on Judicial Conduct*,
50 N.Y.2d 597 (1980) ...................................................................28

*Okwedy* v. *Molinari*,
333 F.3d 339 (2d Cir. 2003)..........................................................14

*Petrillo* v. *Zoning Bd. of Appeals of Cohasset*,
65 Mass. App. Ct. 453 (2006) .......................................................32

*In re Parmalat Secs. Litig.*,
493 F. Supp. 2d 723 (S.D.N.Y. 2007)............................................36

*Purity Supreme, Inc.* v. *Attn'y Gen.*,
380 Mass. 762 (1980) ...................................................................27

*Remigio* v. *Kelly*,
No. 04 Civ. 1877 (JGK) (MHD), 2005 WL 1950138 (S.D.N.Y. Aug. 12,
2005) ..............................................................................................19

*Schulz* v. *IRS*,
395 F.3d 463 (2d Cir. 2005)..........................................................16, 17

*Schulz* v. *IRS*,
413 F.3d 297 (2d Cir. 2005)..........................................................16, 17

*Simmonds* v. *INS*,
326 F.3d 351 (2d Cir. 2003)..........................................................13

*Simon* v. *Philip Morris, Inc.*,
86 F. Supp. 2d 95 (E.D.N.Y. 2000) ..............................................39

*Southridge Capital Mgmt., LLC* v. *Lowry*,
188 F. Supp. 2d 388 (S.D.N.Y. 2002)........................................38-39

*Sprecher* v. *Graber*,
716 F.2d 968 (2d Cir. 1983)..........................................................35

*SST Glob. Tech., LLC* v. *Chapman*,
 270 F. Supp. 2d 444 (S.D.N.Y. 2003)................................................................22, 23

*Standard Chartered Bank* v. *DAA Sales Inc.*,
 No. 91 CIV. 1018 (LMM), 1991 WL 136033 (S.D.N.Y. July 17, 1991) ..............................22

*Telesco* v. *Telesco Fuel & Masons' Materials*, *Inc.*,
 765 F.2d 356 (2d Cir. 1985)................................................................30

*Temple of Lost Sheep Inc.* v. *Abrams*,
 930 F.2d 178 (2d Cir. 1991)................................................................32

*Thorsen* v. *Sons of Norway*,
 996 F. Supp. 2d 143 (E.D.N.Y. 2014) ................................................................39

*Toliver* v. *N.Y.C. Dep't of Corr.*,
 202 F. Supp. 3d 328 (S.D.N.Y. 2016)................................................................36

*Traffix, Inc.* v. *Herold*,
 269 F. Supp. 2d 223 (S.D.N.Y. 2003)................................................................37

*Tuper* v. *N. Adams Ambulance Serv., Inc.*,
 428 Mass. 132 (1998) ................................................................31, 32, 33

*Vill. of Westfield* v. *Welch's*,
 170 F.3d 116 (2d Cir. 1999)................................................................21-22, 26-27

*Wiggins* v. *State of Connecticut*,
 205 F.3d 1327, 2000 WL 19094 (2d Cir. 2000) ................................................................27

*Woodford* v. *Cmty. Action Agency of Greene Cnty., Inc.*,
 239 F.3d 517 (2d Cir. 2001)................................................................ passim

*World Wrestling Entm't, Inc.* v. *Jakks Pac., Inc.*,
 425 F. Supp. 2d 484 (S.D.N.Y. 2006)................................................................29, 30

## STATUTES

M.G.L. c. 93A ................................................................16, 27, 29, 33

Mass. R. Civ. P. 26 ................................................................29, 35

N.Y.C.P.L.R. § 302................................................................36-37

N.Y. Gen. Bus. Law § 352(4) ................................................................16

## PRELIMINARY STATEMENT

The Attorneys General of New York and Massachusetts (the "Attorneys General") believe federal courts should slam the courthouse door on lawsuits challenging state action that discriminates based on political viewpoint. If that were so, individuals and organizations holding ideas perceived to be out of step with their local political leaders would find themselves exposed and unprotected. Fortunately, that is not the law.

Where, as here, a litigant makes a prima facie showing of viewpoint discrimination in a well-pleaded complaint, it is manifestly the role of federal courts to interpose themselves between the potential abuse of state power and the free exercise of constitutional rights. To be sure, those challenging state power bear a heavy burden, but that is to be evaluated under the appropriate standard at each stage in the litigation. As recognized by another federal judge who presided over this case and ordered jurisdictional discovery, Exxon Mobil Corporation ("ExxonMobil") has met its threshold burden of pleading viewpoint discrimination, and it has done so with factual allegations supported by information available in the public record. In the absence of discovery, a plaintiff cannot reasonably be expected to come forward with more.

This Court should allow this case to proceed on the merits. Acceptance of the Attorneys General's ripeness argument would strip federal courts of jurisdiction over challenges to state action whenever, as will almost invariably be the case, those challenges could be brought in state court. That is a distortion of the ripeness doctrine unmoored from precedent and laden with pernicious consequences for the critical role federal courts play in protecting civil rights. Nor does *Colorado River* abstention present any barrier to the progress of this comprehensive action, which was filed before any state litigation had commenced. It is telling that in the year that this heavily contested case has been pending, no defendant has seriously argued for abstention under this exceptionally narrow doctrine, and for good reason. The relevant factors, which must weigh strongly in favor of abstention for the doctrine to apply, all support allowing this case to proceed.

It is equally meritless for the Massachusetts Attorney General to assert this action is precluded by the limited-purpose proceedings in Massachusetts state court, where the motion judge expressly declined to consider or decide constitutional objections. Moreover, the argument that this Court lacks jurisdiction over the Massachusetts Attorney General, notwithstanding her active participation in a press conference in this state that is at the heart of ExxonMobil's claims cannot be taken seriously, let alone decided without discovery.

If the Court accepts the Attorneys General's position and dismisses ExxonMobil's complaint at the outset, it will set a precedent with nationwide consequences. Dismissing this case with its deeply political overtones and repeated press leaks by the Attorneys General, notwithstanding the strong showing ExxonMobil has made already, would amount to granting state officials license to harass perceived political opponents unimpeded by review in federal courts. The harm of such an outcome might seem tolerable when the disfavored political views generate little sympathy under prevailing political winds. But the political winds blow in multiple directions in this diverse country. Whose ox is gored by this precedent will depend largely on who exercises state power and who is out of step with the views held by those in power. Free speech rights should not turn on such vagaries, and it is proper for this Court to ensure that they do not.

## STATEMENT OF FACTS

The Attorneys General of New York and Massachusetts are active participants in an ongoing conspiracy to violate ExxonMobil's constitutional rights. This conspiracy is firmly rooted in New York City, where the Attorneys General identified disfavored speech about climate change as an obstacle to their political agenda and pledged to use state power to suppress viewpoints unaligned with their own, thereby implementing a playbook developed over the last decade by climate activists and profit-seeking lawyers. ExxonMobil finds itself directly in that conspiracy's crosshairs. Notwithstanding its long-standing acknowledgment of the risks

presented by climate change, its support of the Paris climate accords, and its backing of a revenue-neutral carbon tax, the co-conspirators have singled out ExxonMobil for its perceived unwillingness to embrace the Attorneys General's perspective on the risks of and necessary policy responses to climate change. Faced with these facts, a federal judge ordered discovery to probe the bad faith of the Attorneys General for launching a pretextual investigation of ExxonMobil that discriminates based on viewpoint. The passage of time, which has brought to light further evidence establishing a prima facie case of the Attorneys General's bad faith, has only confirmed the propriety of that ruling.

**A. The Attorneys General Pledge to Suppress Speech Because of Opposition to Its Content.**

On March 29, 2016, New York Attorney General Eric Schneiderman convened a press conference in New York City that drew national attention. Massachusetts Attorney General Maura Healey spoke at that event, which her office internally described on expense reports as the "trip to NY re: Exxon + climate change."[1] At the press conference, a coalition of Attorneys General, self-styled the "AGs United for Clean Power," announced a plan to regulate speech they considered an obstacle to their "clean power" agenda.[2]

For the Attorneys General, the public policy debate on climate change was settled and any perceived dissent was intolerable. Attorney General Schneiderman declared that there could be "no dispute" about climate change policy, only "confusion" and "misperceptions in the eyes of the American public that really need to be cleared up."[3] Attorney General Healey likewise considered the public's failure to embrace her climate change policies to be the result of speech that caused "many to doubt whether climate change is real and to misunderstand and

---

[1]  Ex. Q at 4-7.
[2]  Ex. A at 2-4; Ex. I.
[3]  Ex. A at 2.

misapprehend the catastrophic nature of its impacts."[4]

To enforce their views on climate change policy, the Attorneys General vowed to unleash their law enforcement powers against perceived dissenters. Attorney General Schneiderman blamed any departure from his prescribed orthodoxy on those "with an interest in profiting from the [so-called] confusion" about public policy and denounced the "morally vacant forces that are trying to block every step by the federal government to take meaningful action" on climate change.[5] Lamenting the perceived "gridlock in Washington," Attorney General Schneiderman also expressed the coalition's intent "to step into this [legislative] breach," by "battl[ing]" perceived political opponents.[6] Directly linking his investigation of ExxonMobil to those concerns, he boasted that he "had served a subpoena on ExxonMobil" as part of his efforts to promote a clean energy agenda.[7]

Attorney General Healey similarly asserted that those who purportedly "deceived" the public—by disagreeing with her about climate change policy—"should be, must be, held accountable."[8] In the next breath, Attorney General Healey declared that she too had "joined in investigating the practices of ExxonMobil."[9] Revealing the prejudgment tainting her investigation, Attorney General Healey claimed that she had already found a "troubling disconnect between what Exxon knew . . . and what the company and industry chose to share with investors and with the American public."[10] In a thinly veiled reference to ExxonMobil, she then promised "quick, aggressive action" to "hold[] accountable those who have needed to be

---

[4] *Id.* at 12.
[5] *Id.* at 2, 4.
[6] *Id.* at 3-4.
[7] *Id.* at 3.
[8] *Id.* at 12.
[9] *Id.*
[10] *Id.*

held accountable for far too long."[11]

**B.    The Attorneys General Conspire with Private Interests Antagonistic to Free and Open Debate on Climate Change Policy.**

The March 2016 press conference was years in the making.  Private interests have long urged state officials to misuse their law-enforcement power to restrict disfavored viewpoints on climate change.  And they were on hand at the press conference, leading workshops that were not only closed to the public but also meant to be concealed from the public.  During one of those secret meetings, Peter Frumhoff, the Director of Science and Policy for the Union of Concerned Scientists,[12] delivered a presentation on the "imperative of taking action now on climate change."[13]  Frumhoff has tried to silence ExxonMobil on climate policy since at least 2007, when he contributed to a publication promoting strategies for "[p]utting the [b]rakes" on ExxonMobil's alleged "[d]isinformation [c]ampaign" on climate change.[14]  Matthew Pawa "a prominent global warming litigation attorney" who unsuccessfully sued ExxonMobil for allegedly causing global warming also delivered a secret presentation on "climate change litigation."[15] It is unknown whether Pawa disclosed to the public servants in attendance that he stood to profit from any private litigation made possible by documents procured through the attorney general-led investigations of ExxonMobil.[16]

For years, these activists and other private interests have worked to persuade state law enforcement officers to use their investigative powers to pressure those perceived to hold disfavored views on climate change.  For example, in 2012, both Frumhoff and Pawa attended a workshop examining ways to obtain the internal documents of companies like ExxonMobil for

---

[11]    *Id.* at 13.
[12]    Ex. S at 2.
[13]    Ex. F at 2.
[14]    Ex. U at 29.
[15]    ECF No. 180 at 6; Ex. F at 2; *see also Native Vill. of Kivalina* v. *ExxonMobil Corp.*, 663 F. Supp. 2d 863, 871-77 (N.D. Cal. 2009), *aff'd*, 696 F.3d 849 (9th Cir. 2012).
[16]    Ex. T at 1.

