# Exhibit 6

1

1

2   SUPREME COURT OF THE STATE OF NEW YORK

3   COUNTY OF NEW YORK:   TRIAL TERM PART 61

4   - - - - - - - - - - - - - - - - - - - - - - - - - - - X

5   In the Matter of the Application of the
    PEOPLE OF THE STATE OF NEW YORK
6   by ERIC T. SCHNEIDERMAN,
    Attorney General of the State of New York,

7

                         Petitioner,
8
    For an order pursuant to CPLR Section 2308(b)
9   to compel compliance with a subpoena issued
    by the Attorney General
10
             - against -
11
    PRICEWATERHOUSECOOPERS LLP and
12   EXXON MOBIL CORPORATION,

13                         Respondents .

14  - - - - - - - - - - - - - - - - - - - - - - - - - - - X
    Index No. 451962/2014
15
                         June 16, 2017
16                       60 Centre Street
                         New York, New York 10007
17
    B E F O R E:   THE HONORABLE BARRY R. OSTRAGER, Justice.
18
    A P P E A R A N C E S:
19
    STATE OF NEW YORK OFFICE OF THE
20  ATTORNEY GENERAL ERIC T. SCHNEIDERMAN
    120 Broadway
21  New York, New York 10271-0332
    BY:   JOHN OLESKE, ESQ.
22        MANISHA M. SHETH, ESQ.
          MANDY DeROCHE, ESQ.
23

24
    (Continued on next page for certification.)
25

26

          Terry-Ann Volberg, CSR, CRR, Official Court Reporter

App. 456

2

1                        Proceedings

2   A P P E A R A N C E S   (Continuing):

3   PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP
    Attorneys at Law
4   1285 Avenue of the Americas
    New York, New York 10019-6064
5   BY:   THEODORE V. WELLS, JR., ESQ.
          DANIEL J. TOAL, ESQ.
6         JUSTIN ANDERSON, ESQ.

7

8                              Terry-Ann Volberg, CSR, CRR
9                              Official Court Reporter.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

           Terry-Ann Volberg, CSR, CRR, Official Court Reporter

App. 457

3

1                          Proceedings

2                THE COURT:    Normally ExxonMobil is

3        outnumbered in the courtroom, but not today.

4                    I have orders to show cause which contain

5        ExxonMobil's motion to quash, and for a protective

6        order, and the Attorney General's motion to compel.

7                    As has been the case with respect to all of

8        our many prior proceedings, I have read all of the

9        papers, and I have some historical experience with

10       respect to these kinds of issues and disputes.  So what

11       I would like to do is take as the point of departure

12       the orders that were issued in connection with the

13       March 22nd transcript which I've reviewed in

14       anticipation of this morning's proceedings, and passing

15       the issue of what depositions and what interrogatories

16       the Attorney General may seek, I want to start today's

17       discussion about documents because it was my

18       understanding that everybody agreed that after 16

19       months of document production, and after complete

20       agreement on search terms and custodians and additional

21       search terms and additional custodians, that there

22       would be a certification within ten days after

23       March 31st that ExxonMobil had fully complied with its

24       obligations to produce documents, and that the Attorney

25       General would have the opportunity to depose affiants

26       who would attest to ExxonMobil's compliance with the

Terry-Ann Volberg, CSR, CRR, Official Court Reporter

4

1                          Proceedings

2         court orders of March 22nd, and with the agreements

3         that were reached at the March 22nd hearing.

4              Now if the affidavits were insufficient or

5         the depositions of the affiants were not satisfactory

6         and additional deponents are required with respect to

7         compliance with the orders issued on March 22nd and the

8         agreements reached on March 22nd, that seems like a

9         reasonable thing for the Attorney General to seek and

10        request although I understand ExxonMobil has a

11        different view.  With respect to interrogatories, it

12        seems to me that the Attorney General is entitled to

13        ask non-burdensome, non-overbroad, non-abusive

14        interrogatories.

15             Let's start with the issue of the Attorney

16        General's request for additional documents and

17        correspondence, the motion to quash that request.

18             So who wants to go first?

19             MR. WELLS:   I will go first.

20             THE COURT:   Mr. Wells has grabbed the floor.

21             MR. WELLS:   Your Honor, I asked your staff

22        if next time I can bring a computer and use a

23        PowerPoint instead of these somewhat archaic boards.

24             THE COURT:   We love the old-fashioned paper

25        presentations.

26             MR. WELLS:   For much of my life and yours

                Terry-Ann Volberg, CSR, CRR, Official Court Reporter

App. 459

5

| | |
|---|---|
| 1 | Proceedings |
| 2 | this is how we used to do it, so I am comfortable doing |
| 3 | it this way. |
| 4 | My first line is consistent with the comments |
| 5 | by your Honor because I think we need to start with |
| 6 | what happened on March 22nd. |
| 7 | I note, and we go back -- |
| 8 | MR. OLESKE: We can't see. |
| 9 | THE COURT: The attorney cannot see your |
| 10 | charts. |
| 11 | MR. WELLS: I can hand a copy of the slides |
| 12 | to your Honor. |
| 13 | THE COURT: I am happy to take it. |
| 14 | (Handing.) |
| 15 | MR. WELLS: We will mark that as Exxon |
| 16 | Exhibit Number One. |
| 17 | (Exxon Exhibit Number 1 marked in |
| 18 | evidence.) |
| 19 | MR. WELLS: On November 21, 2016, the New |
| 20 | York AG stated, "The production of documents from a |
| 21 | company like Exxon has to have an end date. We have to |
| 22 | have some expectation of the finality." Then on |
| 23 | March 22nd the New York AG stated, "No one wants more |
| 24 | than the Attorney General to complete the process of |
| 25 | obtaining these documents and moving on to the next |
| 26 | stage of the investigation." |

6

1                    Proceedings

2           We understood the next stage of the

3    investigation would be where they would begin taking

4    substantive depositions of the witnesses who they had

5    identified based on the production of almost three

6    million pages of documents.  We have no objection to

7    them going to that next stage and taking those

8    depositions.  I want to be clear.

9              Now what happened after that -- also, what

10   happened that day, again consistent with your Honor's

11   comments, I stood up and I said, here's what I

12   understand I am supposed to do.  I am supposed to give

13   certain documents to them by the 31st.  I am supposed

14   to get a certification by April the 10th.

15             We moved heaven and earth to finish the

16   document production.  We got them the certification on

17   time as required, and they were even permitted, as

18   indicated by the court, to depose my partner, Michele

19   Hirshman, with respect to certification, but the whole

20   purpose of the certification was that it was to certify

21   that the process was over.  Again, we did that.

22             I even talked about, I said, I will do that

23   with this final certification which usually comes at

24   the end of process.  You tried to ask me to get it by

25   March 31, you gave me ten extra days, but everyone was

26   on the same page.  We knew what we were talking about,

Terry-Ann Volberg, CSR, CRR, Official Court Reporter

App. 461

7

1                          Proceedings

2        we would end the document production and move to

3        depositions.

4                 Now what happened thereafter is that on

5        May 8th we were served with a new subpoena requesting

6        depositions and requesting documents.  Now the

7        depositions they requested, which we have no objection

8        to involve depositions, that would be part of the next

9        stage, the substantive witnesses.  These witnesses are

10       very important because they asked for five substantive

11       witnesses.  One we don't control, we can deal with that

12       later, but the other four people who we agreed to

13       immediately were Bill Colton, vice president of

14       Corporate Strategic Planning.  His deposition is

15       scheduled for June 27.  That's the date they asked for.

16       We didn't negotiate with them about extending it.  They

17       asked for June 27.  We said that he is happy to

18       testify, we will produce him, and we plan to produce

19       him on June 27.  They asked for Robert Bailes, he is

20       scheduled for July 19, Pete Trelenberg, he is scheduled

21       for July 25, and Guy Powell, he is scheduled for

22       July 28.

23                 What is important about these four people is

24       that all of them are involved in identifying what the

25       proxy costs are, and how it's developed, and also

26       how -- what GHG costs are, and how they are developed.

Terry-Ann Volberg, CSR, CRR, Official Court Reporter

App. 462

8

1                          Proceedings

2       They are two very different concepts, but in their

3       papers what they talk about is, they seem to say

4       there's a difference between proxy costs and GHG costs,

5       and they suggest someone -- we have two sets of books.

6       The fact of the matter is, proxy cost is a different

7       concept than GHG cost, and they are used for different

8       purposes.

9               The important thing is that Mr. Colton is the

10      author of the Energy Outlook, and he is also the head

11      of corporate planning which deals with the budgeting

12      part, and they asked for him first, and we told them

13      that's the right person to talk to because he can

14      explain all of the role of the proxy cost to you, he

15      can explain how those costs are used with respect to

16      budgeting, he can explain GHG, how all of this is done.

17      They just waited to take the deposition of Mr. Colton

18      because he really is the boss, so to speak, he is the

19      author of the Energy Outlook, and because he heads the

20      budgeting process on the corporate planning side, he

21      brings the two things together.

22              So they waited to take this deposition.  They

23      wanted to see if it would be necessary.  They asked for

24      all these documents.  It would be unnecessary to file

25      these outrageous allegations about sham accounting, and

26      double books, and two numbers.  It was just wrong, what

Terry-Ann Volberg, CSR, CRR, Official Court Reporter

App. 463

                              Proceedings

1       they did.

2              I want to be clear:  All of these people are

3       scheduled to be deposed, and we didn't fight them.  We

4       said, happy to bring them in, and this is the first

5       date they asked for, and he will be produced.

6              Now turning to what else they did do on the

7       8th, they served a subpoena which we contend is

8       contrary to the agreements reached on March 22nd, is

9       unnecessary, is overly burdensome, which is grounded in

10      some notion of sham transactions that if they bothered

11      to take the deps first, we wouldn't have to be here and

12      spend all of this time on all of these papers.  What

13      they did, they asked for the deps which we agreed to,

14      but yet they asked for us to put together 12 years of

15      analysis involving every business decision in terms of

16      oil and gas exploration that Exxon has made over 12

17      years.  This is not pushing some button.  There is no

18      pushing a button.  This would take a year, two years to

19      do.  It would take a long time.  Nobody really knows.

20      Nobody has ever engaged in that type of exercise.

21             THE COURT:  Subject to what the Attorney

22      General is going to say, that seems unreasonable on its

23      face.

24             Now let me be clear:  The four people who are

25      being deposed, those were custodians from whom

FILED: NEW YORK COUNTY CLERK 06/21/2017 02:24 PM
NYSCEF DOC. NO. Case 1:17-cv-02301-VEC Document 235-6 Filed 06/30/17 Page 11 of 102

INDEX NO. 451962/2016
NYSCEF: 06/21/2017

10

1                          Proceedings

2       documents were previously requested?

3                  MR. WELLS:   Yes, that's how they know their

4       names, and they identified -- they have had hundreds of

5       pages of documents on proxy costs and the Outlook, and

6       based on their review of the documents they knew

7       exactly who they asked for.

8                  They set up Mr. Colton first.  We agreed, he

9       is the boss.  He is the one that can tell you

10      everything.  He is the author of the Energy Outlook.

11      He is --

12                 THE COURT:   Look, subject to what the

13      Attorney General says, it seems to me that these

14      deponents were previously identified as custodians, and

15      you produced all the documents in their files that were

16      called for by the search terms that were expanded at

17      prior, at a prior hearing that we had, and that there

18      shouldn't be any more documents produced because over

19      16 months the Attorney General has made multiple

20      motions to compel, revised the number of custodians,

21      revised the search terms, and they are going to get a

22      lot more information from the depositions than they are

23      going to get from these documents.

24                 MR. WELLS:   Yes, it's not like they would

25      even have these documents by June 27 because this would

26      take an enormous amount of manpower to even produce.

Terry-Ann Volberg, CSR, CRR, Official Court Reporter

App. 465

11

1                         Proceedings

2        It's not like we are taking a dep. June 27, and we need

3        this particular piece of paper next week.  There is a

4        complete disconnect, in fact.

5                 THE COURT:   Let me ask you this, Mr. Wells,

6        because I know that you have a dozen more boards.

7                 MR. WELLS:   I wish it was only a dozen.

8                 THE COURT:   At the rate we are going, we

9        will be here until 4:00 o'clock.

10                You would agree that the Attorney General can

11       supplement its document requests with tailored

12       interrogatories requesting responses to certain

13       questions that arise from the content of the documents

14       that you already produced?

15                MR. WELLS:   I agree that they have the

16       statutory power to pose interrogatories that are

17       reasonable.  I would argue if they are taking the deps

18       of 14 people, that they will take the deps first before

19       people start running around engaging in

20       interrogatories, but the concept, I agree, that they

21       have the statutory power to request an interrogatory.

22       I agree that they have that power.  Whether they --

23       whether it makes any sense given that they are

24       producing witnesses is something, I guess, you have to

25       see is it a targeted interrogatory or not.  You would

26       have to look at the interrogatory.  But do they have

Terry-Ann Volberg, CSR, CRR, Official Court Reporter

App. 466

1                    Proceedings

2          the power?  I agree they have the power.

3                    THE COURT:   Okay, because I believe they

4          have the power to propound interrogatories as long as

5          the interrogatories are not excessively burdensome,

6          unreasonable and abusive.

7                    I'm sorry.  I interrupted you.

8                    MR. WELLS:   I thought you were going to

9          interrupt me in the way you wanted us to short

10         circuit --

11                   THE COURT:   I am comfortable that you should

12         be producing witnesses, responding to interrogatories,

13         and not producing any more documents subject to what

14         the AG says.

15                   MR. WELLS:   May I have one second, your

16         Honor?

17                   THE COURT:  Yes.

18                   (Discussion off the record.)

19                   (The discussion off the record

20             concluded and the following occurred in

21             open court:)

22                   MR. WELLS:   I am going to try and cut some

23         of this short.

24                   What I want to do for the court's edification

25         is state for the record that there's a difference

26         between what we call proxy costs and GHG costs,

Terry-Ann Volberg, CSR, CRR, Official Court Reporter

App. 467

13

1                          Proceedings

2          greenhouse gas costs.

3                    THE COURT:   I get it.  I get it that if you

4          know exactly how much it costs to take oil out of the

5          ground in Alberta, you don't need to have a proxy cost.

6                    MR. WELLS:   That's what I want to clarify.

7          We actually used both.  There are two different

8          concepts.

9                    When the Energy Outlook talks about proxy

10         costs, that is the cost of proxy that ExxonMobil uses

11         for purposes of developing what it thinks the demand

12         will be for energy, oil and gas over the years.

13                   THE COURT:   Understood, but you start with

14         how much it costs to get it out of the ground, and then

15         you figure out how much you can sell it for.

16                   MR. WELLS:   Yes.  We actually start with

17         what we think the demand will be before we get to cost.

18         We do both, whether it's a chicken or an egg, but the

19         proxy cost refers to the development of the demand

20         curve.

21                   When you take into consideration a proxy

22         cost, what you are saying is that the actions of

23         governments in the future may be such as to suppress

24         the demand for oil and gas, move people to use other

25         types of energy sources, and that's going to suppress

26         the demand, and that affects our supply and demand

Terry-Ann Volberg, CSR, CRR, Official Court Reporter

App. 468

1                          Proceedings

2          which ultimately affects the price.

3                    THE COURT:   I understand.  We said the same

4          thing differently.

5                    MR. WELLS:   The GHG, those are specific

6          costs for specific projects, and they both come

7          together, but the proxy costs are really baked in to

8          our demand forecast.  This is a document that we

9          produced to the New York AG, and what this document in

10         front of it is a GHG Stabilization Challenge and Carbon

11         Asset.  This shows that the Energy Outlook takes all

12         sorts of things into consideration: macroeconomics,

13         technology, climate policy, all to ultimately produce,

14         again, a price curve, what's going to be the demand.

15         Then we figure out what the prices are.  So the Energy

16         Outlook is one of the most important documents at

17         Exxon, and it's used to analyze every project because

18         that's where we end up getting our prices.

19                   Now I want to show one document that they

20         refer to in their brief, they did not supply it to the

21         court or us, but it's a document from

22         PricewaterhouseCoopers.  It's a critical document, four

23         pages.  I won't go through all of it, but what this

24         document shows is ExxonMobil having discussions with

25         its accountants about both proxy costs and GHG costs,

26         and how it goes about doing what it does in terms of

Terry-Ann Volberg, CSR, CRR, Official Court Reporter

15

1                        Proceedings

2       taking into consideration climate change issues.

3              All of this was discussed with our

4       accountants, they know all of this, and how, with

5       knowledge of this document, they can file papers where

6       they wrongly state that we were involved in some kind

7       of sham transaction or had two sets of books, it's just

8       wrong what they did.

9              I would like to hand the court a copy.  I

10      will make this Exxon Exhibit 2.

11             (Exxon Exhibit Number 2 marked in

12          evidence.)

13             MR. WELLS:  Your Honor, do you have the

14      document?

15             THE COURT:  I do.

16             I am having a hard time understanding what

17      the dispute is here.

18             MR. WELLS:  They filed -- they filed a

19      brief --

20             THE COURT:  They filed a brief.  They said

21      you did terrible things. .You're unhappy that they

22      filed the brief that said you did terrible things.  You

23      did what you did.  The documents that you produce say

24      what they say.  The witnesses that you are going to

25      produce are going to testify to what they are going to

26      testify to.  The interrogatories that you are going to

Terry-Ann Volberg, CSR, CRR, Official Court Reporter

App. 470

16

1                              Proceedings

2          answer are going to be admissible against you in any

3          trial proceeding.

4                    I'm having a hard time understanding how it

5          is that the New York AG after receiving all of these

6          millions of documents and deposing all of the witnesses

7          that they have scheduled and are going to schedule in

8          the future are going to be unable to satisfy themselves

9          as to what the true state of facts is here.

10                   MR. WELLS:   Well, your Honor, we believe

11         based on documents we have given them, and, for

12         example, this document (indicating), that they should

13         know that the true state of facts is that ExxonMobil

14         has not done anything wrong.

15                   THE COURT:   Okay.   They have one

16         interpretation of the documents that you've produced.

17         You have a different interpretation of the documents

18         that you've produced.   The two briefs that have been

19         submitted here can't be reconciled, and I can't decide

20         who's right and who's wrong on the papers.   I suppose I

21         could conduct a trial and hear the witnesses that the

22         AG is going to depose, and review the documents in the

23         context of the testimony and form some very accurate

24         conclusions about whose version of the facts is

25         correct, but we are not here for that.   We are here to

26         decide whether or not you have to produce any more

Terry-Ann Volberg, CSR, CRR, Official Court Reporter

App. 471

17

Proceedings

1

2    documents, whether or not you have to produce any more

3    witnesses, and whether or not you have to answer any

4    interrogatories, right?

5             MR. WELLS:   That is correct, your Honor.

6             MR. OLESKE:   I think I can help with these

7    points specifically, if I may.  I mean, I think I can

8    cut to exactly --

9             THE COURT:   I don't want to interrupt

10   Mr. Wells, but if he does not object --

11            MR. OLESKE:   I mean --

12            MR. WELLS:   I do not object.

13            THE COURT:   He dose not object.

14            MR. OLESKE:   Thank you, your Honor.

15        I mean, I am prepared to speak to everything

16   Mr. Wells raised, and, obviously, based on what the

17   court said, the Attorney General has its work cut out

18   to make sure it's clear to the court the stakes here,

19   and what's at issue specifically in terms of the

20   document requests that the court has focused on.

21        But just to come from where the court was

22   just speaking, this is not a merits dispute.  The

23   posture we are in on subpoena compliance in a law

24   enforcement investigation does not allow for the

25   weighing of merits disputes.

26        THE COURT:   I complete and totally agree.

Terry-Ann Volberg, CSR, CRR, Official Court Reporter

App. 472

18

Proceedings

MR. OLESKE:   And so based on the papers and the record that we have here, the Attorney General has the right to proceed with this investigation.   I think your Honor has already pointed to the right to take interrogatories, the right to take witnesses.   The key stumbling block it seems for the court is whether or not the Attorney General has the right to get these additional documents to support its investigation, and it appears that there is kind of a dangerous possibility of Exxon managing, through what we view as a contemptible history of compliance, of establishing some new now non-existent legal standard that if a company produces X million documents over X period of time, that's it, you are done.

Going to your Honor's initial point about the last time we were here for compliance and your Honor ordered what your Honor ordered with respect to compliance on the original subpoena, to your Honor's implicit question of time, we are deeply unsatisfied with the information that we got out of Exxon's compliance witness both in the affidavit and in the testimony.   There's years worth of destroyed documents that the company still has not accounted for, and that's the four records witness subpoenas that we have issued that Exxon's also contesting and doesn't want to

19

                        Proceedings

1

2       submit to, to find out where these destroyed documents

3       are and how that happened.

4                   Putting that aside for a moment, it's really

5       not about whether or not Exxon finished its compliance

6       under the first subpoena, which we don't think they

7       did.  We have issues there.  The real issue is based on

8       what we have learned in fits and starts as Exxon has at

9       every move grudgingly given us information over this

10      extended period of time, lost and destroyed documents

11      along the way, had to redo everything at the end, at

12      the end of that we have.  As your Honor suggested in

13      our prior appearances, we focused our investigation on

14      the specific allegations that the evidence Exxon has

15      produced in that first round evidences, are

16      contradictory to Exxon's representations.

17                  I am not getting into everything that

18      Mr. Wells said about what Exxon has disclosed which is

19      unfortunately false.  Exxon's disclosure is there was a

20      product that was one price.  It was used for both

21      purposes.  It's in the record.  I will not argue it,

22      but that's the merits question that we won't get to.

23                  The question is, the Attorney General has

24      formulated requests for documents based on the gaps,

25      the missing information, what should be there that we

26      are not getting even though we are using these search

          Terry-Ann Volberg, CSR, CRR, Official Court Reporter

20

1                            Proceedings

2      terms, GHG and proxy costs, but all of this stuff that

3      now for the first time in an attorney affirmation Exxon

4      is explaining to us, because in an attorney's brief

5      Exxon is explaining to us about the facts of how they

6      do this.  We don't have these documents.  The search

7      terms should have caught them, but we don't have these

8      documents.

9                   Exxon has continued to make these same

10     representations after November of 2015 when we issued

11     the subpoena.  In fact, their CEO chairman made the

12     most unqualified statements about this process at the

13     annual shareholders meeting in 2016.

14                  Our subpoena's instructions called for Exxon

15     to produce documents up to the date of the production.

16     They didn't finish their management documents until two

17     or three months ago because they did it wrong the first

18     time, they had to redo it, but they refused.  They

19     refused to ongoing -- supplement their production by

20     giving us the documents from 2016.  They refused to do

21     that even though they are obviously relevant.

22                  We asked for documents relating to Exxon's

23     impairment and write-down of assets because we learned

24     in the course of the investigation, your Honor

25     instructed us to go to Exxon's accounts first to

26     prosecute our subpoena there, get the documents from

Terry-Ann Volberg, CSR, CRR, Official Court Reporter

App. 475

21

1                    Proceedings

2       them, before asking, this was in an appearance last

3       year, before asking Exxon in a subsequent subpoena for

4       a broad range of counter-documents.

5               We listened to the court.  We went through

6       PricewaterhouseCoopers' documents.  We learned that

7       Exxon, contrary to its representations to the public,

8       never applied the proxy costs when it came to this

9       apparent analysis.  We learned it through the

10      PricewaterhouseCoopers documents, but we still don't

11      have Exxon documents.

12              THE COURT:   Look, you told me, Mr. Oleske,

13      that we are not arguing merits here.  We are just

14      arguing compliance with discovery.

15              MR. OLESKE:   Your Honor, it's not discovery,

16      it's our investigative subpoenas, and our new

17      investigative subpoenas are focused and have a factual

18      connection, direct factual connection to the factual

19      basis that we have established as the basis for our

20      investigation, and so legally there is no basis to

21      restrict the Attorney General from obtaining additional

22      documents simply because the target argues that they

23      complied in full with a first subpoena.  Even if it's

24      millions of pages, even if it takes a long time, the

25      cases we cite in our brief are directly on point about

26      companies exactly like Exxon that say the reason why we

Terry-Ann Volberg, CSR, CRR, Official Court Reporter

App. 476

22

1          Proceedings

2      need all of these documents, the reason why we need to

3      look over Exxon's business it because it has a big

4      complex business, and it chose to make the

5      representations that it applies this process all across

6      its business, across its many units for all of its

7      decisions.

