UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

EXXON MOBIL CORPORATION,

               Plaintiff,

   v.

ERIC TRADD SCHNEIDERMAN, Attorney
General of New York, in his official capacity, and
MAURA TRACY HEALEY, Attorney General of
Massachusetts, in her official capacity,

               Defendants.

---

No. 17-CV-2301 (VEC) (SN)

## EXXON MOBIL CORPORATION'S OPPOSITION TO NON-PARTY
## CARROLL MUFFETT'S MOTION FOR A PROTECTIVE ORDER

**PAUL, WEISS, RIFKIND,
WHARTON & GARRISON LLP**
1285 Avenue of the Americas
New York, NY 10019-6064

**HAYNES & BOONE, LLP**
2323 Victory Avenue, Suite 700
Dallas, TX 75219
Tel: (214) 651-5579

**CANTEY HANGER LLP**
600 W. 6th St. #300
Fort Worth, TX 76102
Tel: (817) 877-2800

*Counsel for Exxon Mobil Corporation*

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

TABLE OF AUTHORITIES ................................................................................................ ii

PRELIMINARY STATEMENT ........................................................................................... 1

STATEMENT OF FACTS .................................................................................................... 2

ARGUMENT ......................................................................................................................... 9

I.      This Court Lacks Jurisdiction over the Motion. ................................................. 9

        A.      The Federal Rules of Civil Procedure Do Not Authorize Muffett to Seek a
                Protective Order from this Court. ............................................................. 9

        B.      ExxonMobil's Notice of Appeal Divested this Court of Jurisdiction over
                the Motion. .............................................................................................. 10

II.     Muffett Has Failed to Demonstrate Any Need for Court Intervention at this Time. ......... 12

III.    The Subpoena Seeks Relevant Information. .................................................... 14

IV.     Muffett's Request for Costs Is Baseless. ......................................................... 15

CONCLUSION ................................................................................................................... 17

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

<small>CASES</small>

*A&R Body Specialty & Collision Works, Inc.* v. *Progressive Cas. Ins. Co.*,
  No. 3:07CV929 WWE, 2013 WL 6044333 (D. Conn. Nov. 14, 2013)...................................14

*Abdelal* v. *Kelly*,
  No. 13-cv-04341 (ALC) (SN), 2017 WL 1843291 (S.D.N.Y. May 5, 2017).........................11

*In re Apollo Grp., Inc. Sec. Litig.*,
  329 F. App'x 283 (D.C. Cir. 2009).......................................................................................16

*Aristocrat Leisure Ltd.* v. *Deutsche Bank Tr. Co. Americas*,
  262 F.R.D. 293 (S.D.N.Y. 2009) ..........................................................................................13

*Chen-Oster* v. *Goldman, Sachs & Co.*,
  293 F.R.D. 557 (S.D.N.Y. 2013) ..........................................................................................15

*Ching* v. *United States*,
  298 F.3d 174 (2d Cir. 2002)..................................................................................................10

*Chrysler Capital Corp.* v. *Century Power Corp.*,
  137 F.R.D. 209 (S.D.N.Y. 1991) ..........................................................................................10

*In re County of Orange*,
  208 B.R. 117 (Bankr. S.D.N.Y. 1997) ..................................................................................13

*Duling* v. *Gristede's Operating Corp.*,
  266 F.R.D. 66 (S.D.N.Y. 2010) ............................................................................................13

*Garcia* v. *Teitler*,
  443 F.3d 202 (2d Cir. 2006)..................................................................................................12

*Griggs* v. *Provident Consumer Discount Co.*,
  459 U.S. 56 (1982)................................................................................................................10

*Gucci Am., Inc.* v. *Guess?, Inc.*,
  271 F.R.D. 58 (S.D.N.Y. 2010) ............................................................................................12

*Henry Rosenfeld, Inc.* v. *Himar Sales Corp.*,
  460 F. Supp. 640 (S.D.N.Y. 1978) .......................................................................................10

*In re Hornbeam Corp.*,
  No. 14-MC-424, 2017 WL 3491962 (S.D.N.Y. Aug. 14, 2017) ............................................10

*JMC Rest. Holdings, LLC* v. *Pevida*,
  No. 14-cv-6157 (WFK) (VMS), 2015 WL 2240492 (E.D.N.Y. May 12, 2015) ....................10

*KGK Jewelry LLC* v. *ESDNetwork*,
    No. 11-cv-9236 (LTS) (RLE), 2014 WL 1199326 (S.D.N.Y. Mar. 21, 2014)......................10

*Lancaster* v. *Indep. Sch. Dist. No. 5*,
    149 F.3d 1228 (10th Cir. 1998) ............................................................................12

*N.Y. State Nat. Org. for Women* v. *Terry*,
    886 F.2d 1339 (2d Cir. 1989)...............................................................................14

*Perry* v. *Brown*,
    2011 U.S. App. LEXIS 13776, 2011 WL 2419868 (9th Cir. April 27, 2011)......................12

*Springs* v. *Ally Fin. Inc.*,
    657 F. App'x 148 (4th Cir. 2016) ..........................................................................12