5

the purpose of "maintaining pressure on the industry that could eventually lead to its support for legislative and regulatory responses to global warming."[17]  The attendees at that workshop concluded that "a single sympathetic state attorney general might have substantial success in bringing key internal documents to light."[18]  Frumhoff began to put that agenda into action by July 2015, when he assured fellow activists that he was exploring "state-based approaches to holding fossil fuel companies legally accountable" and anticipated "a strong basis for encouraging state (e.g., AG) action forward."[19]  Three months later, Attorney General Schneiderman issued a subpoena to ExxonMobil.

The Rockefeller Family Fund (the "Fund") also helped to devise the playbook the Attorneys General have followed in conducting their investigations.  In January 2016, the Fund convened a meeting, which counted Matthew Pawa among its attendees, to discuss the goals of a so-called "Exxon campaign."[20]  Those goals included to (i) "establish in [the] public's mind that Exxon is a corrupt institution that has pushed humanity (and all creation) toward climate chaos and grave harm," (ii) "delegitimize [ExxonMobil] as a political actor," and (iii) "force officials to disassociate themselves from Exxon . . . ."[21]  In December 2016, the President and Director of the Fund admitted, after initially failing to disclose the connection, that the Fund had financed the so-called investigative journalism that the Attorneys General claim inspired their investigations.[22]  The Fund further acknowledged that, before the Attorneys General commenced

---

[17]  Ex. V at 27.
[18]  *Id.* at 11.
[19]  Ex. N.
[20]  Ex. G.
[21]  *Id.*
[22]  Ex. X at 2; Ex. Y at 2.  These publications advanced the theory that ExxonMobil has known "the truth" about climate change since the late-1970s—supposedly decades before the world's scientists—and lied to the public when it identified and discussed areas of scientific uncertainty.  Based on this theory, both Attorneys General demanded production of ExxonMobil documents and communications related to its historic climate change research, despite the fact that ExxonMobil has acknowledged the risks of climate change since at least 2006, well before any applicable statute of limitations.  *See* ECF No. 100 ¶¶ 63-66.

their investigations of ExxonMobil, it had "informed [unnamed] state attorneys general of [its] concern" about ExxonMobil's statements on climate change and was "encouraged by [Attorney General] Schneiderman's interest."[23]

The Attorneys General have repeatedly collaborated with these and other private interests devoted to stripping ExxonMobil of its constitutional rights.[24]  For instance, in February 2015, the New York Attorney General's Office exchanged a dozen emails with the Fund concerning the "activities of specific companies regarding climate change."[25]  An employee of the Fund also emailed the Chief of Attorney General Schneiderman's Environmental Protection Bureau for "Comments on news article" in December 2015, shortly after *Inside Climate News* published the Fund-financed articles.[26]  The New York Attorney General's Office also exchanged numerous emails with the staff of Tom Steyer (a self-styled environmental activist, hedge-fund tycoon, and vocal opponent of ExxonMobil), regarding "company specific climate change information," the same week that it issued its subpoena to ExxonMobil.[27]  Attorney General Schneiderman then requested a "call with Tom [Steyer] regarding support for his race for governor . . . regarding Exxon case" only days before convening the March 29 press conference.[28]

### C.    The Attorneys General Conceal Their Links to Private Interests.

The Attorneys General recognized that the behind-the-scenes involvement of these confederates could expose the special interests urging the use of law enforcement's coercive tools in violation of the First Amendment.  That is why the New York Attorney General's Office attempted to conceal the involvement of these activists from the public.  For instance, when a

---

[23]  Ex. Z at 3.
[24]  Ex. R.
[25]  Ex. O at 4-7.
[26]  Ex. P.
[27]  Ex. O at 1.  In the Summer of 2015, the company that oversees Steyer's political and philanthropic efforts boasted that it was at "the nexus between a handful of exciting and powerful efforts aimed to curb climate change."  Ex. W at 1.
[28]  Ex. AA at 1.

reporter contacted Pawa shortly after the March 29 press conference and inquired into his involvement, the Chief of the Environmental Protection Bureau of the New York Attorney General's Office advised Pawa, "My ask is if you speak to the reporter, to not confirm that you attended or otherwise discuss the event."[29]

In an effort to prevent further evidence of these suspect ties from being unearthed, the coalition also executed a so-called "Climate Change Coalition Common Interest Agreement," the mere existence of which they have likewise attempted to conceal.[30]  The New York Attorney General's efforts to conceal records concerning that agreement in response to a Freedom of Information Law request have already resulted in a firm judicial rebuke.  The New York Supreme Court recently awarded attorney's fees and costs against the Attorney General for "lack[ing] a reasonable basis" for refusing to produce documents related to the common interest agreement.[31]  Nevertheless, the Attorney General continues to resist requests for communications with the Fund related to his investigation of ExxonMobil.[32]  Another member of the coalition has gone so far as to concede the political motives behind the coalition's selective disclosures.  The Vermont Attorney General's Office recently admitted that it conducts research into those seeking records about the coalition's activities, and upon learning of the requester's affiliation with "coal or Exxon or whatever," the office "give[s] this some thought . . . before we share information with this entity."[33]

### D. The Conspiracy's Improper Purpose Is Documented in Instruments the Attorneys General Executed.

The intent to suppress disfavored voices is apparent in the very documents the Attorneys

---

[29]  Ex. H at 1.

[30]  Ex. E at 1; Ex. J at 1, 3.

[31]  *Competitive Enter. Inst.* v. *Att'y Gen.*, No. 5050-16, 2016 WL 6989406, at 1-2 (N.Y. Sup. Ct. Nov. 21, 2016).

[32]  *Free Mkt. Envtl. Law Clinic* v. *Att'y Gen.*, No. 101759/2016, NYSCEF No. 36 (N.Y. Sup. Ct. May 31, 2017).

[33]  Ex. DD at 14.

General executed. The subpoena and the CID are trained on speakers and speech that the Attorneys General perceive to run counter to climate change policy that they and their behind-the-scenes allies promote. The subpoena demands ExxonMobil's communications with trade associations and industry groups that promote oil and gas interests, rather than alternative fuels.[34] Attorney General Schneiderman has publicly referred to many of these organizations as "aggressive climate deniers."[35] Similarly, the CID requests ExxonMobil's communications with twelve specific organizations, all of which have been associated with positions on climate policy disfavored by the Attorneys General.[36] The CID also specifically targets statements of pure opinion that do not accord with Attorney General Healey's environmental politics, including the suggestion that "[i]ssues such as global poverty [are] more pressing than climate change."[37]

The Attorneys General's efforts to promote one side of a political debate while restricting speech on the other side are also expressly memorialized in the Common Interest Agreement. That agreement describes the coalition's "common interest" as "limiting climate change" and "ensuring the dissemination of accurate information about climate change."[38] Through these twin goals, the Attorneys General have appointed themselves arbiters of accuracy when it comes to speech about climate policy and confirmed the coalition's willingness to violate First Amendment rights to carry out an agenda that has nothing to do with law enforcement.[39]

### E. Three Separate Lawsuits Involve Different Claims, Different Relief, and Different Parties.

#### 1. Texas Federal Court

ExxonMobil brought this lawsuit (the first to be filed in this matter) on June 15, 2016, in

---

[34] Ex. B at 8 (Request No. 6).

[35] Ex. BB at 3 (naming the American Enterprise Institute, the American Legislative Exchange Council, and the American Petroleum Institute); Ex. CC at 1 (same).

[36] *Compare* Ex. D, *with* Ex. C at 13 (Request No. 5).

[37] Ex. C at 15 (Request No. 9) (second alteration in original).

[38] Ex. E at 1.

[39] *Id.*; Ex. I at 1.

federal court in Texas. Based on the foregoing allegations, Judge Kinkeade ordered jurisdictional discovery on Attorney General Healey's bad faith. (ECF No. 73 at 5-6.) Explaining that decision, Judge Kinkeade expressed "concern" that "the anticipatory nature of Attorney General Healey's remarks" at the March 29 press conference "about the outcome of the Exxon investigation" and "Attorney General Healey's actions leading up to the issuance of the CID" exhibited "bias or prejudgment about what the investigation of Exxon would discover." (*Id.* at 3-5.) Judge Kinkeade reaffirmed that conclusion in his transfer order, where he expressed concern that the Attorneys General's investigations were means "to further their personal agendas by using the vast power of the government to silence the voices of all those who disagree with them." (ECF No. 180 at 5.) Judge Kinkeade was also troubled by the Attorneys General's public statements where they "conveniently cherry picked what they share with the media about their investigations," which further suggested bad faith. (*Id.* at 9-10.) For these and other reasons, Judge Kinkeade concluded that "[t]he merits of each of Exxon's claims involve important issues that should be determined by a court." (*Id.* at 2.)