8              So there is no legal basis.  It's just a

9      question of whether or not Exxon can talk its way out

10     of it by saying we produced X million documents so far,

11     you should have gotten these documents in what you were

12     looking for so far, but we haven't.

13             We have not seen -- this is the other

14     thing -- Exxon -- Mr. Wells says they can't push a

15     button to respond to this.  In addition to the other

16     ways in which Exxon's new assertions and attorney

17     argument violate, contradict its representations to the

18     public, Exxon has represented to the public that it has

19     a comprehensive, uniform, rigorous system for keeping

20     track of all of this, and now we are hearing Exxon cry

21     that it cannot report to a government investigation,

22     let alone for its own business purposes for

23     shareholders, this very information that Exxon claims

24     in its disclosure should be at its fingerprints about a

25     process that it's applying all over the company in

26     order to satisfy investors concerns about a specific

Terry-Ann Volberg, CSR, CRR, Official Court Reporter

App. 477

23

1                          Proceedings

2       risk.

3                  So the problem that we have is that we have

4       demonstrated the factual basis.  Exxon said X, they did

5       Y, and in response they have come up with Z, attorney

6       admissions of what they did and attorney rewritings of

7       their disclosures.  That's not a basis to resist the

8       investigation.  It's specifically on the document

9       requests.

10                 We have shown in our papers, I can walk

11      through each one, how these are focused on obtaining

12      additional information that is necessary to follow up

13      on the first feed.  That's within our office's power,

14      and the scope or the duration of the prior production

15      does not legally have an effect on that.  As to our

16      request for information --

17                 THE COURT:  I'm trying to make this simple.

18                 When you were here on March 27 Mr. Toal stood

19      up, and Mr. Toal said properly, it's our obligation as

20      attorneys for ExxonMobil to make a continuing

21      production of documents that come to our attention that

22      are responsive to the requests that have been made that

23      weren't produced, however it is that they come to learn

24      about things.  It's a big company, and they have

25      certified that they've complied with the production of

26      all responsive documents from all of the custodians

        Terry-Ann Volberg, CSR, CRR, Official Court Reporter

App. 478

24

1                          Proceedings

2          that you have asked them to produce documents from,

3          using all of the search terms that you've agreed.

4                  You are going to depose multiple witnesses,

5          you are going to propound interrogatories, and it seems

6          to me that during the course of the depositions that

7          you are going to conduct including additional

8          depositions to verify compliance, because I think

9          you've made a showing that their two affiants who they

10         have produced did not satisfy you that they have fully

11         complied with what they undertook to do.  So I'm not

12         precluding you from taking further depositions with

13         respect to their compliance.

14                 So I am not precluding you from propounding

15         reasonable interrogatories, I am not precluding you

16         from taking depositions, and I am not precluding you

17         from coming back here and explaining based on what the

18         additional depositions about process by which documents

19         were produced including why documents disappeared, and

20         based on what the witnesses testified to in their

21         depositions as fact witnesses, and what the

22         interrogatories you propound reveal that you need more

23         documents.

24                 What I am saying is that when you have

25         engaged in a 16 month process of requesting and

26         receiving documents from Exxon's auditors, agreeing

Terry-Ann Volberg, CSR, CRR, Official Court Reporter

App. 479

25

1                        Proceedings

2           with Exxon on custodians whose files you want searched,

3           agreeing with Exxon on what the search terms are that

4           are going to be used to produce documents from the

5           custodians, you can't start round two of producing

6           documents all over again.

7                        MR. OLESKE:   Your Honor, a couple of things.

8           I need to discuss each of the items, your Honor.  Okay.

9                        We have been in this process for 16 months.

10          Exxon has produced literally three million pages of

11          documents.  That process took that long, and we still

12          are without the documents we need because of Exxon's

13          choices.  They created this system of dribbling out

14          documents, fighting us at every turn.

15                       We didn't choose the custodians.  It's

16          Exxon's job to know where the documents, the relevant

17          documents are, who works with the right information.

18          Based on what we have just heard this last week now

19          there is a whole suite of relevant facts that Mr. Wells

20          is averring to for the first time on Exxon's behalf

21          ever.  We have not seen any documents referring to what

22          Mr. Wells has talked about.

23                       But putting aside the compliance with the

24          original subpoena and those issues that do need to be

25          resolved, that is not what we are here about.  The

26          Attorney General does have the authority even if --

Terry-Ann Volberg, CSR, CRR, Official Court Reporter

App. 480

FILED: NEW YORK COUNTY CLERK 06/21/2017 02:24 PM
NYSCEF DOC. NO. Case 1:17-cv-02301-VEC   Document 235-6   Filed 06/30/17   Page 27 of 102 CEF: 06/21/2017

INDEX NO. 451962/2016

26

1                          Proceedings

2                     THE COURT:   I understand you have the

3       authority to ask for additional documents.  I get that.

4       I get that.

5                     MR. OLESKE:   I will get to why --

6                     THE COURT:   You have the authority.  You

7       have to make a showing that by taking depositions, and

8       propounding interrogatories, and taking testimony from

9       the people who supervised the production of documents,

10      that they have misled you, and have, you know, failed

11      to be forthcoming.

12                    MR. OLESKE:   No, your Honor, I hear that

13      this is the critical issue for your Honor.

14                    There are two issues:   There's a legal issue

15      and a practical issues.  The legal issue is, no, that

16      is actually not the standard.  We are not required to

17      show, to sustain document requests that we are not

18      going to get the information we need through

19      alternative investigative techniques that we are also

20      empowered to use.

21                    On a practical level in this case, your

22      Honor --

23                    THE COURT:   You have not shown me that you

24      have not gotten the documents that you claim you need.

25                    MR. OLESKE:   We explained that in our

26      papers --

27

1                      Proceedings

2                THE COURT:   I read your papers.  I read

3       their papers.

4                MR. OLESKE:   The simplest example of all of

5       these, your Honor, is that we have Exxon in our

6       subpoena making one, two, three, four, five, six,

7       seven, eight, eight different public representations in

8       a different language, in different places, and

9       different formats to investors and the public about how

10      they have done this.  The witnesses that we are

11      talking -- by the way, they have changed that over the

12      last year.

13                THE COURT:   That's your case on the merits.

14                MR. OLESKE:   My point is, yes, that's what

15      we are investigating.  That's what we have a --

16                THE COURT:   Excuse me.  Can I ask you a

17      question?

18                MR. OLESKE:   Yes, your Honor.  I'm sorry.

19                THE COURT:   Were the words "proxy cost" not

20      one of the search terms that was used in connection

21      with the production of all of these documents?

22                MR. OLESKE:   That proves two things, your

23      Honor, two things.  Yes, it and GHG both were search

24      terms.  First of all, they refused to search the last

25      year and a half worth of documents for those terms.

26      Second, yes, and it shows us why we need these

Terry-Ann Volberg, CSR, CRR, Official Court Reporter

App. 482

28

1                              Proceedings

2         interrogatories and these document requests before we

3         decide who else we need to depose, take testimony.

4                    The reason why we need these documents now is

5         because, yes, we did have GHG, and we did have proxy

6         costs as search terms, and somehow the documents that

7         show Exxon applying this in its rigorous way and in

8         this new alternate world that Mr. Wells has described

9         that's never been disclosed before, they have not

10        produced those documents.

11                   So the answer to that is either the documents

12        don't exist, and we will find out when they respond we

13        don't have these documents, or Exxon was responsible

14        for interviewing and finding the right custodians which

15        we know from the outcome of our testimony they did not

16        do properly.  They should know where the custodians are

17        who have the documents that substantiate any of what

18        Mr. Wells has said.  We don't have that information.

19                   So the point is, them arguing that they

20        complied with the first subpoena, that they executed

21        the search terms, that this is what we have got, that,

22        as a matter of law, cannot preclude our office from

23        following up with additional, more specific, more

24        targeted requests for documents, and it is, in fact,

25        inefficient, it interferes with our ability to progress

26        our investigation, to wait to depose witnesses only to

Terry-Ann Volberg, CSR, CRR, Official Court Reporter

App. 483

29

1                        Proceedings

2        ask them so what documents are there, and then asking

3        let's just get the documents --

4                   THE COURT:   Can I just ask you a question?

5                   Why didn't you ask Exxon 16 months ago or 12

6        months ago, please, identify individuals at ExxonMobil

7        who have information or knowledge about the application

8        of an implementation and disclosure of proxy costs and

9        greenhouse gas costs?

10                  MR. OLESKE:   We did, your Honor.  We asked

11       them for that from the very beginning.

12                  THE COURT:   Did they respond to that?

13                  MR. OLESKE:   They identified some custodians

14       although outside counsel had no part in identifying the

15       outside custodians.  ExxonMobil's legal department by

16       itself unsupervised identified the custodians.

17                  THE COURT:   I am not precluding you from

18       asking that question right now.

19                  MR. OLESKE:   The point is --

20                  THE COURT:   And then if it turns out there

21       are people who should have been previously identified

22       and haven't been identified, then they will have to

23       produce the documents that those people have.

24                  MR. OLESKE:   I guess the point is, your

25       Honor, that we think it's a waste of your time, the

26       court's time, our time, Exxon's time, for us to be

Terry-Ann Volberg, CSR, CRR, Official Court Reporter

App. 484

30

1               Proceedings

2     trying to relitigate the custodian's or search terms

3     under the first subpoena.  We have issued these new

4     subpoenas, we have narrowed requests for documents and

5     for information to make sure that we are not wasting

6     everybody's time.

7               THE COURT:  I think you are wasting my time

8     because Mr. Toal said he was going to produce any

9     documents that come into his possession that are

10    responsive to your first subpoena and that would

11    include 2016 and 2017.

12              MR. OLESKE:  They refused, your Honor.

13              THE COURT:  Well, then I am ordering them to

14    produce those documents.

15              MR. OLESKE:  But the other documents we are

16    asking for, your Honor --

17              THE COURT:  So those documents will be

18    produced because those are documents that they had a

19    continuing obligation to produce.

20              MR. OLESKE:  We agree.  Your Honor, when we

21    tried to meet and confer over this we pointed that out

22    to them.  They refused to meet and confer about any of

23    these requests.

24              THE COURT:  We have solved your problem with

25    respect to those custodians.  They are going to honor

26    the undertaking they made in open court on March 22nd.

Terry-Ann Volberg, CSR, CRR, Official Court Reporter

App. 485

31

Proceedings

1

2      MR. OLESKE:  I appreciate that.  We solved

3  that for one problem, for one of our document requests,

4  document question number two.  We appreciate, yes, they

5  had that obligation all along and refused it.  That's

6  why we issued this targeted subpoena for that.

7      THE COURT:  They also have an obligation to

8  produce documents that are generally responsive to the

9  issues that you've framed in your search terms that

10  they are aware of.

11      MR. OLESKE:  Right.  That's why we thought

12  had they had an obligation to produce this without a

13  second subpoena, your Honor.

14      THE COURT:  That's what they are going to

15  do.  That's what they are going to do.

16      MR. OLESKE:  The additional --

17      THE COURT:  You don't need to propound any

18  additional document requests because they know what

19  their obligations are and they are going to comply with

20  their obligations.

21      MR. OLESKE:  The other document requests are

22  not encompassed by their failure to produce on the

23  first subpoena.  They are independently,

24  factually-based document requests for new documents.

25  They need to figure out, just like they always had an

26  obligation, the people who have these responsive

Terry-Ann Volberg, CSR, CRR, Official Court Reporter

App. 486

32

1                        Proceedings

2        documents for these new requests for subject matters

3        that have grown out of our investigation for which we

4        have demonstrated a factual basis and a connection

5        between that factual basis and these new requests.  For

6        example --

7                    THE COURT:   Let me ask Mr. Wells two

8        questions.

9                    Mr. Wells, you agree that Exxon has an

10       obligation to produce documents that come to Exxon's

11       attention that are responsive to the original subpoena

12       that was issued, correct?

13                   MR. WELLS:   If --

14                   THE COURT:   A continuing obligation?

15                   MR. WELLS:   I don't think we have -- it's

16       just a definitional issue.  I don't think after we have

17       gone out and searched the files, talked to custodians,

18       and produced the documents that every day of the week

19       until this investigation is over --

20                   THE COURT:   Not every day of the week, but

21       if a whole year goes by from the time that the original

22       document request was propounded, and the files get

23       filled up with a year's worth of stuff, I am not

24       suggesting you have to mark to market every document

25       that comes, that's generated on a daily or weekly

26       basis, but when a whole year goes by, and there's a

Terry-Ann Volberg, CSR, CRR, Official Court Reporter

App. 487

33

1              Proceedings

2       plethora of documents that respond to an outstanding

3       subpoena, you have an obligation to produce those

4       documents.

5              MR. WELLS:   If that's the issue, implicit in

6       what you are saying is if this investigation goes say

7       another three years, G-d forbid, that either every six

8       months or every year we have got to spend it will be

9       millions of dollars to go back and search 142 custodian

10      files on an annual basis.  I don't think that's how

11      most subpoenas work.  That's not how it's usually done.

12              We have produced up to the date.  Now if I

13      come across something, okay, I don't think I have to

14      produce it, but whether it's civil litigation or an

15      investigatory litigation, I don't think we have, in a

16      big production like this, have to go back and redo it

17      at a cost of millions of dollars every six months.  I

18      don't think that's --

19              THE COURT:   What we are trying to accomplish

20      today with no cooperation from either party is to move

21      the investigation from the document phase, into the

22      deposition phase, into the subsequent phase whether

23      that's a trial, whether that's a consensual resolution,

24      whether that's an injunction hearing.  We are trying to

25      get beyond, you know, being stuck in a time warp where

26      you come back to court 17 times arguing about

Terry-Ann Volberg, CSR, CRR, Official Court Reporter

App. 488

34

1                          Proceedings

2       documents.

3                    I suggested 15 times that you meet and

4       confer, and come to some reasonable resolutions, and at

5       least six or seven times we have gotten these competing

6       motions to compel or motions to quash.

7                    MR. WELLS:   In terms of cooperation, what we

8       all agreed to, I thought on March 22, is that we would

9       move to the next stage.  When they asked to depose the

10      key people with respect to proxy costs, they asked for

11      June 27, I said he will be there.  When they asked for

12      the other dates, he will be there.  We didn't move to

13      quash the deposition subpoenas, because that's where

14      everybody agreed where we were going.

15                   So in terms of cooperation, they asked for

16      these four people, and we gave them.

17                   THE COURT:   I don't think it's a huge

18      concession on the part of ExxonMobil to produce four

19      people who the Attorney General has requested to give

20      deposition testimony after 16 months of document

21      production.

22                   Let me interrupt these proceedings.

23      Everybody stay right where you are.  I have one other

24      matter that I need to deal with.

25                   (A recess was taken.)

26                   (After the recess the following

Terry-Ann Volberg, CSR, CRR, Official Court Reporter

App. 489

35

                              Proceedings

2         occurred:)

3                  THE COURT:   Mr. Wells, I think you had the

4         floor.

5                  MR. WELLS:   Thank you, your Honor.

6                  I will try to be brief.

7                  With respect to the issue of updating the

8         document production aspect, what I want the court to

9         consider is the fact that to update a request of this

10        magnitude with 142 custodians where we are now going to

11        have to go back and interview each custodian to see

12        what additional hard copies he or she may have, we are

13        going to have to go back, get their electronic

14        documents, and load them, and search them, we will have

15        to do a privilege review, we are talking about many

16        months of works, and hundreds and hundreds of thousands

17        of dollars of work.  This is not a situation -- I think

18        what Mr. Toal was referring to, if Paul, Weiss comes

19        across a document, someone has a document that we know

20        is responsive, and we have a continuing obligation to

21        produce it, that's a different representation he made

22        than going out and basically redoing this document

23        production that we have been doing for 16 months to

24        update for another year.

25                 With that said, if that is what your Honor

26        wants us to do, we will go out, and we will do it.

         Terry-Ann Volberg, CSR, CRR, Official Court Reporter

App. 490

36

1                          Proceedings

2                 THE COURT:    That's what I want you to do.

3                 If you are asking me whether I think that the

4      Attorney General is perpetually investigating things

5      that could and should be conclusively resolved through

6      depositions and interrogatories in a much shorter

7      period of time than the Attorney General has already

8      spent investigating this issue, I would tell you the

9      answer to that question is yes.   That's beside the

10     point.   They have certain statutory powers that I

11     can't --

12                 MR. WELLS:    What we will do with the

13     depositions?   That's the next implication.

14                 So what's going to happen is they are going

15     to start taking depositions, these four people.   I

16     assume they will keep taking depositions.   It's going

17     to take us a number of months to re-update, update this

18     production.   Then they are going to come back and say

19     they want to depose all the people again because now

20     they have new documents.

21                 So it would seem if that's what they want,

22     that we just go back to square one and put off the

23     depositions because, otherwise, this thing will be a

24     continuous loop (indicating).

25                 THE COURT:    I completely understand, which

26     is why I have encouraged the parties to meet and

Terry-Ann Volberg, CSR, CRR, Official Court Reporter

App. 491

1                          Proceedings

2          confer, and save each other a great deal of time and

3          effort, but I don't think the scope of this

4          investigation is so massive, and that issues that they

5          are investigating are so arcane and require such

6          sleuthing to get to the bottom of that, that

7          ExxonMobil's entire business has to be audited, and

8          every document in ExxonMobil's files has to be

9          produced.  I think the answers to their questions

10         reside in the minds of a half dozen or more witnesses

11         who they could depose, and are reflected in some

12         manageable number of documents which is a tiny, tiny,

13         tiny fraction of the documents that you have produced

14         and are going to produce.  That's very clear to me.

15              But, again, the Attorney General has certain

16         statutory powers.  They are exercising those powers.  I

17         can't interfere with their exercise of those powers

18         except to the extent of preventing abuses.  So if they

19         want to spend another 18 months doing what they have

20         done for the last 16 months, I am not in a position to

21         stop them from doing that.

22              But I'm not ordering you to produce any

23         documents from any custodians that aren't responsive to

24         the search terms that they have already agreed to.  I

25         am ordering you to produce the additional witnesses to

26         testify about the completion of the responses to their

Terry-Ann Volberg, CSR, CRR, Official Court Reporter

App. 492

38

Proceedings

1

2    document requests that you claim are fully complied

3    with, and I am ordering you to update your document

4    production in accordance with their requests.

5          MR. WELLS:   May we have an understanding

6    that the update will be as of today?  We need a date

7    from which we are doing this.

8          THE COURT:   Surely it being June of 2017,

9    and this investigation having been ongoing for 16

10   months, June of 2016 seems like a reasonable cutoff

11   date to me.  You can't keep moving the goal post.

12         MR. OLESKE:   You said June of 2016.

13         THE COURT:   I said June of 2016.  You can't

14   keep moving the goal posts.

15         MR. OLESKE:   The subpoena was issued in

16   November of 2015.  Okay.  The events described in the

17   subpoena run all throughout 2016.  We are asking for it

18   to be updated to the date of production.  If Mr. Wells

19   wants it for the purposes of this order to be today,

20   that's one thing.  We don't understand the basis for

21   them only producing between November 2015 and June of

22   2016.

23         THE COURT:   What do you think has changed in

24   the last six months?

25         MR. OLESKE:   In our documents we show, in

26   our papers we show Exxon has changed its practices and

Terry-Ann Volberg, CSR, CRR, Official Court Reporter

App. 493

39

1                          Proceedings

2        has modified its representations both in, throughout

3        the course of 2016.  That's why documents from 2016 are

4        so vital for our investigation.

5                  THE COURT:  You want documents through the

6        conclusion of 2016?

7                  MR. OLESKE:  We believe we are entitled to

8        them up to the present day, your Honor.

9                  THE COURT:  Look, they cannot and no

10       corporation can be required to produce on a daily or

11       weekly or monthly basis every document that is

12       generated by that corporation.

13                 MR. OLESKE:  Your Honor, let me, first, go

14       to the purported unfairness of this.

15                 Exxon did not actually finish its collection

16       of management documents until two months ago.  It just

17       deliberately left out the documents from the

18       intervening gap as a matter of policy.

19                 Second, Exxon issued two new reports on this

20       very subject presumably involving these same people

21       with new and different language, with new and different

22       internal policies in April of 2017.  There is no legal

23       basis to arbitrarily decide the Attorney General cannot

24       investigate and ask for documents about those

25       representations which link up with all of these other

26       representations that Exxon has on the documents we have

40

1                          Proceedings

2        seen so far.

3                  THE COURT:   You have those documents.

4                  MR. OLESKE:   No, we don't have any documents

5        from 2016 or '17.

6                  THE COURT:   You just told me that they

7        changed their practices.

8                  MR. OLESKE:   First of all, yes, we know

9        that, for example, in 2016 it appears from what we have

10       seen from PricewaterhouseCoopers, because we did that

11       first as your Honor directed us to do -- your Honor

12       said that these impairment requests, our request number

13       four in your prior order, was not responsive to our

14       first subpoena, that we had to go to Pricewaterhouse

15       and search, which we did, got the documents, we got

16       Pricewaterhouse's documents showing them never doing

17       any of this up to 2016, at least for the PWC documents,

18       and then something changes in 2016, and they start

19       doing something new on this same subject matter.

20                 We don't have any of the documents from Exxon

21       because your Honor told us it wasn't responsive to the

22       first subpoena, and to go to PricewaterhouseCoopers

23       first.  We did both of those things.  We developed this

24       information inculpating the company.  They have

25       continued to make representations to the present day.

26                 We are asking for not just this update, but,

41

Proceedings

for example, when it comes to impairment, when it comes to Exxon's documents about value, its long-lived assets that were previously ruled not part of the first subpoena, we connected their relevance to our factual basis, we have shown why the subject matter is tied to Exxon's representations and our potential fraud case.

Your Honor had previously precluded us from getting these documents --

THE COURT:  I may be obtuse, but it seems to me that you will have these witnesses, and these witnesses have percipient knowledge of Exxon's practices.

MR. OLESKE:  They don't have knowledge of that.  That's part of the point of these documents. Some of these document requests are not for stuff covered by the first subpoena.  They are not -- these witnesses -- this is the other bigger picture, if I can step back for a minute, your Honor.

The standard here for stopping us from any of these requests including the document requests is that it's not going to recover anything, any information that is relevant.  In fact, the showing has to be that it's utterly irrelevant to our investigation.  Now I understand, your Honor has referred multiple times, so has counsel, to depositions.  These are, in fact, not

Terry-Ann Volberg, CSR, CRR, Official Court Reporter

App. 496

42

Proceedings

1

2   depositions.  These are investigative hearings that the

3   Attorney General has chosen these four witnesses to

4   start with.  We have other, many other employees from

5   Exxon --

6               THE COURT:   I am sure you are going to take

7   dozens of --

8               MR. OLESKE:   But we can't decide -- this is

9   the point:  Exxon is inviting you into something

10  dangerous here.  Exxon is inviting the court to decide

11  how the Attorney General should stage its

12  investigation, and to make judgment calls that we don't

13  really need these documents now to decide what

14  witnesses we will take down the road, we don't need

15  those witnesses now to find out whether or not we heard

16  what we need to hear from these witnesses.  One of

17  these document requests is for the documents relevant

18  to the interrogatories that your Honor has already

19  ruled we take.

20              THE COURT:   Look, respectfully, there is a

21  hard way to do things and there is an easy way to do

22  things.

23              MR. OLESKE:   We have been trying --

24              THE COURT:   The easy way to do things, the

25  easy way to do things is to examine witness X, ask

26  witness X, who knows about this, that or the other

Terry-Ann Volberg, CSR, CRR, Official Court Reporter

App. 497

43

Proceedings

1

2     thing.  Then examine the witnesses who were identified

3     by witness X, and examine each of those witnesses who

4     knows about this, that or the other thing.  And if you

5     had done that on day one you would be a thousand yards

6     ahead of where you are today.