*Tancredi* v. *Metro. Life Ins. Co.*,
    378 F.3d 220 (2d Cir. 2004)................................................................................12

*In re Terrorist Attacks on Sept. 11, 2001*,
    454 F. Supp. 2d 220 (S.D.N.Y. 2006)....................................................................13

*Younger* v. *Harris*,
    401 U.S. 37 (1971) ................................................................................. *passim*

## OTHER AUTHORITIES

Fed. R. Civ. P. 26(c) .............................................................................10, 12, 13

Fed. R. Civ. P. 36 ..........................................................................................15

Fed. R. Civ. P. 37(c)(2)...................................................................................15

Fed. R. Civ. P. 45(d)(3)...................................................................................9, 10

Exxon Mobil Corporation ("ExxonMobil") respectfully submits this memorandum of law in opposition to non-party Carroll Muffett's motion for a protective order.[1]

## PRELIMINARY STATEMENT

ExxonMobil served a subpoena on Carroll Muffett in November 2016, pursuant to a court order authorizing jurisdictional discovery.  Prior to Muffett's production of any responsive documents, discovery in this matter was stayed.  In light of that stay (which has never been lifted), ExxonMobil has not attempted to enforce the subpoena, has not asked to meet and confer about document production, and has not contacted or attempted to contact Muffett or his counsel about the subpoena.  Other than providing timely responses to periodic inquiries from Muffett's counsel, ExxonMobil has done nothing whatsoever in regard to the subpoena in the 18 months since discovery in this matter was stayed.

Looking for a fight where none exists, Muffett asks this Court to "provide clarity as to whether the subpoena issued [to] him is now void."  (Mem. 3.)  Muffett also requests the imposition of costs as a sanction on ExxonMobil for not agreeing with Muffett's counsel that the subpoena was "dead." (Mem. 1-3, 7; Simons Decl. ¶ 7.)  Even if this Court were in the business of providing "clarity" (rather than resolving ripe, contested disputes), Muffett's motion would remain baseless.  In his rush to the courthouse, Muffett failed to follow the relevant section of the Federal Rules of Civil Procedure, which requires his motion to be filed in the judicial district of compliance.  Here, that is not the Southern District of New York.  But even if his motion were properly filed here, this Court would lack jurisdiction over it because of the pendency of ExxonMobil's appeal in the United States Court of Appeals for the Second Circuit.  On top of those formidable jurisdictional impediments, the motion is substantively defective because

---

[1]   "Mem." refers to the memorandum of law Muffett filed in support of his motion; "Simons Decl." refers to the Declaration of Marco Simons in support of Muffett's motion; and "Anderson Decl." refers to the Declaration of Justin Anderson filed in support of ExxonMobil's opposition to Muffett's motion.

Muffett has failed to establish that the subpoena imposes on him any cognizable burden, including on his First Amendment rights, which he freely and openly exercises on a regular basis.  It is even more indefensible for Muffett to request costs as a sanction on ExxonMobil for not agreeing with his attorney's legal opinion.  That request, along with the rest of his motion, has no foundation in law and should be rejected.

In an effort to avoid imposing needless burden on this Court, ExxonMobil offered to enter into a stipulation with Muffett, under which (i) ExxonMobil agreed not to take any action to enforce the subpoena until such time as the stay on discovery is lifted or discovery is otherwise authorized by court order, and (ii) Muffett withdrew his motion and recognized his continuing obligation to preserve potentially relevant documents.  (Anderson Decl. Ex. II.) Muffett refused.  (*Id.*)  That stipulation would have provided all the "clarity" Muffett could reasonably require under the circumstances.  By rejecting that offer, Muffett has provided clarity of another sort: he has unmasked his motion as nothing more than base attention-seeking.  While Muffett might wish to insert himself into these proceedings to obtain whatever publicity might be had, he has no legitimate business before this Court.  ExxonMobil's suit against the Attorneys General is now before the Second Circuit.  Muffett's role, if any, in this litigation will commence only when this matter is remanded for further proceedings.  ExxonMobil stands ready to address at that time any appropriate applications Muffett might choose to make.

## STATEMENT OF FACTS

In June 2016, ExxonMobil filed constitutional claims against Massachusetts Attorney General Maura Healey in the United States District Court for the Northern District of Texas.  In her motion to dismiss ExxonMobil's complaint, Attorney General Healey argued that abstention was required under *Younger* v. *Harris*, 401 U.S. 37 (1971), because of a later-filed action pending in Massachusetts state court.  Following oral argument and unsuccessful mediation

efforts, Judge Ed Kinkeade authorized the parties to conduct jurisdictional discovery on the "bad faith" exception to *Younger*.  (Ex. K to Anderson Decl. (the "Discovery Order").)  Judge Kinkeade ordered discovery in light of ExxonMobil's "concerning" allegations of the Attorney General's bias, improper motives, and efforts to suppress speech, which "if true, may constitute bad faith . . . which would preclude *Younger* abstention."  (*Id*. at 5-6.)