### 2. Massachusetts State Court

The day after ExxonMobil commenced this action, it filed a petition in Massachusetts Superior Court, solely to avoid the risk of forfeiting its objections to the CID under Massachusetts law. ExxonMobil entered a special appearance in that action to contest the court's jurisdiction, and in the alternative, requested that the CID be set aside, modified, or subjected to a protective order under Massachusetts law.[40] ExxonMobil also moved to stay the state proceedings pending resolution of the federal case. Consistent with its limited appearance, ExxonMobil did not raise its federal claims before the Superior Court. Moreover, because Massachusetts law authorizes only narrow proceedings to challenge a CID, which serve the

---

[40] Ex. NN at 1-2.

limited function of evaluating the CID's validity, ExxonMobil could not have moved for injunctive or declaratory relief, let alone joined the New York Attorney General as a party.

The Superior Court denied ExxonMobil's petition and granted Attorney General Healey's cross-motion to compel ExxonMobil's compliance with the CID.[41]  An appeal of that court's decision is now pending.[42]  The Massachusetts Attorney General has agreed, pursuant to a tolling agreement, that ExxonMobil need not produce any documents in response to the CID until the federal and state proceedings are fully resolved, including through any appeals.

### 3.    New York State Court

The New York Attorney General concedes that it did not initiate state court proceedings concerning any subpoena issued to ExxonMobil until November 14, 2016, after the New York Attorney General was already a party to this federal action.  (NY Br. 9-10.)[43]  Although Attorney General Schneiderman repeatedly references the separate proceedings he initiated one month earlier (*id.* at 20-22), that litigation was brought against PricewaterhouseCoopers ("PwC"), ExxonMobil's independent auditor, over compliance with a subpoena issued to PwC, which is not relevant here.[44]

On October 14, 2016, one day after Judge Kinkeade issued the jurisdictional discovery order, Attorney General Schneiderman filed an order to show cause against PwC in New York Supreme Court, without first making a good faith effort to resolve the issues raised in its

---

[41]  Ex. OO at 15.
[42]  Notice of Appeal, *In re CID*, No. 16-1888F (Mass. Sup. Ct. Feb. 8, 2017).
[43]  "NY Br." refers to the brief in support of dismissal filed by the New York Attorney General (ECF No. 220), and "Mass. Br." refers to the brief in support of dismissal filed by the Massachusetts Attorney General (ECF No. 217).
[44]  For that reason, the New York Attorney General's assertion that ExxonMobil should have joined PwC as a party to this action is meritless.  (NY Br. 20.)  Nor can the Attorney General show that ExxonMobil conceded his right to issue the November 2015 subpoena or to receive documents responsive to that subpoena by mischaracterizing and selectively quoting from ExxonMobil's counsel's statements at the October 24, 2016 court conference concerning the PwC subpoena.  (NY Br. 17-18, 20.)

application or even attempting to show why the motion required expedited treatment.[45]   That

motion sought to compel PwC to produce documents responsive to a subpoena issued to PwC in

August 2016.   ExxonMobil appeared in that action for the sole purpose of asserting that the

Texas accountant-client privilege protects certain documents from disclosure by PwC.   On

October 25, 2016, Justice Barry Ostrager granted the New York Attorney General's motion to

compel after deciding that the evidentiary rules of New York, not Texas, govern.[46]

On November 14, 2016, four days after ExxonMobil filed the amended complaint joining

Attorney General Schneiderman as a defendant in this action, the New York Attorney General

filed an order to show cause seeking court intervention to compel ExxonMobil to produce certain

accounting documents.[47]   Justice Ostrager denied the Attorney General's request because, as

ExxonMobil argued, the requested documents were beyond the scope of the relevant subpoena.[48]

Although Attorney General Schneiderman has continued to request court intervention to add

custodians or to set production deadlines, none of these discovery disputes has resulted in

anything more than rulings on subpoena compliance, including a finding on June 16, 2017, that

the Attorney General's most recent document requests were "way beyond proportionality."

In both its briefs and its court appearances before Justice Ostrager, ExxonMobil has

forthrightly disclosed the nature of this federal action, including through demonstratives

explaining the history and substance of the filings and orders in this case.[49]   Having been fully

---

[45]   Ex. EE at 1-2.

[46]   *See* Ex. II at 2, 4-5.  The First Department affirmed Justice Ostrager's decision on May 23, 2017, Ex. MM, and, on May 26, ExxonMobil filed a motion for reargument and for leave to appeal to the New York Court of Appeals.  Ex. PP.

[47]   Ex. JJ at 1-2.

[48]   Ex. Ex. LL; KK at 23-24.

[49]   Ex. GG (timeline demonstrative); Ex. FF at 50 (discussing timeline); Ex. HH; *see also* ExxonMobil's Mem. in Opp. to Mot. to Compel, *People by Schneiderman* v. *PricewaterhouseCoopers LLP*, No. 451962/2016, at 3 (N.Y. Sup. Ct. Nov. 18, 2016) ("Stripped of hyperbole, the Attorney General's motion amounts to a transparent effort to insert this Court into pending litigation in federal court about whether the Attorney General conspired with others to violate ExxonMobil's federal constitutional rights.").

apprised of the nature of the federal proceedings, Justice Ostrager has never once suggested that ExxonMobil should bring its federal constitutional claims in his court, much less faulted ExxonMobil for pursuing its federal claims in federal court.

## **ARGUMENT**

### I.    **EXXONMOBIL'S CONSTITUTIONAL CLAIMS ARE RIPE FOR ADJUDICATION.**

The Attorneys General's ripeness arguments, if accepted, would strip federal courts of jurisdiction over Section 1983 challenges to subpoenas and other investigative demands issued by state officials. Such a result would defeat the "very purpose of § 1983" which "was to interpose the federal courts between the States and the people, as guardians of the people's federal rights." *Mitchum* v. *Foster*, 407 U.S. 225, 242 (1972). Under settled precedent, ExxonMobil's claims are ripe for adjudication for at least three independently sufficient reasons: (i) ExxonMobil currently suffers an ongoing violation of its constitutional rights, (ii) ExxonMobil cannot ignore the subpoena or CID without consequence, and (iii) the Attorneys General have already moved to compel ExxonMobil's compliance.

To assert a constitutionally ripe claim, a plaintiff must allege an "actual or imminent" injury rather than one that is "conjectural or hypothetical." *Nat'l Org. for Marriage, Inc.* v. *Walsh*, 714 F.3d 682, 688 (2d Cir. 2013). Prudential ripeness, in turn, permits courts to avoid premature adjudication of cases that "will be better decided later," but only if "the parties will not have constitutional rights undermined by the delay." *Simmonds* v. *INS*, 326 F.3d 351, 357 (2d Cir. 2003) (emphasis omitted). In assessing prudential ripeness, courts consider whether the issues are unfit for adjudication because they are "contingent on future events or may never occur," and whether withholding judicial review will cause hardship to the parties. *Walsh*, 714 F.3d at 691 (quotation marks omitted).

13

ExxonMobil's claims are both constitutionally and prudentially ripe because the challenged investigations are themselves a direct assault on ExxonMobil's First Amendment rights. A presumption of injury flows from "the alleged violation of a constitutional right," *Jolly* v. *Coughlin*, 76 F.3d 468, 482 (2d Cir. 1996) (emphasis omitted), and "the loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury," *Elrod* v. *Burns*, 427 U.S. 347, 373 (1976). The Amended Complaint alleges just such an injury. It asserts the ongoing investigations are nothing more than pretextual fishing expeditions that seek to discriminate against a disfavored viewpoint on climate change.[50] This unconstitutional action, without more, is sufficient to make out a ripe injury. *See, e.g.*, *NAACP* v. *Patterson*, 357 U.S. 449, 458-62 (1958) (holding compelled disclosure of NAACP membership list sought by Alabama Attorney General violated First and Fourteenth Amendments). As the Second Circuit has explained, "[a] public-official defendant who threatens to employ coercive state power to stifle protected speech violates a plaintiff's First Amendment rights, regardless of whether the threatened punishment comes in the form of the use (or, misuse) of the defendant's direct regulatory or decisionmaking authority over the plaintiff, or in some less-direct form." *Okwedy* v. *Molinari*, 333 F.3d 339, 344 (2d Cir. 2003). ExxonMobil's claims would therefore be ripe, independent of the "somewhat relaxed standing and ripeness rules" the Second Circuit applies to First Amendment claims. *See Walsh*, 714 F.3d at 689.

Ignoring this precedent, the Attorneys General submit that ExxonMobil's injuries will not become sufficiently concrete unless and until they bring an enforcement action against the company. (NY Br. 17-18; Mass. Br. 22.) They are wrong. In *Cuomo* v. *Clearing House Ass'n, L.L.C.*, the Supreme Court enjoined "the threatened issuance of executive subpoenas by the Attorney General for the State of New York" long before any enforcement action had

---

[50] ECF No. 100 ¶¶ 88-89, 97-111.

commenced. 557 U.S. 519, 536 (2009). There, the New York Attorney General sent banks letters of inquiry "in lieu of issuing a formal subpoena" requesting the voluntary production of non-public information. *Clearing House Ass'n, L.L.C.* v. *Cuomo*, 510 F.3d 105, 109 (2d Cir. 2007). The Second Circuit held that the Attorney General's threatened use of his subpoena power presented a ripe controversy because it required companies "to take affirmative steps in response" to the Attorney General's demand "or else risk finding themselves in violation of state law, despite their belief that the Attorney General's authority to enforce such law was federally preempted." *Id.* at 124. The Supreme Court affirmed that decision in relevant part, observing that an injunction would have been equally appropriate if the Attorney General had actually issued the threatened subpoena. *See Clearing House*, 557 U.S. at 536.

As *Clearing House* demonstrates, where a plaintiff challenges the investigation itself, there is no need to defer adjudication pending an enforcement action. That is why the Attorneys General's reliance on precedent like *Cuomo* v. *Dreamland Amusements, Inc.*, No. 08 Civ. 6321 (JGK), 2008 WL 4369270 (S.D.N.Y. Sept. 22, 2008), is misplaced. (NY Br. 17; Mass. Br. 21-22 & n.20.) In *Dreamland*, Judge Koeltl deemed a preemption challenge to a potential enforcement action unripe because it was uncertain what theories the Attorney General would pursue in a prosecution, should one ever occur, and whether they would implicate federal law. *Id.* at *8. Here, by contrast, ExxonMobil's challenge is firmly rooted in the harm caused by the investigations already commenced by the Attorneys General, not in the as-yet-undetermined nature of a possible enforcement proceeding in the future.