7            MR. OLESKE:  Your Honor, with all due

8     respect, that has not been our experience in this

9     investigation.  We have examined so far two witnesses

10     in testimony, and, no, it has not been an efficient

11     process, and our discretionary determination during the

12     course of this investigation is that we needed these

13     documents to figure out who to depose, and what

14     questions to ask them, and to be able to evaluate,

15     sorry, to take testimony from and to evaluate their

16     testimony.  We still need the documents for the same

17     reason.

18            There is no legal basis, Exxon has not met

19     any of the legal standards to deny us the factual basis

20     to proceed or to show that these document requests are

21     burdensome in any way.  They have not met any of their

22     required factual showings.

23            THE COURT:  You don't think it's burdensome

24     to search 130 custodians?

25            MR. OLESKE:  As a matter of law, your Honor,

26     even if Exxon had come into this with clean hands, as a

Terry-Ann Volberg, CSR, CRR, Official Court Reporter

App. 498

44

1                          Proceedings

2          matter of law, no.  For large companies that are spread

3          all over the world, that have these kinds of

4          operations, and when the allegations of potential fraud

5          cover those operations, the courts have been unified,

6          no, it is not a reason to deny such a request.

7                    Your Honor, more importantly, the fact is,

8          Exxon's hands have not been clean in this.  Exxon

9          refused to meet and confer with us about these requests

10         before we came in here.  We were happy to talk to Exxon

11         about how these could be staged or prioritized, how

12         they could be narrowed, how the interrogatories could

13         help defer the need for some of the documents.  We were

14         happy.  They refused, your Honor, and forced us here

15         and now have to substantiate, contrary to the law, each

16         of the bases for our document requests even though in

17         our papers we demonstrated their connection to our

18         factual basis, how they are narrow requests aiming at

19         information that either was improperly withheld the

20         recent documents from the original subpoena or requests

21         that were not covered by the original subpoena that are

22         vital for our continued investigation.

23                    Again, with all respect, this is not a civil

24         discovery dispute where the court has the wide

25         discretion to gauge whether or not in what order it's

26         most efficient for us to obtain discovery.  We are

Terry-Ann Volberg, CSR, CRR, Official Court Reporter

App. 499

45

1                          Proceedings

2          conducting an investigation in which the choice of

3          whether to ask this question or ask for these documents

4          or examine this witness is entrusted to the good faith

5          of our office that we enjoy a presumption of, and that

6          they have not, for all of the sideshow talk, have not

7          overcome that presumption, again, the right way for

8          this to have been done was for them to meet and confer

9          with us, and talk about --

10                   THE COURT:   I agree that the parties should

11         have met and conferred, but I believe that I have the

12         inherent authority to assure that there is some degree

13         of proportionality and rationality in the manner in

14         which the investigation is being conducted.

15                   MR. OLESKE:   The issue then is, what is the

16         dispute with the proportionality or connection of these

17         specific requests in addition to the updated documents?

18         I mean, we have heard none of that.  Exxon has not even

19         tried to give your Honor that.

20                   THE COURT:   Okay.  I've indicated that you

21         can propound any interrogatories that you want that are

22         fair and non-burdensome and calculated to advance your

23         investigation.  I've ordered Exxon to update its

24         production.

25                   If you've identified potential documents that

26         are relevant to your investigation here in open court,

Terry-Ann Volberg, CSR, CRR, Official Court Reporter

App. 500

46

Proceedings

and Exxon is on notice of the existence of such documents, they have an affirmative obligation to produce them.

MR. OLESKE:  Not for documents, your Honor, that you have already ruled were not covered by the first subpoena.  That's why we issued these updated and renewed document requests, was to obtain beyond the updated information that they owed us and your Honor already ordered.  These other subject areas are areas that were not part of the original subpoena, are not part of some obligation for them to make continuing production.  As much as unfortunately this may be distasteful to the court, the fact is, we have met our burden.  We have a factual basis for these requests. They are connected and focused on that factual basis.

Exxon had a legal obligation to demonstrate how any one of these requests for new information, new documents that were not covered by the original subpoena, at least they argued so far, why any of those are burdensome in the way that meets the standards of the law or disconnected from our factual basis in the way that meets the standards of the law, and they have not done that.

THE COURT:  But you can secure, you can secure the information by interrogatory that will

47

1                          Proceedings

2          establish to your complete and total satisfaction in a

3          simple response to interrogatory what would take you a

4          man year to figure out by making them spend millions of

5          dollars to produce, you know, another million

6          documents.

7                    MR. OLESKE:   A couple of things.

8                    First of all, that simply is not the case

9          with these facts, these documents, and these witnesses.

10         It shouldn't take -- it should not be a legal standard,

11         any substantial interference with Exxon's business

12         given its virtually unlimited resources which the court

13         and counsel have previously noted.

14                   We are only talking now -- presuming that our

15         document request number two, which is -- this is our

16         subpoena which was Exhibit T to Mr. Anderson's

17         affirmation -- our document request number two is for

18         the update.  We have addressed that.  Our document

19         request number one is for documents relating to or

20         substantiate the answers to our interrogatories.  I

21         assume that's not really -- I assume your Honor is okay

22         with us asking for that.

23                   THE COURT:   Absolutely.

24                   MR. OLESKE:   All we are dealing with now are

25         four document requests.  One of them is for, I've

26         identified in our interrogatory.  One of the

Terry-Ann Volberg, CSR, CRR, Official Court Reporter

App. 502

48

1                        Proceedings

2       interrogatories they refused to answer was for a list

3       of people on a committee that handles their reserves.

4       They refused in the meet and confer to give us the list

5       of people.

6                 THE COURT:   They have to give you that.

7                 MR. OLESKE:   Number three, document request

8       number three is just to add those people, these people

9       that were on the reserve committees that they didn't

10      previously identify, add those people to the prior

11      list.  That's number three.  That's consistent with

12      your Honor's --

13                THE COURT:   That's consistent with what I

14      have held.

15                MR. OLESKE:   All we are now talking about is

16      request four, five and six.

17                Number four are those impairment documents

18      that your Honor previously ruled were not part of the

19      subpoena, told us they are the PWC.  We did, we found

20      out there was inculpatory information, and now need to

21      see Exxon's documents about it.  We have drawn a clear

22      line --

23                THE COURT:   I don't understand.  You have

24      the documents from PWC.

25                MR. OLESKE:   Pricewaterhouse's accounting

26      documents about the process of taking impairments, but

App. 503

49

1                         Proceedings

2       we don't have Exxon's documents about that same process

3       where they represented to investors that they have

4       conducted this analysis, and apparently have now

5       changed their mind in the last year, started doing it.

6       We don't have that because your Honor denied our

7       original attempt to enforce the first subpoena as

8       including that subset of documents.  We don't have

9       those documents.

10           You told us to go to Pricewaterhouse first

11      because we had a subpoena to them.  We did.  We have

12      gone through that.  We have found the inculpatory

13      information there and now we need the connected

14      evidence from Exxon.  It's a straight line.  There is

15      no basis to restrict us from getting those documents

16      from Exxon.  That's number four.

17           Number five, this is amazing, this is the

18      simplest request of all.  Exxon refused this in the

19      meet and confer.  They can push a button.  We asked in

20      number five for documents they produced to the SEC.

21      They have that on a compact disc.  They have a disc

22      sitting in their office that is document request them

23      five.  They refused to give it to us.

24           Document request number six, finally, is

25      communications between Exxon and the banks.  Again,

26      Exxon's position's not responsive to the first

Terry-Ann Volberg, CSR, CRR, Official Court Reporter

App. 504

50

Proceedings

subpoena.  That's a very narrowly identified, easily

identifiable set of documents which is Exxon's

communications of the facts.

It appears that really our document requests

one, two and three the court's already agreed we are

entitled to, and four, five and six, I am trying to

emphasize here, these are narrow requests, not covered

by what your Honor was assuming would be covered by

counsel's representations or Exxon's ongoing

obligation.  These are specifically targeted requests

for new documents that were not covered, that we have

connected to our factual basis, that Exxon has made no

showing of burdensomeness, giving us a copy of the CD.

That's what they are here opposing, refusing to meet

and confer on.

Your Honor, it's clear that the court has

seen this go on, seen us come back here, and your Honor

said that the court's not had help from either party in

moving the investigation forward.  With all respect, we

beg to differ.  We have been trying very, very hard to

move this investigation forward.  We are moving forward

with the testimony.  We are moving forward with the

questions.  We need to move forward with the documents.

The fact that we are asking to fill in the

gaps of our document collection with known relevant

Terry-Ann Volberg, CSR, CRR, Official Court Reporter

App. 505

1                          Proceedings

2        evidence that should be easy get, that we had every

3        legal entitlement to get, it's simply not on Exxon to

4        come into court and say the Attorney General should not

5        run their investigation this way, the Attorney General

6        should wait another two or three months to ask

7        witnesses, and then, oh, yes, of course, you need those

8        documents.  That's not from our perspective an

9        efficient way to stage our investigation.

10               With due respect, it's not a civil discovery

11       proceeding.  This is a subpoena compliance proceeding.

12       We demonstrated our legal authority to demand these

13       documents, specifics ones, all of them that we ran

14       through, and, frankly, we don't see how there is a

15       legal basis as opposed to an understandable desire.  We

16       share that desire to conclude this investigation, but

17       we have to be able to conclude the investigation within

18       the ambit of our authority that's been properly

19       exercised and exercised with good faith.

20               THE COURT:  Mr. Wells.

21               MR. WELLS:  Well, I thought he was going to

22       try to be practical and propose some type of practical

23       solution.  I was wrong.  It seems we are back to the

24       very beginning because if you listen to him, he is

25       suggesting that your Honor has now ordered us to engage

26       in months and months of preparing spreadsheets for 12

Terry-Ann Volberg, CSR, CRR, Official Court Reporter

App. 506

52

1                        Proceedings

2       years of projects, all the underlying documents,

3       because that's what he said.  He said, okay, number one

4       is done, number two is done.  He is checking boxes like

5       the court ordered something.  I told him, I am

6       confused --

7                THE COURT:  I have made it very clear.  We

8       are not going for 12 years at every project.  I have

9       made that very, very, very clear.

10               MR. WELLS:    Thank you.

11               So at the moment he checked so many things

12      off.  I am not sure what is being ordered and what is

13      not.

14               I started trying to be cooperative saying we

15      would update.  We understand it adds costs, it will

16      take months, and what I hear them saying is no matter

17      how much updating we do, there is always going to be

18      more because we do an Energy Outlook every year.  So I

19      guess we are going to be updating for three years, four

20      years.  Look, there has got to be a stop date.  I

21      believe that there is supposed to be a stop date, and I

22      don't have to go out and redo a multimillion dollar

23      production, multiple times.  I don't think that's the

24      law.  Listening to him it is clear, whatever we do, we

25      are going to be back arguing about updating again

26      because he does not want any end date.

App. 507

53

1                          Proceedings

2              Maybe what we should do is have your Honor

3       rule, we will go to the Appellate Division, see what

4       the updating rules are, because I don't think they can

5       do what they are saying they can do which is

6       continually make us spend millions and millions of

7       dollars, whether it's a monthly basis or every six

8       months, ad infinitum into the future.  I don't think

9       that's rational.  I don't think that's proportional.

10             I tried to be reasonable.  Every time that

11      you try to be reasonable, with all due respect with

12      them, you get back because they -- look, this is not a

13      normal investigation.  It is a political witch hunt.

14      That's what it is.  They cannot clear Exxon.  The

15      Attorney General cannot be in a position of clearing

16      the largest fossil fuel oil company in the world.  They

17      know it.  I know it.  So our documents show that we

18      have not done anything wrong, anything.

19             This investigation started in November 2015.

20      What they said was Exxon knew about secrete science,

21      Exxon was keeping the secret science buried, and going

22      out and being climate deniers.  Then after months of

23      looking at our scientific documents they said, oh, we

24      don't want any scientific documents, stop giving us the

25      science because our science shows that Exxon is totally

26      innocent.

54

1                          Proceedings

2              Then in August they changed the theory.  They

3        went to a stranded asset theory, and we read about it

4        the newspaper.  Every time they do something, they go

5        right to the press.  We read in the newspaper.  Now we

6        will do a stranded asset theory.  That goes away.

7              Now we have a new theory.  It's exactly

8        opposite than the first theory.  The new theory is, we

9        say in our documents how serious climate change is, but

10       internally we don't pay that much attention to it.

11             So they totally flip-flopped the theories.

12       We are on the third theory now.  There is nothing

13       there.  That's why that document that I wanted to go

14       through with your Honor, I won't burden you with it,

15       it's a PricewaterhouseCoopers internal document.  It

16       says with respect to proxy costs that that's what is

17       used for projecting demand and ultimately the prices.

18       It says with respect to GHG costs, how we apply them in

19       specific locations, it says Exxon has one of the more

20       conservative proxy costs of any oil company, and Exxon

21       does this in the most conservative fashion.

22             All of that is in the document I wanted to

23       walk you through.  It puts the lie to all of his

24       statements, that they are inculpatory, it's a sham.  I

25       mean, they just stand up here as officers of the court

26       and say whatever comes to their minds even if they have

Terry-Ann Volberg, CSR, CRR, Official Court Reporter

App. 509

55

1                        Proceedings

2       documents that contradict.  At the end of the day, I am

3       quite sure, they can't clear us.  They can never clear

4       us as innocent as we may be because it's politically

5       unacceptable for them to do it.  So we will end up

6       continuing to produce, produce, produce.

7                    THE COURT:    Look, the best suggestion that

8       I've heard is the one that you just made, Mr. Wells,

9       which is you can take this to the Appellate Division.

10      Take this to the Appellate Division because we are way

11      beyond proportionality, and in my judgment no

12      reasonable court could conclude that if you are

13      searching for the search terms that they agreed to, and

14      which were subsequently supplemented in the files of

15      134 people, and you have agreed to update that search

16      through 2016, and they can propound interrogatories,

17      and they can conduct the examination of the four people

18      that they want to conduct to verify that you've fully

19      complied through 2015 with all of their demands, that

20      that isn't reasonable under all the circumstances.  And

21      if the Appellate Division decides that they can spend

22      the next three years changing their theory, and

23      imposing additional documentary burdens on you when

24      they are free to depose anybody in their corporation

25      that they choose to for the benefit of several million

26      pages of documents that you have already produced and

Terry-Ann Volberg, CSR, CRR, Official Court Reporter

App. 510

56

1                      Proceedings

2      the additional documents that you are going to produce,

3      then so be it.

4                      MR. OLESKE:   Your Honor, --

5                      THE COURT:   That's the ruling of the court.

6                      MR. OLESKE:   -- may I respond to this issue

7      of --

8                      THE COURT:   Look, you each have the

9      obligation to zealously represent your clients.  You

10     have a different view of the world than Mr. Well's

11     client has a view of the world.  I'm just trying to

12     call balls and strikes.

13                     MR. OLESKE:   Your Honor, I guess my -- part

14     of my point is, I want to clarify first what exactly

15     your Honor's ruling is because my understanding is that

16     your Honor is saying they have to give us the documents

17     that are responsive to our requests, one, two and three

18     which --

19                     THE COURT:   No.  If your request is that

20     they have to give you information about every project

21     that they have been involved in for the last 12 years,

22     the answer is I absolutely, positively, definitely

23     never intimated, suggested or ruled that that's what

24     they have to do.

25                     MR. OLESKE:   I guess what we are a little

26     tied up on is the distinction between our requests for

Terry-Ann Volberg, CSR, CRR, Official Court Reporter

App. 511

57

1                        Proceedings

2        information and our document requests because your

3        Honor has made it clear that we have the right to ask

4        interrogatories.

5                THE COURT:   Yes, you can ask all the

6        interrogatories you want, and they will respond to

7        those interrogatories.  If they fail to respond to

8        those interrogatories reasonably you will be back here,

9        and I am going to sanction them for failing to answer

10       interrogatories to which they have no proper objection.

11               MR. OLESKE:   Does that mean -- we are

12       talking about the interrogatories we have.  Does that

13       mean the court is --

14               THE COURT:   To the extent that they have

15       interposed objections, we will have to rule on the

16       objections.

17               MR. OLESKE:   That's not how -- there is no

18       process for objecting to subpoena requests, your Honor.

19       The process is for them to move to quash on a specific

20       basis that they have.  We should have met and conferred

21       about it, and they refused.

22               THE COURT:   Yes, you should have met and

23       conferred --

24               MR. OLESKE:   They refused --

25               THE COURT OFFICER:   Counsel.

26               THE COURT:   If they don't want to meet and

Terry-Ann Volberg, CSR, CRR, Official Court Reporter

App. 512

58

1                          Proceedings

2        confer about it, then we will have to go interrogatory

3        by interrogatory and ascertain whether they should be

4        quashed or not.

5                    MR. OLESKE:   Your Honor, it's their burden

6        to do that on their motion to quash, and they didn't,

7        just like they didn't do any of the other things.

8                    The document requests your Honor is talking

9        about quashing here are document requests that are not

10       covered by original subpoena, that we have met all of

11       the legal requirements to show.  It's just not that

12       they are not utterly irrelevant, which is the actual

13       standard.  We have shown their incredible probative

14       value, how they were not part of the first subpoena,

15       how we need them for our investigation --

16                   THE COURT:   We are talking passed each

17       other.

18                   I've granted you the ability to propound any

19       interrogatories you wish that conform to reasonable

20       standards of what an interrogatory can properly request

21       under these circumstances.  I've granted you the

22       ability to take the nine depositions that you are

23       seeking, several of which relate to the appropriateness

24       of their compliance with your prior document requests.

25       I've granted you the ability to depose anybody in the

26       Exxon mobile organization whom you need or want to

59

1                        Proceedings

2       depose.

3                   MR. OLESKE:   One note on the testimony, your

4       Honor.  Your Honor mentioned nine witnesses.  We should

5       point out that it's been unresolved, but Exxon is

6       resisting producing one of those witnesses for

7       testimony who is a secundate -- I'm sorry -- an

8       employee of Imperial Oil.

9                   THE COURT:   I have overruled that.  I

10      granted you the depositions of all of these people.

11      All nine of these people, I have granted you the right

12      to propound any interrogatories you wish to propound.

13                  They have undertaken to update the document

14      production pursuant to the original subpoena.

15                  MR. OLESKE:   Yes, your Honor.

16                  THE COURT:   I believe that that is all you

17      can reasonably ask for, and all you're reasonably

18      entitled to, and if the Appellate Division disagrees,

19      the Appellate Division disagrees.

20                  MR. OLESKE:   Can I ask your Honor to

21      consider one thing, to begin with, on the specific

22      request?

23                  Our request number five that your Honor was

24      just talking about quashing is for them to give us a

25      copy of the CD they already have that they produced to

26      the SEC.  That's our document request number five.

60

1                        Proceedings

2          There is no years of identifying anything.  It's

3          pushing a button, giving us a copy.  We don't see what

4          the basis for quashing that is given that it's pushing

5          a button.

6                    The other key request here though, what I

7          guess the Attorney General is asking for guidance on,

8          what the basis is for so we know what to do, is these

9          documents that we have been hunting down for impairment

10         purposes, that we, as the court directed because they

11         were not part of the first appeal, went to the PWC,

12         found this inculpatory stuff, and now are going to

13         Exxon looking for those documents.  What is the basis

14         for us -- these witnesses will not answer those

15         questions.  This is a different subject matter.  Why is

16         it -- at what point are we able to get those documents

17         because we feel like we have done what the court asked

18         you us to do to get them.  Now we are here, we have

19         made our showing, and there is no legal basis to deny

20         it, except that it's too much.

21                    THE COURT:   I think the information is going

22         to be disclosed in response to a properly framed

23         interrogatory.

24                    MR. WELLS:   Your Honor, we would like, we

25         would like to be heard on these before you rule in

26         terms of a Canadian employee.  We would like to have

Terry-Ann Volberg, CSR, CRR, Official Court Reporter

App. 515

61

1                            Proceedings

2        argument on that.

3                    THE COURT:    All right.

4                    MR. WELLS:    We would like to have argument

5        on Dan Bolia who is the internal Exxon lawyer with

6        respect to the compliance because we think that raises

7        attorney-client privilege issues different from the --

8                    THE COURT:    I am not overruling any

9        privilege claims that you have which would be asserted

10       in any deposition.  I am of the view, which may be one

11       that the AG disagrees with, that the deposition process

12       in this case and interrogatory process in this case is

13       a much more productive, efficient and cost-effective

14       means of securing information that the Attorney General

15       is legitimately entitled to pursue in its

16       investigation.  I'm sympathetic to the fact that the

17       document demands are disproportionate to the years in

18       terms of advancing the investigation, but I will hear

19       you.

20                   MR. WELLS:    With respect to what was an

21       offer of compromise, I offered to update through 2016.

22                   THE COURT:    Yes.

23                   MR. WELLS:    I understand they have rejected

24       the offer because they want to be able to get through

25       2017 and continually --

26                   THE COURT:    I am not allowing that.  I think

Terry-Ann Volberg, CSR, CRR, Official Court Reporter

App. 516

62

1                          Proceedings
2          your offer is reasonable.  I don't believe that it is
3          your obligation to produce documents as they are
4          generated on a rolling basis.  I don't believe that at
5          all.
6                    MR. WELLS:   It appears we are on that issue
7          heading to the Appellate Division.  I am trying to
8          figure how it's couched.  I am being somewhat --
9                    THE COURT:   Apparently you are heading to
10         the Appellate Division, and I think I have been very
11         clear that I don't believe that in an investigation
12         that started in 2015 in which you produced millions of
13         pages you have an obligation on a rolling basis to
14         produce documents as they are generated internally in
15         the conduct of ExxonMobil's business.  I do believe
16         that you have an obligation to make a continuing
17         production of any relevant documents that they have
18         previously inquired about or come to your attention,
19         and you've voluntarily agreed to produce, to update
20         your production in response to the original subpoena
21         through the end of 2016.
22                    MR. WELLS:   Which offer they rejected.
23                    THE COURT:   Well, that's the order of the
24         court.  That's what will go up to the Appellate
25         Division, the reasonableness of your offer which the
26         court has found to be reasonable.

Terry-Ann Volberg, CSR, CRR, Official Court Reporter

App. 517

63

1                        Proceedings

2            MR. WELLS:   On that -- I don't plan to go

3      out spending money until we figure out what the new

4      dates are.

5            THE COURT:   Nothing is precluding the

6      parties from meeting and conferring and coming to other

7      and different things that have been discussed and

8      ordered this morning.

9            MR. WELLS:   Mr. Toal would like to address

10     the question of the witness who lives in Canada, and

11     also Dan Bolia.

12            MR. TOAL:   Your Honor, starting with the

13     issue of Dan Bolia, this is one of the four depositions

14     the AG requested on the topic called discovery, about

15     our discovery process.  Now we think the witnesses who

16     were already provided, Connie Feinstein, a 20 year

17     veteran of Exxon's IT Department, was in charge of

18     implementing holds, and Michele Hirshman, who is my

19     partner, senior partner at Paul, Weiss, who had

20     oversight over the entire discovery process, and signed

21     the affidavit of completion, we think those are more

22     than adequate.  They have fully addressed the topics in

23     our submission to the court.

24            The AG said they were not satisfied with our

25     submission to the court.  You found it very detailed.

26     You agreed they should get an affidavit, they should

Terry-Ann Volberg, CSR, CRR, Official Court Reporter

App. 518

64

Proceedings

1
2    have the opportunity to test the assertions in the

3    affidavit in the deposition.  That's exactly what

4    happened.  So those witnesses were able to testify

5    competently about the subjects of the respective

6    affidavits or certifications.

7          THE COURT:  If that's true, Mr. Toal, then

8    these other witnesses are simply going to come in and

9    say everything that the two prior witnesses have

10    testified to is correct, and the AG will have wasted

11    some of its time and a lot of your time.

12          MR. TOAL:  That's part of the problem, your

13    Honor.

14          THE COURT:  I understand.  That's what they

15    are seeking.  That's what I am granting.

16          MR. TOAL:  So I understand the ruling

17    generally.

18          Mr. Bolia, is in-house counsel for

19    ExxonMobil.  He has day-to-day responsibility for the

20    management of this case.  There is a special standard

21    that applies when the opposing part is seeking to

22    depose in-house counsel.