Pursuant to the Discovery Order, ExxonMobil issued a third-party subpoena to Carroll Muffett on November 9, 2016 (the "Muffett Subpoena").  (Ex. 1 to Simons Decl.)  Muffett sits on the Board of Directors of the Climate Accountability Institute, which organized a 2012 conference in La Jolla, California, to brainstorm ways to influence the public discourse on climate change.  (Exs. CC, DD to Anderson Decl.)  At the La Jolla conference, Matthew Pawa, Peter Frumhoff, and other participants proposed to use law enforcement powers and civil litigation to "maintain[] pressure on the industry that could eventually lead to its support for legislative and regulatory responses to global warming."  (Ex. DD to Anderson Decl. at 27.)  The attendees observed that "a single sympathetic state attorney general might have substantial success in bringing key internal documents to light."  (*Id.* at 11.)

The Rockefeller Family Fund hosted a sequel to the La Jolla conference in January 2016, with Muffett and Pawa in attendance.  (Exs. A, B to Anderson Decl.)  That meeting's agenda listed the "Goals of an Exxon campaign," which included: (i) "[t]o establish in [the] public's mind that Exxon is a corrupt institution that has pushed humanity (and all of creation) toward climate chaos"; (ii) "[t]o delegitimize them as a political actor"; (iii) "[t]o force officials to disassociate themselves from Exxon"; and (iv) "[t]o drive divestment from Exxon."  (*Id.*)  The Rockefeller agenda proposed to enlist state "AGs" to carry out their objectives.  (*Id.*)

Echoing the themes of the La Jolla conference and the Rockefeller meeting, on March 29, 2016, Attorney General Schneiderman of New York and Attorney General Healey, along with other attorneys general, held a press conference where they promoted regulating the speech of energy companies, including ExxonMobil, to clear the way for their preferred policy responses to climate change.  (Ex. EE to Anderson Decl.)  Attorney General Schneiderman declared that there could be "no dispute" about climate policy, only "confusion" and "misperceptions in the eyes of the American public that really need to be cleared up."  (*Id.* at 2.)  Attorney General Schneiderman also denounced the "highly aggressive and morally vacant forces that are trying to block every step by the federal government to take meaningful action" and announced that "today, we're sending a message that, at least some of us—actually a lot of us—in state government are prepared to step into this battle with an unprecedented level of commitment and coordination."  (*Id.* at 4.)  Attorney General Healey similarly stated, "Part of the problem has been one of public perception," and she blamed "[f]ossil fuel companies" for purportedly causing "many to doubt whether climate change is real and to misunderstand and misapprehend the catastrophic nature of its impacts."  (*Id.* at 12.)  She believed that those who "deceived" the public "should be, must be, held accountable" and, in the next sentence, announced her investigation of ExxonMobil.  (*Id.*)

Just before the press conference, Pawa and Frumhoff provided a private briefing to the Attorneys General and their staffs.  (Ex. FF to Anderson Decl.)  Pawa presented on "climate change litigation," while Frumhoff discussed the "imperative of taking action now on climate change."  (*Id.*)  The New York Attorney General's Office attempted to conceal these private briefings from the public.  When a reporter contacted Pawa shortly after the closed-door meeting and inquired about the press conference, the Chief of the Environmental Protection Bureau at the

New York Attorney General's Office told Pawa, "My ask is if you speak to the reporter, to not confirm that you attended or otherwise discuss the event."  (Ex. GG to Anderson Decl.)

After the press conference, Muffett, Pawa, and Frumhoff continued to press for state investigations of the energy industry.  Pawa attempted to mobilize a coalition of attorneys general by creating an email list of "AG Folks" to "pass along information that may be of interest to AGs on the issue of our time: climate change."  (Ex. HH to Anderson Decl.)  In April 2016, Muffett addressed officials representing various state attorneys general at a conference, co-hosted by Frumhoff's Union of Concerned Scientists, on "Potential State Causes of Action Against Major Carbon Producers."  (Exs. C, D to Anderson Decl.)

In light of Muffett's participation in these events and his apparent coordination with Pawa, Frumhoff, and other special interests, it is reasonable to believe that Muffett would possess information pertaining to the motives of the Attorneys General.  The subpoena inquired about this information and directed Muffett to produce responsive documents to ExxonMobil's lawyers in Washington, D.C.  (Ex. 1 to Simons Decl. at 1.)  On behalf of Muffett, Marco Simons filed responses and objections to the subpoena on November 23, 2016.  (Simons Decl. ¶ 3.)  A meet and confer took place on December 9, 2016, during which Simons conceded that Muffett possessed documents responsive to the subpoena.  (Anderson Decl. ¶ 37.)

ExxonMobil also issued third-party subpoenas to Matthew Pawa and the Pawa Law Group, P.C. ("PLG"), requesting similar information bearing on the Attorneys General's motives.  (Exs. L, M to Anderson Decl.)  Pawa and PLG filed a motion in the United States District Court for the District of Massachusetts to quash the subpoenas.  (Ex. N to Anderson Decl.)  ExxonMobil opposed and cross-moved to transfer the motion to the Northern District of Texas and to compel compliance with the subpoena, which Simons, this time on behalf of Pawa

and PLG, opposed.  (Exs. O, P to Anderson Decl.)  Before those motions were adjudicated,

Judge Kinkeade issued an order "stay[ing] all discovery pending further order from this Court."