The Attorneys General next argue that ExxonMobil's challenge is premature because neither the subpoena nor the CID carry direct consequences for non-compliance. (NY Br. 14-15 & n.8; Mass. Br. 22.) But their argument ignores the penalties associated with non-compliance

and the compulsion proceedings each has brought against ExxonMobil.  Under Second Circuit precedent, challenges to investigative demands are premature only where "no consequence whatever can befall a [recipient] who refuses, ignores, or otherwise does not comply with [the instrument] until [it] is backed by a . . . court order," at which point "those subject to the proposed order must be given a reasonable opportunity to contest the government's request." *Schulz* v. *IRS*, 395 F.3d 463, 464-65 (2d Cir.), *as clarified on reh'g*, 413 F.3d 297 (2d Cir. 2005). It can hardly be said that ExxonMobil faces "no consequence whatever" for ignoring the subpoena and CID.  Under the authorizing statutes, ignoring the subpoena or the CID can result in monetary and other penalties.[51]

Attorney General Schneiderman claims that those penalties should carry no weight because "a subpoena recipient may defend against" them in a subsequent proceeding over the penalties for non-compliance.  (NY Br. 14 n.8.)  Having an opportunity to defend against the imposition of a penalty for non-compliance cannot be equated with "no consequence whatever." *Schulz*, 395 F.3d at 465.  To the contrary, the Attorney General concedes that non-compliance with the subpoena can have the direct consequence of putting the subpoena recipient on the defensive in a proceeding, not just to compel compliance with the subpoena, but to impose a penalty for past non-compliance.

The Second Circuit rejected the Attorneys General's position in its opinion on rehearing in *Schulz* v. *IRS*, 413 F.3d 297 (2d Cir. 2005), which presumably is why the New York Attorney General relies heavily on the pre-rehearing opinion. (NY Br. 13, 14, 16.)  In *Schultz*, the IRS argued that "the agency may summon a taxpayer and the taxpayer must choose either to comply

---

[51] *See* N.Y. Gen. Bus. Law § 352(4) (purporting to make failure to comply with a subpoena issued under § 352 a misdemeanor); M.G.L. c. 93A, §7 (making non-compliance with a CID punishable by fine of up to $5,000). In fact, the New York Court of Appeals has held that the Attorney General may "commence a criminal prosecution" against a party who fails to comply with his subpoena, even after the recipient has moved to quash that subpoena. *See LaRossa, Axenfeld & Mitchell* v. *Abrams*, 62 N.Y.2d 583, 590 (1984).

or, if not, put herself directly at jeopardy of sanction without an intervening opportunity to seek judicial review of the summons." *Id.* at 303. Rejecting that position as unconstitutional, the Second Circuit held that due process required "both judicial review of an IRS summons and an intervening opportunity to comply with a court order of enforcement prior to the imposition of coercive or punitive sanctions." *Id*. Under *Schultz*'s teachings, ExxonMobil cannot be made to wait until the Attorney General seeks to collect sanctions before it can challenge the subpoena.

Even if the authorizing statutes did not contain penalties for non-compliance, the compulsion actions commenced by the Attorneys General would provide an independently sufficient basis to find this action ripe. The Attorneys General each concede that they have moved in their respective state courts to compel ExxonMobil's compliance with the November 2015 subpoena and the CID.[52] As their own authorities dictate, these motions to compel eliminate any doubt about the ripeness of ExxonMobil's claims. *See Schulz*, 395 F.3d at 464; *Google, Inc.* v. *Hood*, 822 F.3d 212, 225 (5th Cir. 2016).

Distorting ripeness doctrine beyond recognition, the Attorneys General ask this Court to accept that when a state forum is available, an otherwise ripe federal case should be dismissed as unripe. (NY Br. 15-16; Mass. Br. 21-22.) That is nonsense and should be rejected as such. "It is well-settled" that "[w]hen federal claims are premised on 42 U.S.C. § 1983," as they are here, "a plaintiff is not required to exhaust state judicial or administrative remedies" or to bring their "federal constitutional challenge[s] in state court before resorting to this Court." *Kachalsky* v. *Cacace*, 817 F. Supp. 2d 235, 250 (S.D.N.Y. 2011), *aff'd sub nom. Kachalsky* v. *Cnty. of Westchester*, 701 F.3d 81 (2d Cir. 2012) (alterations omitted); *Kwong* v. *Bloomberg*, 876 F.

---

[52] The Massachusetts Attorney General contends that the parties' agreement relieving ExxonMobil of any obligation to produce documents until this litigation and the one in Massachusetts have been resolved somehow bears on the ripeness analysis, but her brief contains no support for that argument and ExxonMobil is aware of none. (Mass. Br. 22.)

Supp. 2d 246, 253 n.4 (S.D.N.Y. 2012). Were it otherwise, no Section 1983 case would ever proceed to federal court. Far from being anomalous, concurrent jurisdiction between federal and state courts is a "deeply rooted presumption" in our legal system, which generally grants plaintiffs the choice of pursuing their federal claims in either state or federal court.[53] *Mims* v. *Arrow Financial Services*, LLC, 565 U.S. 368, 378 (2012). None of the Attorneys General's arguments call into question the ripe nature of the controversy before this Court.

## II.    NO EXCEPTIONAL CIRCUMSTANCES JUSTIFY ABSTENTION UNDER *COLORADO RIVER*.

In the year-long pendency of this heavily contested litigation, no party has seriously argued for abstention under the "extraordinary and narrow" doctrine of *Colorado River Water Conservation Dist.* v. *United States*, 424 U.S. 800, 813 (1976). There is good reason for that silence. Under *Colorado River*, a federal court may abstain from exercising jurisdiction over a federal action that is "parallel" to a state court action "only in exceptional circumstances" where "the resolution of existing concurrent state-court litigation could result in comprehensive disposition of litigation." *Woodford* v. *Cmty. Action Agency of Greene Cnty., Inc.*, 239 F.3d 517, 521-22 (2d Cir. 2001) (citation omitted). As there is no pending state court proceeding capable of satisfying that standard, abstention would be improper in this case.

Abstention under *Colorado River* is exceedingly rare because it runs counter to two core propositions of federal jurisdiction: (i) the "virtually unflagging obligation of federal courts to exercise the jurisdiction given to them," and (ii) the permissibility of "an action in the state court" running parallel "to proceedings concerning the same matter in the Federal court having jurisdiction." *Colorado River*, 424 U.S. at 817. To displace those principles under *Colorado River*, courts must consider six factors: (1) "whether the controversy involves a *res* over which

---

[53]    Despite Attorney General Schneiderman's suggestion to the contrary, ExxonMobil has never taken the position that its injury is an "inability to access a federal forum." (NY Br. 16.)

one of the courts has assumed jurisdiction"; (2) "whether the federal forum is less inconvenient than the other for the parties"; (3) whether abstention "will avoid piecemeal litigation"; (4) "the order in which the actions were filed, and whether proceedings have advanced more in one forum than in the other"; (5) "whether federal law provides the rule of decision"; and (6) "whether the state procedures are adequate to protect the plaintiff's federal rights." *Niagara Mohawk Power Corp.* v. *Hudson River-Black River Regulating Dist.*, 673 F.3d 84, 100-01 (2d Cir. 2012) (citation omitted). When evaluating these factors, "the balance" should be "heavily weighted in favor of the exercise of jurisdiction," and, if a factor "is facially neutral, that is a basis for retaining jurisdiction, not for yielding it." *Id.* at 101 (citation omitted). Because those factors weigh in favor of this Court's retaining jurisdiction, the Attorneys General have failed to carry their "burden of persuasion" that abstention is warranted. *See Remigio* v. *Kelly*, No. 04 Civ. 1877 (JGK) (MHD), 2005 WL 1950138, at *12 (S.D.N.Y. Aug. 12, 2005).

### A. Neither State Action Is Parallel to the Federal Action, which Precludes Abstention.

*Colorado River* abstention is inapplicable at the outset because neither state court action is parallel to the comprehensive proceedings before this Court. Actions are parallel "when the two proceedings are essentially the same; that is, there is an identity of parties, and the issues and relief sought are the same." *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.* v. *Karp*, 108 F.3d 17, 22 (2d Cir. 1997). Any doubt as to parallelism should be resolved in favor of retaining federal jurisdiction. *See Artists Rights Enf't Corp.* v. *Estate of Robinson*, No. 15 Civ. 9878 (ER), 2017 WL 933106, at *7 (S.D.N.Y. Mar. 8, 2017).

The state court proceedings are not parallel to this action, where ExxonMobil asserts claims and seeks remedies that are not raised—and could not be litigated—in the state actions. This is the only action in which ExxonMobil has sought declaratory and injunctive relief. It is

the only action that includes both Attorneys General. And it is the only action in which ExxonMobil has asserted violations of its rights under the federal constitutional and conspiracy claims.[54] The Attorneys General do not claim otherwise. (NY Br. 20; Mass. Br. 10, 13.) Moreover, due to the narrow nature of the state proceedings in New York and Massachusetts courts, discussed below in Section II.D and Section III.C, this is the only action in which ExxonMobil could have sought complete relief on the claims asserted here.[55]

Where, as here, the actions are not "essentially the same," there can be no abstention under *Colorado River*. *See Karp*, 108 F.3d at 22. It is not enough even if the federal "action involves much of the same factual material as the suit in state court." *DDR Const. Servs., Inc.* v. *Siemens Indus., Inc.*, 770 F. Supp. 2d 627, 645 (S.D.N.Y. 2011). There must be an "identity of parties" and the same "issues and relief." *Karp*, 108 F.3d at 22. Where those factors are absent, courts will not abstain. For example, in *All. of Am. Insurers* v. *Cuomo*, the Second Circuit held that federal and state actions were not parallel where the plaintiffs in the federal action asserted federal constitutional claims that were not raised in the state action. 854 F.2d 591, 603 (2d. Cir. 1988). The existence of "some overlap of subject matter" was "not sufficient," because differences in issues raised "are strong factors against invoking exceptional circumstances as the basis for dismissal." *Id.* So too here. The fundamental differences between the state actions and this one—as to parties, claims, and relief—preclude a finding of parallelism.

### B. This Is Not an *In Rem* Action, which Counsels Against Abstention.

As Attorney General Healey has conceded, the assertion of jurisdiction over property "is

---

[54] Recently, ExxonMobil challenged on preemption grounds a new subpoena the New York Attorney General issued on May 8, 2017, that seeks reserve and impairment documents not covered by the November 2015 subpoena.