23          THE COURT:  Agreed.

24          MR. TOAL:  That's one that the AG did not

25    even take on in this case.  They have to show they have

26    no other means to obtain the information they are

Terry-Ann Volberg, CSR, CRR, Official Court Reporter

App. 519

65

1                          Proceedings

2        seeking.  They have not shown that.  They have to show

3        the information sought is relevant and not privileged.

4        They have not shown that.  They have to show that the

5        information is crucial to the preparation of its case.

6        They have not shown any of those things.

7                    THE COURT:   Nobody is precluding an attorney

8        from asserting attorney-client privilege.  Normally

9        that wouldn't attach to knowledge that the attorney has

10       about how documents are being assembled, but we can

11       deal with it on a question-by-question basis if

12       necessary.

13                   MR. TOAL:   Thank you, your Honor.

14                   If I could turn to the issue --

15                   THE COURT:   I think that the one thing that

16       ExxonMobil wants to nail down here is that you have

17       fully and completely complied with the subpoena.

18       That's the one thing that I would think you would want

19       to have nailed down here, and if it takes seven

20       witnesses for the AG to be satisfied that you have

21       fully complied with the subpoena, the AG is doing you a

22       favor.

23                   MR. TOAL:  I don't think the AG has been

24       doing us any favors.  I don't think the AG will ever be

25       satisfied.  I think part of the game is to impose a

26       burden here.  I do think we established through the

            Terry-Ann Volberg, CSR, CRR, Official Court Reporter

App. 520

1                         Proceedings

2        affidavits and certifications that we have complied

3        fully with our discovery obligations, and the types of

4        questions that the AG points to that the witness

5        identified somebody else have to do with details.

6        There's been no showing that that information is in any

7        way critical to their evaluation of our compliance with

8        our obligations in the subpoena, and many of them have

9        to do with the internal searches of the management

10       committee custodians which is entirely irrelevant at

11       this point because we redid the entire production of

12       management committee custodians in precisely the way

13       they say it shouldn't have been done.

14               I don't think these are good faith

15       depositions that have a reasonable basis.

16               THE COURT:   If you are asking me whether

17       this is being handled in a proper, proportional manner,

18       I would tell you I don't think so, but they are

19       entitled to do this.

20               MR. TOAL:   As to the witness from Imperial,

21       one of the witnesses they have sought, one of the

22       substantive witnesses, is a gentleman named Jason

23       Iwanika.  Mr. Iwanika is a resident of Canada.  He is

24       employed by Imperial Oil, not employed by ExxonMobil.

25       Imperial is a Canadian company.  It does business

26       exclusively in Canada.  Exxon owns about 69 percent of

Terry-Ann Volberg, CSR, CRR, Official Court Reporter

App. 521

1          .    Proceedings

2     its stock.  The AG is of the view that ExxonMobil

3     controls Imperial, and, therefore, controls

4     Mr. Iwanika.

5          The standard for establishing corporate

6     control requires that a subsidiary be operated as a

7     mere department of a parent organization, and in that

8     circumstance the companies have t to have merely

9     identical ownership interest before one corporation is

10    deemed to be a mere department of another.  Imperial is

11    not a department of ExxonMobil.  It's a separate

12    corporation.  Thirty percent of its shares are owned

13    widely on the market.  Five of the seven directors have

14    no connection with Exxon, no prior employment history.

15    Exxon does not have the ability to hire, fire or

16    discipline Imperial employees, which is important

17    because that deprives us of any way of compelling

18    Mr. Iwanika to appear.

19         We can't -- Exxon can't approve Imperial

20    employee expenses and can't enter into agreements on

21    behalf of Imperial.  ExxonMobil's policy guidance takes

22    effect at Imperial if and only if Imperial, Imperial's

23    management approves those policies.  So the AG has not

24    carried its burden of demonstrating here that Imperial

25    is a mere department of ExxonMobil.

26         The thing the AG does point to is that Exxon

```
                         Proceedings
```

1                         Proceedings

2          produced certain documents from Mr. Iwanika.  That was

3          pursuant to a request we made for Imperial to make

4          those documents available to us.  They did it.  At the

5          time they did they said we are doing this as an

6          accommodation both to Exxon and to the New York

7          Attorney General, but this is not going to compel us to

8          make any further productions or to do anything else.

9          They made their determination when the Attorney General

10         requested the presence of Mr. Iwanika in New York for

11         examination.  They weren't willing to do that, they

12         weren't willing to make that accommodation, and Exxon

13         does not have the ability to compel an employee of a

14         separate organization to appear.  So that's one I just

15         don't think we have the ability to comply with.

16                  MR. OLESKE:   Your Honor, I appreciate your

17         Honor's perspective that this has gone on for so long,

18         and seems to the court to be thwarted.  Obviously,

19         that's obviously not our belief.  We believe we have

20         been as efficient as possible.  The difficulty has been

21         in dealing with representations about prior compliance

22         or about matters before the court.

23                  I have got -- counsel testified, like they

24         did in their affidavit and they did in their brief,

25         they have given you attorney attestations to facts.

26         This is Imperial Oil's 10-K (indicating).  "By virtue

FILED: NEW YORK COUNTY CLERK 06/21/2017 02:24 PM
INDEX NO. 451962/2016
NYSCEF DOC. NO. Case 1:17-cv-02301-VEC   Document 235-6   Filed 06/30/17   Page 70 of 102 CEF: 06/21/2017

69

Proceedings

1  
2  of majority stock ownership of the company by  
3  ExxonMobil, the company's considered to be an entity  
4  not controlled by Canadians."  The company -- the  
5  company is a controlled company for purposes of the New  
6  York Stock Exchange and the Toronto Stock Exchange, and  
7  Exxon mentions that only two of the seven directors are  
8  employees of ExxonMobil.  The president of Imperial Oil  
9  is not an employee of Imperial Oil.  He is an employee  
10  of ExxonMobil Corporation.  The president of Imperial's  
11  salary is paid by ExxonMobil Corporation. .  
12  　　　　That's kind of a big picture.  
13  　　　　THE COURT:  You don't have to say any more.  
14  　　　　I ordered these depositions to proceed.  
15  　　　　MR. OLESKE:  Thank you, your Honor.  
16  　　　　But, your Honor, if I could, I just -- if we  
17  dealt with all of the depositions, if we have dealt  
18  with -- I presume, and I don't want to presume, I want  
19  to clarify with the court, we've propounded these  
20  interrogatories.  We think they should have met and  
21  conferred with us in the first place.  Our  
22  understanding is that you are ordering, as we asked,  
23  for compliance with these interrogatories, but, that,  
24  of course, we are going to talk to them about  
25  fulfilling those interrogatories.  I am asking for  
26  guidance on that point.

Terry-Ann Volberg, CSR, CRR, Official Court Reporter

App. 524

70

1                    Proceedings

2              As to the document requests themselves, I

3    guess I am trying to drill down on, it appears that we

4    have got the court's okay for the ones that we

5    previously discussed, and I'm just getting to these

6    three other ones, the one that's a copy of the SEC

7    documents.  I am asking, I guess, is it the court's

8    order that we are not entitled to get that?  We are not

9    going to get that information from witnesses.  That's a

10   disc of information that they have previously given to

11   another regulator that they have copied.

12              And the documents, the impairment documents,

13   we have gone through all the other routes the court

14   sent us through to get what we need, that these

15   witnesses are not about, and that we could

16   theoretically could be waiting months and months to

17   depose, to take testimony from witnesses about that in

18   the blind without these documents.

19              So, again, I understand the court's

20   perspective about the overall duration, millions of

21   pages, although many of these pages are duplicative as

22   you would expect.  Putting that aside, these requests

23   are not for everything.  It's for copies of a compact

24   disc and for a range of documents that PWC has already

25   produced on, and we have been looking for now for seven

26   months.  They refused to give to us when we asked.

Terry-Ann Volberg, CSR, CRR, Official Court Reporter

App. 525

FILED: NEW YORK COUNTY CLERK 06/21/2017 02:24 PM
NYSCEF DOC. NO.Case 1:17-cv-02301-VEC   Document 235-6   Filed 06/30/17   Page 72 of 102

INDEX NO. 451962/2016
NYSCEF: 06/21/2017

71

Proceedings

2   Your Honor told us to go somewhere else to look, and we

3   did.  Your Honor said you can issue another subpoena,

4   and we did.

5           So I guess the question is, can we ask the

6   court to reconsider, in addition to the other ones,

7   ordering the reproduction of that one disc or that set

8   of documents given to the SEC, and the production of

9   the documents that we have been trying to get, and that

10  we followed the steps that the court said to follow to

11  get.  Now, I mean, based on what the court is saying

12  about we have to stage our investigation a certain way,

13  now we will have to figure out how to identify the

14  witnesses at Exxon for the testimony you are talking

15  about on this impairment issue that weren't covered by

16  the first subpoena because we don't have Exxon's

17  documents from -- we working from PWC's documents.

18          It doesn't make sense in terms of the very

19  issues that your Honor has talked about.  There is no

20  basis to restrict us from getting responses to that

21  request.  While at first I understand it seemed, based

22  on Exxon's presentation, we are asking for everything

23  in the world.  We have asked for very narrow

24  categories, and we don't see a basis to quash them.

25          MR. TOAL:   Your Honor, I find it difficult

26  to understand how these sets of interrogatories and

Terry-Ann Volberg, CSR, CRR, Official Court Reporter

App. 526

72

Proceedings

1
2       these sets of document requests can be characterized as

3       targeted or specific as they attest in their brief.  I

4       found that difficult to understand.  They seek

5       documents for 12 years concerning virtually every

6       project Exxon has not only pursued, but even

7       considered, every impairment decision, every reserve

8       decision.  It's difficult to imagine.  If you were

9       trying to come up with a broader subpoena you would be

10      hard-pressed to beat this one.

11                  THE COURT:   I agree.  I agree.

12                  So what I haven't done is, I haven't ruled

13      interrogatory by interrogatory to the scope of the

14      interrogatories.  I have ruled that the AG has broad

15      powers to propound reasonable interrogatories that are

16      relevant and not excessively burdensome.  Clearly an

17      interrogatory that asks for information about every

18      project that Exxon has considered and every project

19      that Exxon has pursued in a 12 year period is

20      unreasonable on its face, and such an interrogatory

21      would be quashed.  If we are going to have further

22      proceedings about the scope of interrogatories, if you

23      can't work out a meet and confer process, we will have

24      another meeting and I will rule interrogatory by

25      interrogatory.

26                  It's the court's view, right or wrong, you're

73

1                          Proceedings

2        free to get guidance from a higher court, that by

3        propounding interrogatories, taking depositions, and

4        obtaining full compliance with the prior subpoena with

5        the search terms that address all of the issues that

6        you are concerned about, you are in a position to get

7        any information that you need.  If you disagree, you

8        have recourse.

9                     MR. OLESKE:   Your Honor, I guess it's not so

10       much that I disagree.  Your Honor keeps pointing out

11       that we have these search terms with the original

12       subpoena.  The point is, these requests are for

13       documents not covered by the first subpoena.  Your

14       Honor already ruled that --

15                     THE COURT:   I just can't believe that you

16       don't have major amounts of information about this

17       subject based on the search terms that you utilized and

18       134 custodians.

19                     MR. OLESKE:   Two things:  We are surprised

20       too, although after --

21                     THE COURT:   That's why I am giving you leave

22       to conduct the deposition of five people about the

23       appropriateness of the compliance that Exxon has made

24       in terms of your original subpoena.

25                     MR. OLESKE:   Right, your Honor.

26                     THE COURT:   So if you come back here and you

Terry-Ann Volberg, CSR, CRR, Official Court Reporter

App. 528

74

1                          Proceedings

2          say we just deposed X, and X has indicated that Exxon

3          wrongfully discarded all of the relevant documents,

4          well, then we will have a different discussion than we

5          are having today.

6                    MR. OLESKE:   I apologize, your Honor.

7                    I guess what I am getting at is, you are

8          right, we got that remedy, and we appreciate that, for

9          potential spoliation or noncompliance with the original

10         subpoena.  The issue is, these are subject matters that

11         are relevant to our investigation that we have

12         connected and met our legal burden to connect with our

13         investigation that are not covered by, would not be

14         satisfied by the process your Honor is talking about,

15         and one of them is copying the compact disc, and the

16         other is giving us a production that we moved for a

17         year ago, and your Honor gave us instructions on how to

18         get these documents, and we have done that, and are not

19         covered by the process your Honor was talking about is

20         what the basis for us not being able to get those

21         documents.  There is -- Exxon has not made any showing

22         that it's not legally required nor to resist these.

23                    In terms of the interrogatories the fact is

24         that it is Exxon that chose to represent to the

25         investors and to the public that it does this for all

26         of its decision.  It applies this across its -- and

75

1                              Proceedings
2           they represented further that they have a comprehensive
3           computerized system to manage all of this information
4           responding to requests that ask them to give us the
5           data and information for something that we tell the
6           public to do and you tell the public you keep track of
7           vigorously cannot be on its face burdensome.
8                      THE COURT:   I agree with that.
9                      As I have said, I have not ruled on any
10          specific interrogatory and I am prepared to rule on
11          interrogatories.  Everything that you have just said
12          about, you know, what you might ask in interrogatories
13          or have asked in interrogatories sounds reasonable to
14          me.
15                     MR. OLESKE:   The question then on the
16          court's ruling on the interrogatories, is the court
17          denying the motion to quash, granting our motion to
18          compel, and, as we would expect, leaving it to us
19          hopefully this time to meet and confer?
20                     THE COURT:   I am leaving it to you to meet
21          and confer with the understanding that if you cannot
22          come to a resolution on interrogatories, we will have
23          and all day session, and I will go through the
24          interrogatories with you one by one and rule on any
25          interrogatory and any subpart.  So I am not precluding
26          you from asking by interrogatory anything you want to

Terry-Ann Volberg, CSR, CRR, Official Court Reporter

App. 530

76

Proceedings

1

2  ask, and I am not precluding them from moving to quash

3  some, most or all of the interrogatories that you

4  propound.

5  　　　　　MR. OLESKE:  Understood, your Honor.

6  　　　　　THE COURT:  I am just ruling that you have

7  an absolute right to propose reasonable

8  interrogatories.

9  　　　　　MR. OLESKE:  Understood, your Honor.

10  　　　　　I guess my question for these document

11  requests is, could I suggest to the court,

12  respectfully, that your Honor at least not quash these

13  requests for these documents?

14  　　　　　THE COURT:  I am going to leave it to the

15  two of you to have a further meet and confer informed

16  by what we have spent the last two and a half hours

17  discussing.  I think you have specific rulings by the

18  court which either party is free to appeal, and general

19  observations by the court which you hopefully take into

20  consideration as you meet and confer.

21  　　　　　MR. OLESKE:  Your Honor, I don't know what's

22  going to happen with the Appellate Division, but for

23  those purposes, because I hear that at least that will

24  happen, I just want to clarify what the court's rulings

25  are.  My understanding is that your Honor has granted

26  our motion to compel on document request number two

Terry-Ann Volberg, CSR, CRR, Official Court Reporter

App. 531

77

1                    Proceedings

2       which is about the updated documents, but not through

3       the current date, through the end of 2016.

4                    MR. TOAL:   Your Honor, this is about the

5       fifth time Mr. Oleske has tried to reframe your ruling.

6                    THE COURT:   My rulings are all reflected in

7       the transcript of the proceedings, and it won't be

8       difficult to read the transcript and distill the

9       rulings.  I understand that Mr. Oleske is persistent.

10                   MR. OLESKE:   I was asking for a question of

11      clarity to determine which issues your Honor has

12      actually made a ruling on as opposed to which issues

13      have been deferred and not ripe for appeal.

14                   THE COURT:   What I have ruled is that you

15      are entitled to take nine depositions.  I have ruled

16      that you are entitled to propound interrogatories.  I

17      have not ruled on any motion to quash any portion of

18      any interrogatory that you ask.  That's what you meet

19      and confer on.  And I have ruled that Mr. Wells'

20      undertaking to update the production through the end of

21      2016 of your original subpoena with the search terms

22      that have been used is a reasonable concession by Exxon

23      and is being adopted by order of the court.

24                   MR. OLESKE:   Understood, your Honor.

25                   We previously discussed -- that is a

26      modification of our document request number two which

Terry-Ann Volberg, CSR, CRR, Official Court Reporter

App. 532

78

1                          Proceedings

2          is the updating one that your Honor limited to 2016.

3                    Our document question number three which, I

4          believe, your Honor previously granted was for the

5          updating of the production for the individuals to be

6          listed in response to our interrogatory number nine

7          which asks for a list of people who worked on reserve

8          committees which they have not previously disclosed to

9          us.

10                   THE COURT:   I think that's an interrogatory,

11         and I think, maybe I am wrong, I thought Exxon agreed

12         to do that.

13                   MR. OLESKE:   The interrogatory asked them to

14         identify the people who served on these committees that

15         they have not identified to us yet, and to produce

16         their documents.

17                   THE COURT:   I think that those people need

18         to be identified.

19                   MR. OLESKE:   Document request number three

20         is for their responsive documents, for them to tell us

21         who they are, and give us their responsive documents.

22                   THE COURT:   That's something you will meet

23         and confer about.

24                   MR. OLESKE:   I guess the remaining ones,

25         it's really not a large list --

26                   THE COURT:   We will not go through this, the

Terry-Ann Volberg, CSR, CRR, Official Court Reporter

App. 533

79

1                        Proceedings

2       six items, for the eighth time.  I just recited

3       everything that I have ruled.  I am not going to do it

4       again.

5                   MR. OLESKE:    All I am looking for is whether

6       or not requests four, five and six are being quashed.

7                   THE COURT:    They are not being ruled on

8       today in the manner that you want them to be ruled on.

9                   MR. OLESKE:    I assume your Honor is

10      directing us to meet and confer about four, five and

11      six.

12                  THE COURT:    Yes.

13                  MR. TOAL:    We did ask in our motion for a

14      protective order.  We have now produced 2.8 million

15      pages of documents.  The AG is trying to get production

16      of even more.  Your Honor's ruling that we will update

17      the production certainly will result in more documents.

18                       This is highly sensitive corporate

19      information.  Each of our production letters expressly

20      advises the New York Lieutenant Attorney General that

21      this is confidential commercial information.  It is to

22      the benefit of ExxonMobil's competitors.  We invoke the

23      legal protections under New York law for that material

24      to be treated confidentially, and we also reference in

25      each production letter the agreement of the parties

26      that produced documents not be publicly released and

Terry-Ann Volberg, CSR, CRR, Official Court Reporter

App. 534

80

1                          Proceedings

2     disseminated or publicized.

3                    THE COURT:   They have agreed to what you are

4     seeking?

5                    MR. TOAL:   They have not.  When they filed

6     their opposition brief they appended confidential

7     business information of Exxon to their submission

8     without conferring with us in advance, without giving

9     us any notice, without giving us any opportunity to

10    object and to seek the sealing of these documents which

11    are sensitive.

12                   THE COURT:   Mr. Oleske, do you object to

13    this?  You agree to keep this information confidential?

14                   MR. OLESKE:   Your Honor, okay, we agreed not

15    to disclose documents outside of our investigation to

16    third parties unless we were required to for legal

17    purposes.  Exxon came in here and challenged the

18    Attorney General's factual basis for its investigation

19    in a public proceeding.  We responded by attaching

20    documents that are not trade secrets, that are simply

21    evidence of Exxon's prospective fraud.  Going forward,

22    it is not appropriate to put a blanket seal --

23                   THE COURT:   I agree with that.

24                   MR. OLESKE:   -- on a case-by-case basis.  If

25    Exxon wants to say this particular document is a trade

26    secret and so it should be sealed when it goes into

Terry-Ann Volberg, CSR, CRR, Official Court Reporter

App. 535

FILED: NEW YORK COUNTY CLERK 06/21/2017 02:24 PM
INDEX NO. 451962/2016
NYSCEF DOC. NO. Case 1:17-cv-02301-VEC   Document 235-6   Filed 06/30/17   Page 82 of 102CEF: 06/21/2017

81

<pre>
 1                      Proceedings
 2      court, they can make that on a case-by-case basis.  If
 3      going forward they don't trust us to know what is a
 4      trade secret -- now they have not actually moved to
 5      seal any of the stuff we did disclose on the basis that
 6      it was a trade secret because it wasn't.
 7              The question is, if going forward they want
 8      protocol where they have the opportunity to seal
 9      documents because they are actually genuine trade
10      secrets as opposed to embarrassing or evidence of
11      fraud, it's going to be hard for us to oppose a
12      mechanism for them to preemptive protect the trade
13      secrets.
14              MR. TOAL:  That's what we are asking for, a
15      mechanism, a ground rule, so we can protect our
16      confidential business information.
17              MR. OLESKE:  There is a big difference
18      between those two things.
19              THE COURT:  I'm assuming, despite the gulf
20      between the parties, that the attorneys are going to
21      act in a professional manner, and if you, Mr. Oleske,
22      have agreed that you are not going to disclose trade
23      secrets of Exxon, I would expect that AG's Office to,
24      at a minimum, advise counsel for ExxonMobil in advance
25      if you are planning to file something that you have any
26      reason to believe Exxon might consider to be a trade
</pre>

Terry-Ann Volberg, CSR, CRR, Official Court Reporter

App. 536

82

1                          Proceedings
2          secret.
3                   MR. OLESKE:   Understood.  If we are talking
4          about --
5                   THE COURT:   With respect to what has already
6          been filed, the cat's out of the bag, Mr. Toal.
7                   MR. TOAL:   I agree.  That's why -- there is
8          nothing we can do.  I think this concept is not limited
9          to trade secrets.  This is not just the formula for
10         Coca-Cola.  This is competitively sensitive information
11         that can be used by a competitors.
12                  THE COURT:   I agree with that.
13                  Your agreement with the New York AG seems to
14         cover, you know, any commercially sensitive information
15         and I thought I heard Mr. Oleske say that at a minimum
16         before he files anything in court which is going to be
17         released to the newspapers, before you come to court,
18         that he give you the opportunity to object.
19                  MR. TOAL:   Thank you, your Honor, that's
20         what we were looking for.
21                  With respect to the depositions that are
22         upcoming, we would ask --
23                  THE COURT:   The same rules apply.
24                  MR. TOAL:   Beyond --
25                  THE COURT:   The same rules apply.  If they
26         elicit testimony that represents trade secrets or

83

1                          Proceedings

2         sensitive commercial information, I think Mr. Oleske

3         agreed before he publishes that to the public or files

4         a report, he will extend the courtesy to you to give

5         you the opportunity to seek judicial intervention to

6         prevent that from happening.

7                  MR. TOAL:   Thank you, your Honor.

8                  With respect to the length of the

9         depositions, we have depositions coming up.  We would

10        ask that depositions presumptively be a day long.  We

11        are having witnesses for the most part coming in from

12        Texas.  We would agree that the AG --

13                 THE COURT:   I don't think he will agree to

14        that.  I am not going to order that, but I think you

15        can meet and confer and come to some understanding.

16        Certainly I am not going to allow the AG to depose your

17        witnesses for a week or two weeks.

18                 Again, there is going to be proportionality,

19        and I can't rule in advance that a particular witness

20        is being examined for any excessively long period of

21        time because some of your witnesses may have

22        information on a multitude of subjects, and it may take

23        more than a day to depose them about their knowledge of

24        those subjects.

25                 MR. WELLS:   Your Honor, a housekeeping

26        matter.  I want to make sure for the record in case

1                            Proceedings

2       either side goes to the Appellate Division that the

3       slides that I handed to the court and the

4       Pricewaterhouse documents I handed to the court were

5       marked as Exxon exhibits for the purposes of the file.

6                    THE COURT:   They have been marked.

7                    MR. OLESKE:   And the 10-K from Imperial Oil

8       Ltd. that I referenced, I would like to hand up and

9       have marked, as well.

10                   THE COURT:   Okay.  You can check with the

11      court reporter before you leave to be sure that

12      everything that you want in the record is in the

13      record.

14                   MS. SHETH:   Your Honor, Manisha Sheth,

15      Executive Deputy Attorney General, Economic Justice

16      Division of the AG's Office.

17                   Very briefly, Mr. Wells referred to this as a

18      politically motivated witch hunt.  I would like to

19      correct the record on that.