(Ex. Q to Anderson Decl.)  In light of the stay, ExxonMobil proposed to hold the Massachusetts

proceedings "in abeyance pending a lifting of the stay in the underlying case."  (Ex. R to

Anderson Decl. at 2)  Pawa and PLG opposed an adjournment.  (*Id.*)  When the parties appeared

in Massachusetts federal court, the judge administratively closed the case in light of the stay and

permitted the parties to apply to reopen the proceedings if the stay on discovery were lifted.  (Ex.

S to Anderson Decl. at 11:9-12:3; *see also* Ex. T to Anderson Decl.)  To date, no such

application has been made.

On March 29, 2017, Judge Kinkeade transferred to this Court ExxonMobil's action,

which by then named Attorney General Schneiderman, in addition to Attorney General Healey,

as a defendant.  At the initial appearance, the Court determined that it would reach "*Younger*

abstention" only if "there's not another easier way of dealing with this case."  (Ex. U to

Anderson Decl. at 10:3-6.)  The Court also continued the stay of discovery put in place by Judge

Kinkeade.  (Ex. V to Anderson Decl.)  Pursuant to these directions, the parties prepared briefs on

various other threshold grounds for dismissal and did not pursue discovery.

While those briefs were being prepared, Simons contacted counsel for ExxonMobil and

asked for consent to transfer Pawa and PLG's administratively closed motion from the District of

Massachusetts to this Court.  (Ex. F to Anderson Decl. at 2.)  Opposing the request, ExxonMobil

explained (i) "there is no reason to believe that the revival of [the Massachusetts] proceedings is

imminent," (ii) Judge Caproni continued the stay of discovery and "indicated that the stay will

remain in place at least until pending motions to dismiss are decided," and (iii) transfer would

"[s]erve no useful or legitimate purpose and would only impose an unwanted burden on the

courts in both Massachusetts and New York." (*Id.*) Simons did not move to transfer Pawa and PLG's motion to this Court.

On March 29, 2018, this Court dismissed ExxonMobil's action against the Attorneys General. Less than two weeks later, Simons emailed counsel for ExxonMobil, on behalf of Pawa, PLG, and Muffett, and asked for the company's "position as to whether these subpoenas are dead – i.e., that the targets are under no continuing obligations." (Ex. G to Anderson Decl. at 2-3.) In response, ExxonMobil stated that it "do[es] not believe that Judge Caproni's decision alters your clients' continuing obligation to preserve paper and electronic documents." (*Id.* at 2.) It further stated, "the time to appeal the court's decision has not yet run, so it would be premature to take a position on that ruling's ultimate effect on the subpoenas." (*Id.*) On April 15 and April 20, Simons sent follow-up emails, in which he confirmed his clients' "preservation obligations" and requested that ExxonMobil "agree either to withdraw the subpoenas or that they are void." (*Id.* at 1-2.)

On April 20, ExxonMobil filed a notice of appeal from this Court's order dismissing the complaint. Later that day, ExxonMobil informed Simons that it was pursuing an appeal and reminded Simons that it had taken no action to enforce the subpoenas. Specifically, ExxonMobil stated: "We have not initiated any contact with you in the 17 months since Judge Kinkeade suspended his discovery order and Judge Young administratively closed your motion to quash . . . . We have done nothing more than respond to your periodic inquiries about the legal significance of events you are capable of evaluating for yourself." (Ex. G to Anderson Decl. at 1.) In response, Simons stated that he wished only to have "clarity" on the legal effect on the subpoena of this Court's dismissal of ExxonMobil's complaint. (*Id.*) On May 30, Simons filed a motion, on behalf of Muffett, with this Court purporting to seek that "clarity."

Notwithstanding Muffett's allegations that his speech has been chilled, for the past 18 months, from December 2016 when discovery was stayed until the present, Muffett has spoken openly about climate change, ExxonMobil, and climate litigation targeting ExxonMobil.   A representative sample follows:

- On August 23, 2017, Muffett told an online news publication that ExxonMobil engaged in "an active, well-funded communications campaign to dismiss [climate] risks for decades."  (Ex. E to Anderson Decl. at 2.)

- On November 16, 2017, Muffett told another online news publication that "Exxon and its oil industry allies have given us a decades-long history of climate change, climate denial, and climate chaos."  (Ex. H to Anderson Decl. at 3.)

- On January 10, 2018, Muffett celebrated New York City's lawsuit against ExxonMobil and other energy companies, stating: "Today's announcements are a watershed in corporate accountability for climate change and a wakeup call to investors that the risks facing fossil fuel companies are real, material and rapidly growing.  New York City joins a growing list of governments both within and beyond the United States determined to hold Exxon, Shell and other fossil fuel producers accountable for their role in the climate crisis."  (Ex. I to Anderson Decl. at 4.)