[55] Contrary to the New York Attorney General's assertion, ExxonMobil has never admitted that it "could have raised all of its objections" to the subpoena in New York state court. (NY Br. 18.) All ExxonMobil has observed is that it could have filed a motion to quash in New York state court, a point that is not in dispute. ECF No. 214 at 15:15-23. ExxonMobil has never conceded (nor could it) that this lawsuit could have been filed in New York State court, raising the same claims against the same parties and seeking the same relief.

not at issue here," and therefore the first abstention factor "point[s] toward the exercise of federal jurisdiction." (Mass. Br. 15 n.18.) That concession aligns with Second Circuit precedent, recognizing that actions addressing control over real property present unique concerns not present in other types of litigation. *See Niagara*, 673 F.3d at 101; *FDIC* v. *Four Star Holding Co.*, 178 F.3d 97, 102 (2d Cir. 1999). The New York Attorney General distorts this uncontroversial proposition beyond recognition by suggesting it is satisfied because the "New York court has assumed control over Exxon's production of documents." (NY Br. 20.) Not so. Supervising the production of documents entails providing direction to the parties to guide their conduct—not control over property—and "[t]here is no bar against parallel *in personam* actions proceeding in two or more courts." *Woodford*, 239 F.3d at 522. Unsurprisingly, the New York Attorney General provides no authority for this misguided understanding of the first factor. This Court should reject it and mark this factor as weighing against abstention.

### C. This Court Is No Less Convenient than the State Courts, which Counsels Against Abstention.

The New York Attorney General concedes that this Court and New York state court are "equally convenient" for him. (NY Br. 21.) Where, as here, the "federal court is just as convenient as the state court" abstention is disfavored.[56] *Woodford*, 239 F.3d at 523.

The Massachusetts Attorney General argues that proceeding in this forum is inconvenient because it would entail litigating "the same claims and issues on two fronts." (Mass. Br. 17-18.) That argument falls flat because litigating on "two fronts" is always present when the *Colorado River* doctrine is under consideration and therefore cannot, by definition, weigh in favor of abstention. *Vill. of Westfield* v. *Welch's*, 170 F.3d 116, 122 (2d Cir. 1999). Nor does the

---

[56] The New York Attorney General nevertheless argues that this factor weighs against abstention because ExxonMobil initially brought this action in a "dramatically inconvenient forum." (NY Br. 21.) That argument is meritless, as the convenience factor considers where the actions are currently litigated.

inconvenience of travelling from Massachusetts to New York suffice to demonstrate exceptional circumstances. Courts in this district have recognized that, "with modern travel options, the effective distance between this forum (New York) and the state forum [(Massachusetts)] is short and would not appear to pose undue hardship." *SST Glob. Tech., LLC* v. *Chapman*, 270 F. Supp. 2d 444, 465 (S.D.N.Y. 2003). Having travelled with staff to New York to announce and rally support for her investigation of ExxonMobil,[57] at a press conference that is a critical part of ExxonMobil's case, Attorney General Healey should not now be heard to complain that appearing in New York would be "time-consuming and expensive." (Mass. Br. 18.)

### D. Abstention Would Not Avoid Piecemeal Litigation.

Abstaining from this action would not prevent piecemeal litigation; it would perpetuate it. The "primary context" in which piecemeal litigation justifies abstention is where declining jurisdiction over a narrower federal action would allow a comprehensive state court action that embraces all defendants and issues to proceed. *Woodford*, 239 F.3d at 524 (collecting cases). By contrast, abstention is disfavored where, as here, the state actions "are already in some sense 'piecemeal'; [while] the single federal case, by contrast, would go to the heart of all the issues in these cases." *Niagara*, 673 F.3d at 102; *see also Standard Chartered Bank* v. *DAA Sales Inc.*, No. 91 Civ. 1018 (LMM), 1991 WL 136033, at *1 (S.D.N.Y. July 17, 1991) (declining to abstain where "[p]iecemeal litigation already exists, and . . . would, no doubt, remain pending" due to pending actions in New York and Hong Kong). The "piecemeal" litigation in New York and Massachusetts courts does not counsel in favor of abstention because this federal action is the only action where all claims, parties, issues, and relief can be addressed.

Under Second Circuit precedent, avoiding piecemeal litigation does not supply a basis to

---

[57] According to expense reports prepared by her office, Attorney General Healey and at least two members of her staff travelled to New York in March 2016 in connection with her work on "Exxon + climate change." Ex. Q at 4-7.

abstain where the federal action raises even a single claim or issue not addressed in the state action. *See Bethlehem Contracting Co.* v. *Lehrer/McGovern, Inc.*, 800 F.2d 325, 328 (2d Cir. 1986). For instance, in *Woodford*, the Second Circuit held that piecemeal litigation did not favor abstention, even though the claims in all proceedings were based on the same misconduct, because "none of the claims asserted in the state actions is a federal claim." 239 F.3d at 523-24. Here too, abstention would not avoid piecemeal litigation because ExxonMobil asserts federal constitutional claims and conspiracy claims that are not asserted in either state action.

As Attorney General Schneiderman readily acknowledges, ExxonMobil has never claimed the investigation violates its constitutional rights in the New York State proceedings. (NY Br. 6, 15-16.) Nor did ExxonMobil assert a single one of its federal claims in Massachusetts state court. While ExxonMobil moved to set aside the CID in Massachusetts state court in part because it violated the Massachusetts constitution, the Massachusetts court did not address any of ExxonMobil's state constitutional claims, other than to expressly decline to even to consider free speech.[58] Because the question of whether the Attorneys General have violated ExxonMobil's constitutional rights will "not be resolved in [either] state case and will likely require federal resolution regardless of the outcome in [either] state case," abstention will not "reduce the likelihood of piecemeal litigation." *SST Glob. Tech.*, 270 F. Supp. 2d at 466.

Perhaps recognizing as much, the Attorneys General raise the specter of inconsistent rulings as a basis for abstention. (NY Br. 19-20; Mass. Br. 17.) But the "mere potential for conflict in the results of adjudications, does not, without more, warrant staying exercise of federal jurisdiction." *Colorado River*, 424 U.S. at 816. That is particularly true in cases such as this one where the federal action joins all defendants, but the state actions do not. While a resolution of the claims before this Court will bind all parties on all claims, a judgment in the

---

[58] Ex. OO at 9 n.2.

less comprehensive state actions "pose[s] a risk of inconsistent outcomes not preventable by principles of res judicata and collateral estoppel." *Woodford*, 239 F.3d at 524. Indeed, a court in Massachusetts (whether at the appellate or trial level) could find its Attorney General culpable of misconduct, while a court in New York might acquit its Attorney General on essentially the same facts. Allowing this case to proceed to judgment presents no such risk.

Falling even wider of the mark are the Attorneys General's allegations of improper claim splitting. (NY Br. 18; Mass. Br. 19-20.) ExxonMobil filed this lawsuit to seek redress for constitutional violations committed by the Attorneys General before any state court litigation had begun. ExxonMobil never commenced any action in relation to the November 2015 subpoena in the state courts of New York but only responded to an action the New York Attorney General brought against PwC after discovery in this action had already been ordered. The special appearance that ExxonMobil entered in Massachusetts state court after filing this action was unambiguously presented as prophylactic in nature (to avoid forfeiture of rights) and contained a request for a stay.[59] Abstention is unwarranted where, as here, the "plaintiff offered to stay" any "overlapping state-court claims." *Woodford*, 239 F.3d at 524 (quotation marks omitted).

### E. The First-Filed Federal Action Has Advanced Further than the State Actions.

The order in which the actions were filed and the course of the proceedings also weigh against abstention. There is no legitimate room to dispute that this action was the first filed. ExxonMobil brought this action on June 15, 2016, which was one day before ExxonMobil moved to set aside the CID in Massachusetts, four months before the New York Attorney General sued ExxonMobil's independent auditor in New York State court (which is irrelevant to these proceedings in any event), and five months before the New York Attorney General sought

---

[59] *See, e.g.*, Ex. NN at 2.

judicial relief as to ExxonMobil in New York State court.

This action has also advanced further than either state action toward resolving ExxonMobil's federal constitutional and conspiracy claims. Following several rounds of briefing and court appearances, Judge Kinkeade issued two opinions raising concerns about the actions of the Attorneys General and found that "[t]he merits of each of Exxon's [federal] claims involve important issues that should be determined by a court."[60] Meanwhile, ExxonMobil has not even claimed an infringement of its federal constitutional rights in the state forums; the state courts thus cannot have made progress toward the resolution of those federal claims. As a result, "[i]n realistic terms, the federal suit [i]s running well ahead of the state suit[s]," which do not address ExxonMobil's federal constitutional or conspiracy claims. *Moses H. Cone Mem'l Hosp.* v. *Mercury Constr. Corp.*, 460 U.S. 1, 22 (1983).

In contrast, aside from the New York Attorney General's unsuccessful attempt to compel ExxonMobil to produce documents outside the scope of the November 2015 subpoena, all that has occurred in the New York action with regard to that subpoena are discovery conferences and letter writing related to ExxonMobil's technical compliance. Not a single opinion has issued from the New York state court, other than a ruling on whether the accountant-client privilege protects materials responsive to the PwC subpoena, which is irrelevant to the federal constitutional claims raised in this action.[61]

Even though the Massachusetts court granted the Massachusetts Attorney General's motion to compel compliance with the CID, that opinion did not affect the progress of the federal

---

[60]   ECF No. 180 at 2; *id.* at 5 (expressing concern that the Attorneys General's investigations were means "to further their personal agendas by using the vast power of the government to silence the voices of all those who disagree with them"); ECF No. 73 at 5 ("The Court finds allegations about Attorney General Healey and the anticipatory nature of Attorney General Healey's remarks about the outcome of the Exxon investigation to be concerning to this Court.").

[61]   The New York Attorney General argues that the appeal pending in the First Department supports abstention (NY Br. 21), but it pertains only to the assertion of accountant-client privilege in the PwC litigation.

case because it (i) did not adjudicate ExxonMobil's federal constitutional, preemption, or conspiracy claims, (ii) did not address ExxonMobil's claims under the Massachusetts constitution, (iii) applied a different legal standard to ExxonMobil's claims than would apply in a federal action, and (iv) did not offer an opportunity for discovery that may be available in the federal action. Under similar circumstances, courts within the Second Circuit have ruled that a state court decision does not favor abstention. For example, in *NAACP* v. *A.A. Arms, Inc.*, Judge Weinstein rejected abstention, even though a state court had issued a decision, because that decision had "little, if any, impact on the instant case," as it applied different legal standards and discovery was not available. No. 99 CV 3999 (JBW), 2003 WL 1049011, at *4 (E.D.N.Y. Feb. 24, 2003). The limited progress of the later-filed action in Massachusetts cannot justify abstention.