20                   THE COURT:   The AG does not agree with that

21      at all.

22                   MS. SHETH:   The AG does not agree with that

23      at all.  To the contrary, Exxon's behavior in this case

24      has not been consistent with good faith compliance with

25      the subpoena.  What we have seen is a slow roll

26      production of responsive documents.  The documents that

Terry-Ann Volberg, CSR, CRR, Official Court Reporter

App. 539

1                          Proceedings

2       were produced, many of them do not have anything to do

3       with this investigation.

4                    They withheld and continue to this day to

5       withhold documents on the basis of a purported

6       accountant-client privilege that your Honor as well as

7       the First Department found is improper, and they have

8       now appealed that to the Court of Appeals.

9                    They have sued us in an unprecedented

10      maneuver in a Texas federal court to enjoin our

11      investigation.

12                   One of their counsel has failed to disclose

13      the existence of an e-mail of their CEO, the former

14      CEO, and then joked about it at her deposition saying

15      that she thought it was a test to see if the Attorney

16      General would find those documents interesting, and

17      whether the Attorney General was even reviewing the

18      documents they produced.  As a result, documents of the

19      CEO were destroyed, and they have not put forth a

20      witness who can discuss fully the destruction of these

21      documents.

22                   THE COURT:   This is why you are taking these

23      other five depositions.

24                   If you're asking me to state on the record

25      that Exxon has behaved in an exemplary manner, I

26      decline to do so.  If Exxon is asking me to state on

86

```
 1                          Proceedings

 2          the record that the New York AG has pursued in an

 3          exemplary manner, I decline to do that also.

 4                     MS. SHETH:   Thank you, your Honor.  I do

 5          want to put that on the record.

 6                     MR. WELLS:   Can we stipulate that Exxon

 7          totally disagrees with all of her comments?

 8                     THE COURT:   All right.

 9                     Thank you very much.  I always enjoy seeing

10          you.  Have a nice day and nice weekend.

11                     (Received and marked Attorney

12               General Exhibit Number 1 marked in

13               evidence )

14                               ***

15                     C E R T I F I C A T E

16     I, Terry-Ann Volberg, C.S.R., an official court reporter of

17     the State of New York, do hereby certify that the foregoing

18     is a true and accurate transcript of my stenographic notes.

19

20                         _____
                           Terry-Ann Volberg, CSR, CRR
21                         Official Court Reporter.

22

23                    SO ORDERED

24                         _____
25                         BARRY R. OSTRAGER, J.S.C.

26
```

Terry-Ann Volberg, CSR, CRR, Official Court Reporter

App. 541

## A

ability (7)
28:25;58:18,22,25;
67:15;68:13,15
able (6)
43:14;51:17;60:16;
61:24;64:4;74:20
absolute (1)
76:7
Absolutely (2)
47:23;56:22
abuses (1)
37:18
abusive (1)
12:6
accommodation (2)
68:6,12
accomplish (1)
33:19
accordance (1)
38:4
accountant-client (1)
85:6
accountants (2)
14:25;15:4
accounted (1)
18:24
accounting (2)
8:25;48:25
accounts (1)
20:25
accurate (1)
16:23
across (5)
22:5,6;33:13;35:19;
74:26
act (1)
81:21
actions (1)
13:22
actual (1)
58:12
actually (7)
13:7,16;26:16;
39:15;77:12;81:4,9
ad (1)
53:8
add (2)
48:8,10
addition (3)
22:15;45:17;71:6
additional (17)
3:20,21;4:6,16;
18:9;21:21;23:12;
24:7,18;26:3;28:23;
31:16,18;35:12;
37:25;55:23;56:2
address (2)
63:9;73:5
addressed (2)
47:18;63:22

adds (1)
52:15
adequate (1)
63:22
admissible (1)
16:2
admissions (1)
23:6
adopted (1)
77:23
advance (4)
45:22;80:8;81:24;
83:19
advancing (1)
61:18
advise (1)
81:24
advises (1)
79:20
affects (2)
13:26;14:2
affiants (3)
3:25;4:5;24:9
affidavit (5)
18:22;63:21,26;
64:3;68:24
affidavits (3)
4:4;64:6;66:2
affirmation (2)
20:3;47:17
affirmative (1)
46:3
AG (26)
5:20,23;12:14;14:9;
16:5,22;61:11;63:14,
24;64:10,24;65:20,21,
23,24;66:4;67:2,23,
26;72:14;79:15;
82:13;83:12,16;
84:20,22
again (13)
6:10,21;14:14;25:6;
36:19;37:15;44:23;
45:7;49:25;52:25;
70:19;79:4;83:18
against (1)
16:2
ago (5)
20:17;29:5,6;39:16;
74:17
agree (20)
11:10,15,20,22;
12:2;17:26;30:20;
32:9;45:10;72:11,11;
75:8;80:13,23;82:7,
12;83:12,13;84:20,22
agreed (19)
3:18;7:12;9:14;
10:8;24:3;34:8,14;
37:24;50:6;55:13,15;
62:19;63:26;64:23;
78:11;80:3,14;81:22;
83:3

agreeing (2)
24:26;25:3
agreement (3)
3:20;79:25;82:13
agreements (4)
4:2,8;9:9;67:20
AG's (2)
81:23;84:16
ahead (1)
43:6
aiming (1)
44:18
Alberta (1)
13:5
allegations (3)
8:25;19:14;44:4
allow (2)
17:24;83:16
allowing (1)
61:26
almost (1)
6:5
alone (1)
22:22
along (2)
19:11;31:5
alternate (1)
28:8
alternative (1)
26:19
although (4)
4:10;29:14;70:21;
73:20
always (2)
31:25;52:17
amazing (1)
49:17
ambit (1)
51:18
amount (1)
10:26
amounts (1)
73:16
analysis (3)
9:16;21:9;49:4
analyze (1)
14:17
Anderson's (1)
47:16
annual (2)
20:13;33:10
anticipation (1)
3:14
apologize (1)
74:6
apparent (1)
21:9
apparently (2)
49:4;62:9
appeal (3)
60:11;76:18;77:13
appealed (1)
85:8

Appeals (1)
85:8
appear (2)
67:18;68:14
appearance (1)
21:2
appearances (1)
19:13
appears (5)
18:10;40:9;50:5;
62:6;70:3
Appellate (11)
53:3;55:9,10,21;
59:18,19;62:7,10,24;
76:22;84:2
appended (1)
80:6
application (1)
29:7
applied (1)
21:8
applies (3)
22:5;64:21;74:26
apply (3)
54:18;82:23,25
applying (2)
22:25;28:7
appreciate (4)
31:2,4;68:16;74:8
appropriate (1)
80:22
appropriateness (2)
58:23;73:23
approve (1)
67:19
approves (1)
67:23
April (2)
6:14;39:22
arbitrarily (1)
39:23
arcane (1)
37:5
archaic (1)
4:23
areas (2)
46:10,10
argue (2)
11:17;19:21
argued (1)
46:20
argues (1)
21:22
arguing (5)
21:13,14;28:19;
33:26;52:25
argument (2)
22:17;61:2,4
arise (1)
11:13
around (1)
11:19
ascertain (1)

58:3
aside (3)
19:4;25:23;70:22
aspect (1)
35:8
assembled (1)
65:10
asserted (1)
61:9
asserting (1)
65:8
assertions (2)
22:16;64:2
Asset (1)
14:11;54:3,6
assets (2)
20:23;41:3
assume (4)
36:16;47:21,21;
79:9
assuming (2)
50:9;81:19
assure (1)
45:12
attach (1)
65:9
attaching (1)
80:19
attempt (1)
49:7
attention (4)
23:21;32:11;54:10;
62:18
attest (1)
3:26;72:3
attestations (1)
68:25
Attorney (44)
3:6,16,24;4:9,12,
15;5:9,24;9:22;10:13,
19;11:10;17:17;18:3,
8;19:23;20:3;21:21;
22:16;23:5,6;25:26;
34:19;36:4,7;37:15;
39:23;42:3,11;51:4,5;
53:15;60:7;61:14;
65:7,9;68:7,9,25;
79:20;80:18;84:15;
85:15,17
attorney-client (2)
61:7;65:8
attorneys (1)
23:20;81:20
attorney's (1)
20:4
audited (1)
37:7
auditors (1)
24:26
August (1)
54:2
author (3)
8:10,19;10:10

authority (6)
  25:26;26:3,6;45:12;
  51:12,18
available (1)
  68:4
averring (1)
  25:20
aware (1)
  31:10
away (1)
  54:6

**B**

back (16)
  5:7;24:17;33:9,16,
  26;35:11,13;36:18,
  22;41:19;50:18;
  51:23;52:25;53:12;
  57:8;73:26
bag (1)
  82:6
Bailes (1)
  7:19
baked (1)
  14:7
balls (1)
  56:12
banks (1)
  49:25
based (13)
  6:5;10:6;16:11;
  17:16;18:2;19:7,24;
  24:17,20;25:18;
  71:11,21;73:17
bases (1)
  44:16
basically (1)
  35:22
basis (41)
  21:19,19,20;22:8;
  23:4,7;32:4,5,26;
  33:10;38:20;39:11,
  23;41:6;43:18,19;
  44:18;46:15,16,22;
  49:15;50:13;51:15;
  53:7;57:20;60:4,8,13,
  19;62:4,13;65:11;
  66:15;71:20,24;
  74:20;80:18,24;81:2,
  5;85:5
beat (1)
  72:10
beg (1)
  50:21
begin (2)
  6:3;59:21
beginning (2)
  29:11;51:24
behalf (2)
  25:20;67:21
behaved (1)
  85:25

behavior (1)
  84:23
belief (1)
  68:19
benefit (2)
  55:25;79:22
beside (1)
  36:9
best (1)
  55:7
beyond (4)
  33:25;46:8;55:11;
  82:24
big (5)
  22:3;23:24;33:16;
  69:12;81:17
bigger (1)
  41:18
Bill (1)
  7:13
blanket (1)
  80:22
blind (1)
  70:18
block (1)
  18:7
boards (2)
  4:23;11:6
Bolia (4)
  61:5;63:11,13;
  64:18
books (3)
  8:5,26;15:7
boss (2)
  8:18;10:9
both (10)
  13:7,18;14:6,25;
  18:22;19:20;27:23;
  39:2;40:23;68:6
bothered (1)
  9:11
bottom (1)
  37:6
boxes (1)
  52:4
brief (10)
  14:20;15:19,20,22;
  20:4;21:25;35:6;
  68:24;72:3;80:6
briefly (1)
  84:17
briefs (1)
  16:18
bring (2)
  4:22;9:5
brings (1)
  8:21
broad (2)
  21:4;72:14
broader (1)
  72:9
budgeting (3)
  8:11,16,20

burden (6)
  46:15;54:14;58:5;
  65:26;67:24;74:12
burdens (1)
  55:23
burdensome (7)
  9:10;12:5;43:21,23;
  46:21;72:16;75:7
burdensomeness (1)
  50:14
buried (1)
  53:21
business (11)
  9:16;22:3,4,6,22;
  37:7;47:11;62:15;
  66:25;80:7;81:16
button (6)
  9:18,19;22:15;
  49:19;60:3,5

· **C**

calculated (1)
  45:22
call (2)
  12:26;56:12
called (3)
  10:16;20:14;63:14
calls (1)
  42:12
came (3)
  21:8;44:10;80:17
can (44)
  4:22;5:11;7:11;
  8:13,15,16,10:9;
  11:10;13:15;15:15,5;
  17:6,7;22:9;23:10;
  27:16;29:4;39:10;
  41:18;45:21;46:25,
  25;49:19;53:4,5;55:3,
  9,16,17,21;57:5;
  58:20;59:17,20;
  65:10;71:3,5;72:2;
  81:2,15;82:8,11;
  83:15;84:10;85:20
Canada (3)
  63:10;66:23,26
Canadian (2)
  60:26;66:25
Canadians (1)
  69:4
Carbon (1)
  14:10
carried (1)
  67:24
case (12)
  3:7;26:21;27:13;
  41:7;47:8;61:12,12;
  64:20,25;65:5;83:26;
  84:23
case-by-case (2)
  80:24;81:2
cases (1)

21:25
categories (1)
  71:24
cat's (1)
  82:6
caught (1)
  20:7
cause (1)
  3:4
CD (2)
  50:14;59:25
CEO (4)
  20:11;85:13,14,19
certain (6)
  6:13;11:12;36:10;
  37:15;68:2;71:12
certainly (2)
  79:17;83:16
certification (6)
  3:22;6:14,16,19,20,
  23
certifications (2)
  64:6;66:2
certified (1)
  23:25
certify (1)
  6:20
chairman (1)
  20:11
Challenge (1)
  14:10
challenged·(1)
  80:17
change (2)
  15:2;54:9
changed (6)
  27:11;38:23,26;
  40:7;49:5;54:2
changes (1)
  40:18
changing (1)
  55:22
characterized (1)
  72:2
charge (1)
  63:17
charts (1)
  5:10
check (1)
  84:10
checked (1)
  52:11
checking (1)
  52:4
chicken (1)
  13:18
choice (1)
  45:2
choices (1)
  25:13
choose (2)
  25:15;55:25
chose (2)

22:4;74:24
chosen (1)
  42:3
circuit (1)
  12:10
circumstance (1)
  67:8
circumstances (2)
  55:20;58:21
cite (1)
  21:25
civil (3)
  33:14;44:23;51:10
claim (2)
  26:24;38:2
claims (2)
  22:23;61:9
clarify (4)
  13:6;56:14;69:19;
  76:24
clarity (1)
  77:11
clean (2)
  43:26;44:8
clear (15)
  6:8;9:3,25;17:18;
  37:14;48:21;50:17;
  52:7,9,24;53:14;55:3,
  3;57:3;62:11
clearing (1)
  53:15
Clearly (1)
  72:16
client (1)
  56:11
clients (1)
  56:9
climate (4)
  14:13;15:2;53:22;
  54:9
Coca-Cola (1)
  82:10
collection (2)
  39:15;50:26
Colton (5)
  7:13;8:9,17;10:8
comfortable (2)
  5:2;12:11
coming (4)
  24:17;63:6;83:9,11
comments (2)
  5:4;6:11
commercial (2)
  79:21;83:2
commercially (1)
  82:14
committee (3)
  48:3;66:10,12
committees (3)
  48:9;78:8,14
communications (2)
  49:25;50:4
compact (3)

49:21;70:23;74:15
**companies (3)**
21:26;44:2;67:8
**company (13)**
5:21;18:14,24;
22:25;23:24;40:24;
53:16;54:20;66:25;
69:2,4,5,5
**company's (1)**
69:3
**compel (7)**
3:6;10:20;34:6;
68:7,13;75:18;76:26
**compelling (1)**
67:17
**competently (1)**
64:5
**competing (1)**
34:5
**competitively (1)**
82:10
**competitors (2)**
79:22;82:11
**complete (5)**
3:19;5:24;11:4;
17:26;47:2
**completely (2)**
36:25;65:17
**completion (2)**
37:26;63:21
**complex (1)**
22:4
**compliance (21)**
3:26;4:7;17:23;
18:12,17,19,22;19:5;
21:14;24:8,13;25:23;
51:11;58:24;61:6;
66:7;68:21;69:23;
73:4,23;84:24
**complied (10)**
3:23;21:23;23:25;
24:11;28:20;38:2;
55:19;65:17,21;66:2
**comply (2)**
31:19;68:15
**comprehensive (2)**
22:19;75:2
**compromise (1)**
61:21
**computer (1)**
4:22
**computerized (1)**
75:3
**concept (3)**
8:7;11:20;82:8
**concepts (2)**
8:2;13:8
**concerned (1)**
73:6
**concerning (1)**
72:5
**concerns (1)**
22:26

**concession (2)**
34:18;77:22
**conclude (3)**
51:16,17;55:12
**concluded (1)**
12:20
**conclusion (1)**
39:6
**conclusions (1)**
16:24
**conclusively (1)**
36:5
**conduct (6)**
16:21;24:7;55:17,
18;62:15;73:22
**conducted (2)**
45:14;49:4
**conducting (1)**
45:2
**confer (19)**
30:21,22;34:4;37:2;
44:9;45:8;48:4;49:19;
50:16;58:2;72:23;
75:19,21;76:15,20;
77:19;78:23;79:10;
83:15
**conferred (4)**
45:11;57:20,23;
69:21
**conferring (2)**
63:6;80:8
**confidential (4)**
79:21;80:6,13;
81:16
**confidentially (1)**
79:24
**conform (1)**
58:19
**confused (1)**
52:6
**connect (1)**
74:12
**connected (5)**
41:5;46:16;49:13;
50:13;74:12
**connection (8)**
3:12;21:18,18;
27:20;32:4;44:17;
45:16;67:14
**Connie (1)**
63:16
**consensual (1)**
33:23
**conservative (2)**
54:20,21
**consider (3)**
35:9;59:21;81:26
**consideration (4)**
13:21;14:12;15:2;
76:20
**considered (3)**
69:3;72:7,18
**consistent (5)**

5:4;6:10;48:11,13;
84:24
**contain (1)**
3:4
**contemptible (1)**
18:12
**contend (1)**
9:8
**content (1)**
11:13
**contesting (1)**
18:26
**context (1)**
16:23
**continually (2)**
53:6;61:25
**continue (1)**
85:4
**continued (3)**
20:9;40:25;44:22
**continuing (7)**
23:20;30:19;32:14;
35:20;46:12;55:6;
62:16
**continuous (1)**
36:24
**contradict (2)**
22:17;55:2
**contradictory (1)**
19:16
**contrary (4)**
9:9;21:7;44:15;
84:23
**control (2)**
7:11;67:6
**controlled (2)**
69:4,5
**controls (2)**
67:3,3
**cooperation (3)**
33:20;34:7,15
**cooperative (1)**
52:14
**copied (1)**
70:11
**copies (2)**
35:12;70:23
**copy (6)**
5:11;15:9;50:14;
59:25;60:3;70:6
**copying (1)**
74:15
**Corporate (5)**
7:14;8:11,20;67:5;
79:18
**corporation (7)**
39:10,12;55:24;
67:9,12;69:10,11
**correspondence (1)**
4:17
**cost (10)**
8:6,7,14;13:5,10,17,
19,22;27:19;33:17

**cost-effective (1)**
61:13
**costs (26)**
7:25,26;8:4,4,15;
10:5;12:26,26;13:2,4,
10,14;14:6,7,25,25;
20:2;21:8;28:6;29:8,
9;34:10;52:15;54:16,
18,20
**couched (1)**
62:8
**counsel (9)**
29:14;41:26;47:13;
57:25;64:18,22;
68:23;81:24;85:12
**counsel's (1)**
50:10
**counter-documents (1)**
21:4
**couple (2)**
25:7;47:7
**course (6)**
20:24;24:6;39:3;
43:12;51:7;69:24
**COURT (179)**
3:2;4:2,20,24;5:9,
13;6:18;9:22;10:12;
11:5,8;12:3,11,17,21;
13:3,13;14:3,21;15:9,
15,20;16:15;17:9,13,
17,18,20,21,26;18:7;
21:5,12;23:17;26:2,6,
23;27:2,13,16,19;
29:4,12,17,20;30:7,
13,17,24,26;31:7,14,
17;32:7,14,20;33:19,
26;34:17;35:3,8;36:2,
25;38:8,13,23;39:5,9;
40:3,6;41:10;42:6,10,
20,24;43:23;44:24;
45:10,20,26;46:14,25;
47:12,23;48:6,13,23;
50:17;51:4,20;52:5,7;
54:25;55:7,12;56:5,5,
8,19;57:5,13,14,22,
25,26;58:16;59:9,16;
60:10,17,21;61:3,8,
22,26;62:9,23,24,26;
63:5,23,25;64:7,14,
23;65:7,15;66:16;
68:18,22;69:13,19,
70:13;71:6,10,11;
72:11;73:2,15,21,26;
75:8,16,20;76:6,11,
14,18,19;77:6,14,23;
78:10,17,22,26;79:7,
12;80:3,12,23;81:2,
19;82:5,12,16,17,23,
25;83:13;84:3,4,6,10,
11,20;85:8,10,22
**courtesy (1)**
83:4
**courtroom (1)**

3:3
**courts (1)**
44:5
**court's (10)**
12:24;29:26;50:6,
19;70:4,7,19;72:26;
75:16;76:24
**cover (2)**
44:5;82:14
**covered (12)**
41:17;44:21;46:6,
19;50:8,9,12;58:10;
71:15;73:13;74:13,19
**created (1)**
25:13
**critical (1)**
14:22;26:13;66:7
**crucial (1)**
65:5
**cry (1)**
22:20
**current (1)**
77:3
**curve (2)**
13:20;14:14
**custodian (2)**
33:9;35:11
**custodians (22)**
3:20,21;9:26;10:14,
20;23:26;25:2,5,15;
28:14,16;29:13,15,16;
30:25;32:17;35:10;
37:23;43:24;66:10,
12;73:18
**custodian's (1)**
30:2
**cut (2)**
12:22;17:8,17
**cutoff (1)**
38:10

**D**

**daily (2)**
32:25;39:10
**Dan (3)**
61:5;63:11,13
**dangerous (2)**
18:10;42:10
**data (1)**
75:5
**date (12)**
5:21;7:15;9:6;
20:15;33:12;38:6,11,
18;52:20,21,26;77:3
**dates (2)**
34:12;63:4
**day (11)**
6:10;32:18,20;39:8;
40:25;43:5;55:2;
75:23;83:10,23;85:4
**days (2)**
3:22;6:25

PricewaterhouseCoopers

June 16, 2017

day-to-day (1)
64:19
deal (4)
7:11;34:24;37:2;
65:11
dealing (2)
47:24;68:21
deals (1)
8:11
dealt (2)
69:17,17
decide (7)
16:19,26;28:3;
39:23;42:8,10,13
decides (1)
55:21
decision (4)
9:16;72:7,8;74:26
decisions (1)
22:7
decline (1)
85:26
deemed (1)
67:10
deeply (1)
18:20
defer (1)
44:13
deferred (1)
77:13
definitely (1)
56:22
definitional (1)
32:16
degree (1)
45:12
deliberately (1)
39:17
demand (10)
13:11,17,19,24,26,
26;14:8,14;51:12;
54:17
demands (2)
55:19;61:17
demonstrate (1)
46:17
demonstrated (4)
23:4;32:4;44:17;
51:12
demonstrating (1)
67:24
denied (1)
49:6
deniers (1)
53:22
deny (3)
43:19;44:6;60:19
denying (1)
75:17
dep (1)
11:2
department (7)
29:15;63:17;67:7,

10,11,25;85:7
departure (1)
3:11
deponents (2)
4:6;10:14
depose (17)
3:25;6:18;16:22;
24:4;28:3,26;34:9;
36:19;37:11;43:13;
55:24;58:25;59:2;
64:22;70:17;83:16,23
deposed (3)
9:4,26;74:2
deposing (1)
16:6
deposition (11)
7:14;8:17,22;33:22;
34:13,20;61:10,11;
64:3;73:22;85:14
depositions (36)
3:15;4:5;6:4,8;7:3,
6,7,8;10:22;24:6,8,12,
16,18,21;26:7;36:6,
13,15,16,23;41:26;
42:2;58:22;59:10;
63:13;66:15;69:14,
17;73:3;77:15;82:21;
83:9,9,10;85:23
deprives (1)
67:17
deps (4)
9:12,14;11:17,18
Deputy (1)
84:15
described (2)
28:8;38:16
desire (2)
51:15,16
despite (1)
81:19
destroyed (4)
18:23;19:2,10;
85:19
destruction (1)
85:20
detailed (1)
63:25
details (1)
66:5
determination (2)
43:11;68:9
determine (1)
77:11
developed (3)
7:25,26;40:23
developing (1)
13:11
development (1)
13:19
differ (1)
50:21
difference (3)
8:4;12:25;81:17

different (18)
4:11;8:2,6,7;13:7;
16:17;27:7,8,8,9;
35:21;39:21,21;
56:10;60:15;61:7;
63:7;74:4
differently (1)
14:4
difficult (4)
71:25;72:4,8;77:8
difficulty (1)
68:20
direct (1)
21:18
directed (2)
40:11;60:10
directing (1)
79:10
directly (1)
21:25
directors (2)
67:13;69:7
disagree (2)
73:7,10
disagrees (3)
59:18,19;61:11
disappeared (1)
24:19
disc (6)
49:21,21;70:10,24;
71:7;74:15
discarded (1)
74:3
discipline (1)
67:16
disclose (4)
80:15;81:5,22;
85:12
disclosed (4)
19:18;28:9;60:22;
78:8
disclosure (3)
19:19;22:24;29:8
disclosures (1)
23:7
disconnect (1)
11:4
disconnected (1)
46:22
discovery (9)
21:14,15;44:24,26;
51:10;63:14,15,20;
66:3
discretion (1)
44:25
discretionary (1)
43:11
discuss (2)
25:8;85:20
discussed (4)
15:3;63:7;70:5;
77:25
discussing (1)