- Two weeks ago, on May 23, 2018, Muffett provided testimony at a hearing held by the Philippines Human Rights Commission in proceedings concerning ExxonMobil's and other energy companies' alleged responsibility for human rights violations resulting from the impacts of climate change.  (Ex. W to Anderson Decl. at 1-2.)[2]  At that hearing, Muffett criticized ExxonMobil, among others, for engaging in a "misinformation" campaign about the impacts of climate change.[3]

- On June 3, 2018, an article in *City & State New York* contained extensive quotes from Muffett, including his belief that "[for] a long time, producers of fossil fuels have benefited from this pervasive myth that everyone is responsible for climate change" and "[y]ou've got clear evidence that [producers of fossil fuel] were aware of the risk of their products, and of a responsibility to warn the public, but in fact took action to do exactly the opposite."  (Ex. AA to Anderson Decl. at 2, 7.)

---

[2]   Carroll Muffett's testimony can be found at 14:36-1:08:23 in the video recording available at the following website:  https://www.youtube.com/watch?v=uhxii8LCe0Y.

[3]   *Id.* at 43:38-43:55 (presenting a slide that says "ExxonMobil and other major fossil fuel producers actively promoted climate misinformation efforts that contradicted their own internal understanding of the climate science").

- Just days ago, on June 4, 2018, Muffett responded to a question about investments by energy companies in green technology by saying "no amount of investment in renewables today will excuse the companies from responsibility for their past conduct and the climate crisis they helped create."  (Ex. BB to Anderson Decl. at 2.)

Muffett also uses his Twitter account to discuss similar topics, with recent posts describing a "road map" for those "who want[] to sue oil companies over climate change."  (Ex. J to Anderson Decl.)  Contrary to his claims, Muffett remains an active participant in the public square on these issues.

## ARGUMENT

Muffett's motion should be denied for lack of jurisdiction or, in the alternative, for failure to establish that the subpoena imposes any present burden on him.  The Federal Rules of Civil Procedure and the notice of appeal filed in this case independently establish that this Court lacks jurisdiction to entertain Muffett's motion.  Even if this Court had jurisdiction, Muffett's motion should be dismissed for failing to establish that the subpoena imposed any burden on him at all, much less the demanding showing necessary to establish a chilling of his First Amendment rights.  Without such a showing, Muffett is not entitled to any relief.

## I.     This Court Lacks Jurisdiction over the Motion.

Two independent jurisdictional defects preclude this Court from granting Muffett's motion.  Either one is sufficient to compel a denial of the relief Muffett has requested.

### A.     The Federal Rules of Civil Procedure Do Not Authorize Muffett to Seek a Protective Order from this Court.

This Court lacks authority under the Federal Rules of Civil Procedure to entertain Muffett's motion.  Under Rule 45(d)(3), a motion to quash or modify a subpoena must be filed in "the court for the district where compliance is required."  When a motion to quash is improperly filed in a court other than the one where compliance is required, courts deny the motion for lack

of jurisdiction.  *See, e.g.*, *KGK Jewelry LLC* v. *ESDNetwork*, No. 11-cv-9236 (LTS) (RLE), 2014 WL 1199326, at *3 (S.D.N.Y. Mar. 21, 2014); *JMC Rest. Holdings, LLC* v. *Pevida*, No. 14-cv-6157 (WFK) (VMS), 2015 WL 2240492, at *3 (E.D.N.Y. May 12, 2015).[4]

ExxonMobil's subpoena to Muffett designated as its place of compliance its counsel's Washington, D.C. office, which is well beyond the confines of the Southern District of New York.  Because this judicial district is not the place of compliance, Muffett's decision to file in this Court violates the unambiguous requirements of Rule 45(d)(3).  Muffett is not authorized to seek relief in the Southern District of New York, and, therefore, on this ground alone, this Court should dismiss his motion for lack of jurisdiction.

### B.  ExxonMobil's Notice of Appeal Divested this Court of Jurisdiction over the Motion.

Even if Rule 45(d)(3) authorized this Court to entertain Muffett's motion, jurisdiction would still be lacking because of ExxonMobil's notice of appeal.  "The filing of a notice of appeal is an event of jurisdictional significance—it confers jurisdiction on the court of appeals and divests the district court of its control over those aspects of the case involved in the appeal." *Griggs* v. *Provident Consumer Discount Co.*, 459 U.S. 56, 58 (1982).  Once jurisdiction is transferred to the court of appeals, the district court can no longer rule "on any motion affecting an aspect of the case" before the court of appeals.  *Ching* v. *United States*, 298 F.3d 174, 180 n.5 (2d Cir. 2002).  Applying this precedent, district courts in this Circuit have concluded that, while an appeal is pending, they lack jurisdiction to entertain motions from third parties intervening in a case to obtain or modify protective orders.  *See, e.g.*, *In re Hornbeam Corp.*, No. 14-MC-424

---

[4]    Rule 26(c) is inapplicable here because it applies only to "person[s] from whom discovery is sought." ExxonMobil is not currently seeking any discovery from Muffett, and, therefore, he is not a person falling within the scope of the rule.  *See, e.g.*, *Chrysler Capital Corp.* v. *Century Power Corp.*, 137 F.R.D. 209, 211 (S.D.N.Y. 1991) (denying a motion under Rule 26(c) for a protective order as moot in light of the stay on discovery); *Henry Rosenfeld, Inc.* v. *Himar Sales Corp.*, 460 F. Supp. 640, 642 (S.D.N.Y. 1978) ("Defendants' motion for a protective order pursuant to Fed. R. Civ. P. 26(c) against the taking of their depositions must be denied as moot because this action will now be stayed.").