### F. Federal Law Provides the Rule of Decision.

Federal law provides the rule of decision for ExxonMobil's principal claims in this action—another factor weighing against abstention. *See Woodford*, 239 F.3d at 522. Where, as here, federal constitutional claims are asserted, "federal courts are more appropriate arbiters." *All. of Am. Insurers*, 854 F.2d at 603. That is so even when the claims arise from allegations of misconduct by state officers. The Attorneys General argue otherwise, claiming that state law authorized them to engage in the conduct that violated ExxonMobil's rights. (NY Br. 21-22; Mass. Br. 19-20.) But under the Supremacy Clause, it is no defense to a charge of unconstitutional official action to say it was authorized by state law. *See Farid* v. *Smith*, 850 F.2d 917, 921 (2d Cir. 1988).

Even if state law provided the rule of decision, this factor would not favor abstention because the "the state law issues" are not "novel or particularly complex." *Vill. of Westfield*, 170 F.3d at 124. Other judges in this district have capably construed the state laws that might be

tangentially relevant here. *See, e.g.*, *MBIA Inc.* v. *Fed. Ins. Co.*, 652 F.3d 152, 159, 162 (2d Cir. 2011) (addressing concerns related to a subpoena issued by the New York Attorney General); *Clearing House*, 510 F.3d at 124 (same); *Miller* v. *Hyundai Motor Am.*, No. 15-CV-4722 (TPG), 2016 WL 5476000, at *5-6 (S.D.N.Y. Sept. 28, 2016) (interpreting and applying M.G.L. c. 93A). And the Massachusetts statute governing the CID instructs courts to "be guided by" federal interpretations of the Federal Trade Commission Act, on which the state law was modeled, when construing its provisions. *See Purity Supreme, Inc.* v. *Att'y Gen.*, 380 Mass. 762, 766 (1980).

## G. The State Procedures Are Inadequate to Provide Complete Relief.

The sixth factor—whether "the state court is competent to adjudicate plaintiff's claims"—is "consequential only when the answer is negative and thus weighs in favor of federal jurisdiction." *Dunkin' Donuts Franchised Restaurants LLC* v. *Rijay, Inc.*, No. 06 Civ. 8237 (WCC), 2007 WL 1459289, at *6 (S.D.N.Y. May 16, 2007). Here, ExxonMobil can obtain complete declaratory and injunctive relief for its federal constitutional and conspiracy claims in only one forum: federal court. Because the state-court litigation will not provide "an adequate vehicle for the complete and prompt resolution of the issues between the parties," this factor weighs against abstention. *Vill. of Westfield*, 170 F.3d at 124 (noting this factor is "more important when it weighs in favor of federal jurisdiction").

Where, as here, claims "are not and were not pending in the other [state] actions," courts consider the state proceedings incapable of furnishing complete relief and decline to abstain. *Mersentes* v. *Corrigan*, No. 09 Civ. 486 (LAP), 2010 WL 3959615, at *4 (S.D.N.Y. 2010). State procedures are also inadequate when the federal plaintiff does not have "access to his full range of [federal] remedies in state court." *Wiggins* v. *Conn.*, 205 F.3d 1327, 2000 WL 19094, at *1 (2d Cir. 2000). Even where the state court can afford much of the same relief as the federal court, abstention is disfavored where a single remedy available in federal court is unavailable in

27

state court. *See Woodford*, 239 F.3d at 525 (declining to abstain where "[a]wards of attorneys' fees are not available on the claims asserted in the state-court actions").

The state court proceedings in New York and Massachusetts are inadequate to provide complete relief to ExxonMobil because they did not afford an opportunity to pursue the same claims or relief that ExxonMobil seeks here. The violation of ExxonMobil's constitutional rights—which is before this Court—is not now and has never been considered by any New York State court. Simply put, there is nothing in New York State court in favor of which to abstain. Even if ExxonMobil attempted to raise all the claims pending here in New York State court (which it is under no obligation to do), the effort would be futile. The proceedings there pertain to compliance with specific subpoenas, and such proceedings are generally limited to "the issues of the authority of the investigating body and whether the inquiry falls within the scope of that authority." *Nicholson* v. *State Comm'n on Judicial Conduct*, 50 N.Y.2d 597, 610 (1980). As for remedies, it is far from clear that a New York State court could issue an injunction in such a proceeding. *See Carlisle* v. *Bennett*, 268 N.Y. 212, 217 (1935); *In re Lipson*, 257 N.Y.S.2d 316, 318-19 (N.Y. Sup. Ct. 1964).

ExxonMobil would fare no better in Massachusetts. Because ExxonMobil entered a special appearance in the Massachusetts Superior Court to contest that court's jurisdiction, ExxonMobil could not have brought any affirmative claims in Massachusetts without waiving its objections to personal jurisdiction. *See Lamarche* v. *Lussier*, 65 Mass. App. Ct. 887, 889 n.8 (2006) ("[A] defendant who files a special appearance, but seeks relief beyond the narrow field covered by that appearance, brings himself within the jurisdiction of the court.").

In addition, the proceedings authorized in Massachusetts to challenge a CID are narrow proceedings, akin to a stand-alone motion for a protective order to prevent improper discovery.

*See Att'y Gen.* v. *Bodimetric Profiles*, 404 Mass. 152, 154 (1989). The authorizing statute, M.G.L. c. 93A, § 6(7), allows parties to "modify or set aside" a CID "in accordance with the standards set forth" in Mass. R. Civ. P. 26(c), which protects CID recipients from "annoyance, embarrassment, oppression, or undue burden or expense." Such limited proceedings do not provide an opportunity to seek declaratory or injunctive relief, as ExxonMobil does here. *See, e.g.*, *Monsanto Co.* v. *Victory Wholesale Grocers*, No. 08-MC-134, 2008 WL 5100178, at *1 (E.D.N.Y. Nov. 26, 2008) (noting that "no substantive causes of action are involved" where "miscellaneous action was opened solely to address the motion to quash the subpoena"). Nor did they permit ExxonMobil to join the New York Attorney General as a party or to assert freestanding federal constitutional claims.

It is of no moment that the Attorneys General fault ExxonMobil for not asserting federal claims as a defense in the state court actions. (NY Br. 18-19; Mass. Br. 19.) "Having properly brought [its] federal claims in federal court, [ExxonMobil] [is] entitled to pursue those claims" in that forum. *Woodfo*rd, 239 F.3d at 525. ExxonMobil was under no obligation to do otherwise.

### H.    ExxonMobil's Filing of the Federal Action Was Not Vexatious.

The Attorneys General urge this Court to conclude that it was "vexatious" of ExxonMobil to file this lawsuit. (NY Br. 22-25; Mass. Br. 20 n.19.) The Supreme Court has never adopted this consideration as a seventh factor in its *Colorado River* abstention analysis, *see World Wrestling Entm't, Inc.* v. *Jakks Pac., Inc.*, 425 F. Supp. 2d 484, 513 n.20 (S.D.N.Y. 2006), *aff'd*, 328 F. App'x 695 (2d Cir. 2009), and there is no good reason for this Court to do so here. Even if the Court considered this question, it would find nothing vexatious about the serious claims ExxonMobil has presented here.

Courts have found the filing of a federal action to be vexatious in instances which have no applicability to the current case—where a plaintiff "sues in the federal court on the same

cause of action *after* he has suffered some failures in the earlier state court action" and there is a "hostile history" between the parties.  *Telesco* v. *Telesco Fuel & Masons' Materials*, *Inc.*, 765 F.2d 356, 363 (2d Cir. 1985) (emphasis added).  In contrast, even when state and federal actions arise out of similar facts, courts have rejected claims of vexatious litigation if the federal plaintiff, like ExxonMobil, asserts additional federal claims against new defendants and seeks different relief in the federal case.  *See Linens of Europe, Inc.* v. *Best Mfg., Inc.*, No. 03 Civ. 9612 (GEL), 2004 WL 2071689, at *5 n.5 (S.D.N.Y. Sept. 16, 2004).

While Attorney General Healey accuses ExxonMobil of vexatious conduct, she offers no support for her allegation, despite bearing the burden of proof.  (Mass. Br. 20 n.19.)  That is reason enough to reject it.  The New York Attorney General takes issue with ExxonMobil's choice of venue (NY Br. 23-24), but there is nothing untoward in ExxonMobil's commencing an action in the venue where it is domiciled and where it suffered injury.  Nor can Attorney General Schneiderman impute vexatious motives to ExxonMobil solely on the basis that, following the jurisdictional discovery order, ExxonMobil issued discovery requests seeking materials directly related to the allegations Judge Kinkeade found to justify discovery.[62]  Assuming this seventh factor is even considered, it nevertheless weighs no more in favor of abstention than do the previous six.  On this showing, abstention under *Colorado River* would be improper.

## III.    THE NARROW DECISION IN MASSACHUSETTS STATE COURT DOES NOT PRECLUDE EXXONMOBIL'S FEDERAL CLAIMS BEFORE THIS COURT.

Preclusion provides no barrier to adjudicating ExxonMobil's claims.  Attorney General

---

[62]   Contrary to Attorney General Schneiderman's accusation that ExxonMobil "noticed the deposition of the NYOAG Bureau Chief" in order to obtain "investigative evidence," (NY Br. 23), ExxonMobil noticed the deposition of that staffer because documents released pursuant to public records requests made by third parties reveal that this member of the Attorney General's staff (i) organized, attended, and moderated the closed-door meetings with Frumhoff and Pawa prior to the March 29 press conference, (ii) instructed Pawa not disclose his involvement in those meetings, and (iii) was a party to numerous email exchanges with other special interests, as well as (iv) exchanges between coalition members' offices to develop the improper goals of the coalition and the common interest agreement.  Exs. F, H, I, J, K, L, P.

Healey interchangeably invokes both claim and issue preclusion because she cannot meet her burden of proving that either applies. *See Day* v. *Kerkorian*, 61 Mass. App. Ct. 804, 809 (2004). Under Massachusetts law, claim preclusion bars only litigation of claims where a prior action involved (i) the same parties, (ii) the same causes of action, and (iii) a final judgment on the merits. *Kobrin* v. *Bd. of Registration in Med.*, 444 Mass. 837, 843 (2005). Issue preclusion prevents re-litigation of an issue only where (i) the contested issue is "identical" to an issue in the prior case, (ii) that issue was resolved by a "final judgment on the merits," and (iii) the party to be precluded was a party to the prior action. *Tuper* v. *N. Adams Ambulance Serv., Inc.*, 428 Mass. 132, 134 (1998). The Due Process Clause prohibits either form of preclusion in the absence of "a 'full and fair opportunity to litigate' the claim or issue" in the prior action. *Kremer* v. *Chem. Const. Corp.*, 456 U.S. 461, 481-82 (1982) (citation omitted).