76:17
discussion (4)
3:17;12:18,19;74:4
discussions (1)
14:24
disproportionate (1)
61:17
dispute (4)
15:17;17:22;44:24;
45:16
disputes (2)
3:10;17:25
disseminated (1)
80:2
distasteful (1)
46:14
distill (1)
77:8
distinction (1)
56:26
Division (12)
53:3;55:9,10,21;
59:18,19;62:7,10,25;
76:22;84:2,16
document (67)
3:19;6:16;7:2;
11:11;14:8,9,19,21,
22,24;15:5,14;16:12;
17:20;23:8;26:17;
28:2;31:3,4,18,21,24;
32:22,24;33:21;
34:20;35:8,19,19,22;
37:8;38:2,3;39:11;
41:16,21;42:17;
43:20;44:16;46:8;
47:15,17,18,25;48:7;
49:22,24;50:5,26;
54:13,15,22;57:2;
58:8,9,24;59:13,26;
61:17;70:2;72:2;
76:10,26;77:26;78:3,
19;80:25
documentary (1)
55:23
documents (192)
3:17,24;4:16;5:20,
25;6:6,13;7:6;8:24;
10:2,5,6,15,18,23,25;
11:13;12:13;14:16;
15:23;16:6,11,16,17,
22;17:2;18:9,14,23;
19:2,10,24;20:6,8,15,
16,20,22,26;21:6,10,
11,22;22:2,10,11;
23:21,26;24:2,18,19,
23,26;25:4,6,11,12,
14,16,17,21;26:3,9,
24;27:21,25;28:4,6,
10,11,13,17,24;29:2,
3,23;30:4,9,14,15,17,
18;31:8,24;32:2,10,
18;33:2,4;34:2;35:14;
36:20;37:12,13,23;

38:25;39:3,5,16,17,
24,26;40:3,4,15,16,
17,20;41:3,9,15;
42:13,17;43:13,16;
44:13,20;45:3,17,25;
46:3,5,19;47:6,9,19;
48:17,21,24,26;49:2,
8,9,15,20;50:3,12,24;
51:8,13;52:2;53:17,
23,24;54:9;55:2,26;
56:2,16;60:9,13,16;
62:3,14,17;65:10;
68:2,4;70:7,12,12,18,
24;71:8,9,17,17;72:5;
73:13;74:3,18,21;
76:13;77:2;78:16,20,
21;79:15,17,26;80:10,
15,20;81:9;84:4,26,
26;85:5,16,18,18,21
dollar (1)
52:22
dollars (5)
33:9;17;35:17;47:5;
53:7
done (16)
8:16;16:14;18:15;
27:10;33:11;37:20;
43:5;45:8;46:24;52:4,
4;53:18;60:17;66:13;
72:12;74:18
dose (1)
17:13
double (1)
8:26
down (5)
42:14;60:9;65:16,
19;70:3
dozen (3)
11:6,7;37:10
dozens (1)
42:7
drawn (1)
48:21
dribbling (1)
25:13
drill (1)
70:3
due (3)
43:7;51:10;53:11
duplicative (1)
70:21
duration (2)
23:14;70:20
during (2)
24:6;43:11

E

earth (1)
6:15
easily (1)
50:2
easy (4)

App. 545

FILED: NEW YORK COUNTY CLERK 06/21/2017 02:24 PM
NYSCEF DOC. NO. 102    Case 1:17-cv-02301-VEC    Document 235-6    Filed 06/30/17    Page 92 of 102    INDEX NO. 451962/2016    RECEIVED NYSCEF: 06/21/2017

PricewaterhouseCoopers                                                                                                    June 16, 2017

42:21,24,25;51:2
**Economic (1)**
  84:15
**edification (1)**
  12:24
**effect (2)**
  23:15;67:22
**efficient (5)**
  43:10;44:26;51:9;
  61:13;68:20
**effort (1)**
  37:3
**egg (1)**
  13:18
**eight (2)**
  27:7,7
**eighth (1)**
  79:2
**either (7)**
  28:11;33:7,20;
  44:19;50:19;76:18;
  84:2
**electronic (1)**
  35:13
**elicit (1)**
  82:26
**else (5)**
  9:7;28:3;66:5;68:8;
  71:2
**e-mail (1)**
  85:13
**embarrassing (1)**
  81:10
**emphasize (1)**
  50:8
**employed (2)**
  66:24,24
**employee (6)**
  59:8;60:26;67:20;
  68:13;69:9,9
**employees (3)**
  42:4;67:16;69:8
**employment (1)**
  67:14
**empowered (1)**
  26:20
**encompassed (1)**
  31:22
**encouraged (1)**
  36:26
**end (12)**
  5:21;6:24;7:2;
  14:18;19:11,12;
  52:26;55:2,5;62:21;
  77:3,20
**Energy (9)**
  8:10,19;10:10;13:9,
  12,25;14:11,15;52:18
**enforce (1)**
  49:7
**enforcement (1)**
  17:24
**engage (1)**

51:25
**engaged (2)**
  9:21;24:25
**engaging (1)**
  11:19
**enjoin (1)**
  85:10
**enjoy (1)**
  45:5
**enormous (1)**
  10:26
**enter (1)**
  67:20
**entire (3)**
  37:7;63:20;66:11
**entirely (1)**
  66:10
**entitled (9)**
  4:12;39:7;50:7;
  59:18;61:15;66:19;
  70:8;77:15,16
**entitlement (1)**
  51:3
**entity (1)**
  69:3
**entrusted (1)**
  45:4
**establish (1)**
  47:2
**established (2)**
  21:19;65:26
**establishing (2)**
  18:12;67:5
**evaluate (2)**
  43:14,15
**evaluation (1)**
  66:7
**even (17)**
  6:17,22;10:25,26;
  19:26;20:21;21:23,
  24;25:26;43:26;
  44:16;45:18;54:26;
  64:25;72:6;79:16;
  85:17
**events (1)**
  38:16
**everybody (3)**
  3:18;34:14,23
**everybody's (1)**
  30:6
**everyone (1)**
  6:25
**evidence (7)**
  5:18;15:12;19:14;
  49:14;51:2;80:21;
  81:10
**evidences (1)**
  19:15
**exactly (7)**
  10:7;13:4;17:8;
  21:26;54:7;56:14;
  64:3
**examination (2)**

55:17;68:11
**examine (4)**
  42:25;43:2,3;45:4
**examined (2)**
  43:9;83:20
**example (5)**
  16:12;27:4;32:6;
  40:9;41:2
**except (2)**
  37:18;60:20
**excessively (3)**
  12:5;72:16;83:20
**Exchange (2)**
  69:6,6
**exclusively (1)**
  66:26
**Excuse (1)**
  27:16
**executed (1)**
  28:20
**Executive (1)**
  84:15
**exemplary (1)**
  85:25
**exercise (2)**
  9:21;37:17
**exercised (2)**
  51:19,19
**exercising (1)**
  37:16
**Exhibit (5)**
  5:16,17;15:10,11;
  47:16
**exhibits (1)**
  84:5
**exist (1)**
  28:12
**existence (2)**
  46:2;85:13
**expanded (1)**
  10:16
**expect (3)**
  70:22;75:18;81:23
**expectation (1)**
  5:22
**expenses (1)**
  67:20
**experience (2)**
  3:9;43:8
**explain (3)**
  8:14,15,16
**explained (1)**
  26:25
**explaining (3)**
  20:4,5;24:17
**exploration (1)**
  9:17
**expressly (1)**
  79:19
**extend (1)**
  83:4
**extended (1)**
  19:10

**extending (1)**
  7:16
**extent (2)**
  37:18;57:14
**extra (1)**
  6:25
**Exxon (92)**
  5:15,17,21;9:17;
  14:17;15:10,11;
  18:11;19:5,8,14,18;
  20:3,5,9,14;21:3,7,11,
  26;22:9,14,18,20,23;
  23:4;25:2,3,10;27:5;
  28:7,13;29:5;32:9;
  38:26;39:15,19,26;
  40:20;42:5,9,10;
  43:18,26;44:8,10;
  45:18,23;46:2,17;
  49:14,16,18,25;50:13;
  51:3;53:14,20,21,25;
  54:19,20;58:26;59:5;
  60:13;61:5;66:26;
  67:14,15,19,26;68:6,
  12;69:7;71:14;72:6,
  18,19;73:23;74:2,21,
  24;77:22;78:11;80:7,
  17,25;81:23,26;84:5;
  85:25,26
**ExxonMobil (20)**
  3:2,23;4:10;13:10;
  14:24;16:13;23:20;
  29:6;34:18;64:19;
  65:16;66:24;67:2,11,
  25;69:3,8,10,11;81:24
**ExxonMobil's (8)**
  3:5,26;29:15;37:7,
  8;62:15;67:21;79:22
**Exxon's (29)**
  18:21,26;19:16,19;
  20:22,25;22:3,16;
  24:26;25:12,16,20;
  29:26;32:10;41:3,7,
  12;44:8;47:11;48:21;
  49:2,26;50:3,10;
  63:17;71:16,22;
  80:21;84:23

**F**

**face (3)**
  9:24;72:20;75:7
**fact (13)**
  8:6;11:4;20:11;
  24:21;28:24;35:9;
  41:23,26;44:7;46:14;
  50:25;61:16;74:23
**facts (8)**
  16:9,13,24;20:5;
  25:19;47:9;50:4;
  68:25
**factual (15)**
  21:17,18,18;23:4;
  32:4,5;41:5;43:19,22;

44:18;46:15,16,22;
  50:13;80:18
**factually-based (1)**
  31:24
**fail (1)**
  57:7
**failed (2)**
  26:10;85:12
**failing (1)**
  57:9
**failure (1)**
  31:22
**fair (1)**
  45:22
**faith (4)**
  45:4;51:19;66:14;
  84:24
**false (1)**
  19:19
**far (5)**
  22:10,12;40:2;43:9;
  46:20
**fashion (1)**
  54:21
**favor (1)**
  65:22
**favors (1)**
  65:24
**federal (1)**
  85:10
**feed (1)**
  23:13
**feel (1)**
  60:17
**Feinstein (1)**
  63:16
**fifth (1)**
  77:5
**fight (1)**
  9:4
**fighting (1)**
  25:14
**figure (8)**
  13:15;14:15;31:25;
  43:13;47:4;62:8;63:3;
  71:13
**file (4)**
  8:24;15:5;81:25;
  84:5
**filed (6)**
  15:18,18,20,22;
  80:5;82:6
**files (9)**
  10:15;25:2;32:17,
  22;33:10;37:8;55:14;
  82:16;83:3
**fill (1)**
  50:25
**filled (1)**
  32:23
**final (1)**
  6:23
**finality (1)**

5:22
finally (1)
  49:24
find (5)
  19:2;28:12;42:15;
  71:25;85:16
finding (1)
  28:14
fingerprints (1)
  22:24
finish (3)
  6:15;20:16;39:15
finished (1)
  19:5
fire (1)
  67:15
first (43)
  4:18,19;5:4;8:12;
  9:5,12;10:8;11:18;
  19:6,15;20:3,17,25;
  21:23;23:13;25:20;
  27:24;28:20;30:3,10;
  31:23;39:13;40:8,11,
  14,22,23;41:4,17;
  46:7;47:8;49:7,10,26;
  54:8;56:14;58:14;
  60:11;69:21;71:16,
  21;73:13;85:7
fits (1)
  19:8
five (14)
  7:10;27:6;48:16;
  49:17,20,23;50:7;
  59:23,26;67:13;
  73:22;79:6,10;85:23
flip-flopped (1)
  54:11
floor (2)
  4:20;35:4
focused (5)
  17:20;19:13;21:17;
  23:11;46:16
follow (2)
  23:12;71:10
followed (1)
  71:10
following (3)
  12:20;28:23;34:26
forbid (1)
  33:7
forced (1)
  44:14
forecast (1)
  14:8
form (1)
  16:23
formats (1)
  27:9
former (1)
  85:13
formula (1)
  82:9
formulated (1)

19:24
forth (1)
  85:19
forthcoming (1)
  26:11
forward (8)
  50:20,22,22,23,24;
  80:21;81:3,7
fossil (1)
  53:16
found (7)
  48:19;49:12;60:12;
  62:26;63:25;72:4;
  85:7
four (21)
  7:12,23;9:25;14:22;
  18:25;27:6;34:16,18;
  36:15;40:13;42:3;
  47:25;48:16,17;
  49:16;50:7;52:19;
  55:17;63:13;79:6,10
fraction (1)
  37:13
framed (2)
  31:9;60:22
frankly (1)
  51:14
fraud (4)
  41:7;44:4;80:21;
  81:11
free (3)
  55:24;73:2;76:18
front (1)
  14:10
fuel (1)
  53:16
fulfilling (1)
  69:25
full (2)
  21:23;73:4
fully (9)
  3:23;24:10;38:2;
  55:18;63:22;65:17,
  21;66:3;85:20
further (5)
  24:12;68:8;72:21;
  75:2;76:15
future (3)
  13:23;16:8;53:8

**G**

game (1)
  65:25
gap (1)
  39:18
gaps (2)
  19:24;50:26
gas (5)
  9:17;13:2,12,24;
  29:9
gauge (1)
  44:25

gave (3)
  6:25;34:16;74:17
G-d (1)
  33:7
General (34)
  3:16,25;4:9,12;
  5:24;9:23;10:13,19;
  11:10;17:17;18:3,8;
  19:23;21:21;25:26;
  34:19;36:4,7;37:15;
  39:23;42:3,11;51:4,5;
  53:15;60:7;61:14;
  68:7,9;76:18;79:20;
  84:15;85:16,17
generally (2)
  31:8;64:17
General's (3)
  3:6;4:16;80:18
generated (4)
  32:25;39:12;62:4,
  14
gentleman (1)
  66:22
genuine (1)
  81:9
GHG (12)
  7:26;8:4,7,16;
  12:26;14:5,10,25;
  20:2;27:23;28:5;
  54:18
given (3)
  11:23;16:11;19:9;
  47:12;60:4;68:25;
  70:10;71:8
giving (8)
  20:20;50:14;53:24;
  60:3;73:21;74:16;
  80:8,9
goal (2)
  38:11,14
goes (7)
  14:26;32:21,26;
  33:6;54:6;80:26;84:2
good (4)
  45:4;51:19;66:14;
  84:24
government (1)
  22:21
governments (1)
  13:23
grabbed (1)
  4:20
granted (7)
  58:18,21,25;59:10,
  11;76:25;78:4
granting (2)
  64:15;75:17
great (1)
  37:2
greenhouse (2)
  13:2;29:9
ground (3)
  13:5,14;81:15

grounded (1)
  9:10
grown (1)
  32:3
grudgingly (1)
  19:9
guess (13)
  11:24;29:24;52:19;
  56:13;25;60:7;70:3,7;
  71:5;73:9;74:7;76:10;
  78:24
guidance (4)
  60:7;67:21;69:26;
  73:2
gulf (1)
  81:19
Guy (1)
  7:21

**H**

half (3)
  27:25;37:10;76:16
hand (3)
  5:11;15:9;84:8
handed (2)
  84:3,4
Handing (1)
  5:14
handled (1)
  66:17
handles (1)
  48:3
hands (2)
  43:26;44:8
happen (3)
  36:14;76:22,24
happened (6)
  5:6;6:9,10;7:4;
  19:3;64:4
happening (1)
  83:6
happy (5)
  5:13;7:17;9:5;
  44:10,14
hard (6)
  15:16;16:4;35:12;
  42:21;50:21;81:11
hard-pressed (1)
  72:10
head (1)
  8:10
heading (2)
  62:7,9
heads (1)
  8:19
hear (6)
  16:21;26:12;42:16;
  52:16;61:18;76:23
heard (6)
  25:18;42:15;45:18;
  55:8;60:25;82:15
hearing (4)

4:3;10:17;22:20;
  33:24
hearings (1)
  42:2
heaven (1)
  6:15
held (1)
  48:14
help (3)
  17:6;44:13;50:19
here's (1)
  6:11
higher (1)
  73:2
highly (1)
  79:18
hire (1)
  67:15
Hirshman (2)
  6:19;63:18
historical (1)
  3:9
history (2)
  18:12;67:14
holds (1)
  63:18
Honor (104)
  4:21;5:5,12;12:16;
  15:13;16:10;17:5,14;
  18:5,17,18;19:12;
  20:24;21:15;25:7,8;
  26:12,13,22;27:5,18,
  23;29:10,25;30:12,16,
  20,25;31:13;35:5,25;
  39:8,13;40:11,11,21;
  41:8,19,25;42:18;
  43:7,25;44:7,14;
  45:19;46:5,9;47:21;
  48:18;49:6;50:9,17,
  18;51:25;53:2;54:14;
  56:4,13,16;57:3,18;
  58:5,8;59:4,4,15,20,
  23;60:24;63:12;
  64:13;65:13;68:16;
  69:15,16;71:2,3,19,
  25;73:9,10,14,25;
  74:6,14,17,19;76:5,9,
  12,21,25;77:4,11,24;
  78:2,4;79:9;80:14;
  82:19;83:7,25;84:14;
  85:6
Honor's (7)
  6:10;18:16,19;
  48:12;56:15;68:17;
  79:16
hopefully (2)
  75:19;76:19
hours (1)
  76:16
housekeeping (1)
  83:25
huge (1)
  34:17

FILED: NEW YORK COUNTY CLERK 06/21/2017 02:24 PM
INDEX NO. 451962/2016
NYSCEF DOC. NO. Case 1:17-cv-02301-VEC   Document 235-6   Filed 06/30/17   Page 94 of 102 RECEIVED NYSCEF: 06/21/2017
PSN v.
PricewaterhouseCoopers
June 16, 2017

hundreds (3)
    10:4;35:16,16
hunt (2)
    53:13;84:18
hunting (1)
    60:9

## I

identical (1)
    67:9
identifiable (1)
    50:3
identified (14)
    6:5;10:4,14;29:13,
    16,21,22;43:2;45:25;
    47:26;50:2;66:5;
    78:15,18
identify (4)
    29:6;48:10;71:13;
    78:14
identifying (3)
    7:24;29:14;60:2
imagine (1)
    72:8
immediately (1)
    7:13
impairment (8)
    20:23;40:12;41:2;
    48:17;60:9;70:12;
    71:15;72:7
impairments (1)
    48:26
Imperial (17)
    59:8;66:20,24,25;
    67:3,10,16,19,21,22,
    22,24;68:3,26;69:8,9;
    84:7
Imperial's (2)
    67:22;69:10
implementation (1)
    29:8
implementing (1)
    63:18
implication (1)
    36:13
implicit (2)
    18:20;33:5
important (3)
    7:10,23;8:9;14:16;
    67:16
importantly (1)
    44:7
impose (1)
    65:25
imposing (1)
    55:23
improper (1)
    85:7
improperly (1)
    44:19
include (1)
    30:11

including (4)
    24:7,19;41:21;49:8
incredible (1)
    58:13
inculpating (1)
    40:24
inculpatory (4)
    48:20;49:12;54:24;
    60:12
independently (1)
    31:23
indicated (3)
    6:18;45:20;74:2
indicating (3)
    16:12;36:24;68:26
individuals (2)
    29:6;78:5
inefficient (1)
    28:25
infinitum (1)
    53:8
information (44)
    10:22;18:21;19:9,
    25;22:23;23:12,16;
    25:17;26:18;28:18;
    29:7;30:5;40:24;
    41:22;44:19;46:9,18,
    26;48:20;49:13;
    56:20;57:2;60:21;
    61:14;64:26;65:3,5;
    66:6;70:9,10;72:17;
    73:7,16;75:3,5;79:19,
    21;80:7,13;81:16;
    82:10,14;83:2,22
informed (1)
    76:15
inherent (1)
    45:12
in-house (2)
    64:18,22
initial (1)
    18:16
injunction (1)
    33:24
innocent (2)
    53:26;55:4
inquired (1)
    62:18
instead (1)
    4:23
instructed (1)
    20:25
instructions (2)
    20:14;74:17
insufficient (1)
    4:4
interest (1)
    67:9
interesting (1)
    85:16
interfere (1)
    37:17
interference (1)

47:11
interferes (1)
    28:25
internal (4)
    39:22;54:15;61:5;
    66:9
internally (2)
    54:10;62:14
interposed (1)
    57:15
interpretation (2)
    16:16,17
interrogatories (50)
    3:15;4:11,14;11:12,
    16,20;12:4,5,12;
    15:26;17:4;18:6;24:5,
    15,22;26:8;28:2;36:6;
    42:18;44:12;45:21;
    47:20;48:2;55:16;
    57:4,6,7,8,10,12;
    58:19;59:12;69:20,
    23,25;71:26;72:14,15,
    22;73:3;74:23;75:11,
    12,13,16,22,24;76:3,
    8;77:16
interrogatory (24)
    11:21,25,26;46:26;
    47:3,26;58:2,3,20;
    60:23;61:12;72:13,
    13,17,20,24,25;75:10,
    25,26;77:18;78:6,10,
    13
interrupt (3)
    12:9;17:9;34:22
interrupted (1)
    12:7
intervening (1)
    39:18
intervention (1)
    83:5
interview (1)
    35:11
interviewing (1)
    28:14
intimated (1)
    56:23
into (14)
    13:21;14:12;15:2;
    19:17;30:9;33:21,22;
    42:9;43:26;51:4;53:8;
    67:20;76:19;80:26
investigate (1)
    39:24
investigating (4)
    27:15;36:4,8;37:5
investigation (46)
    5:26;6:3;17:24;
    18:4,9;19:13;20:24;
    21:20;22:21;23:8;
    28:26;32:3,19;33:6,
    21;37:4;38:9;39:4;
    41:24;42:12;43:9,12;
    44:22;45:2,14,23,26;

50:20,22;51:5,9,16,
    17;53:13,19;58:15;
    61:16,18;62:11;
    71:12;74:11,13;
    80:15,18;85:3,11
investigative (4)
    21:16,17;26:19;
    42:2
investigatory (1)
    33:15
investors (4)
    22:26;27:9;49:3;
    74:25
inviting (1)
    42:9,10
invoke (1)
    79:22
involve (1)
    7:8
involved (3)
    7:24;15:6;56:21
involving (2)
    9:16;39:20
irrelevant (3)
    41:24;58:12;66:10
issue (19)
    3:15;4:15;17:19;
    19:7;26:13,14,15;
    32:16;33:5;35:7;36:8;
    45:15;56:6;62:6;
    63:13;65:14;71:3,15;
    74:10
issued (10)
    3:12;4:7;18:26;
    20:10;30:3;31:6;
    32:12;38:15;39:19;
    46:7
issues (13)
    3:10;15:2;19:7;
    25:24;26:14,15;31:9;
    37:4;61:7;71:19;73:5;
    77:11,12
items (2)
    25:8;79:2
Iwanika (6)
    66:23,23;67:4,18;
    68:2,10

## J

Jason (1)
    66:22
job (1)
    25:16
joked (1)
    85:14
judgment (2)
    42:12;55:11
judicial (1)
    83:5
July (3)
    7:20,21,22
June (11)

7:15,17,19;10:25;
    11:2;34:11;38:8,10,
    12,13,21
Justice (1)
    84:15

## K

keep (5)
    36:16;38:11,14;
    75:6;80:13
keeping (2)
    22:19;53:21
keeps (1)
    73:10
key (3)
    18:6;34:10;60:6
kind (3)
    15:6;18:10;69:12
kinds (2)
    3:10;44:3
knew (3)
    6:26;10:6;53:20
knowledge (6)
    15:5;29:7;41:12,14;
    65:9;83:23
known (1)
    50:26
knows (3)
    9:20;42:26;43:4