(Part 1), 2017 WL 3491962, at *1-2 (S.D.N.Y. Aug. 14, 2017); *Abdelal* v. *Kelly*, No. 13-cv-04341 (ALC) (SN), 2017 WL 1843291, at *2 (S.D.N.Y. May 5, 2017).

This Court lacks jurisdiction to consider Muffett's motion because it concerns issues "involved in" or "affecting" the appeal.  In the Second Circuit, ExxonMobil will challenge this Court's grounds for dismissing ExxonMobil's complaint, including the Court's finding that the Attorneys General acted in good faith when targeting ExxonMobil for pretextual investigations. ExxonMobil will also argue that it should be allowed to take discovery to develop the evidentiary record establishing the Attorneys General's bad faith.  ExxonMobil's subpoena to Muffett seeks information pertaining to precisely that issue.  For example, it requests information about Muffett's interactions with the Attorneys General following his participation in the Rockefeller Family Fund meeting, which plotted ways to "delegitimize [ExxonMobil] as a political actor."  (Exs. A, B to Anderson Decl.)  The connections between private interests like Muffett, Pawa, and Frumhoff, on the one hand, who devised a scheme to enlist state officials to suppress speech, and the state officials, on the other hand, who carried out that plan, will occupy a central position in ExxonMobil's appellate briefs.  Whether ExxonMobil is permitted to take discovery on these matters, including from third parties like Muffett, depends on a ruling that is solely within the purview of the Second Circuit.  That Court will decide whether ExxonMobil will ever be in a position to obtain discovery pursuant to the subpoenas it issued.  It would be improper for this Court to rule on a motion bearing on that question before the Second Circuit has issued its ruling, especially since Muffett has admitted that he possesses documents that are responsive to the subpoena.  (Anderson Decl. ¶ 37.)

Relying on precedent that is inapplicable here, Muffett asks this Court to invade the Second Circuit's exclusive jurisdiction.  (Mem. 6.)  Several of his authorities stand for the

11

unremarkable proposition that, when a case is on appeal, a district court retains jurisdiction over a motion concerning attorneys' fees. *See Garcia* v. *Teitler*, 443 F.3d 202, 208 (2d Cir. 2006); *Tancredi* v. *Metro. Life Ins. Co.*, 378 F.3d 220, 225 (2d Cir. 2004); *Lancaster* v. *Indep. Sch. Dist. No. 5*, 149 F.3d 1228, 1237 (10th Cir. 1998). As the Second Circuit has explained, the district court retains jurisdiction over an award of attorneys' fees because it is an issue that is "collateral" to an appeal of a decision on the merits, meaning it does not affect an issue on appeal. *Tancredi*, 378 F.3d at 225. Outside of the attorneys' fees context, Muffett relies on two out-of-circuit cases holding that a district court retains jurisdiction to enforce previously entered orders, including a protective order, but neither decision states that a court also has jurisdiction to enter a *new* protective order while an appeal is pending, as would be the case here. *See Perry* v. *Brown*, 2011 U.S. App. LEXIS 13776, *14-15, 2011 WL 2419868, at *1 (9th Cir. April 27, 2011); *Springs* v. *Ally Fin. Inc.*, 657 F. App'x 148, 151 (4th Cir. 2016). Muffett's brief contains no precedent—in this or any Circuit—authorizing a district court to issue a new protective order during the pendency of an appeal pertaining to the subject matter of the discovery at issue. That silence is telling. This Court should decline Muffett's invitation to exercise jurisdiction that now belongs to the Second Circuit.

## II. Muffett Has Failed to Demonstrate Any Need for Court Intervention at this Time.

Muffett's motion fails the basic test of justiciability: a ripe, pending dispute that requires court intervention. A motion seeking "clarity" falls well short of that standard. It also fails the test established by Rule 26(c) of the Federal Rules of Civil Procedure that the party seeking a protective order show "that good cause for the order exists." *Gucci Am., Inc.* v. *Guess?, Inc.*, 271 F.R.D. 58, 64 (S.D.N.Y. 2010) (internal quotation marks omitted). Good cause may be established by "demonstrating a particular need for protection," *id.*, and "[o]rdinarily" requires an individual to establish "a clearly defined, specific and serious injury," *In re Terrorist Attacks*

*on Sept. 11, 2001*, 454 F. Supp. 2d 220, 222 (S.D.N.Y. 2006) (internal quotation marks omitted). "Broad allegations of harm, unsubstantiated by specific examples or articulated reasoning, do not satisfy the Rule 26(c) test.  Moreover, the harm must be significant, not a mere trifle."  *Duling* v. *Gristede's Operating Corp.*, 266 F.R.D. 66, 71 (S.D.N.Y. 2010) (internal quotation marks omitted).