Both forms of preclusion are inapplicable here for at least three reasons. First, it is beyond dispute that not one of the federal claims ExxonMobil asserts here was brought in the Massachusetts State court proceedings, which served a different function, afforded different relief, and applied different standards than this federal action. Second, the state court—which considered the enforceability of the CID solely under Massachusetts law—did not render a final decision on the merits of any of the claims or issues ExxonMobil presents here. Third, the Due Process Clause forbids preclusion of a plenary federal action under 42 U.S.C. § 1983 based on a limited state court proceeding governed by rules for adjudicating discovery disputes.

## A.     The Claims and Issues in the Actions Are Insufficiently Similar.

Attorney General Healey's laundry list of preclusion claims glosses over the essential differences between the claims and issues presented in the state court and those presented here. (Mass. Br. 9-13.) In state court, ExxonMobil sought to quash the CID exclusively under Massachusetts law. Before this Court, however, ExxonMobil seeks injunctive and declaratory

relief for violations of its rights under the U.S. Constitution. ExxonMobil has not raised the claims pending here in Massachusetts state court, nor has it sought the relief it seeks here.

Attorney General Healey does not argue otherwise. Instead, she points to facts that are common to both proceedings. But Massachusetts courts refuse to apply preclusion simply because two actions share underlying facts. The Massachusetts Supreme Judicial Court applied that principle in *Heacock* v. *Heacock*, holding that a prior divorce action did not bar a subsequent tort action between the former spouses based on overlapping facts where the actions did not share "the same underlying claim," did not afford the same relief, and "the purpose" of each action was different. 402 Mass. 21, 24 (1988). So too here. ExxonMobil's causes of action and requested relief are different from those in the prior proceeding, which served only the limited function of adjudicating objections to a CID.[63] Common facts do not eliminate those differences.

Claims and issues likewise cannot be deemed identical where "the law applicable" differs. *See Petrillo* v. *Zoning Bd. of Appeals*, 65 Mass. App. Ct. 453, 458-59 (2006). For instance, in *Tuper*, the Supreme Judicial Court held that a prior proceeding had no preclusive effect on an issue that was decided under a subjective standard, but would be governed by an objective standard in the subsequent case. 428 Mass. at 135-36. That difference made it "possible, and even plausible" that the two proceedings could permissibly reach different results. *Id*. Embracing this fallacy, Attorney General Healey asserts that "Exxon cannot make out a claim for unreasonable search under either the Fourth Amendment or the Massachusetts constitution" because the state court "deemed the CID's requests reasonable under state law."

---

[63] The Massachusetts Attorney General relies heavily on *Temple of Lost Sheep Inc.* v. *Abrams,* 930 F.2d 178, 181-82 (2d Cir. 1991), but that case did not apply Massachusetts law, which governs here. *See Giannone* v. *York Tape & Label Inc.*, 548 F.3d 191, 192-93 (2d Cir. 2008). In addition, unlike here, the plaintiffs in *Temple* had already raised federal constitutional claims in a prior proceeding. *See Abrams* v. *Temple of the Lost Sheep, Inc.*, 562 N.Y.S.2d 322, 325 (Sup. Ct. 1990).

(Mass. Br. 19.)  But state law is different than federal law.  To pass muster under the Superior Court's reading of state law, all the Attorney General needed to establish is that she "*believes*" ExxonMobil violated state law and had no burden to satisfy "a 'reasonable' standard."[64]  The Fourth Amendment, by contrast, imposes a requirement of "objective reasonableness" on any search and seizure.  *See Hudson* v. *N.Y.C.*, 271 F.3d 62, 68 (2d Cir. 2001).  As in *Tuper*, the differences between these standards could lead to different results and therefore bar preclusion.

It would be equally improper to deprive ExxonMobil of an opportunity to be heard because it was forced, on pain of forfeiture, to contest the Massachusetts court's jurisdiction and the CID's document demands in a limited proceeding akin to a discovery hearing.  *See Bodimetric Profiles*, 404 Mass. at 154 (holding "failure to bring such a motion . . . constitutes waiver" of "all objections to the C.I.D.").  In *Beals* v. *Commercial Union Ins. Co.*, the Massachusetts Appeals Court refused to apply res judicata to bar a consumer's "bad faith" claims where factually related claims had been adjudicated under a "statutory mandate [that was] narrow in scope."  61 Mass. App. Ct. 189, 194 (2004).  Applying preclusion here would work a similarly impermissible result, barring ExxonMobil's federal claims due to the statutory requirement for filing objections under the narrow parameters of M.G.L. c. 93A § 6(7).

**B.    The Massachusetts Court Did Not Render a Final Judgment on the Merits.**

The absence of a "final judgment on the merits" independently forecloses both forms of preclusion. *See Kobrin*, 444 Mass. at 843.  Claim preclusion does not apply because none of ExxonMobil's federal claims were "actually and necessarily decided in a prior action." *Bernier* v. *Bernier*, 449 Mass. 774, 797 (2007).  First, there can be no claim preclusion because ExxonMobil's federal constitutional claims, conspiracy claims, and preemption claims were "never at issue in the first action." *Ajemian* v. *Yahoo!, Inc.*, 83 Mass. App. Ct. 565, 572 (2013).

---

[64]    Ex. OO at 2, 8.

Second, the state court declined to address a single one of ExxonMobil's claims under the Massachusetts Constitution, except to expressly state that it would "not address Exxon's arguments regarding free speech at this time."[65]  While Attorney General Healey claims that the state court rejected ExxonMobil's Fourth Amendment claims (Mass. Br. 12), it did no such thing.  The state court limited its review to specificity, overbreadth, and undue burden in the context of a conventional motion to quash, but had nothing to say about the Fourth Amendment's reasonableness requirement or prohibition of fishing expeditions.[66]  Third, the decision does not once discuss the propriety of Attorney General Healey's investigation of *investor* deception, which is the basis for ExxonMobil's preemption claims.

Issue preclusion is equally inapplicable.  That doctrine similarly requires that any issue to be precluded was "actually litigated and determined by a valid and final judgment," which "is supported by a reasoned opinion," and in which the issue was "treated as essential." *Jarosz* v. *Palmer*, 436 Mass. 426, 530-31, 533 (2002).  None of the issues raised here satisfy that standard. Attorney General Healey believes that the state court's refusal to disqualify her office means that ExxonMobil is "collaterally estopped from litigating in this forum issues related to Attorney General Healey's alleged bad faith and bias."  (Mass. Br. 11.)  Not so.  The Massachusetts Supreme Judicial Court has expressed skepticism that a motion for disqualification can "*ever* represent a final rejection of a claim of fundamental right."  *Jarosz*, 436 Mass. at 535 (emphasis added).  Moreover, the state court did not resolve the questions of bias or bad faith in the context of a First or Fifth Amendment claim.  It evaluated the different questions (i) whether ExxonMobil "met its burden

---

[65]  Ex. OO at 9 n.2.  The Attorney General maintains that that court's refusal to rule on ExxonMobil free speech claims means that the CID "would not implicate the First Amendment."  (Mass. Br. 10.)  To the contrary, preclusion requires that claims and issues be "actually and necessarily decided," not decided by implication or, as here, deliberately set aside until an investigation uncovers their merits.  *See Leahy* v. *Local 1526, Am. Fed'n of State, Cnty. & Mun. Emps.*, 399 Mass. 341, 352 (1987).  Indeed, "preclusion is not available" if there is even "ambiguity concerning the issues, the basis of decision, and what was deliberately left open by the judge." *Kerkorian*, 61 Mass. App. Ct. at 809; *Kirker* v. *Bd. of App. of Raynham*, 33 Mass. App. Ct. 111, 113 (1992).

[66]  Ex. OO at 10-11.

of showing that the Attorney General is acting arbitrarily or capriciously toward it," so as to justify quashing the CID, and (ii) whether the Attorney General's remarks at the press conference, taken alone, were sufficient to warrant disqualification.[67] The resolution of those questions does not "conclusively resolve" whether viewpoint discrimination animated Attorney General Healey's investigation or whether her prejudgment and bias violated the Due Process Clause. *See Kelso* v. *Kelso*, 86 Mass. App. Ct. 226, 233 (2014).

### C. The State Proceedings Did Not Provide a "Full and Fair Opportunity" to Litigate Claims.

Even if Massachusetts law permitted the preclusion of ExxonMobil's claims, federal law would prevent preclusion here. Preclusion "does not apply when the party against whom the earlier decision is asserted did not have a 'full and fair opportunity' to litigate the claim or issue." *Kremer*, 456 U.S. at 480-81 (1982). Preclusion based on an earlier subpoena enforcement proceeding is inappropriate where, as here, the opportunity to litigate was "narrower than the opportunity available in a plenary civil action" due to the proceeding's (i) being "summary in nature," (ii) the "heavy burden" to obtain relief, and (iii) lack "of discovery." *Sprecher* v. *Graber*, 716 F.2d 968, 972 (2d Cir. 1983) (citation omitted).

First, as described above in Section II.G, the state court proceeding was not a plenary civil action, but a narrow, summary proceeding, which merely authorized ExxonMobil to test whether the CID complied with Massachusetts law. And even that right was limited by the fact that ExxonMobil could do little more than challenge the state court's jurisdiction without risking waiver of its jurisdictional objections. *See Lamarche*, 65 Mass. App. Ct. at 890.

Second, the motion to quash proceedings did not afford the aid of discovery, which is available only in a "pending *action*" and not in a limited motion proceeding to challenge a CID.

---

[67] *Id.* at 8-9, 11-13.

Mass. R. Civ. P. 26(b)(1) (emphasis added). Numerous courts have agreed with *Sprecher* that "summary" proceedings "not based on any discovery" do not support preclusion. *See, e.g.*, *In re Parmalat Secs. Litig.*, 493 F. Supp. 2d 723, 736-37 (S.D.N.Y. 2007) (quotation marks omitted).

Third, the burdens ExxonMobil faced in challenging the CID in state court are heavier than those it faces in federal court. As the Superior Court noted, ExxonMobil shouldered a "heavy burden" when challenging the CID in state court.[68] In federal court, by contrast, ExxonMobil need only prove by a "preponderance of the evidence" (the lightest evidentiary burden) that its rights have been violated. *See, e.g.*, *Toliver* v. *N.Y.C. Dep't of Corr.*, 202 F. Supp. 3d 328, 334 (S.D.N.Y. 2016). In light of these critical disparities, the Due Process Clause bars preclusion of ExxonMobil's federal claims.