## L

language (2)
    27:8;39:21
large (2)
    44:2;78:25
largest (1)
    53:16
last (10)
    18:17;21:2;25:18;
    27:12,24;37:20;
    38:24;49:5;56:21;
    76:16
later (1)
    7:12
law (9)
    17:23;28:22;43:25;
    44:2,15;46:22,23;
    52:24;79:23
lawyer (1)
    61:5
learn (1)
    23:23
learned (4)
    19:8;20:23;21:6,9
least (5)
    34:5;40:17;46:20;
    76:12,23
leave (3)
    73:21;76:14;84:11
leaving (2)
    75:18,20

left (1)
  39:17
legal (18)
  18:13;22:8;26:14,
  15;29:15;39:22;
  43:18,19;46:17;
  47:10;51:3,12,15;
  58:11;60:19;74:12;
  79:23;80:16
legally (3)
  21:20;23:15;74:22
legitimately (1)
  61:15
length (1)
  83:8
letter (1)
  79:25
letters (1)
  79:19
level (1)
  26:21
lie (1)
  54:23
Lieutenant (1)
  79:20
life (1)
  4:26
limited (2)
  78:2;82:8
line (3)
  5:4;48:22;49:14
link (1)
  39:25
list (5)
  48:2,4,11;78:7,25
listed (1)
  78:6
listen (1)
  51:24
listened (1)
  21:5
Listening (1)
  52:24
literally (1)
  25:10
litigation (2)
  33:14,15
little (1)
  56:25
lives (1)
  63:10
load (1)
  35:14
locations (1)
  54:19
long (7)
  9:20;12:4;21:24;
  25:11;68:17;83:10,20
long-lived (1)
  41:3
Look (11)
  10:12;11:26;21:12;
  22:3;39:9;42:20;

52:20;53:12;55:7;
  56:8;71:2
looking (6)
  22:12;53:23;60:13;
  70:25;79:5;82:20
loop (1)
  36:24
lost (1)
  19:10
lot (2)
  10:22;64:11
love (1)
  4:24
Ltd (1)
  84:8

M

macroeconomics (1)
  14:12
magnitude (1)
  35:10
major (1)
  73:16
majority (1)
  69:2
makes (1)
  11:23
making (2)
  27:6;47:4
man (1)
  47:4
manage (1)
  75:3
manageable (1)
  37:12
management (6)
  20:16;39:16;64:20;
  66:9,12;67:23
managing (1)
  18:11
maneuver (1)
  85:10
Manisha (1)
  84:14
manner (5)
  45:13;66:17;79:8;
  81:21;85:25
manpower (1)
  10:26
many (8)
  3:8;22:6;35:15;
  42:4;52:11;66:8;
  70:21;85:2
March (13)
  3:13,23;4:2,3,7,8;
  5:6,23;6:25;9:9;
  23:18;30:26;34:8
mark (2)
  5:15;32:24
marked (5)
  5:17;15:11;84:5,6,9
market (2)

32:24;67:13
massive (1)
  37:4
material (1)
  79:23
matter (11)
  8:6;28:22;34:24;
  39:18;40:19;41:6;
  43:25;44:2;52:16;
  60:15;83:26
matters (3)
  32:2;68:22;74:10
may (14)
  3:16;7:5;12:15;
  13:23;17:7;35:12;
  38:5;41:10;46:13;
  55:4;56:6;61:10;
  83:21,22
Maybe (2)
  53:2;78:11
mean (8)
  17:7,11,15;45:18;
  54:25;57:11,13;71:11
means (2)
  61:14;64:26
mechanism (2)
  81:12,15
meet (19)
  30:21,22;34:3;
  36:26;44:9;45:8;48:4;
  49:19;50:15;57:26;
  72:23;75:19,20;
  76:15,20;77:18;
  78:22;79:10;83:15
meeting (3)
  20:13;63:6;72:24
meets (2)
  46:21,23
mentioned (1)
  59:4
mentions (1)
  69:7
mere (1)
  67:7,10,25
merely (1)
  67:8
merits (5)
  17:22,25;19:22;
  21:13;27:13
met (9)
  43:18,21;45:11;
  46:14;57:20,22;
  58:10;69:20;74:12
Michele (2)
  6:18;63:18
might (2)
  75:12;81:26
million (7)
  6:6;18:14;22:10;
  25:10;47:5;55:25;
  79:14
millions (9)
  16:6;21:24;33:9,17;

47:4;53:6,6,62:12;
  70:20
mind (1)
  49:5
minds (2)
  37:10;54:26
minimum (2)
  81:24;82:15
minute (1)
  41:19
misled (1)
  26:10
missing (1)
  19:25
mobile (1)
  58:26
modification (1)
  77:26
modified (1)
  39:2
moment (2)
  19:4;52:11
money (1)
  63:3
month (1)
  24:25
monthly (2)
  39:11;53:7
months (26)
  3:19;10:19;20:17;
  25:9;29:5,6;33:8,17;
  34:20;35:16,23;
  36:17;37:19,20;
  38:10,24;39:16;51:6,
  26,26;52:16;53:8,22;
  70:16,16,26
more (20)
  5:23;10:18,22;11:6;
  12:13;16:26;17:2;
  24:22;28:23,23;
  37:10;44:7;52:18;
  54:19;61:13;63:21;
  69:13;79:16,17;83:23
morning (1)
  63:8
morning's (1)
  3:14
most (7)
  14:16;20:12;33:11;
  44:26;54:21;76:3;
  83:11
motion (9)
  3:5,6;4:17;58:6;
  75:17,17;76:26;
  77:17;79:13
motions (3)
  10:20;34:6,6
motivated (1)
  84:18
move (9)
  7:2;13:24;19:9;
  33:20;34:9,12;50:22,
  24;57:19

moved (3)
  6:15;74:16;81:4
moving (7)
  5:25;38:11,14;
  50:20,22,23;76:2
much (11)
  4:26;13:4,14,15;
  36:6;46:13;52:17;
  54:10;60:20;61:13;
  73:10
multimillion (1)
  52:22
multiple (3)
  10:19;24:4;41:25;
  52:23
multitude (1)
  83:22

N

nail (1)
  65:16
nailed (1)
  65:19
named (1)
  66:22
names (1)
  10:4
narrow (3)
  44:18;50:8;71:23
narrowed (2)
  30:4;44:12
narrowly (1)
  50:2
necessary (3)
  8:23;23:12;65:12
need (32)
  5:5;11:2;13:5;22:2,
  2;24:22;25:8,12,24;
  26:18,24;27:26;28:3,
  4;31:17,25;34:24;
  38:6;42:13,14,16;
  43:16;44:13;48:20;
  49:13;50:24;51:7;
  58:15,26;70:14;73:7;
  78:17
needed (1)
  43:12
negotiate (1)
  7:16
New (30)
  5:19,23;7:5;14:9;
  16:5;18:13;21:16;
  22:16;28:8;30:3;
  31:24;32:2,5;36:20;
  39:19,21,21;40:19;
  46:18,18;50:12;54:7,
  8;63:3;68:6,10;69:5;
  79:20,23;82:13
newspaper (2)
  54:4,5
newspapers (1)
  82:17

PricewaterhouseCoopers                                                                          June 16, 2017

next (9)
    4:22;5:25;6:2,7;
    7:8;11:3;34:9;36:13;
    55:22
nine (5)
    58:22;59:4,11;
    77:15;78:6
Nobody (3)
    9:20,21;65:7
non-abusive (1)
    4:13
non-burdensome (2)
    4:13;45:22
noncompliance (1)
    74:9
none (1)
    45:18
non-existent (1)
    18:13
non-overbroad (1)
    4:13
nor (1)
    74:22
normal (1)
    53:13
Normally (2)
    3:2;65:8
note (2)
    5:7;59:3
noted (1)
    47:13
notice (2)
    46:2;80:9
notion (1)
    9:11
November (5)
    ·5:19;20:10;38:16,
    21;53:19
Number (28)
    5:16,17;10:20;
    15:11;31:4;36:17;
    37:12;40:12;47:15,
    17,19;48:7,8,11,17;
    49:16,17,20,24;52:3,
    4;59:23,26;76:26;
    77:26;78:3,6,19
numbers (1)
    8:26

O

object (6)
    17:10,12,13;80:10,
    12;82:18
objecting (1)
    57:18
objection (3)
    6:6;7:7;57:10
objections (2)
    57:15,16
obligation (18)
    23:19;30:19;31:5,7,
    12,26;32:10,14;33:3;

35:20;46:3,12,17;
    50:11;56:9;62:3,13,
    16
obligations (5)
    3:24;31:19,20;66:3,
    8
observations (1)
    76:19
obtain (3)
    44:26;46:8;64:26
obtaining (4)
    5:25;21:21;23:11;
    73:4
obtuse (1)
    41:10
obviously (4)
    17:16;20:21;68:18,
    19
occurred (2)
    12:20;35:2
o'clock (1)
    11:9
off (4)
    12:18,19;36:22;
    52:12
offer (5)
    61:21,24;62:2,22,
    25
offered (1)
    61:21
office (5)
    28:22;45:5;49:22;
    81:23;84:16
OFFICER (1)
    57:25
officers (1)
    54:25
office's (1)
    23:13
oil (11)
    9:17;13:4,12,24;
    53:16;54:20;59:8;
    66:24;69:8,9;84:7
Oil's (1)
    68:26
old-fashioned (1)
    4:24
OLESKE (84)
    5:8;17:6,11,14;
    18:2;21:12,15;25:7;
    26:5,12,25;27:4,14,
    18,22;29:10,13,19,24;
    30:12,15,20;31:2,11,
    16,21;38:12,15,25;
    39:7,13;40:4,8;41:14;
    42:8,23;43:7,25;
    45:15;46:5;47:7,24;
    48:7,15,25;56:4,6,13,
    25;57:11,17,24;58:5;
    59:3,15,20;68:16;
    69:15;73:9,19,25;
    74:6;75:15;76:5,9,21;
    77:5,9,10,24;78:13,

19,24;79:5,9;80:12,
    14,24;81:17,21;82:3,
    15;83:2;84:7
One (48)
    5:16,23;7:11;10:9;
    12:15;14:16,19;
    16:15;19:20;23:11;
    27:6,20;31:3,3;34:23;
    36:22;38:20;42:16;
    43:5;46:18;47:19,25,
    26;50:6;52:3;54:19;
    55:8;56:17;59:3,6,21;
    61:10;63:13;64:24;
    65:15,18;66:21,21;
    67:9;68:14;70:6;71:7;
    72:25;74:15;75:24,
    24;78:2;85:12
ones (5)
    51:13;70:4,6;71:6;
    78:24
ongoing (3)
    20:19;38:9;50:10
only (7)
    11:7;28:26;38:21;
    47:14;67:22;69:7;
    72:6
open (3)
    12:21;30:26;45:26
operated (1)
    67:6
operations (2)
    44:4,5
opportunity (6)
    3:25;64:2;80:9;
    81:8;82:18;83:5
oppose (1)
    81:11
opposed (3)
    51:15;77:12;81:10
opposing (2)
    50:15;64:21
opposite (1)
    54:8
opposition (1)
    80:6
order (10)
    3:6;22:26;38:19;
    40:13;44:25;62:23;
    70:8;77:23;79:14;
    83:14
ordered (9)
    18:18,18;45:23;
    46:10;51:25;52:5,12;
    63:8;69:14
ordering (6)
    30:13;37:22,25;
    38:3;69:22;71:7
orders (4)
    3:4,12;4:2,7
organization (3)
    58:26;67:7;68:14
original (16)
    18:19;25:24;32:11,

21;44:20,21;46:11,
    19;49:7;58:10;59:14;
    62:20;73:11,24;74:9;
    77:21
otherwise (1)
    36:23
out (31)
    13:4,14,15;14:15;
    17:17;18:21;19:2;
    22:9;25:13;28:12;
    29:20;30:21;31:25;
    32:3,17;35:22,26;
    39:17;42:15;43:13;
    47:4;48:20;52:22;
    53:22;59:5;63:3,3;
    71:13;72:23;73:10;
    82:6
outcome (1)
    28:15
Outlook (8)
    8:10,19;10:5,10;
    13:9;14:11,16;52:18
outnumbered (1)
    3:3
outrageous (1)
    8:25
outside (3)
    29:14,15;80:15
outstanding (1)
    33:2
over (14)
    6:21;9:17;10:18;
    13:12;18:14;19:9;
    22:3,25;25:6;27:11;
    30:21;32:19;44:3;
    63:20
overall (1)
    70:20
overcome (1)
    45:7
overly (1)
    9:10
overruled (1)
    59:9
overruling (1)
    61:8
oversight (1)
    63:20
owed (1)
    46:9
own (1)
    22:22
owned (1)
    67:12
ownership (2)
    67:9;69:2
owns (1)
    66:26

P

page (1)
    6:26

21;44:20,21;46:11,
    19;49:7;58:10;59:14;
    62:20;73:11,24;74:9;
    77:21
pages (10)
    6:6;10:5;14:23;
    21:24;25:10;55:26;
    62:13;70:21,21;79:15
paid (1)
    69:11
paper (2)
    4:24;11:3
papers (12)
    3:9;8:3;9:13;15:5;
    16:20;18:2;23:10;
    26:26;27:2,3;38:26;
    44:17
parent (1)
    67:7
part (16)
    7:8;8:12;29:14;
    34:18;41:4,15;46:11,
    12;48:18;56:13;
    58:14;60:11;64:12,
    21;65:25;83:11
particular (3)
    11:3;80:25;83:19
parties (6)
    36:26;45:10;63:6;
    79:25;80:16;81:20
partner (3)
    6:18;63:19,19
party (3)
    33:20;50:19;76:18
passed (1)
    58:16
passing (1)
    3:14
Paul (2)
    35:18;63:19
pay (1)
    54:10
people (30)
    7:12,23;9:3,25;
    11:18,19;13:24;26:9;
    29:21,23;31:26;
    34:10,16,19;36:15,19;
    39:20;48:3,5,8,8,10;
    55:15,17;59:10,11;
    73:22;78:7,14,17
percent (2)
    66:26;67:12
percipient (1)
    41:12
period (5)
    18:14;19:10;36:7;
    72:19;83:20
permitted (1)
    6:17
perpetually (1)
    36:4
persistent (1)
    77:9
person (1)
    8:13
perspective (3)
    51:8;68:17;70:20

PSNY v.
PricewaterhouseCoopers

June 16, 2017

Pete (1)
  7:20
phase (3)
  33:21,22,22
picture (2)
  41:18;69:12
piece (1)
  11:3
place (1)
  69:21
places (1)
  27:8
plan (2)
  7:18;63:2
Planning (4)
  7:14;8:11,20;81:25
please (1)
  29:6
plethora (1)
  33:2
point (17)
  3:11;18:16;21:25;
  27:14;28:19;29:19,
  24;36:10;41:15;42:9;
  56:14;59:5;60:16;
  66:11;67:26;69:26;
  73:12
pointed (2)
  18:5;30:21
pointing (1)
  73:10
points (2)
  17:7;66:4
policies (2)
  39:22;67:23
policy (3)
  14:13;39:18;67:21
political (1)
  53:13
politically (2)
  55:4;84:18
portion (1)
  77:17
pose (1)
  11:16
position (3)
  37:20;53:15;73:6
position's (1)
  49:26
positively (1)
  56:22
possession (1)
  30:9
possibility (1)
  18:11
possible (1)
  68:20
post (1)
  38:11
posts (1)
  38:14
posture (1)
  17:23

potential (4)
  41:7;44:4;45:25;
  74:9
Powell (1)
  7:21
power (7)
  11:16,21,22;12:2,2,
  4;23:13
PowerPoint (1)
  4:23
powers (5)
  36:10;37:16,16,17;
  72:15
practical (4)
  26:15,21;51:22,22
practices (3)
  38:26;40:7;41:13
precisely (1)
  66:12
preclude (1)
  28:22
precluded (1)
  41:8
precluding (9)
  24:12,14,15,16;
  29:17;63:5;65:7;
  75:25;76:2
preemptive (1)
  81:12
preparation (1)
  65:5
prepared (2)
  17:15;75:10
preparing (1)
  51:26
presence (1)
  68:10
present (2)
  39:8;40:25
presentation (1)
  71:22
presentations (1)
  4:25
president (3)
  7:13;69:8,10
press (1)
  54:5
presumably (1)
  39:20
presume (2)
  69:18,18
presuming (1)
  47:14
presumption (2)
  45:5,7
presumptively (1)
  83:10
prevent (1)
  83:6
preventing (1)
  37:18
previously (14)
  10:2,14;29:21;41:4,

  8;47:13;48:10,18;
  62:18;70:5,10;77:25;
  78:4,8
price (3)
  14:2,14;19:20
prices (3)
  14:15,18;54:17
Pricewaterhouse (3)
  40:14;49:10;84:4
PricewaterhouseCoopers (5)
  14:22;21:10;40:10,
  22;54:15
PricewaterhouseCoopers' (1)
  21:6
Pricewaterhouse's (2)
  40:16;48:25
prior (12)
  3:8;10:17,17;19:13;
  23:14;40:13;48:10;
  58:24;64:9;67:14;
  68:21;73:4
prioritized (1)
  44:11
privilege (5)
  35:15;61:7,9;65:8;
  85:6
privileged (1)
  65:3
probative (1)
  58:13
problem (4)
  23:3;30:24;31:3;
  64:12
proceed (3)
  18:4;43:20;69:14
proceeding (4)
  16:3;51:11,11;
  80:19
Proceedings (88)
  3:1,8,14;4:1;5:1;
  6:1;7:1;8:1;9:1;10:1;
  11:1;12:1;13:1;14:1;
  15:1;16:1;17:1;18:1;
  19:1;20:1;21:1;22:1;
  23:1;24:1;25:1;26:1;
  27:1;28:1;29:1;30:1;
  31:1;32:1;33:1;34:1,
  22;35:1;36:1;37:1;
  38:1;39:1;40:1;41:1;
  42:1;43:1;44:1;45:1;
  46:1;47:1;48:1;49:1;
  50:1;51:1;52:1;53:1;
  54:1;55:1;56:1;57:1;
  58:1;59:1;60:1;61:1;
  62:1;63:1;64:1;65:1;
  66:1;67:1;68:1;69:1;
  70:1;71:1;72:1,22;
  73:1;74:1;75:1;76:1;
  77:1,7;78:1;79:1;
  80:1;81:1;82:1;83:1;
  84:1;85:1
process (23)
  5:24;6:21,24;8:20;

  20:12;22:5,25;24:18,
  25;25:9,11;43:11;
  48:26;49:2;57:18,19;
  61:11,12;63:15,20;
  72:23;74:14,19
produce (38)
  3:24;7:18,18;10:26;
  14:13;15:23,25;
  16:26;17:2;20:15;
  24:2;25:4;29:23;30:8,
  14,19;31:8,12,22;
  32:10;33:3,14;34:18;
  35:21;37:14,22,25;
  39:10;46:4;47:5;55:6,
  6,6;56:2;62:3,14,19;
  78:15
produced (29)
  9:6;10:15,18;11:14;
  14:9;16:16,18;19:15;
  22:10;23:23;24:10,
  19;25:10;28:10;
  30:18;32:18;33:12;
  37:9,13;49:20;55:26;
  59:25;62:12;68:2;
  70:25;79:14,26;85:2,
  18
produces (1)
  18:14
producing (6)
  11:24;12:12,13;
  25:5;38:21;59:6
product (1)
  19:20
production (35)
  3:19;5:20;6:5,16;
  7:2;20:15,19;23:14,
  21,25;26:9;27:21;
  33:16;34:21;35:8,23;
  36:18;38:4,18;45:24;
  46:13;52:23;59:14;
  62:17,20;66:11;71:8;
  74:16;77:20;78:5;
  79:15,17,19,25;84:26
productions (1)
  68:8
productive (1)
  61:13
professional (1)
  81:21
progress (1)
  28:25
project (6)
  14:17;52:8;56:20;
  72:6,18,18
projecting (1)
  54:17
projects (2)
  14:6;52:2
proper (2)
  57:10;66:17
properly (5)
  23:19;28:16;51:18;
  58:20;60:22

proportional (2)
  53:9;66:17
proportionality (4)
  45:13,16;55:11;
  83:18
propose (2)
  51:22;76:7
propound (12)
  12:4;24:5,22;31:17;
  45:21;55:16;58:18;
  59:12,12;72:15;76:4;
  77:16
propounded (2)
  32:22;69:19
propounding (3)
  24:14;26:8;73:3
prosecute (1)
  20:26
prospective (1)
  80:21
protect (2)
  81:12,15
protections (1)
  79:23
protective (2)
  3:5;79:14
protocol (1)
  81:8
proves (1)
  27:22
provided (1)
  63:16
proxy (21)
  7:25;8:4,6,14;10:5;
  12:26;13:5,9,10,19,
  21;14:7,25;20:2;21:8;
  27:19;28:5;29:8;
  34:10;54:16,20
public (10)
  21:7;22:18,18;27:7,
  9;74:25;75:6,6;80:19;
  83:3
publicized (1)
  80:2
publicly (1)
  79:26
publishes (1)
  83:3
purported (2)
  39:14;85:5
purpose (1)
  6:20
purposes (10)
  8:8;13:11;19:21;
  22:22;38:19;60:10;
  69:5;76:23;80:17;
  84:5
pursuant (2)
  59:14;68:3
pursue (1)
  61:15
pursued (2)
  72:6,19

App. 551

FILED: NEW YORK COUNTY CLERK 06/21/2017 02:24 PM
INDEX NO. 451962/2016
NYSCEF DOC. NO. Case 1:17-cv-02301-VEC   Document 235-6   Filed 06/30/17   Page 98 of 102 NYSCEF: 06/21/2017

PricewaterhouseCoopers

June 16, 2017

push (2)
22:14;49:19
pushing (4)
9:18,19;60:3,4
put (4)
9:15;36:22;80:22;
85:19
puts (1)
54:23
Putting (3)
19:4;25:23;70:22
PWC (5)
40:17;48:19,24;
60:11;70:24
PWC's (1)
71:17

**Q**

quash (11)
3:5;4:17;34:6,13;
57:19;58:6;71:24;
75:17;76:2,12;77:17
quashed (3)
58:4;72:21;79:6
quashing (3)
58:9;59:24;60:4
question-by-question (1)
65:11
quite (1)
55:3

**R**

raised (1)
17:16
raises (1)
61:6
ran (1)
51:13
range (2)
21:4;70:24
rate (1)
11:8
rational (1)
53:9
rationality (1)
45:13
reached (3)
4:3,8;9:9
read (6)
3:8;27:2,2;54:3,5;
77:8
real (1)
19:7
really (8)
8:18;9:20;14:7;
19:4;42:13;47:21;
50:5;78:25
reason (6)
21:26;22:2;28:4;
43:17;44:6;81:26
reasonable (17)

4:9;11:17;24:15;
34:4;38:10;53:10,11;
55:12,20;58:19;62:2,
26;66:15;72:15;
75:13;76:7;77:22
reasonableness (1)
62:25
reasonably (3)
57:8;59:17,17
receiving (2)
16:5;24:26
recent (1)
44:20
recess (2)
34:25,26
recited (1)
79:2
reconciled (1)
16:19
reconsider (1)
71:6
record (10)
12:18,19,25;18:3;
19:21;83:26;84:12,
13,19;85:24
records (1)
18:25
recourse (1)
73:8
recover (1)
41:22
redid (1)
66:11
redo (4)
19:11;20:18;33:16;
52:22
redoing (1)
35:22
refer (1)
14:20
reference (1)
79:24
referenced (1)
84:8
referred (2)
41:25;84:17
referring (2)
25:21;35:18
refers (1)
13:19
reflected (2)
37:11;77:6
reframe (1)
77:5
refused (16)
20:18,19,20;27:24;
30:12,22;31:5;44:9,
14;48:2,4;49:18,23;
57:21,24;70:26
refusing (1)
50:15
regulator (1)
70:11

rejected (2)
61:23;62:22
relate (1)
58:23
relating (2)
20:22;47:19
released (2)
79:26;82:17
relevance (1)
41:5
relevant (12)
20:21;25:16,19;
41:23;42:17;45:26;
50:26;62:17;65:3;
72:16;74:3,11
relitigate (1)
30:2
remaining (1)
78:24
remedy (1)
74:8
renewed (1)
46:8
report (2)
22:21;83:4
reporter (1)
84:11
reports (1)
39:19
represent (2)
56:9;74:24
representation (1)
35:21
representations (13)
19:16;20:10;21:7;
22:5,17;27:7;39:2,25,
26;40:25;41:7;50:10;
68:21
represented (3)
22:18;49:3;75:2
represents (1)
82:26
reproduction (1)
71:7
request (28)
4:10,16,17;11:21;
23:16;32:22;35:9;
40:12;44:6;47:15,17,
19;48:7,16;49:18,22,
24;56:19;58:20;
59:22,23,26;60:6;
68:3;71:21;76:26;
77:26;78:19
requested (5)
7:7;10:2;34:19;
63:14;68:10
requesting (4)
7:5,6;11:12;24:25
requests (51)
11:11;17:20;19:24;
23:9;22:26;17;28:2,
24;30:4,23;31:3,18,
21,24;32:2,5;38:2,4;