Discovery in this matter is currently stayed and has been stayed for the last 18 months. During that time, ExxonMobil has made no effort to compel Muffett to comply with the subpoena.  Accordingly, Muffett is under no obligation to produce documents, and any such obligation will not arise until proceedings in the Second Circuit have been completed.  Placed in that context, it rings hollow for Muffett to complain that ExxonMobil's subpoena "remains burdensome."  (Mem. 5.)   The record demonstrates exactly the opposite: the absence of any burden to do anything at all.  For Muffett to obtain any relief from a court, he cannot rely solely on a conclusory allegation of burden; he must come forward with evidence.  *See In re County of Orange*, 208 B.R. 117, 121 (Bankr. S.D.N.Y. 1997) ("The mere assertion that a subpoena is burdensome, without evidence to prove the claim, cannot form the basis for an 'undue burden' finding."); *Aristocrat Leisure Ltd*. v. *Deutsche Bank Tr. Co. Americas*, 262 F.R.D. 293, 299-300 (S.D.N.Y. 2009).  At present, Muffett's only obligation is to preserve documents potentially relevant to the issues in this action—an obligation that would bind Muffett even if the subpoena did not exist, due to Muffett's role in the relevant events.[5]  He has failed to establish any cognizable burden.

Muffett's claims of First Amendment "chill" fall equally flat.  (Mem. 5.)  As with his allegations of burden, Muffett has provided no evidence that the subpoena has deterred him from

---

[5]   According to his counsel, Muffett is "fully aware of all such obligations, ha[s] complied with those obligations, and will continue to do so."  (Ex. G to Anderson Decl. at 2.)

exercising his First Amendment rights.  When a third party objects to a discovery request on First Amendment grounds, it bears the burden of making a "prima facie showing that disclosure would infringe its First Amendment rights."  *N.Y. State Nat. Org. for Women* v. *Terry*, 886 F.2d 1339, 1355 (2d Cir. 1989); *A&R Body Specialty & Collision Works, Inc.* v. *Progressive Cas. Ins. Co.*, No. 3:07CV929 WWE, 2013 WL 6044333, at *6-7 (D. Conn. Nov. 14, 2013).  Muffett's "single unsworn statement" that his speech has been chilled is insufficient to meet that burden. *In re Motor Fuel Temperature Sales Practices Litig.*, 641 F.3d 470, 491 (10th Cir. 2011); *see also A&R Body Specialty & Collision Works*, 2013 WL 6044333, at *6 (denying a motion to quash on First Amendment grounds because "the non-parties conclusory affidavits do not describe *how* the disclosure of information would degrade their ability to associate" (emphasis in original)).

Muffett's First Amendment claim is also undermined by his robust participation in public discourse about climate change, climate litigation, ExxonMobil, and the intersection of all three subjects.  In the year and a half since receiving the subpoena, Muffett has been outspoken on these topics and has even criticized ExxonMobil for its litigation strategy.  (*See, e.g.*, Exs. X, Y, Z to Anderson Decl.)  Less than two weeks ago, Muffett provided testimony to the Philippines Human Rights Commission about ExxonMobil's alleged disinformation campaign.  (Ex. W to Anderson Decl. at 1-2.)  Not only has Muffett failed to show any chilling, but the public record actively disproves it.  This Court should not waste its resources on his baseless motion.

## III.    The Subpoena Seeks Relevant Information.

Noting that this Court did not rule on *Younger* abstention in its order dismissing ExxonMobil's complaint, Muffett questions whether the subpoena serves any purpose at this point in the litigation. (Mem. 4.)  His argument lands squarely in left field.  If the Second Circuit vacates this Court's ruling, *Younger* abstention would likely figure prominently in further

14

proceedings.  The Attorneys General have not waived their arguments for *Younger* abstention, and this Court instructed the parties that *Younger* would be reached only if "there's not another easier way of dealing with this case."  (Ex. U to Anderson Decl. at 10:3-6.)  A reversal by the Second Circuit would place the parties and the Court in that position.  At that point in time, discovery of the sort ExxonMobil requested in the subpoena will be highly relevant.

Even outside the context of *Younger* abstention, the subpoena would remain relevant in the context of normal civil discovery, particularly when judged by the "extremely broad" standard applied in this Circuit.  *Chen-Oster* v. *Goldman, Sachs & Co.*, 293 F.R.D. 557, 561 (S.D.N.Y. 2013).  Most critically, the information requested in ExxonMobil's subpoena may bear on whether the Attorneys General agreed with Muffett, Pawa, and others to use their law enforcement power improperly to coerce ExxonMobil to change its public position on climate policy.  If this case proceeds to discovery on *Younger* abstention or on the merits, the information requested in the subpoena will be exceedingly relevant.