## IV. ATTORNEY GENERAL HEALEY IS SUBJECT TO THIS COURT'S JURISDICTION.

Attorney General Healey's perfunctory objection to this Court's jurisdiction cannot be reconciled with her participation in the March 2016 press conference, which according to Judge Kinkeade formed "a substantial part of the events . . . giving rise to the claim[s]" in this litigation. (ECF No. 180.) By participating in that press conference, Attorney General Healey engaged in conduct satisfying New York's long-arm statute, the requirements of the Due Process Clause, and ExxonMobil's burden at this pre-discovery stage to make a prima facie showing of jurisdiction. *See Kronisch* v. *United States*, 150 F.3d 112, 130 (2d Cir. 1998).

Under the relevant portions of New York's long-arm statute, personal jurisdiction may be asserted over a non-resident who, in person or through an agent, (i) "transacts any business within the state," N.Y.C.P.L.R. § 302(a)(1), or (ii) "commits a tortious act within the state," N.Y.C.P.L.R. § 302(a)(2). Both Sections 302(a)(1) and 302(a)(2) of New York's long-arm

---

[68] Ex. OO at 2.

statute independently justify the exercise of personal jurisdiction here. Although Attorney General Healey asserts that her participation in "a single meeting and press conference in New York" and the common interest agreement cannot establish sufficient contacts (Mass. Br. 23-24), courts routinely find Section 302(a)(1) satisfied by "proof of a single transaction in New York," *George Reiner & Co.* v. *Schwartz*, 41 N.Y.2d 648, 651-52 (1977), such as a one-day visit, *see Geller* v. *Newell*, 602 F. Supp. 501, 503 (S.D.N.Y. 1984), or a meeting, "which involved defendant's personal presence" and "led to further contacts and dealings" that culminated outside the state, *see M. Fabrikant & Sons, Inc.* v. *Adrianne Kahn, Inc.*, 533 N.Y.S.2d 866, 867-68 (1st Dep't 1988). Indeed, a visit to New York, which merely "la[ys] the groundwork for" the challenged misconduct can justify jurisdiction. *Kronisch*, 150 F.3d at 131.[69]

Jurisdiction is also proper under Section 302(a)(2) because Attorney General Healey was physically present in New York, *Launer* v. *Buena Vista Winery, Inc.*, 916 F. Supp. 204, 210-11 (E.D.N.Y. 1996), where ExxonMobil alleges she engaged in substantial tortious acts, *Bulova Watch Co.* v. *K. Hattori & Co.*, 508 F. Supp. 1322, 1346-47 (E.D.N.Y. 1981). It was during the March 2016 meeting in New York City that Attorney General Healey publicly announced her investigation of ExxonMobil, prejudicially pledged to hold ExxonMobil accountable for speech that did not align with her environmental politics, conspired with other state officials and private interests, and entered into an oral common interest agreement later memorialized in a document describing the Attorneys General's intent to regulate speech.[70] Nothing more is required under Section 302(a)(2). *See Cleft of the Rock Found.* v. *Wilson*, 992 F. Supp. 574, 584-85 (E.D.N.Y.

---

[69] The continued participation of the Massachusetts Attorney General's Office in "a working group to address Exxon specifically, and the fossil fuel industry generally" in the wake of the press conference and leading up to the issuance of the CID, *see* Ex. M at 1, further establishes that the press conference was "important in . . . structuring the relationship among the parties," *Traffix, Inc.* v. *Herold*, 269 F. Supp. 2d 223, 227 (S.D.N.Y. 2003), and solidifying her role in the unlawful conspiracy.

[70] Ex. E; Ex. I at 2.

1998) (exercising jurisdiction under Section 302(a)(2) where "the initial meetings . . . which laid the foundation for the defendants' alleged . . . schemes[ ] occurred in New York"). Indeed, the execution of the common interest agreement alone is sufficient to warrant the exercise of jurisdiction. *See McNamee* v. *Clemens*, 762 F. Supp. 2d 584, 594-96 (E.D.N.Y. 2011).

The requirements of the Due Process Clause are also met here. Due process permits the exercise of specific personal jurisdiction over a defendant where the defendant has "certain minimum contacts" with the forum such "that the exercise of jurisdiction is reasonable in the circumstances." *Eades* v. *Kennedy, PC Law Offices*, 799 F.3d 161, 168-69 (2d Cir. 2015). The requisite minimum contacts exist where the defendant "purposefully availed itself of the privilege of doing business in the forum" and the litigation "arises out of, or relates to," those contacts. *Licci ex rel. Licci* v. *Lebanese Canadian Bank, SAL*, 732 F.3d 161, 170 (2d Cir. 2013).

Despite her extensive suit-related contacts with New York, Attorney General Healey argues that ExxonMobil's claims "lack a 'substantial nexus' to New York" because they pertain only to the CID issued in Massachusetts. (Mass. Br. 24.) That contention not only contradicts the findings underlying Judge Kinkeade's transfer order, but it also disregards ExxonMobil's factual allegations, which are not limited to the issuance of the CID. Rather, ExxonMobil has alleged constitutional violations arising out of the investigation as a whole and "the actions of the attorneys general at, and before, the press conference," as well as their participation in a conspiracy firmly rooted in New York.[71] That the CID issued from Massachusetts is of no moment because "[t]here is no requirement that jurisdiction be grounded upon either the final act or the ultimate act causing the injury." *Southridge Capital Mgmt., LLC* v. *Lowry*, 188 F. Supp. 2d 388, 398 (S.D.N.Y. 2002) (quoting *Legros* v. *Irving*, 327 N.Y.S.2d 371, 373-74 (1st Dep't 1971)). It is sufficient where, as here, the litigation "is related to and grows out of" contacts with

_____

[71] ECF No. 180 at 3.

New York. *Legros*, 327 N.Y.S.2d at 374.

After sufficient minimum contacts have been established (as they have here), the burden is on the defendant "to present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Eades*, 799 F.3d at 169. Attorney General Healey has failed to do so. First, her travel, along with staff, to attend the press conference in New York undercuts any claim of undue hardship. *See Thorsen* v. *Sons of Norway*, 996 F. Supp. 2d 143, 159 (E.D.N.Y. 2014); *see also Launer*, 916 F. Supp. at 210 ("It is important to emphasize that defendants had a choice of where to conduct these meetings and chose New York."). Second, New York has a strong interest in preventing and adjudicating alleged tortious acts committed within its borders. *See LaChapelle* v. *Torres*, 1 F. Supp. 3d 163, 180 (S.D.N.Y. 2014). Third, both ExxonMobil and the interstate judicial system have "a decided interest in a comprehensive resolution of related claims in a single litigation against . . . related defendants," *Simon* v. *Philip Morris, Inc.*, 86 F. Supp. 2d 95, 134 (E.D.N.Y. 2000), because it is "burdensome and inefficient to pursue separate litigation in multiple forums against [non-resident defendants] while an action arising out of the same basic facts is litigated in New York." *LaChapelle*, 1 F. Supp. at 179. Fourth, the sovereign interests of Massachusetts do not render the exercise of jurisdiction unreasonable because due process limits on personal jurisdiction "represents a restriction on judicial power not as a matter of sovereignty, but as a matter of individual liberty." *Ins. Corp. of Ireland* v. *Compagnie des Bauxites de Guinee*, 456 U.S. 694, 702 (1982). There is nothing unreasonable about a federal court exercising personal jurisdiction over an official of another state who "deliberately travel[s] to" the forum and "extensively interact[s] with officials" of that state. *Lee* v. *City of L.A.*, 250 F.3d 668, 694 (9th Cir. 2001); *Doe* v. *Del. State Police*, 939 F. Supp. 2d 313, 335 (S.D.N.Y. 2013) (citing *Lee* with approval).

## CONCLUSION

If the position of the Attorneys General is accepted, federal courts could never adjudicate a challenge brought under federal law to the constitutionality of a subpoena issued by state officials. That would set a dangerous precedent, but there is no reason for this Court to embrace it, unsupported as it is by the doctrines of ripeness or *Colorado River* abstention. ExxonMobil has made a robust showing that the Attorneys General are engaged in a conspiracy to discriminate against perceived viewpoints on climate change policy that do not align with their politics. Because the investigations are currently violating ExxonMobil's First Amendment rights, ExxonMobil's claims are ripe. No exceptional circumstances justify abstaining from adjudicating those claims under the narrow doctrine of *Colorado River*, particularly because neither the New York nor Massachusetts state court has adjudicated or will adjudicate whether these investigations violate ExxonMobil's rights under the United States Constitution. Nor are ExxonMobil's federal constitutional claims precluded by the decision rendered in the narrow Massachusetts state court proceedings, which upheld the CID solely on the basis that it did not exceed the Massachusetts Attorney General's powers under state law. Finally, because a substantial part of the events giving rise to ExxonMobil's claims against Attorney General Healey occurred in New York, she is properly subject to the jurisdiction of this Court. For these reasons, the motions to dismiss should be denied.

Dated: June 16, 2017

EXXON MOBIL CORPORATION

By: /s/ Patrick J. Conlon
Patrick J. Conlon
patrick.j.conlon@exxonmobil.com
Daniel E. Bolia (*pro hac vice*)
daniel.e.bolia@exxonmobil.com
1301 Fannin Street
Houston, TX 77002
(832) 624-6336

/s/ Nina Cortell
Nina Cortell (*pro hac vice*)
nina.cortell@haynesboone.com
HAYNES & BOONE, LLP
2323 Victory Avenue
Suite 700
Dallas, TX 75219
(214) 651-5579
Fax: (214) 200-0411

/s/ Ralph H. Duggins
Ralph H. Duggins (*pro hac vice*)
rduggins@canteyhanger.com
Philip A. Vickers (*pro hac vice*)
pvickers@canteyhanger.com
CANTEY HANGER LLP
600 West 6th Street, Suite 300
Fort Worth, TX 76102
(817) 877-2800
Fax: (817) 877-2807

/s/ Theodore V. Wells, Jr.
Theodore V. Wells, Jr.
twells@paulweiss.com
Michele Hirshman
mhirshman@paulweiss.com
Daniel J. Toal
dtoal@paulweiss.com
PAUL, WEISS, RIFKIND, WHARTON &
GARRISON, LLP
1285 Avenue of the Americas
New York, NY 10019-6064
(212) 373-3000
Fax: (212) 757-3990

Justin Anderson
janderson@paulweiss.com
PAUL, WEISS, RIFKIND, WHARTON &
GARRISON, LLP
2001 K Street, NW
Washington, D.C. 20006-1047
(202) 223-7300
Fax: (202) 223-7420

*Counsel for Exxon Mobil Corporation*