40:12;41:16,21,21;
42:17;43:20;44:9,16,
18,20;45:17;46:8,15,
18;47:25;50:5,8,11;
56:17,26;57:2,18;
58:8,9,24;70:2,22;
72:2;73:12;75:4;
76:11,13;79:6
require (1)
37:5
required (7)
4:6;6:17;26:16;
39:10;43:22;74:22;
80:16
requirements (1)
58:11
requires (1)
67:6
reserve (3)
48:9;72:7;78:7
reserves (1)
48:3
reside (1)
37:10
resident (1)
66:23
resist (2)
23:7;74:22
resisting (1)
59:6
resolution (2)
33:23;75:22
resolutions (1)
34:4
resolved (2)
25:25;36:5
resources (1)
47:12
respect (23)
3:7,10;4:6,11;6:19;
8:15;18:18;24:13;
30:25;34:10;35:7;
43:8;44:23;50:20;
51:10;53:11;54:16,
18;61:6,20;82:5,21;
83:8
respectfully (2)
42:20;76:12
respective (1)
64:5
respond (7)
22:15;28:12;29:12;
33:2;56:6;57:6,7
responded (1)
80:19
responding (2)
12:12;75:4
response (5)
23:5;47:3;60:22;
62:20;78:6
responses (3)
11:12;37:26;71:20
responsibility (1)

64:19
responsible (1)
28:13
responsive (15)
23:22,26;30:10;
31:8,26;32:11;35:20;
37:23;40:13,21;
49:26;56:17;78:20,
21;84:26
restrict (3)
21:21;49:15;71:20
result (2)
79:17;85:18
re-update (1)
36:17
reveal (1)
24:22
review (3)
10:6;16:22;35:15
reviewed (1)
3:13
reviewing (1)
85:17
revised (2)
10:20,21
rewritings (1)
23:6
right (21)
8:13;16:20;17:4;
18:4,5,6,8;25:17;
28:14;29:18;31:11;
34:23;45:7;54:5;57:3;
59:11;61:3;72:26;
73:25;74:8;76:7
rigorous (2)
22:19;28:7
ripe (1)
77:13
risk (1)
23:2
road (1)
42:14
Robert (1)
7:19
role (1)
8:14
roll (1)
84:25
rolling (2)
62:4,13
round (2)
19:15;25:5
routes (1)
70:13
rule (8)
53:3;57:15;60:25;
72:24;75:10,24;
81:15;83:19
ruled (16)
41:4;42:19;46:6;
48:18;56:23;72:12,
14;73:14;75:9;77:14,
15,17,19;79:3,7,8

FILED: NEW YORK COUNTY CLERK 06/21/2017 02:24 PM INDEX NO. 451962/2016
NYSCEF DOC. NO. Case 1:17-cv-02301-VEC   Document 235-6   Filed 06/30/17   Page 99 of 102 RECEIVED NYSCEF: 06/21/2017

PricewaterhouseCoopers                                                          June 16, 2017

rules (3)
    53:4;82:23,25
ruling (8)
    56:5,15;64:16;
    75:16;76:6;77:5,12;
    79:16
rulings (4)
    76:17,24;77:6,9
run (2)
    38:17;51:5
running (1)
    11:19

## S

salary (1)
    69:11
same (9)
    6:26;14:3;20:9;
    39:20;40:19;43:16;
    49:2;82:23,25
sanction (1)
    57:9
satisfaction (1)
    47:2
satisfactory (1)
    4:5
satisfied (4)
    63:24;65:20,25;
    74:14
satisfy (3)
    16:8;22:26;24:10
save (1)
    37:2
saying (10)
    13:22;22:10;24:24;
    33:6;52:14,16;53:5;
    56:16;71:11;85:14
schedule (1)
    16:7
scheduled (6)
    7:15,20,20,21;9:4;
    16:7
science (4)
    53:20,21,25,25
scientific (2)
    53:23,24
scope (4)
    23:14;37:3;72:13,
    22
seal (3)
    80:22;81:5,8
sealed (1)
    80:26
sealing (1)
    80:10
search (26)
    3:20,21;10:16,21;
    19:26;20:6;24:3;25:3;
    27:20,23,24;28:6,21;
    30:2;31:9;33:9;35:14;
    37:24;40:15;43:24;
    55:13,15;73:5,11,17;

77:21
searched (2)
    25:2;32:17
searches (1)
    66:9
searching (1)
    55:13
SEC (4)
    49:20;59:26;70:6;
    71:8
second (4)
    12:15;27:26;31:13;
    39:19
secret (5)
    53:21;80:26;81:4,6;
    82:2
secrete (1)
    53:20
secrets (6)
    80:20;81:10,13,23;
    82:9,26
secundate (1)
    59:7
secure (2)
    46:25,26
securing (1)
    61:14
seek (5)
    3:16;4:9;72:4;
    80:10;83:5
seeking (5)
    58:23;64:15,21;
    65:2;80:4
seem (2)
    8:3;36:21
seemed (1)
    71:21
seems (4)
    4:8,12;9:23;10:13;
    18:7;24:5;38:10;
    41:10;51:23;68:18;
    82:13
sell (1)
    13:15
senior (1)
    63:19
sense (2)
    11:23;71:18
sensitive (5)
    79:18;80:11;82:10,
    14;83:2
sent (1)
    70:14
separate (2)
    67:11;68:14
serious (1)
    54:9
served (3)
    7:5;9:8;78:14
session (1)
    75:23
set (3)
    10:8;50:3;71:7

sets (4)
    8:5;15:7;71:26;
    72:2
seven (6)
    27:7;34:5;65:19;
    67:13;69:7;70:25
several (2)
    55:25;58:23
sham (4)
    8:25;9:11;15:7;
    54:24
share (1)
    51:16
shareholders (2)
    20:13;22:23
shares (1)
    67:12
Sheth (3)
    84:14,14,22
short (2)
    12:9,23
shorter (1)
    36:6
show (12)
    3:4;14:19;26:17;
    28:7;38:25,26;43:20;
    53:17;58:11;64:25;
    65:2,4
showing (8)
    24:9;26:7;40:16;
    41:23;50:14;60:19;
    66:6;74:21
showings (1)
    43:22
shown (7)
    23:10;26:23;41:6;
    58:13;65:2,4,6
shows (4)
    14:11,24;27:26;
    53:25
side (2)
    8:20;84:2
sideshow (1)
    45:6
signed (1)
    63:20
simple (2)
    23:17;47:3
simplest (1)
    27:4;49:18
simply (5)
    21:22;47:8;51:3;
    64:8;80:20
sitting (1)
    49:22
situation (1)
    35:17
six (12)
    27:6;33:7,17;34:5;
    38:24;48:16;49:24;
    50:7;53:7;79:2,6,11
sleuthing (1)
    37:6

slides (2)
    5:11;84:3
slow (1)
    84:25
solution (1)
    51:23
solved (2)
    30:24;31:2
somebody (1)
    66:5
somehow (1)
    28:6
someone (2)
    8:5;35:19
somewhat (2)
    4:23;62:8
somewhere (1)
    71:2
sorry (4)
    12:7;27:18;43:15;
    59:7
sorts (1)
    14:12
sought (2)
    65:3;66:21
sounds (1)
    75:13
sources (1)
    13:25
speak (2)
    8:18;17:15
speaking (1)
    17:22
special (1)
    64:20
specific (12)
    14:5,6;19:14;22:26;
    28:23;45:17;54:19;
    57:19;59:21;72:3;
    75:10;76:17
specifically (4)
    17:7,19;23:8;50:11
specifics (1)
    51:13
spend (6)
    9:13;33:8;37:19;
    47:4;53:6;55:21
spending (1)
    63:3
spent (2)
    36:8;76:16
spoliation (1)
    74:9
spread (1)
    44:2
spreadsheets (1)
    51:26
square (1)
    36:22
Stabilization (1)
    14:10
staff (1)
    4:21

stage (8)
    5:26;6:2,7;7:9;
    34:9;42:11;51:9;
    71:12
staged (1)
    44:11
stakes (1)
    17:18
stand (1)
    54:25
standard (7)
    18:13;26:16;41:20;
    47:10;58:13;64:20;
    67:5
standards (4)
    43:19;46:21,23;
    58:20
start (10)
    3:16;4:15;5:5;
    11:19;13:13,16;25:5;
    36:15;40:18;42:4
started (4)
    49:5;52:14;53:19;
    62:12
starting (1)
    63:12
starts (1)
    19:8
state (6)
    12:25;15:6;16:9,13;
    85:24,26
stated (2)
    5:20,23
statements (2)
    20:12;54:24
statutory (4)
    11:16,21;36:10;
    37:16
stay (1)
    34:23
step (1)
    41:19
steps (1)
    71:10
still (4)
    18:24;21:10;25:11;
    43:16
stock (1)
    67:2;69:2,6,6
stood (2)
    6:11;23:18
stop (4)
    37:21;52:20,21;
    53:24
stopping (1)
    41:20
straight (1)
    49:14
stranded (2)
    54:3,6
Strategic (1)
    7:14
strikes (1)

FILED: NEW YORK COUNTY CLERK 06/21/2017 02:24 PM    INDEX NO. 451962/2016
NYSCEF DOC. NO. Case 1:17-cv-02301-VEC   Document 235-6   Filed 06/30/17   Page 100 of 102 EF: 06/21/2017

PricewaterhouseCoopers                                          June 16, 2017

56:12
**stuck (1)**
    33:25
**stuff (5)**
    20:2;32:23;41:16;
    60:12;81:5
**stumbling (1)**
    18:7
**Subject (11)**
    9:22;10:12;12:13;
    32:2;39:20;40:19;
    41:6;46:10;60:15;
    73:17;74:10
**subjects (3)**
    64:5;83:22,24
**submission (3)**
    63:23,25;80:7
**submit (1)**
    19:2
**submitted (1)**
    16:19
**subpart (1)**
    75:25
**subpoena (54)**
    7:5;9:8;17:23;
    18:19;19:6;20:11,26;
    21:3,23,25:24;27:6;
    28:20;30:3,10;31:6,
    13,23;32:11;33:3;
    38:15,17;40:14,22;
    41:5,17;44:20,21;
    46:7,11,20;47:16;
    48:19;49:7,11;50:2;
    51:11;57:18;58:10,
    14;59:14;62:20;
    65:17,21;66:8;71:3,
    16;72:9;73:4,12,13,
    24;74:10;77:21;84:25
**subpoenas (6)**
    18:25;21:16,17;
    30:4;33:11;34:13
**subpoena's (1)**
    20:14
**subsequent (2)**
    21:3;33:22
**subsequently (1)**
    55:14
**subset (1)**
    49:8
**subsidiary (1)**
    67:6
**substantial (1)**
    47:11
**substantiate (3)**
    28:17;44:15;47:20
**substantive (4)**
    6:4;7:9,10;66:22
**sued (1)**
    85:9
**suggest (2)**
    8:5;76:11
**suggested (3)**
    19:12;34:3;56:23

**suggesting (2)**
    32:24;51:25
**suggestion (1)**
    55:7
**suite (1)**
    25:19
**supervised (1)**
    26:9
**supplement (2)**
    11:11;20:19
**supplemented (1)**
    55:14
**supply (2)**
    13:26;14:20
**support (1)**
    18:9
**suppose (1)**
    16:20
**supposed (4)**
    6:12,12,13;52:21
**suppress (2)**
    13:23,25
**sure (7)**
    17:18;30:5;42:6;
    52:12;55:3;83:26;
    84:11
**Surely (1)**
    38:8
**surprised (1)**
    73:19
**sustain (1)**
    26:17
**sympathetic (1)**
    61:16
**system (3)**
    22:19;25:13;75:3

**T**

**tailored (1)**
    11:11
**talk (7)**
    8:3,13;22:9;44:10;
    45:6,9;69:24
**talked (4)**
    6:22;25:22;32:17;
    71:19
**talking (13)**
    6:26;27:11;35:15;
    47:14;48:15;57:12;
    58:8,16;59:24;71:14;
    74:14,19;82:3
**talks (1)**
    13:9
**target (1)**
    21:22
**targeted (5)**
    11:25;28:24;31:6;
    50:11;72:3
**techniques (1)**
    26:19
**technology (1)**
    14:13

**ten (2)**
    3:22;6:25
**terms (31)**
    3:20,21;9:16;10:16,
    21;14:26;17:19;20:2,
    7;24:3;25:3;27:20,24,
    25;28:6,21;30:2;31:9;
    34:7,15;37:24;55:13;
    60:26;61:18;71:18;
    73:5,11,17,24;74:23;
    77:21
**terrible (2)**
    15:21,22
**test (2)**
    64:2;85:15
**testified (3)**
    24:20;64:10;68:23
**testify (5)**
    7:18;15:25,26;
    37:26;64:4
**testimony (15)**
    16:23;18:23;26:8;
    28:3,15;34:20;43:10,
    15,16;50:23;59:3,7;
    70:17;71:14;82:26
**Texas (1)**
    83:12;85:10
**theoretically (1)**
    70:16
**theories (1)**
    54:11
**theory (8)**
    54:2,3,6,7,8,8,12;
    55:22
**thereafter (1)**
    7:4
**therefore (1)**
    67:3
**third (2)**
    54:12;80:16
**Thirty (1)**
    67:12
**though (4)**
    19:26;20:21;44:16;
    60:6
**thought (7)**
    12:8;31:11;34:8;
    51:21;78:11;82:15;
    85:15
**thousand (1)**
    43:5
**thousands (1)**
    35:16
**three (16)**
    6:5;20:17;25:10;
    27:6;33:7;48:7,8,11;
    50:6;51:6;52:19;
    55:22;56:17;70:6;
    78:3,19
**throughout (2)**
    38:17;39:2
**thwarted (1)**
    68:18

**tied (2)**
    41:6;56:26
**times (3)**
    33:26;34:3,5;41:25;
    52:23
**tiny (3)**
    37:12,12,13
**Toal (23)**
    23:18,19;30:8;
    35:18;63:9,12;64:7,
    12,16,24;65:13,23;
    66:20;71:25;77:4;
    79:13;80:5;81:14;
    82:6,7,19,24;83:7
**today (7)**
    3:3;33:20;38:6,19;
    43:6;74:5;79:8
**today's (1)**
    3:16
**together (3)**
    8:21;9:15;14:7
**told (8)**
    8:12;21:12;40:6,21;
    48:19;49:10;52:5;
    71:2
**took (1)**
    25:11
**topic (1)**
    63:14
**topics (1)**
    63:22
**Toronto (1)**
    69:6
**total (1)**
    47:2
**totally (3)**
    17:26;53:25;54:11
**track (2)**
    22:20;75:6
**trade (10)**
    80:20,25;81:4,6,9,
    12,22,26;82:9,26
**transaction (1)**
    15:7
**transactions (1)**
    9:11
**transcript (3)**
    3:13;77:7,8
**treated (1)**
    79:24
**Trelenberg (1)**
    7:20
**trial (3)**
    16:3,21;33:23
**tried (5)**
    6:24;30:21;45:19;
    53:10;77:5
**true (3)**
    16:9,13;64:7
**trust (1)**
    81:3
**try (4)**
    12:22;35:6;51:22;

53:11
**trying (14)**
    23:17;30:2;33:19,
    24;42:23;50:7,21;
    52:14;56:11;62:7;
    70:3;71:9;72:9;79:15
**turn (2)**
    25:14;65:14
**turning (1)**
    9:7
**turns (1)**
    29:20
**two (35)**
    8:2,5,21,26;9:19;
    13:7;15:7;16:18;
    20:16;24:9;25:5;
    26:14;27:6,22,23;
    31:4;32:7;39:16,19;
    43:9;47:15,17;50:6;
    51:6;52:4;56:17;64:9;
    69:7;73:19;76:15,16,
    26;77:26;81:18;83:17
**type (2)**
    9:21;51:22
**types (2)**
    13:25;66:3

**U**

**ultimately (3)**
    14:2,13;54:17
**unable (1)**
    16:8
**unacceptable (1)**
    55:5
**under (5)**
    19:6;30:3;55:20;
    58:21;79:23
**underlying (1)**
    52:2
**understandable (1)**
    51:15
**understood (6)**
    6:2;13:13;76:5,9;
    77:24;82:3
**undertaken (1)**
    59:13
**undertaking (2)**
    30:26;77:20
**undertook (1)**
    24:11
**unfairness (1)**
    39:14
**unfortunately (2)**
    19:19;46:13
**unhappy (1)**
    15:21
**unified (1)**
    44:5
**uniform (1)**
    22:19
**units (1)**
    22:6

unless (1)
80:16
unlimited (1)
47:12
unnecessary (2)
8:24;9:10
unprecedented (1)
85:9
unqualified (1)
20:12
unreasonable (3)
9:23;12:6;72:20
unresolved (1)
59:5
unsatisfied (1)
18:20
unsupervised (1)
29:16
up (20)
6:11;10:8;14:18;
20:15;23:5,12,19;
28:23;32:23;33:12;
39:8,25;40:17;54:25;
55:5;56:26;62:24;
72:9;83:9;84:8
upcoming (1)
82:22
update (15)
35:9,24;36:17;38:3,
6;40:26;45:23;47:18;
52:15;55:15;59:13;
61:21;62:19;77:20;
79:16
updated (5)
38:18;45:17;46:7,9;
77:2
updating (7)
35:7;52:17,19,25;
53:4;78:2,5
use (3)
4:22;13:24;26:20
used (11)
5:2;8:7,15;13:7;
14:17;19:20;25:4;
27:20;54:17;77:22;
82:11
uses (1)
13:10
using (2)
19:26;24:3
usually (2)
6:23;33:11
utilized (1)
73:17
utterly (2)
41:24;58:12

V

value (2)
41:3;58:14
verify (2)
24:8;55:18

version (1)
16:24
veteran (1)
63:17
vice (1)
7:13
view (7)
4:11;18:11;56:10,
11;61:10;67:2;72:26
vigorously (1)
75:7
violate (1)
22:17
virtually (2)
47:12;72:5
virtue (1)
68:26
vital (2)
39:4;44:22
voluntarily (1)
62:19

W

wait (2)
28:26;51:6
waited (2)
8:17,22
waiting (1)
70:16
walk (2)
23:10;54:23
wants (6)
4:18;5:23;35:26;
38:19;65:16;80:25
warp (1)
33:25
waste (1)
29:25
wasted (1)
64:10
wasting (2)
30:5,7
way (21)
5:3;12:9;19:11;
22:9;27:11;28:7;
42:21,21,24,25;43:21;
45:7;46:21,23;51:5,9;
55:10;66:7,12;67:17;
71:12
ways (1)
22:16
week (5)
11:3;25:18;32:18,
20;83:17
weekly (2)
32:25;39:11
weeks (1)
83:17
weighing (1)
17:25
Weiss (2)
35:18;63:19

WELLS (56)
4:19,20,21,26;5:,11,
15,19;10:3,24;11:5,7,
15;12:8,15,22;13:6,
16;14:5;15:13,18;
16:10;17:5,10,12,16;
19:18;22:14;25:19,
22;28:8,18;32:7,9,13,
15;33:5;34:7;35:3,5;
36:12;38:5,18;51:20,
21;52:10;55:8;60:24;
61:4,20,23;62:6,22;
63:2,9;83:25;84:17
Wells' (1)
77:19
Well's (1)
56:10
weren't (4)
23:23;68:11,12;
71:15
what's (4)
14:14;17:19;36:14;
76:21
whole (4)
6:19;25:19;32:21,
26
who's (2)
16:20,20
whose (2)
16:24;25:2
wide (1)
44:24
widely (1)
67:13
willing (2)
68:11,12
wish (3)
11:7;58:19;59:12
witch (2)
53:13;84:18
withheld (2)
44:19;85:4
withhold (1)
85:5
within (3)
3:22;23:13;51:17
without (6)
25:12;31:12;70:18;
80:8,8,9
witness (11)
18:22,25;42:25,26;
43:3;45:4;63:10;66:4,
20;83:19;85:20
witnesses (47)
6:4;7:9,9,11;11:24;
12:12;15:24;16:6,21;
17:3;18:6;24:4,20,21;
27:10;28:26;37:10,
25;41:11,12,18;42:3,
14,15,16;43:2,3,9;
47:9;51:7;59:4,6;
60:14;63:15;64:4,8,9;
65:20;66:21,22;70:9,

15,17;71:14;83:11,17,
21
words (1)
27:19
work (4)
17:17;33:11;35:17;
72:23
worked (1)
78:7
working (1)
71:17
works (2)
25:17;35:16
world (6)
28:8;44:3;53:16;
56:10,11;71:23
worth (3)
18:23;27:25;32:23
write-down (1)
20:23
wrong (9)
8:26;15:8;16:14,20;
20:17;51:23;53:18;
72:26;78:11
wrongfully (1)
74:3
wrongly (1)
15:6

Y

yards (1)
43:5
year (14)
9:19;21:3;27:12,25;
32:21,26;33:8;35:24;
47:4;49:5;52:18;
63:16;72:19;74:17
years (15)
9:15,18,19;13:12;
18:23;33:7;52:2,8,19,
20;55:22;56:21;60:2;
61:17;72:5
year's (1)
32:23
York (10)
5:20,23;14:9;16:5;
68:6,10;69:6;79:20,
23;82:13

Z

zealously (1)
56:9

1

1 (1)
5:17
10-K (2)
68:26;84:7
10th (1)
6:14

15,17;71:14;83:11,17,
21

12 (8)
9:15,17;29:5;51:26;
52:8;56:21;72:5,19
130 (1)
43:24
134 (2)
55:15;73:18
14 (1)
11:18
142 (2)
33:9;35:10
15 (1)
34:3
16 (9)
3:18;10:19;24:25;
25:9;29:5;34:20;
35:23;37:20;38:9
17 (2)
33:26;40:5
18 (1)
37:19
19 (1)
7:20

2

2 (2)
15:10,11
2.8 (1)
79:14
20 (1)
63:16
2015 (6)
20:10;38:16,21;
53:19;55:19;62:12
2016 (22)
5:19;20:13,20;
30:11;38:10,12,13,17,
22;39:3,3,6;40:5,9,17,
18;55:16;61:21;
62:21;77:3,21;78:2
2017 (4)
30:11;38:8;39:22;
61:25
21 (1)
5:19
22 (1)
34:8
22nd (9)
3:13;4:2,3,7,8;5:6,
23;9:9;30:26
25 (1)
7:21
27 (7)
7:15,17,19;10:25;
11:2;23:18;34:11
28 (1)
7:22

3

31 (1)
6:25

FILED: NEW YORK COUNTY CLERK 06/21/2017 02:24 PM
NYSCEF DOC. NO. Case 1:17-cv-02301-VEC  Document 235-6  Filed 06/30/17  Page 102 of 102 EF: 06/21/2017

INDEX NO. 451962/2016

PricewaterhouseCoopers

June 16, 2017

**31st (2)**
3:23;6:13

**4**

**4:00 (1)**
11:9

**6**

**69 (1)**
66:26

**8**

**8th (2)**
7:5;9:8

App. 556