## IV.    Muffett's Request for Costs Is Baseless.

Muffett has requested the imposition of costs as a sanction on ExxonMobil for not agreeing with the legal conclusion that the subpoena was "dead" and for not providing "clarity" on the legal implications of certain events.  (Ex. G to Anderson Decl.)  There is no basis in law for awarding costs under these circumstances.  ExxonMobil has no obligation to explain the legal effect of court rulings or provide general legal advice to Muffett or his counsel.  Rule 37(c)(2) of the Federal Rules of Civil Procedure, which Muffett invokes as the basis for his request, does not counsel otherwise.  (Mem. 7.)  That rule permits a court to award attorneys' fees and costs when a party fails to admit information requested under the formal process set out in Rule 36.  That rule does not govern email communications between counsel pertaining to legal questions.  It has no application here.

At bottom, Muffett appears to believe this Court's dismissal of ExxonMobil's action against the Attorneys General invalidates the subpoena.  (Mem. 3.)  Muffett has identified no precedent in this Circuit supporting his position, and the only authority Muffett references in his brief is an unpublished decision containing an unusual caveat that the panel would not "speculat[e] about what other courts might do" when confronted with this legal question.  *In re Apollo Grp., Inc. Sec. Litig.*, 329 F. App'x 283, 284 (D.C. Cir. 2009).  Regardless of the merits of his position, Muffett's counsel is entitled to hold it and communicate it to his client.  But he is not entitled to browbeat ExxonMobil into agreeing with him.  If Muffett's legal analysis is correct, it does not matter what ExxonMobil might think.  The accuracy of Muffett's legal analysis does not turn on ExxonMobil's position.  If the subpoena is no longer valid, Muffett does not need to have ExxonMobil withdraw it any more than a successful defendant needs a plaintiff to withdraw a complaint after it has been dismissed by the court.

From ExxonMobil's perspective, it intends to seek discovery if the Second Circuit reinstates the complaint, including from third parties.  It does not intend to make any statements or concessions at this time that might jeopardize its right to take discovery or suggest to any party, potential party, or third party that it need not continue to preserve relevant documents.  Furthermore, ExxonMobil should not be required to incur the burden and expense of re-serving subpoenas on third parties that have already been properly served.  In an effort to protect all valid interests and conserve court resources, ExxonMobil proposed a stipulation to resolve this motion, under which (i) ExxonMobil agreed not to take any action to enforce the subpoena until such time as the stay on discovery is lifted or discovery is otherwise authorized by court order, and (ii) Muffett withdrew his motion and recognized his continuing obligation to preserve potentially relevant documents.  (Anderson Decl. Ex. II.)  Muffett refused.  (*Id.*).

That refusal speaks volumes about Muffett's motivations for filing this motion.   If Muffett truly seeks clarity on whether ExxonMobil intends to enforce the subpoena prior to a court order authorizing discovery, the stipulation would have provided that clarity.   By refusing to enter into it, Muffett has revealed his motion to be nothing more than an effort to insert himself in a pending matter where he has no role to play.   Motions for protective orders are not vehicles for meddling in pending cases or for seeking attention or publicity.   If ExxonMobil is successful on appeal and this case proceeds to discovery, Muffett might have his day in court. Until that time comes, there is no additional "clarity" that this Court or ExxonMobil needs to provide.

## CONCLUSION

Muffett's motion for a protective order should be denied for lack of jurisdiction under the Federal Rules of Civil Procedure and because ExxonMobil's notice of appeal divested this Court of jurisdiction.   On the merits, Muffett's motion should be denied for failure to establish either the requisite burden or the irrelevance of the subpoenaed materials.    Sanctions against ExxonMobil are inappropriate here because they are not authorized by the rule Muffett relies on and because ExxonMobil is under no obligation to agree with Muffett's legal positions or to provide him with legal advice.   The motion should be denied in its entirety.

Dated: June 8, 2018

Respectfully submitted by,

EXXON MOBIL CORPORATION

By: /s/ Theodore V. Wells, Jr.
Theodore V. Wells, Jr.
twells@paulweiss.com
Daniel J. Toal
dtoal@paulweiss.com
PAUL, WEISS, RIFKIND, WHARTON &
GARRISON, LLP
1285 Avenue of the Americas
New York, NY 10019-6064
(212) 373-3000
Fax: (212) 757-3990

Justin Anderson
janderson@paulweiss.com
PAUL, WEISS, RIFKIND, WHARTON &
GARRISON, LLP
2001 K Street, NW
Washington, D.C. 20006-1047
(202) 223-7300
Fax: (202) 223-7420

Patrick J. Conlon
patrick.j.conlon@exxonmobil.com
Daniel E. Bolia (*pro hac vice*)
daniel.e.bolia@exxonmobil.com
22777 Springwoods Village Parkway
N1.4B388
Spring, TX 77389
(832) 624-6336

Nina Cortell (*pro hac vice*)
nina.cortell@haynesboone.com
HAYNES & BOONE, LLP
2323 Victory Avenue
Suite 700
Dallas, TX 75219
(214) 651-5579
Fax: (214) 200-0411

Ralph H. Duggins (*pro hac vice*)
rduggins@canteyhanger.com
Philip A. Vickers (*pro hac vice*)
pvickers@canteyhanger.com
CANTEY HANGER LLP
600 West 6th Street, Suite 300
Fort Worth, TX 76102
(817) 877-2800
Fax: (817) 877-2807

*Counsel for Exxon Mobil Corporation*